GOETZ FITZPATRICK LLP
RONALD D. COLEMAN
rcoleman@goetzfitz.com
One Penn Plaza, Suite 4401
New York, NY 10119
Telephone: 212.695.8100
Facsimile: 212.629.4013

Counsel for Defendants
JOHN PATRICK FREY AND
CHRISTI FREY

BROWN WHITE & NEWHOUSE LLP
KENNETH P. WHITE (Bar No. 238052)
kwhite@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, CA 90071-1406
Telephone: 213. 613.0500
Facsimile: 213.613.0550

Local Counsel for Defendants
JOHN PATRICK FREY AND
CHRISTI FREY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADIA NAFFE, an individual, | Case No.: CV12-08443-GW (MRWx) |
| Plaintiff, | Judge:   Hon. George H. Wu |
| v. | |
| JOHN PATRICK FREY, an individual, CHRISTI FREY, an individual, STEVE M. COOLEY, an individual, and the COUNTY OF LOS ANGELES, a municipal entity, | **DEFENDANTS JOHN PATRICK FREY AND CHRISTI FREY'S NOTICE OF MOTION AND MOTION TO STRIKE THE SECOND THROUGH SIXTH CAUSES OF ACTION OF THE COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW, CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** |
| Defendants. | |
| | Hearing Date:  December 10, 2012 Time: ___   8:30 a.m. Courtroom:   10 |
| | Complaint Filed:  October 2, 2012 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 10, 2012, at 8:30 a.m. in Courtroom 10 in the United States Courthouse located at 312 N. Spring Street, Los Angeles, California 90012, the Honorable George H. Wu presiding, Defendants John Patrick Frey and Christi Frey ("Defendants") will move pursuant to California Code of Civil Procedure § 425.16 to strike the Second, Third, Fourth, Fifth and Sixth Causes of Action of Plaintiff Nadia Naffe's ("Plaintiff") Complaint on the following grounds:

1. The conduct complained of in the Second through Sixth Causes of Action is protected expression as defined by Code Civ. Proc., § 425.16, subd. (b)(1)); and

2. Plaintiff cannot show a likelihood of prevailing on any of those causes of action based on the facts she pleads and in light of the applicable law, including Defendants' rights under the First Amendment to the United States Constitution.

This Motion is based on this Notice of Motion and attached Memorandum of Points and Authorities, on all judicially noticeable documents, on all pleadings and papers on file in this action, and on other such matters and arguments as may be presented to this Court in connection with this Motion.

This Motion is made following the telephonic conference of counsel which took place on October 26, 2012.

DATED:  November 12, 2012          Respectfully submitted,

GOETZ FITZPATRICK LLP


By   _s/Ronald D. Coleman_
          RONALD D. COLEMAN
          Counsel for Defendants
       JOHN PATRICK FREY AND
          CHRISTI FREY

DEFENDANT'S SPECIAL MOTION TO STRIKE

757581.1

1

2 DATED:  November 12, 2012        Respectfully submitted,

3                                  BROWN WHITE & NEWHOUSE LLP

4

5                                  By  _s/Kenneth P. White_____
                                        KENNETH P. WHITE
6                                      Local Counsel for Defendants
                                     JOHN PATRICK FREY AND
7                                       CHRISTI FREY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SPECIAL MOTION TO STRIKE

757581.1

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................1

II.     SUMMARY OF PLAINTFF'S ALLEGATIONS.....................................2

    A.   Mr. Frey Publishes a Blog in his Personal Capacity ....................2

    B.   Plaintiff Engaged in Public Debate about her Claims Against a Public Figure ............................................................................2

    C.   Mr. Frey Wrote About Plaintiff's Public Comments On The Blog, and Plaintiff Responded Publicly ...........................................3

    D.   Plaintiff Makes Only Conclusory Allegations About Mrs. Frey..................4

    E.   Plaintiff Files Suit .........................................................................5

III.    ARGUMENT ........................................................................................6

    A.   CALIFORNIA'S ANTI-SLAPP LAW PROTECTS DEFENDANTS FROM PLAINTIFF'S CENSORIOUS AND FRIVOLOUS COMPLAINT ..................................................6

    B.   THE CONDUCT CITED IN THE COMPLAINT IS PROTECTED EXPRESSION, TRIGGERING THE ANTI-SLAPP STATUTE ................7

    C.   PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY THAT SHE WILL PREVAIL ON HER STATE LAW CAUSES OF ACTION.....9

        1.   Plaintiff Cannot Prevail Against Mrs. Frey Because She Alleges No Facts About Mrs. Frey ..............................................10

        2.   Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot Succeed Because the Material Posted was Already Public ..............10

        3.   Plaintiff's Defamation Claim Fails Because it Targets Constitutionally Protected Hyperbole and Opinion ........................13

        4.   Plaintiff's Claim of False Light Invasion of Privacy Cannot Succeed Because it is Derivative of Her Defamation Claim...........15

        Therefore Plaintiff cannot demonstrate that she will prevail on her Third Cause of Action for False Light Invasion of Privacy. .....................16

        5.   Plaintiff Cannot Prevail On Her Claim For Intentional Infliction of Emotional Distress .......................................................16

        6.   Plaintiff Cannot Prevail on Her Negligence Claim .......................17

    D.   MR. FREY IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY FEES FOR MAKING A SUCCESSFUL SPECIAL MOTION TO STRIKE ....................................................................20

IV.     CONCLUSION.....................................................................................20

i

757581.1

# TABLE OF AUTHORITIES

Page

**Cases**

*Accord, Long v. U.S. Dept. of Justice,*
450 F.Supp.2d 42 (D.D.C.) ................................................................ 12

*American Civil Liberties Union v. U.S. Dept. of Justice,*
655 F.3d 1, 7 (D.C. Cir. 2011) .......................................................... 11

*American Humane Ass'n v. Los Angeles Times Communications,*
(2001) 92 Cal.App.4th 1095 ............................................................ 20

*Beilenson v. Superior Court,*
44 Cal.App.4th 944 (1996) .............................................................. 14

*Brill Media Co., LLC v. TCW Group, Inc.,*
132 Cal.App.4th 324 (2005) .............................................................. 7

California Civil Code § 1798.85 .................................................... 18, 19

*Cannon v. City of Petaluma,*
2011 WL 3267714 (N.D. Cal. 2011) ................................................ 15

*Chaker v. Mateo,*
209 Cal.App.4th 1138 (2012) .......................................................... 14

*Cooney v. Chicago Public Schools,*
(Ill. App. Ct.) 407 Ill.App.3d 358, *appeal denied,* (Ill. 2011) 949 N.E.2d 65 .................. 12

*Cross v. Cooper,*
197 Cal.App.4th 357 (2011) .............................................................. 8

*Crusader Ins. Co. v. Scottsdale Ins. Co.,*
62 Cal. Rptr. 2d 620 (Cal. Ct. App. 1997) ...................................... 19

*Flores v. Von Kleist,* 739 F.Supp.2d 1236 (2010) .............................. 15

*Gilbert v. Sykes,*
147 Cal.App.4th 13 (2007) ................................................................ 7

*Governor Gray Davis Committee v. American Taxpayers Alliance,*
102 Cal.App.4th 449 (2002) .............................................................. 7

*Hall v. Time Warner, Inc.,*
153 Cal.App.4th 1337 (2007) ............................................................ 8

*Hilton v. Hallmark Cards,*
599 F.3d 894 (9th Cir. 2010) ............................................................. 7

*Hughes v. Pair,*
46 Cal.4th 1035 (2009) .................................................................... 16

DEFENDANT'S SPECIAL MOTION TO STRIKE

757581.1

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*In re Killian*
(Bankr. D.S.C., July 23, 2009, C/A 05-14629-HB) 2009 WL 2927950 ........................... 12

*Information Control v. Genesis One Computer Corp.,*
611 F.2d 781 (9th Cir.1980) ................................................................................. 14

*Kashian v. Harriman,*
98 Cal. App. 4th 892 (2002) ................................................................................... 9

*Lam v. Ngo,*
91 Cal.App.4th 832 (2001) ..................................................................................... 17

*Level 3 Communications, LLC v. Limelight Networks, Inc.,*
611 F.Supp.2d 572 (E.D. Va. 2009) ...................................................................... 13

*Longview Fibre Co. v. Rasmussen,*
980 F.2d 1307 (9th Cir. 1992) ............................................................................... 20

*Martinez v. Metabolife Intern., Inc.* 113 Cal.App.4th 181 (2003).......................... 8

*Massey Coal Services, Inc. v. Victaulic Co. of America,*
249 F.R.D. 477 (S.D.W. Va. 2008)........................................................................ 12

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990)................................................................................................... 13

*Moreno v. Hanford Sentinel, Inc.,*
172 Cal.App.4th 1125 (2009) ................................................................................ 11

*Morningstar, Inc. v. Superior Court,*
23 Cal.App.4th 676 (1994) ..................................................................................... 14

*New Net, Inc. v. Lavasoft,*
356 F.Supp.2d 1090 (C.D.Cal.2004) ....................................................................... 6

*Nicosia v. De Rooy,*
72 F.Supp.2d 1093 (N.D. Cal. 1999)...................................................................... 14

*Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n,*
136 Cal.App.4th 464 (2006) .................................................................................... 7

*Quelimane Co. v. Stewart Title Guaranty Co.,*
19 Cal.4th 26 (1998) .............................................................................................. 18

*Rosenauer v. Scherer,*
88 Cal.App.4th 260 (2001) ..................................................................................... 14

*Rosenfeld v. U.S. Dept. of Justice,*
(N.D. Cal., Mar. 5, 2012, C-07-3240 EMC) 2012 WL 710186 ............................ 11

*Russello v. United States,*
464 U.S. 16 (1983).................................................................................................. 20

iii

# TABLE OF AUTHORITIES

Page

*Satey v. JPMorgan Chase & Co.,*
521 F.3d 1087 (9th Cir. 2008) ........................................................................ 20

*Savaglio v. Wal-Mart Stores, Inc.,*
149 Cal.App.4th 588 (2007) ........................................................................... 13

*Snyder v. Phelps,*
131 S.Ct. 1207 (2011) ..................................................................................... 17

*Spinks v. Equity Residential Briarwood Apartments,*
171 Cal.App.4th 1004 (2009) ......................................................................... 19

*Standing Commission on Discipline v. Yagman,*
55 F.3d 1430 (9th Cir. 1995).......................................................................... 14

*Stewart v. Rolling Stone LLC,*
181 Cal. App. 4th 664 (2010) ........................................................................... 8

*United States v. BestFoods,*
524 U.S. 51 (1998).......................................................................................... 19

*United States v. Cassidy,*
814 F.Supp.2d 574 (D. Md. 2011) ................................................................... 2

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.,*
82 Cal. Rptr. 2d 442 (Cal. Ct. App. 1999) ..................................................... 19

**Statutes**

42 U.S.C. § 1983 ..................................................................................................... 5

Cal.Civ.Proc.Code § 425.16(b)(1) .......................................................................... 6

Code Civ. Proc. § 425.16, subd. (c) ...................................................................... 20

Code Civ. Proc., § 425.16, subd. (b)(1) ............................................................ ii, 7

Code Civ. Proc., § 425.16, subd. (e) ....................................................................... 8

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

DEFENDANT'S SPECIAL MOTION TO STRIKE

757581.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Nadia Naffe has filed a Complaint cynically calculated to punish Defendant John Patrick Frey for his speech on a matter of public interest.  Plaintiff's own Complaint shows that she chose to enter into a public forum on a matter of public interest, deliberately publicizing and arguing her claims of misconduct against a controversial and popular conservative journalist.  When Mr. Frey disagreed with her and criticized her in that online forum, she responded in kind.  But now, rather than rely on the power of speech to persuade, Plaintiff attempts to invoke this Court's power in order to suppress and retaliate against protected speech she doesn't like.  Not only has she sued Mr. Frey for his protected expression, she has sued his wife Christi Frey without articulating a single relevant allegation against her.

In their concurrently filed Motion to Dismiss, Defendants establish that Plaintiff's § 1983 cause of action is vexatious and utterly without merit, relying upon unsupported conclusory claims to assert the ridiculous proposition that Mr. Frey, by writing a political blog in his private capacity, was acting under color of state law.  In this Motion, Defendants establish that the Court should dismiss the remainder of Plaintiff's frivolous claims against them under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  Defendants are entitled to relief under the anti-SLAPP statute because, as demonstrated below, they can easily meet its familiar two-part test:  (1) the Second through Sixth Causes of action attack protected speech–namely, speech regarding a subject of public interest—and (2) Plaintiff cannot possibly prevail on those causes of action.

Therefore, the Court should strike the Second through Sixth Causes of Action and award Defendants their fees and costs under the anti-SLAPP statute.

## II.

## SUMMARY OF PLAINTFF'S ALLEGATIONS[1]

### A.   MR. FREY PUBLISHES A BLOG IN HIS PERSONAL CAPACITY

Mr. Frey and Mrs. Frey, husband and wife, are employed as Deputy District Attorneys for Los Angeles County.  (¶¶ 4-5.)  Mr. Frey also publishes a popular blog[2] called "Patterico's Pontifications" ("the Blog") and maintains a Twitter account[3] under the user name @patterico.  (¶ 23.)  While the fact is self evident, the Blog explicitly informs readers that the statements therein are "personal opinions . . . not made in any official capacity."  (¶ 38.)  Indeed, Plaintiff does not allege that Mr. Frey identifies himself by his position, or even by name, on the Blog.

### B.   PLAINTIFF ENGAGED IN PUBLIC DEBATE ABOUT HER CLAIMS AGAINST A PUBLIC FIGURE

Plaintiff is a former friend and colleague of James O'Keefe, a conservative activist specializing in undercover "sting" videos.  Plaintiff alleges that Mr. and Mrs. Frey are among the friends and admirers of her ex-friend.  Mr. O'Keefe is vilified by "mainstream press" and political activists who do not share his viewpoints, but admired by others, particularly among conservatives. (¶¶ 12, 18.)

---

[1] All references to paragraph numbers herein are to the Complaint.

[2] *United States v. Cassidy*, 814 F.Supp.2d 574, 576 (D. Md. 2011) defined a "blog" as follows:

A "Blog" is a shorthand term for a "web log," i.e. a log or web page maintained on the World Wide Web.  A Blog is like a bulletin board and contains whatever material its sponsor decides to post. It does not send messages, and there is no limitation on the length of statements that may be contained on a Blog.  Like a bulletin board, it does not communicate except to those who voluntarily choose to read what is posted on it.

[3] The *Cassidy* Court explained:

"Twitter" is a "real-time information network that connects" users to the "latest information about what you find interesting. . . . At the heart of Twitter are small bursts of information called Tweets. Each Tweet is 140 characters in length. . . ."  Twitter users may choose to "follow" other users. If user No. 1 decides to "follow" user No. 2, Twitter messages (Tweets) posted by user No. 2 will show up on the home page of user No. 1 where they can be read. 814 F.Supp.2d at 576.

DEFENDANT'S SPECIAL MOTION TO STRIKE

757581.1

Plaintiff explains her estrangement from Mr. O'Keefe by alleging that, in the Fall of 2011, he drugged her and attempted to sexually assault her after she rejected his romantic overtures. She describes these alleged events as the "Barn Incident." (¶ 15.)  Plaintiff further asserts that Mr. O'Keefe posted a "harassing, degrading, public video" about her on YouTube, and that she responded by filing a criminal harassment complaint against Mr. O'Keefe, which was ultimately dismissed for lack of jurisdiction.  (¶ 16.)  In February 2012, the late conservative media figure Andrew Breitbart spoke with a reporter about the Barn Incident.  While not explaining how this conversation came to her attention, plaintiff took to her personal blog and Twitter to "publicly challenge[]" what she characterizes as Breitbart's "misconceptions" concerning the Barn Incident.  (¶ 17.)

## C.   MR. FREY WROTE ABOUT PLAINTIFF'S PUBLIC COMMENTS ON THE BLOG, AND PLAINTIFF RESPONDED PUBLICLY

Mr. Frey used his "Patterico" persona to write about the controversy involving Mr. O'Keefe, Plaintiff, and the Barn Incident on the Blog.  (¶ 24.)  In particular, Plaintiff alleges:

- That Mr. Frey posted eight separate articles about her on the Blog and participated in comment threads (*Id.*)

- That Mr. Frey posted several dozen "threatening, harassing, and defamatory statements" concerning Plaintiff on his Twitter account describing her as "a liar, illiterate, callous, self-absorbed, despicable, a smear artist, and absurd" (*Id.*);

- That in his Twitter posts Mr. Frey asked the rhetorical question "why did PLAINTIFF not call a cab to escape the barn during the Barn Incident," and claimed that he was "poking holes" in plaintiff's criminal complaint against Mr. O'Keefe (*Id.*);

- That Mr. Frey published portions of the transcript of a hearing on Plaintiff's criminal harassment suit "in a manner that was deliberately out-of-context" (¶ 26.)

- • That Mr. Frey criticized a journalist for failing to vet Plaintiff before publishing an article about the Barn Incident and her subsequent lawsuit, and made a list of questions the journalist should have asked (¶ 27);

- • That by publishing the 29 questions on the Blog that he believed the journalist should have asked plaintiff, Mr. Frey intended "to provide O'KEEFE with legal ammunition to fight PLAINTIFF's criminal harassment lawsuit, and so constituted the giving of legal advice" (*Id.*).

Plaintiff responded by posting a series of articles on her own blog about the Barn Incident as well as about her claim that Mr. O'Keefe had "wire tapped" the offices of U.S. Representative Maxine Waters.  (¶ 28.)  Mr. Frey, in turn, published to the Blog public documents allegedly related to a civil suit that Mr. O'Keefe had filed against Plaintiff.  (¶ 29.)  In response, Plaintiff threatened on Twitter that she would "report" this conduct by Mr. Frey to the District Attorney's Office and the California State Bar.  (*Id.* at ¶ 30.)  Mr. Frey then published over 200 pages of a 2005 deposition transcript from a civil suit between Plaintiff and her former employer that had been publicly filed on PACER.  (¶¶ 31, 69.)  The deposition transcript included Plaintiff's Social Security number, date of birth, maiden name, family address, and personal medical information.  (¶ 31.)  Mr. Frey later removed the transcript from the Blog, though Plaintiff asserts that the transcript remained available in an "Internet web cache" for weeks or months thereafter.  (¶ 33.)  Plaintiff claims that she received alerts from a credit agency that "people had made changes to her credit report" and that "individuals are fraudulently using her Social Security number."  (¶ 34.)

## D.   PLAINTIFF MAKES ONLY CONCLUSORY ALLEGATIONS ABOUT MRS. FREY

Plaintiff asserts that Mr. Frey published the complained-of items to the Blog in order to "intimidate her into not handing over evidence to the County regarding MR. FREY's personal friend Mr. O'KEEFE's wiretapping of Congresswoman Waters" and to "protect the reputation of his personal friends, Mr. O'KEEFE and Mr. Breitbart."

4

757581.1

BROWN, WHITE & NEWHOUSE
A T T O R N E Y S

(¶ 36.)  As to defendant Christi Frey, Plaintiff alleges no facts to justify naming her in this action, alleging merely that, like her husband, she is a Deputy District Attorney (¶ 5) and that "upon information and belief" she is an admirer of Mr. O'Keefe.  (¶ 12.) Plaintiff leaps from these irrelevant allegations, one solely speculative, to the unsupportable conclusion that Mrs. Frey "was an active participant and contributor to the defamatory and harassing activity" (¶ 36) and that she and Mr. Frey "formed a conspiracy to work together in engaging in the wrongful conduct directed towards PLAINTIFF."  (¶ 10.)

E.   **PLAINTIFF FILES SUIT**

Plaintiff sued Mr. Frey, Mrs. Frey, the County, and Mr. Cooley in this action. Her first six causes of action are against all parties and all but the first are the subject of this Motion; in her First Cause of Action, Plaintiff asserts that Mr. and Mrs. Frey violated her civil rights in violation of 42 U.S.C. § 1983, the subject of Defendants' concurrently filed Motion to Dismiss and not at issue in this Motion.  Plaintiff's Seventh Cause of Action is not at issue in this Motion; it is against Mr. Cooley and the County for negligent supervision.

The Second Cause of Action asserts a claim for "Public Disclosure Invasion of Privacy" based on Mr. Frey's republication of the deposition transcript originally published on PACER in Plaintiff's lawsuit with her former employer.  (¶ 50.)

The Third Cause of Action asserts a claim for "False Light Invasion of Privacy" for "painting PLAINTIFF as a liar, as dishonest, as self-absorbed, and by relentlessly asking everyone who would listen why PLAINTIFF failed to call a cab during the barn incident." (¶ 55.)

Plaintiff's Fourth Cause of Action asserts a claim for defamation based on the following specific statements:  that Plaintiff is a "liar whose lies will be exposed," and that Plaintiff "is full of false allegations."  (¶ 60.)

The Fifth Cause of Action asserts a claim for intentional infliction of emotional distress based on Mr. Frey's expression on the Blog and Twitter.  (¶ 65.)

1   The Sixth Cause of Action asserts a claim for negligence based on Mr. Frey's

2   republication of Plaintiff's already-published deposition transcript with her Social

3   Security number. (*Id.* at ¶ 69.)

4   ### III.

5   ### ARGUMENT

6   This Court should strike Plaintiff's Second through Sixth Causes of Action under

7   California's anti-SLAPP statute because they complain of conduct arising from

8   protected expression and because Plaintiff is unlikely to prevail on them.

9   **A.   CALIFORNIA'S ANTI-SLAPP LAW PROTECTS DEFENDANTS**

10  **FROM PLAINTIFF'S CENSORIOUS AND FRIVOLOUS COMPLAINT**

11  In *Price v. Stossel*, 620 F.3d 992 (2010), the Ninth Circuit explained the policy

12  and legal principles underlying the anti-SLAPP law of this State, as well as its

13  application in the federal courts with respect to state-law claims:

14  > California's anti-SLAPP statute permits courts at an early stage to dismiss
    meritless defamation cases aimed at chilling expression through costly, time-

15  > consuming litigation.  The statute was passed in 1993 in response to the
    legislature's concern that strategic defamation lawsuits were deterring citizens

16  > from exercising their political and legal rights.  We have repeatedly held that
    California's anti-SLAPP statute can be invoked by defendants who are in

17  > federal court on the basis of diversity jurisdiction.  The hallmark of a SLAPP

18  > suit is that it lacks merit, and [that it] is brought with the goals of obtaining an
    economic advantage over a citizen party by increasing the cost of litigation to

19  > the point that the citizen party's case will be weakened or abandoned. The anti-

20  > SLAPP statute attempts to counteract the chilling effect of strategic suits by
    providing that such suits should be dismissed under a special "motion to

21  > strike." Cal.Civ.Proc.Code § 425.16(b)(1).

22

23  620 F.3d at 999 (internal quotations and citations omitted).  *See also New Net, Inc. v.*

24  *Lavasoft,* 356 F.Supp.2d 1090, 1099 (C.D.Cal.2004) (in federal question case, anti-

25  SLAPP motion properly directed only to pendant state law claims).

26  Under California law and federal cases construing it, this Court undertakes a

27  two-step analysis when considering Mr. Frey's anti-SLAPP motion.  First, Mr. Frey

28  has the burden of making a prima facie showing that the state-law causes of action are

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

6

premised on protected expression as defined by the anti-SLAPP statute.  Code Civ. Proc., § 425.16, subd. (b)(1)); *see also*, *Governor Gray Davis Committee v. American Taxpayers Alliance*, 102 Cal.App.4th 449, 458-59 (2002); *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (applying the two-step analysis to anti-SLAPP motion brought in federal court). The Court makes that determination upon consideration of the pleadings, declarations and, if appropriate, matters that may be judicially noticed.  *Brill Media Co., LLC v. TCW Group*, *Inc*., 132 Cal.App.4th 324, 329 (2005).

If Mr. Frey makes this showing—which, as set out below, he can do readily—the burden shifts to Plaintiff to show that even though the expression is prima facie protected expression, she nonetheless is more likely than not to prevail on her claims based on both the applicable law and "a sufficient prima facie showing of facts." *Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n* 136 Cal.App.4th 464, 476 (2006); Code Civ. Proc., § 425.16, subd. (b)(1)).  Plaintiff must carry this burden with "competent and admissible evidence."  *Price v. Stossel*, 590 F.Supp.2d 1262, 1266 (C.D. Cal. 2008). "The plaintiff's burden resembles the burden he would have in fending off a motion for summary judgment or directed verdict."  *Gilbert v. Sykes,* 147 Cal.App.4th 13, 53 (2007).  In the highly likely event that Plaintiff's subsequent submissions fail to meet this burden, the Court must strike the Complaint and award Mr. Frey attorneys' fees and costs.

**B.**  **THE CONDUCT CITED IN THE COMPLAINT IS PROTECTED EXPRESSION, TRIGGERING THE ANTI-SLAPP STATUTE**

Defendants easily satisfy the first prong of the anti-SLAPP test based on the face of the Complaint.  The California Code of Civil Procedure defines the conduct protected under the anti-SLAPP law as follows:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any

BROWN, WHITE & NEWHOUSE™
A T T O R N E Y S

757581.1

other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Code Civ. Proc., § 425.16, subd. (e).  It does not matter what guise or cause of action Plaintiff uses to attack the protected expression: if the factual conduct described in the Complaint falls into one of these categories, it triggers the anti-SLAPP statute. *Martinez v. Metabolife Intern., Inc*. 113 Cal.App.4th 181, 187 (2003) ("a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a 'garden variety breach of contract [or] fraud claim' when in fact the liability claim is based on protected speech or conduct.")

In fact, the conduct described in the Complaint is on its face protected as speech made "in connection with a public issue or an issue of public interest" which triggers the anti-SLAPP statute because the legal claims against Mr. Frey (and, to the extent she is named in conclusory fashion as a conspirator, Mrs. Frey) are explicitly based entirely on his commentary on a matter of public interest within the meaning of § 425.16, subdivisions (e)(3) and (e)(4).  "A statement or other conduct is made 'in connection with a public issue or an issue of public interest' . . . 'if the statement or conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic.'"  *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010), *as modified on denial of reh'g* (Feb. 24, 2010), *quoting, Hall v. Time Warner, Inc.* 153 Cal.App.4th 1337 (2007).  "[A]n issue of public interest' . . . is any issue in which the public is interested."  *Cross v. Cooper*, 197 Cal.App.4th 357, 372-73 (2011) (citations and internal quotations omitted).

In light of this broad standard, plaintiff cannot plausibly dispute that the subject matter of the publications at issue is a matter of public interest or a public issue. Indeed, she herself has consistently *treated it as a matter of public interest*.  Plaintiff admits that she broadcasted, via Twitter, her views about the facts concerning the

Barn Incident after learning that a world-famous journalist, Andrew Breitbart, had—in a private conversation with another reporter—"mischaracterized" those facts, and that she did so to "publicly challenge[]" "misconceptions" by the late Mr. Breitbart.  (¶ 17.)  Similarly, Plaintiff admits in her allegations that she immediately broadcast on Twitter her objections to and threats regarding Mr. Frey's posting on the Blog of the publicly-available documents relating to the civil suit Mr. O'Keefe had filed against her (¶¶ 29, 30), drawing more public attention to them.

Moreover, Plaintiff's description of the events proves beyond cavil that they are matters of public interest.  Plaintiff acknowledges that Mr. O'Keefe is a renowned conservative "activist" known for his video exposés on political matters.  (¶ 11.)  She also describes him as "a popular member of the conservative community who has been vilified by the mainstream press." (¶ 12.)  And much of the Complaint centers on Mr. Frey's responses to another journalist's article about Plaintiff and the Barn Incident.  (¶ 27.)  Here, therefore, we have (a) an accusation of attempted rape, (b) made in court filings against (c) a controversial public figure, accusations which (d) have already been the subject of media coverage.  Any one of these components *alone* qualifies this subject matter as one of public interest—as do questions of veracity concerning the accuser, which were the main topic of Mr. Frey's posting.  *See*, e.g., *Kashian v. Harriman*, 98 Cal. App. 4th 892, 910 (2002) (anti-SLAPP statute applies to commentary concerning legality of subject's litigation activities where they are "a matter of considerable dispute").

Thus by her own allegations Plaintiff has made, in the Complaint, an irrefutable case for the proposition that Mr. Frey's comments concern a "statement or other conduct . . . made 'in connection with a public issue or an issue of public interest.'"

## C.   PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY THAT SHE WILL PREVAIL ON HER STATE LAW CAUSES OF ACTION

Because the state-law causes of action in the Complaint (as well as the specious § 1983 claim) arise out of Mr. Frey's protected speech and trigger the anti-SLAPP

9

757581.1

1    statute,  under the second part of the two-part test Plaintiff must demonstrate a

2    probability that she will prevail on the merits of those claims.  *Premier Med. Mgmt.*

3    *Systems, supra,* 136 Cal.App.4th at p. 476.  She cannot do so, for the reasons set out

4    below.  Therefore, the Court must strike the Complaint and award attorney fees to Mr.

5    and Mrs. Frey.

6         **1.**    **Plaintiff Cannot Prevail Against Mrs. Frey Because She Alleges No**

7               **Facts About Mrs. Frey**

8         As a preliminary matter, Plaintiff cannot prevail on *any* claim against Mrs.

9    Frey, because Plaintiff fails even to allege pertinent facts about her.  Plaintiff's *factual*

10   allegations against Mrs. Frey consist solely of allegations that (1) she is a Deputy

11   District Attorney and (2) speculation, on information and belief, that she is an

12   "admirer" of the video journalist Mr. O'Keefe.  (¶¶ 5, 12.)  Beyond this the Complaint

13   offers what amount to two *conclusions of law* against Mrs. Frey—that Mrs. Frey "was

14   an active participant and contributor to the defamatory and harassing activity" (at ¶

15   36) and that she and Mr. Frey "formed a conspiracy to work together in engaging in

16   the wrongful conduct directed towards PLAINTIFF."  (¶ 10.)  Plaintiff is otherwise,

17   and in substance, silent about the purported basis of Mrs. Frey's liability.  It is

18   axiomatic that Plaintiff will not be able to offer "competent and admissible evidence,"

19   *Price*, 590 F.Supp.2d at 1266, supporting a claim against Mrs. Frey for *anything.*

20        **2.**    **Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot**

21              **Succeed Because the Material Posted was Already Public**

22        Plaintiff's Second Cause of Action claims invasion of privacy based on Mr.

23   Frey's publication of a deposition transcript in a civil suit between Plaintiff and her

24   former employer that had been filed on PACER.  (¶¶ 31, 69.)  As it appeared on

25   PACER, that transcript included Plaintiff's Social Security number, date of birth,

26   maiden name, family address, and personal medical information.  (¶ 31.)

27        These allegations cannot support a claim for the tort of public disclosure

28   invasion of privacy for two fundamental reasons.  First, as is established above, the

BROWN, WHITE & NEWHOUSE
ATTORNEYS

information published by Mr. Frey concerns a matter of public interest, which itself diminishes the privacy expectation of the plaintiff. "[P]ersons who have placed themselves in the public light, e.g., through politics, or voluntarily participate in the public arena have a significantly diminished privacy interest than others." *Rosenfeld v. U.S. Dept. of Justice* (N.D. Cal., Mar. 5, 2012, C-07-3240 EMC) 2012 WL 710186. Second, Plaintiff's own allegations establish that the facts disclosed were not private at all when Mr. Frey published them, because the documents themselves, including the Social Security number and other information, had already been published on PACER. Therefore they were publicly available for years before they were published on the Blog, and Plaintiff did nothing about it.

The elements of the tort of a public disclosure of private facts are "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern. The absence of any one of these elements is a complete bar to liability. . . [A] crucial ingredient of the applicable invasion of privacy cause of action is a public disclosure of *private facts*. A matter that is already public or that has previously become part of the public domain is not private." *Moreno v. Hanford Sentinel, Inc.* 172 Cal.App.4th 1125, 1129-30 (2009) (emphasis in original; internal citations and quotations omitted).

As set out below, courts have taken a skeptical view of claims that privacy rights are violated by the publication of material already available to the public on PACER, "'an electronic public access service that allows users to obtain case and docket information from [all] federal appellate, district and bankruptcy courts.'" *American Civil Liberties Union v. U.S. Dept. of Justice* 655 F.3d 1, 7 (D.C. Cir. 2011) ("*ACLU v. DOJ*"). The federal courts' ECF/PACER system is not where someone interested in keeping information private places that information, or allows it to remain. Anyone can register for PACER access, and the technical resources for utilizing it are ubiquitous. *In re Killian* (Bankr. D.S.C., July 23, 2009, C/A 05-14629-HB) 2009 WL 2927950. By virtue of this ready public access, once information is

DEFENDANT'S SPECIAL MOTION TO STRIKE

published on PACER it cannot be regarded as private.  As the District of Columbia Circuit Court of Appeals explained in *ACLU v. DOJ*, looking up case information on PACER is "readily accomplished," continuing as follows:

> The fact that information about these proceedings is readily available to the public reduces further still the incursion on privacy resulting from disclosure. . . .
>
> [There is no] web of statutory or regulatory policies obscuring [such] information, nor much expense nor logistical difficulty in gathering it. To the contrary, computerized government services like PACER make it possible to access court filings concerning any federal [litigant] from the comfort of one's home or office, quite unlike the "diligent search of courthouse files, county archives, and local police stations throughout the country" that a citizen would [formerly] have had to undertake to replicate the contents of [court records] . . .

655 F.3d at 7-9 (footnotes omitted).  *Accord*, *Long v. U.S. Dept. of Justice* 450 F.Supp.2d 42, 68 (D.D.C.), *order amended on reconsideration*, 457 F.Supp.2d 30 (D.D.C.), *amended*, 479 F.Supp.2d 23(D.D.C. 2007).  Thus, for example, a trade secrets claim, which like invasion of privacy requires that the information published by the defendant was truly private when published, was found to have been vitiated where the documents in question had been on PACER for even three weeks prior to the date of the decision.  *Massey Coal Services, Inc. v. Victaulic Co. of America* , 249 F.R.D. 477, 484 (S.D.W. Va. 2008) (interested party had not acted to seal the materials).  *See also*, *Cooney v. Chicago Public Schools* (Ill. App. Ct.) 407 Ill.App.3d 358, 367, *appeal denied,* (Ill. 2011) 949 N.E.2d 657 ("personal" and "private" information not synonymous; denying privacy invasion claim based on disclosure of Social Security numbers).

Moreover, the courts take a dim view of any attempt to deem material that is part of court proceedings as confidential or private, however they were accessed. "The public has a First Amendment right of access to civil litigation documents filed in court and used at trial or submitted as a basis for adjudication.  Substantive courtroom proceedings in ordinary civil cases, and the transcripts and records pertaining to these proceedings, are presumptively open." *Savaglio v. Wal-Mart*

12

757581.1

1    *Stores, Inc.,* 149 Cal.App.4th 588, 596-97 (2007) (citations and internal quotations

2    omitted).  "It is a 'well-established principle of American jurisprudence that the

3    release of information in open trial is a publication of that information and, if no effort

4    is made to limit its disclosure, operates as a waiver of any rights a party had to restrict

5    its further use.'" *Level 3 Communications, LLC v. Limelight Networks, Inc.,* 611

6    F.Supp.2d 572, 583 (E.D. Va. 2009).

7          For these reasons, Plaintiff cannot prevail on her claim for invasion of her

8    privacy due to the publication of PACER documents by Mr. Frey on the Blog.

9          **3.     Plaintiff's Defamation Claim Fails Because it Targets**

10                  **Constitutionally Protected Hyperbole and Opinion**

11         Plaintiff cannot prevail on her Fourth Cause of Action for Defamation because

12   it targets expression that is classic political hyperbole and opinion that is absolutely

13   privileged under the First Amendment and not subject to defamation analysis.[4]

14   In the course of arguing with plaintiff on Twitter about her public claims against Mr.

15   O'Keefe, Mr. Frey is alleged to have written that she is a "liar whose lies will be

16   exposed," and that Plaintiff "is full of false allegations."  (¶ 60.)  These statements, in

17   the context the Complaint describes, cannot be defamatory because the First

18   Amendment provides absolute protection to statements that cannot "reasonably [be]

19   interpreted as stating actual facts" but instead amount to "imaginative expression" or

20   "rhetorical hyperbole."  *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990).

21   Under this doctrine, courts have repeatedly rejected defamation claims leveled against

22   accusations of dishonesty or other misbehavior whose context shows them to be part

23   of a vivid debate and not intended as literal assertions of fact.

24

25   ---

26   [4] Truth, of course, is a complete defense to a defamation claim "regardless of bad faith or malicious purpose" and "irrespective of slight inaccuracy in the details," <u>Harrell v. George</u> (E.D. Cal., Aug. 22, 2012, CIV S-11-0253 MCE) 2012 WL 3647941.  Evaluation of the two sides' claims and facts in the Complaint and in the documents referred to therein readily

27   demonstrate that on the existing record Mr. Frey's comments regarding plaintiff's veracity should be, as a matter of law, be found literally truthful.  However, the Court need not reach

28   that defense in evaluating this Motion, as the Complaint fails for other reasons as well.

BROWN, WHITE & NEWHOUSE[LLP]
ATTORNEYS

Thus, for example, in *Rosenauer v. Scherer,* 88 Cal.App.4th 260, 280 (2001), an anti-SLAPP order was upheld where the defendant called plaintiff a "thief" and "liar" in "the midst of a heated confrontation over a political issue," because, as the court explained, the language was "the type of loose, figurative, or hyperbolic language that is constitutionally protected." Similarly, in *Standing Commission on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995), the term "dishonest" was held protected opinion, because it was "used to convey the low esteem" in which the defendant lawyer held a judge, not as a literal allegation of dishonesty. *See also*, *Morningstar, Inc. v. Superior Court*, 23 Cal.App.4th 676, 691 (1994) (titling article "Lies, Damn Lies, and Fund Advertisements" not actionable as libel because it "cannot reasonably be read to imply a provably false factual assertion").

Such invective is especially unlikely to be taken as literally true statements of fact in three contexts all present here: Political disputes, legal disputes, and Internet debates. *See*, *Beilenson v. Superior Court*, 44 Cal.App.4th 944, 950 (1996) (campaign mailer charging politician with "ripp[ing] off" taxpayers "when taken in context with the other information contained in the mailer [is] rhetorical hyperbole common in political debate" and not defamatory); *Information Control v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.1980) (in context of legal dispute, "language which generally might be considered as statements of fact may well assume the character of statements of opinion."); *Chaker v. Mateo*, 209 Cal.App.4th 1138 (2012) (affirming anti-SLAPP order where online insults were properly understood as opinion; surveying California cases establishing that online expression more likely to be taken as opinion than fact); *Nicosia v. De Rooy*, 72 F.Supp.2d 1093 (N.D. Cal. 1999) (granting anti-SLAPP motion and motion to dismiss where "readers are less likely to view statements as assertions of fact" in context of web site's claims of misconduct).

Mr. Frey's alleged characterization of Plaintiff as a "liar whose lies will be exposed" and "full of false allegations" (¶ 60) came in the context of an ongoing online dispute between them over Plaintiff's contentious litigation against a high-

DEFENDANT'S SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE LLP
ATTORNEYS

757581.1

1  profile and controversial political figure, Mr. O'Keefe.  Moreover, the two statements

2  were, according to the Complaint, published on Twitter, a medium limited to 140-

3  character utterances which necessarily constrains precision.  Under these

4  circumstances Mr. Frey's comments cannot possibly be interpreted as provably false

5  statements of fact rather than figurative, hyperbolic language.  Therefore, Plaintiff

6  cannot prevail on her defamation claim against Defendants.

7        **4.**     **Plaintiff's Claim of False Light Invasion of Privacy Cannot Succeed**

8               **Because it is Derivative of Her Defamation Claim**

9        Plaintiff cannot prevail on her Third Cause of Action for False Light Invasion

10  of Privacy because this claim is derivative of, and duplicative of, her meritless

11  defamation claim.  To prove a claim for false light invasion of privacy, Plaintiff must

12  show that "(1) the defendant caused to be generated publicity of the plaintiff that was

13  false or misleading, (2) the publicity was offensive to a reasonable person, and (3) the

14  defendant acted with actual malice."  *Flores v. Von Kleist*, 739 F.Supp.2d 1236, 1259

15  (2010).  When, however a false-light invasion of privacy claim "is in substance

16  equivalent to an accompanying defamation claim, the false-light claim should be

17  dismissed as superfluous."  *Cannon v. City of Petaluma,* 2011 WL 3267714, *3 (N.D.

18  Cal. 2011).  Moreover, if the underlying defamation claim fails, the accompanying

19  false light invasion of privacy claim fails with it.  *Flores*, 739 F.Supp.2d at 1259 (false

20  light claim failed with defamation claim absent proof of a defamatory statement);

21  *Cannon,* 2011 WL 3267714, *3 (false light claim failed with defamation claim when

22  complained-of statement was true).

23        Here, Plaintiff's false light claim fails for multiple reasons.  First, it is

24  equivalent to the accompanying defamation claim, and therefore superfluous.  Second,

25  just as Plaintiff cannot prove defamation because she cannot prove that Mr. Frey made

26  provably false statements of fact, she cannot prove false light defamation because she

27  cannot prove false or misleading publicity.  As discussed above, Mr. Frey's statements

28  about Plaintiff being a "liar" or "dishonest" were hyperbole and argument, not false

15

757581.1

1   statements.  Plaintiff also complains that Mr. Frey called her "self-absorbed"—rather

2   ironic in the context of this federal lawsuit— an obvious statement of opinion.

3   Similarly, the allegations that Mr. Frey "relentlessly ask[ed] everyone who would

4   listen why PLAINTIFF failed to call a cab during the barn incident" could not amount

5   to a false statement of fact absent an allegation, not present here, that Plaintiff *did* call

6   a cab.

7        Therefore Plaintiff cannot demonstrate that she will prevail on her Third Cause

8   of Action for False Light Invasion of Privacy.

9        **5.**     **Plaintiff Cannot Prevail On Her Claim For Intentional Infliction of**

10                  **Emotional Distress**

11       Nor can Plaintiff prevail on her Fifth Cause of Action for Intentional Infliction

12  of Emotional Distress.  To do so she would have to prove "(1) extreme and outrageous

13  conduct by the defendant with the intention of causing, or reckless disregard of the

14  probability of causing, emotional distress; (2) the plaintiff's suffering severe or

15  extreme emotional distress; and (3) actual and proximate causation of the emotional

16  distress by the defendant's outrageous conduct," and that the conduct was so "extreme

17  as to exceed all bounds of that usually tolerated in a civilized community."  *Hughes v.*

18  *Pair,* 46 Cal.4th 1035, 1050–51 (2009).  No facts exist, nor are they pleaded here,

19  sufficient to satisfy these elements.

20       First, Plaintiff cannot prevail because the conduct she complains of is not, as a

21  matter of law, extreme or outrageous as a matter of law.  "Liability for intentional

22  infliction of emotional distress does not extend to mere insults, indignities, threats,

23  annoyances, petty oppressions, or other trivialities."  *Id.* at 1051.  Here, Plaintiff chose

24  to enter a politically charged arena online and publicly advocate her version of events

25  that were the subject of litigation she brought against a controversial public figure.

26  Under such circumstances she cannot possibly establish that Mr. Frey's online

27  expression questioning her honesty and even insulting her constitutes outrageous

28

1  conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized

2  community."

3      Second, Plaintiff cannot prevail because the conduct she complains of is debate

4  on a subject of public interest protected by the First Amendment, as discussed above,

5  and hence exempt from attack as infliction of emotional distress. In *Snyder v. Phelps*,

6  131 S.Ct. 1207 (2011), the United States Supreme Court struck down an intentional

7  infliction of emotional distress judgment against defendants whose conduct was

8  unimaginably more outrageous than the comments by Mr. Frey about the Plaintiff:

9  protestors who waved vile and abusive signs outside the funeral of a soldier killed in

10  action.  The Court ruled that as obnoxious as this conduct was, a claim for intentional

11  infliction of emotional distress premised on "outrageous" speech cannot stand when

12  that speech was directed at a matter of public concern, which is entitled to "special

13  protection" under the First Amendment.  "In public debate [we] must tolerate

14  insulting, and even outrageous, speech in order to provide adequate breathing space to

15  the freedoms protected by the First Amendment."  *Id.* at 1219.  *See also Lam v. Ngo*,

16  91 Cal.App.4th 832, 849 (2001) (affirming order granting anti-SLAPP order as to

17  intentional infliction of emotional distress claim, finding that political signs calling

18  plaintiff a communist were protected by First Amendment).

19      Therefore, Plaintiff cannot possibly prevail on her Fifth Cause of Action for

20  Intentional Infliction of Emotional Distress.

21      **6.    Plaintiff Cannot Prevail on Her Negligence Claim**

22      Plaintiff's negligence claim, a discombobulated hybrid of would-be contract,

23  privacy and tort law, is incoherent and ultimately must fail because it is premised on

24  Mr. Frey's non-existent "affirmative duty to redact" the information posted by him on

25  the Blog.

26      This claim purports to stand on three sources of duty:  Mr. Frey's "contractual

27  relationship with PACER shown by its terms of use"; California Civil Code §

28  1798.85, which provides, in relevant part, that "a person or entity may not . . .  (1)

17

DEFENDANT'S SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE LLP
A T T O R N E Y S

1   Publicly post or publicly display in any manner an individual's social security

2   number"; and the common law.  None of these claims has any basis in law – none

3   suffices to support the bizarre proposition that Mr. Frey had a personal duty to review

4   and redact a *public document taken from PACER* before posting it to his blog.

5        Plaintiff's colorful suggestion that "Mr. Frey's "contractual relationship with

6   PACER shown by its terms of use" could give rise to a claim by her against Mr. Frey

7   is legally groundless.  As an initial matter, PACER is, as discussed above, "an

8   electronic public access *service*," not a party with whom one can enter into a contract.

9   Indeed, the Complaint itself does not allege that Mr. Frey himself has personally used

10  PACER to obtain documents posted there.  Secondly, plaintiff neglects to specify

11  what she means by the "terms of use" of PACER, which does not have "terms of use"

12  but does have "Policies and Procedures," found at http://www.pacer.gov/

13  documents/pacer_policy.pdf, a document which is silent as to any matter that could

14  possibly either extend a duty running from Mr. Frey to plaintiff by virtue of his

15  downloading of PACER materials.  Indeed, the PACER Policies and Procedures

16  contain no reference to anything that could conceivably relate to her claims, as does

17  the PACER "Frequently Asked Questions" page found at http://www.pacer.gov/

18  psc/faq.html.   Even assuming, contrary to fact, the existence of some sort of

19  contractual relationship here, a contract between two parties almost never gives rise to

20  a negligence claim by a third.  "Recognition of a duty to manage business affairs so as

21  to prevent purely economic loss to third parties in their financial transactions is the

22  exception, not the rule, in negligence law." *Quelimane Co. v. Stewart Title Guaranty*

23  *Co.,* 19 Cal.4th 26, 58 (1998) (setting out factors required to demonstrate such a duty

24  in exceptional cases).  *Id.*  Similarly, when evaluating a claim in the guise of an

25  incidental third-party beneficiary of a contract, the determination of such a status

26  "turns on the manifestation of intent to confer a benefit on the third party," which is

27  ascertained as "question of ordinary contract interpretation." *Spinks v. Equity*

28  *Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1023 (2009).  Neither

18

DEFENDANT'S SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

allegations nor proof regarding such matters will avail Plaintiff here. Absent the text of any possible relevant contract, however, such interpretation here would be impossible.  Indeed, even in an imaginary world in which a contract between Mr. Frey and "Mr. PACER" did exist, Plaintiff could not demonstrate entitlement to relief under a novel extension of this theory due solely to the remoteness of proximate cause of any damages due to her longstanding acquiescence to the availability of her information on PACER.  For these reasons, no duty of redaction, whether based on the common law or an imagined "contractual relationship" involving PACER, flows from Mr. Frey to Plaintiff.

Regarding Plaintiff's reliance on California Civil Code § 1798.85, there is no authority for the proposition that this statute provides for a right of private action for its violation.  A statute creates a private right of action only if the statutory language or legislative history affirmatively indicates legislative intent to do so. *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 82 Cal. Rptr. 2d 442, 446-447 (Cal. Ct. App. 1999); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 62 Cal. Rptr. 2d 620, 626-627 (Cal. Ct. App. 1997).  Absent such an indication, "a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader*, 62 Cal. Rptr. 2d at 627.  This statute indicates no such intent, which is no mere error of omission:  The California Legislature considered creating a private cause of action for violation of the statute but chose not to do so. *See* Assembly Comm. Hearing, S.B. 168, at 4-5 (Cal. June 18, 2001).  In contrast to a situation where the legislative history is silent on a matter, where it indicates a decided legislative choice not to provide such a right, such a choice is powerful evidence that the law does not create one. *See United States v. BestFoods*, 524 U.S. 51, 64 (1998) (failure of a statute to speak to a fundamental subject suggests no such meaning was intended).

This interpretation is all the more compelling in light of the fact that § 1798.85 was enacted as part of an omnibus anti-identity theft initiative, and, in a companion provision enacted at the same time, the Legislature created an express private right of

DEFENDANT'S SPECIAL MOTION TO STRIKE

action in a companion provision, California Civil Code § 1798.93. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087 (9th Cir. 2008). No similar provision exists in Section 1798.85, leading to the conclusion that the Legislature had no intent in providing one. *See*, *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).

For all these reasons, Plaintiff's Sixth Cause of Action should be dismissed.

**D.**   **MR. FREY IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY FEES FOR MAKING A SUCCESSFUL SPECIAL MOTION TO STRIKE**

A "prevailing defendant" on the motion to strike "shall be *entitled*" to recover attorney fees and costs. (Code Civ. Proc. § 425.16, subd. (c), emphasis in original.) The fee award is mandatory: "(A)ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." There are three alternative procedures by which a successful party may obtain a fee award: (1) the party may request fees in the motion; (2) the party may make a noticed motion for fees after the ruling on the anti-SLAPP motion; or (3) the party may include the fee request in the cost bill after entry of judgment. (*American Humane Ass'n v. Los Angeles Times Communications,* (2001) 92 Cal.App.4th 1095, 1103.) Mr. Frey will file a separate motion requesting attorneys' fees if the Court grants his Motion.

**IV.**

**CONCLUSION**

Plaintiff's Complaint falls squarely within the ambit of the anti-SLAPP statute. The complained-of expression is protected, and Plaintiff cannot prevail on her claims. Therefore the Court should strike, without leave to amend, the Second through Sixth Causes of Action.

1   DATED:  November 12, 2012          Respectfully submitted,

2                                      GOETZ FITZPATRICK LLP LLP

3

4                                      By   _s/Ronald D. Coleman_
                                                RONALD D. COLEMAN
5                                               Counsel for Defendants
                                             JOHN PATRICK FREY AND
6                                                   CHRISTI FREY

7

8   DATED:  November 12, 2012          Respectfully submitted,

9                                      BROWN WHITE & NEWHOUSE LLP

10

11                                     By   _s/Kenneth P. White_
                                                KENNETH P. WHITE
12                                          Local Counsel for Defendants
                                             JOHN PATRICK FREY AND
13                                                  CHRISTI FREY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SPECIAL MOTION TO STRIKE

757581.1