1 | JASON S. LEIDERMAN, SBN 203336
jay@leidermandevine.com
2 | JAMES B. DEVINE, SBN 205270
james@leidermandevine.com
3 | LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
4 | Ventura, California 93003
Tel: 805-654-0200
5 | Fax: 805-654-0280

6 | Attorneys for Plaintiffs
NADIA NAFFE
7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | WESTERN DIVISION

11 | NADIA NAFFE, an individual,      ) Case No.: CV12-08443-GW (MRWx)
                                      )
12 |              Plaintiff,          ) **PLAINTIFF'S OPPOSITION TO**
                                      ) **DEFENDANT'S MOTION TO**
13 |        vs.                       ) **DISMISS PURSUANT TO FRCP**
                                      ) **12(b)(6).**
14 | JOHN PATRICK FREY, an individual,)
CHRISTI FREY, an individual,          )
15 | STEVE M. COOLEY, an individual,   ) Hearing Date:    December 10, 2012
COUNTY OF LOS ANGELES, a              ) Time:            8:30 a.m.
16 | municipal entity, and             ) Courtroom:       10
DOES 1 to 100, inclusive,             )
17 |                                   )
                                      )
18 |              Defendants.          )
                                      )
19 | _____)

20

21 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22 |        **PLEASE TAKE NOTICE** that Plaintiff Nadia Naffe ("Plaintiff" or "Naffe")

23 | hereby submits her Opposition to Defendant John Patrick Frey's Motion pursuant to Fed.

24 | R. Civ. P. 12(b)(6) to dismiss the First through Sixth Causes of Action from the

25 | Complaint.

26 |                          **<u>INTRODUCTION</u>**

27 |        This is a case, as Defendant ironically points out, about an attempt to "intimidate

28 | and silence private citizens."  Def.'s Mot. to Dismiss ("MTD"), Docket Number ("DN")

Opposition to Motion to Dismiss,

Page 1

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

17 at 1.  However, Plaintiff Nadia Naffe ("Plaintiff" or "Ms. Naffe") wishes to use this court not to perpetrate that intimidation, but to remedy it.  In an abuse of his position as a Los Angeles County District Attorney, Defendant John Patrick Frey ("Defendant" or "Mr. Frey") engaged in a campaign intended to discredit Ms. Naffe and to intimidate her into not coming forward with evidence of a crime in his own jurisdiction.

By preventing Ms. Naffe from coming to the prosecutor's office with evidence of a crime and by further forcing her out of the realm of public debate on the Internet, Mr. Frey's harassment campaign succeeded in suppressing her speech.  And despite cloaking his conduct in denials and disclaimers, Mr. Frey's online persona "Patterico" is inextricably intertwined with—and intentionally benefits from—his offline government position as a county prosecutor; he was acting under color of state law.

In light of the fact that this case is still in the pleading stage, Plaintiff has sufficiently alleged a violation of her First Amendment and Due Process rights. Defendant's Motion to Dismiss should be denied.

## SUMMARY OF ALLEGATIONS

Crucial to this suit is Plaintiff's allegation that Defendant undertook the alleged harassment campaign in order to protect from incarceration his personal friend, James O'Keefe ("O'Keefe").  (Compl. ¶ 36.)  O'Keefe is a controversial conservative political activist who made a name for himself producing undercover "exposés."  (*Id.* at ¶ 11, 12.) He is currently serving probation after pleading guilty to charges of entering real property of the United States under false pretenses, charges that arose out of one of O'Keefe's exposés aimed at sitting U.S. Senator Mary Landrieu.  (*Id.* at ¶ 13, 14.)

### A.   MS. NAFFE'S FRIENDSHIP WITH JAMES O'KEEFE ENDED IN CONTENTIOUS LITIGATION.

Ms. Naffe was at one time a friend and colleague of O'Keefe.  (Compl. ¶ 11.)  But in the fall of 2011, after a friendship of more than two years, their relationship soured. (*Id.* at ¶ 15.)  O'Keefe began making unwanted sexual advances, which Plaintiff rebuffed. (*Ibid.*)  On October 2, 2011, Ms. Naffe was alone with O'Keefe in a barn in New Jersey,

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

and O'Keefe drugged her in an attempt to sexually assault her (the "Barn Incident"). (*Ibid.*)  O'Keefe offered Ms. Naffe money to keep quiet, and, when she rejected the offer and notified O'Keefe's colleagues, he threatened her with a lawsuit if she reported the incident to law enforcement.  (*Ibid.*)  And in November 2011, O'Keefe published a video degrading Ms. Naffe to youtube.com.  (*Id.* at ¶ 16.)  Fed up, Ms. Naffe filed a criminal harassment complaint against O'Keefe.  (*Ibid.*)  That complaint was ultimately dismissed for lack of jurisdiction.  (*Ibid.*)  Mr. O'Keefe later filed an unrelated civil lawsuit against Ms. Naffe.  (*Id.* at ¶ 29.)  Their relationship has not been repaired.

Centrally important to this suit and Mr. Frey's motivations, Ms. Naffe had, at all relevant times, evidence that O'Keefe had wiretapped the Los Angeles office of California Congresswoman Maxine Waters and the office of OneUnited, where Congresswoman Waters' husband worked.  (*Id.* at ¶ 21.)

## B. MR. FREY HAD A PERSONAL FRIENDSHIP WITH JAMES O'KEEFE.

Defendant Mr. Frey is a close personal friend of O'Keefe.  (Compl. ¶ 18.)  This friendship began when O'Keefe was an intern at the Los Angeles County District Attorney's Office (the "Office").  (*Ibid.*)

No later than February 28, 2012, Mr. Frey knew O'Keefe was in danger of going to prison: he knew O'Keefe was on federal probation; he knew O'Keefe had wiretapped Congresswoman Waters' office in his Office's jurisdiction; he knew Ms. Naffe had evidence of that wiretapping; and he knew that if she came forward with that evidence, O'Keefe's punishment for violating the terms of his probation would likely be incarceration.  (*Id.* at ¶¶ 19, 22, 25.)  These are the facts that primarily motivated Mr. Frey's subsequent behavior.

## C. MR. FREY'S ONLINE PERSONA, "PATTERICO," IS DELIBERATELY LINKED WITH HIS POSITION AND AUTHORITY AS A DISTRICT ATTORNEY.

Mr. Frey has a substantial following on his blog, www.patterico.com, and on his Twitter account, @patterico.  (Compl. ¶ 23.)  Although his blog contains a strategic

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

disclaimer—a disclaimer that a reader may only find if he scrolls down and reads the sidebar's fine print—stating that its contents are "personal opinions . . . not made in any official capacity," that disclaimer is illusory and false.  (*Id.* at ¶ 38.)  On the contrary, Mr. Frey uses his position and reputation as a government officer to advance his political agenda, to increase the size of his audience, and to intimidate political enemies.  (*Ibid.*)  In short, Mr. Frey intends to—and does—imbue his online speech with the weight of state authority, all while being careful not to declare so directly.

### D.   IN AN EFFORT TO STOP MS. NAFFE FROM COMING FORWARD WITH EVIDENCE OF JAMES O'KEEFE'S CRIME, MR. FREY HARASSED AND INTIMIDATED MS. NAFFE.

Beginning in February 2012, in order to protect O'Keefe from a potential prison sentence, Mr. Frey began a campaign of harassment against Ms. Naffe.  (Compl. ¶¶ 24-32.)  He published eight public articles to his blog disparaging Ms. Naffe and demonstrating his allegiance to O'Keefe.  (*Id.* at ¶¶ 24, 27.)  One of these posts was intended as a public cross-examination of her account of the Barn Incident.  (*Id.* at ¶ 27.)  Another post included documents related to O'Keefe's civil suit against Ms. Naffe.  (*Id.* at ¶ 29.)

Yet another, unrelated to the Barn Incident or O'Keefe, was simply a vicious publication of private information about Ms. Naffe.  (*Id.* at ¶ 31.)  This post included a transcript from a 2005 deposition of Ms. Naffe taken in an entirely distinct dispute with her former employer.  (*Ibid.*)  That unredacted transcript included extremely sensitive information about Ms. Naffe's medical condition and the medications she was taking at the time.  (*Ibid.*)  It also included Ms. Naffe's social security number, date of birth, maiden name, and family address: a road map for identity thieves.  (*Ibid.*)

Mr. Frey also published several dozen threatening, misleading, and defamatory tweets from his @patterico Twitter account, including the following:

- On March 22, 2012, referring to Ms. Naffe and the Barn Incident, Mr. Frey tweeted: "@Dust92 Or because the 'victim' is a liar whose lies will be exposed?  That sometimes happens too!"  (*Id.* at ¶ 60.)

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

- On more than one occasion, and at least once on March 22, 2012, Mr. Frey attempted to destroy Ms. Naffe's credibility by suggesting that, since she did not call a cab during the Barn Incident, her whole story was made up: "Finally, for the umpteenth time: why not call a cab?"  (*Id.* at ¶ 24.)

- On March 23, 2012, tweeting directly at Ms. Naffe (and also referring to the Barn Incident), Frey posted: "@NadiaNaffe That is false.  But then, you're full of false allegations, aren't you?"  (*Id.* at ¶ 60.)

- On March 23, 2012, Frey contacted Ms. Naffe via Twitter, stating: "My first task is learning what criminal statutes, if any, you have admitted violating."  (Decl. of Nadia Naffe ("Naffe Decl.") at ¶ 27.)

These publications (the blog posts and tweets) have caused Ms. Naffe a great deal of anguish.  She has suffered a bleeding ulcer, which continues to cause her problems. (Naffe Decl. ¶ 35.)  She was intimidated into not coming forward with evidence of O'Keefe's wiretapping in Los Angeles.  (Naffe Decl. ¶ 33.)  She was forced to make her previously public website and Twitter account private.  (Naffe Decl. ¶ 36.)  The day after Mr. Frey published the deposition transcript with Ms. Naffe's personal information, she began receiving alerts from credit reporting agency Experian explaining that someone had made changes to her credit report.  (Compl. ¶ 34.)  Indeed, she continues to receive reports that others are using her social security number fraudulently.  (*Ibid.*)

## ARGUMENT

## I.   THE STANDARD TO SURVIVE A MOTION TO DISMISS ON THE PLEADINGS IS VERY LOW.[1]

As a threshold matter, it is important to point out that at the pleading stage, a plaintiff's burden is merely to *allege* the facts supporting the elements of the complaint, not to prove them. Under the federal court system's notice pleading rules, a complaint

---

[1] Plaintiff has voluntarily dismissed Christy Frey from this case.  She is no longer a named defendant.  As such, the argument in Defendant's Motion to Dismiss regarding Christy Frey is moot.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

must provide "a short and plaint statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  On a motion to dismiss courts "must take all of the factual allegations in the complaint as true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  And to survive such a motion, the complaint need only contain "factual content that allows the court to draw a reasonable inference" of the elements of the plaintiff's stated causes of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.  PLAINTIFF'S COMPLAINT STATES A COGNIZABLE VIOLATION OF 42 U.S.C. § 1983.

As Defendant correctly points out, a claim under 42 U.S.C. § 1983 has two elements.  A plaintiff must show (1) that the defendant acted under color of state law; and (2) that the plaintiff suffered deprivation of a constitutional right.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Defendant argues that Plaintiff's Complaint does not satisfactorily allege either element.  As discussed below, however, this argument fails.

### A.  PLAINTIFF'S COMPLAINT ALLEGES FACTS DEMONSTRATING THAT DEFENDANT MR. FREY ACTED "UNDER COLOR OF STATE LAW."

First, Plaintiff has sufficiently alleged that Defendant was acting under color of state law.  There is "no rigid formula for measuring state action for purposes of section 1983 liability."  *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974).  "In order to determine color of law, a court must examine the totality of the circumstances."  *Abudiab v. City and Cnty. of San Francisco*, No. C 09-1778 MHP, 2010 WL 207622 at 3 (N.D. Cal. Apr. 12, 2010).  Generally, "acts of officers in the ambit of their personal pursuits are plainly excluded."  *Screws v. United States*, 325 U.S. 91, 111 (1945).  However, a state officer who "purports or pretends" to act under color of law in the course of his personal pursuits is liable, "even if his goals were private and outside the scope of authority."  *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996).

Here, under the totality of the circumstances, Plaintiff's allegation is not a "mere recitation" of a legal conclusion.  (MTD at 11.)  True, Mr. Frey's blog includes a

OPPOSITION TO MOTION TO DISMISS,

Page 6

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

disclaimer stating that its contents are "personal opinions . . . not made in any official capacity . . . ."  (Compl. ¶ 38.)  However, Ms. Naffe also alleges that this disclaimer is illusory and false.  (*Id.* at ¶ 40.)  Plaintiff also alleges that Mr. Frey was motivated by his personal relationship to James O'Keefe.  (*Id.* at ¶¶ 18-20, 36.)  But a personal motivation does not itself preclude a finding that a state officer acted under color of state law, at least where, as here, Plaintiff alleges that Defendant "purports or pretends" to do so.  *See Huffman*, *supra*.

In particular, the following alleged facts demonstrate Defendant acted under color of state law: Ms. Naffe alleges that Mr. Frey used County time and resources to publish his blog, tweet from his blog-associated account, and research his personal political enemies, including Ms. Naffe.  (*Id.* at ¶¶ 24, 29, 30.)  Defendant "wants readers to associate him and his website with his official title to add credibility to his published statements and commentary."  (*Id.* at ¶ 40.)  He uses his official position to "advance his personal political agenda, to increase his audience, and to amplify his harassment against political enemies."  (*Id.* at ¶ 38.)  And with respect to conduct specifically directed at Ms. Naffe, Defendant conducted what amounted to a personally motivated, public, ex parte cross-examination of Ms. Naffe on his blog.  (*Id.* at ¶ 27.)

Indeed, at the time, Defendant's own counsel thought it "the most thorough consideration of exculpatory evidence that [he] ha[d] ever seen from a Los Angeles County Deputy District Attorney . . . ."  Ken White, *Nadia Naffe Won't Shut Up, But She'll Threaten You To Make You Shut Up*, Popehat (Mar. 26, 2012), http://www.popehat.com/2012/03/26/nadia-naffe-wont-shut-up-but-shell-threaten-you-to-make-you-shut-up/.[2]  Worse, on the same day that Mr. Frey published Ms. Naffe's social

---

[2] Mr. White's blog post is also illustrative of the culture of impunity exhibited by Mr. Frey and other political "bloggers."  Immediately following his characterization of Mr. Frey's post as a "thorough consideration of exculpatory evidence . . . from a Los Angeles County District Attorney," Mr. White goes on to offer the same kind of meaningless disclaimer Mr. Frey offers on his website.  He acknowledges that his analysis of Mr. Frey's blog post is "uncouth" and asks his readers to "forget that I brought it up."  White, *Nadia Naffe Won't Shut Up*, *supra*.  Like Mr. Frey, who says one thing (his website is purely "personal") but does another (conducts Internet cross-examinations of potential witnesses to crimes in his jurisdiction, intends to use his position to gain influence), Mr. White also says one thing ("forget that I brought it up") and does another (posts anyway, leaves it

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

security number and medical information on his blog, he also directly contacted Ms. Naffe via Twitter and threatened her with a criminal investigation, stating ominously: "My first task is learning what criminal statutes, if any, you have admitted violating." (Decl. of Nadia Naffe ("Naffe Decl.) at ¶ 27 (attached to Pl.'s Opp. to Def. Mot. to Strike).)  In short, Plaintiff's allegations are not "[v]ague and conclusory," (MTD at 11); they sufficiently demonstrate Mr. Frey acted "under color of state law."

## B.   PLAINTIFF'S COMPLAINT ALLEGES FACTS AMOUNTING TO A DEPRIVATION OF CONSTITUTIONAL RIGHTS.

Furthermore, Ms. Naffe's Complaint states violations of her First Amendment and Due Process rights.

### 1.   Plaintiff's First Amendment Rights Were Violated.

With respect to the First Amendment claim, Defendant makes two arguments. First, he suggests that Plaintiff's Complaint "explicitly contradict[s]" itself.  (MTD at14.) Defendant claims that Ms. Naffe's right to free speech could not possibly have been infringed because she did speak out in some limited circumstances: she (1) informed Mr. Frey via Twitter that she would report his harassment to his employer, (2) filed an administrative claim against Mr. Frey, and (3) filed this lawsuit.  (MTD at 15.)

This argument, however, completely misunderstands Plaintiff's First Amendment claim.  Ms. Naffe does not claim that, as a result of Mr. Frey's harassment, she ceased speaking entirely.  Nor does she claim that Mr. Frey's harassment chilled her from reporting his misconduct.  Instead, she alleges that Mr. Frey's harassment stopped her from coming forward with evidence of a crime committed in Mr. Frey's jurisdiction— clearly protected speech.  (Compl. at ¶ 36.)  She further claims that Mr. Frey's harassment forced her out of at least two forums for public speech on the Internet: she has been forced to make private both her previously public Twitter account and her previously public personal website.  (Naffe Decl. at ¶ 36.)

on his website indefinitely).  It is commonplace in this culture to make a deliberately inflammatory, harmful, unethical or even tortious statement, then immediately walk it back, attempting to avoid responsibility.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Just because Plaintiff attempted to stop the harassment without resorting to federal court by exhausting other possible remedies (such as self-help and filing state/administrative complaints) does not mean that her allegations are contradictory.  In fact, these other efforts *add* weight to her allegations by demonstrating the authenticity of her desire to stop Mr. Frey's behavior.

Defendant's second argument suggests that Plaintiff's allegations do not support the inference that his actions "would chill or silence a person of ordinary firmness" from speaking.  (MTD at 15 (citing *Mendoceno Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).)  Defendant does not elaborate, leaving counsel to speculate whether he thinks Ms. Naffe is not "of ordinary firmness" or if, instead, he thinks his behavior, viewed objectively, would not "chill or silence" a reasonable person.  Regardless, either interpretation of Defendant's second argument falls short.  Mr. Frey's campaign of harassment was cruel.  It was relentless.  And it was imbued with the weight of his authority as a District Attorney.  At the pleading stage, the court cannot say that Ms. Naffe's allegations fail to state a First Amendment claim as a matter of law.

## 2.    Plaintiff's Due Process Rights Were Violated.

Addressing the due process claim, Defendant correctly observes that one possible basis is Plaintiff's fear that the DA's Office would "not adequately investigate or pursue her allegations that Mr. O'Keefe wiretapped Representative Waters."  (MTD at 16.)  Defendant also correctly observes that no citizen has a due process right to an investigation or prosecution of another.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (dismissing for lack of standing a complaint for an injunction requiring the district attorney to prosecute a crime, even though a state statute required the district attorney to do so).  If the due process claim hinged entirely on this fact, it would fail.

But the crux of the claim has nothing to do with Mr. O'Keefe.  Instead, Ms. Naffe fears that Mr. Frey—indeed, any attorney at the LA County DA's Office—as an officer of the state, has prejudged her character and credibility.  (Compl. at ¶ 46.)  She fears that she would be entirely unwelcome at the Office in all cases, not just with respect to Mr.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

O'Keefe; she fears that they would turn her away at the outset, regardless of the strength of her evidence; and she fears that ultimately, coming forward would accomplish nothing more than subjecting her to further harassment from Mr. Frey. (Naffe Decl. at ¶ 31.) In sum, Ms. Naffe felt and still feels that Mr. Frey's conduct toward her was intended as a message: do not come forward to incriminate Mr. O'Keefe, *or else*. Just as making threats to potential defense witnesses constitutes prosecutorial misconduct (*see, e.g.*, *In re Martin*, 44 Cal.3d 1, 39-40 (Cal. 1987)), so does making threats to potential state witnesses. Plaintiff's due process claim should stand.

## III.   PLAINTIFF HAS STATED COGNIZABLE CLAIMS FOR COUNTS TWO THROUGH SIX.

As demonstrated in Plaintiff's Opposition to Defendant's Anti-SLAPP Motion, Plaintiff not only alleges cognizable claims for counts two through six, but she has actually presented substantive evidence of each. Since the standard for defeating an Anti-SLAPP motion is higher than the standard for defeating a 12(b)(6) motion, Plaintiff has clearly met her burden for the purposes of this Opposition. The Court should deny the Motion to Dismiss on each of these counts.

## IV.   ALTERNATIVELY, IF THE COURT GRANTS DEFENDANT'S MOTION IN WHOLE OR IN PART, IT SHOULD GRANT PLAINTIFF LEAVE TO AMEND.

Should the court grant Defendant's Motion to Dismiss, it should also grant Plaintiff leave to amend. Indeed, Plaintiff may amend her Complaint "as a matter of course" within 24 days of service of Defendant's Motion to Dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B); Fed. R. Civ. P. 6(d). Further, the court "should freely give leave when justice requires." Fed. R. Civ. P. 15(a)(2). It should do so here.

Dated: November 19, 2012                     LEIDERMAN DEVINE LLP


                                            By:/s/ James B. Devine
                                               Jason S. Leiderman
                                               James B. Devine
                                               Attorneys for Plaintiff
                                               NADIA NAFFE

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280