# DECLARATION OF NADIA NAFFE

I, NADIA NAFFE, DECLARE AS FOLLOWS:

1. I make this Declaration in support of Plaintiff's Opposition to Defendant's Anti-SLAPP Motion.

2. Prior to the events forming the basis for this lawsuit, I was a personal friend and professional colleague of James O'Keefe ("O'Keefe"), a conservative activist specializing in producing undercover videos that style themselves as "exposés" of liberal political misdeeds.

3. I am informed and believe and based thereon allege that O'Keefe is a popular member of the conservative community who has been vilified by the mainstream press for unfair and biased attacks on his targets, but is much admired by a section of conservatives. I am informed and believe and based thereon allege that Defendant MR. FREY is among O'Keefe's admirers and personal friends.

4. I am informed and believe and based thereon allege that in January 2010, O'Keefe was arrested during an undercover project aimed at sitting U.S. Sentator Mary Landrieu.

5. I am informed and believe and based thereon allege that in May, 2010, O'Keefe plead guilty to entering real property of the United States under false pretenses for which he is currently serving three years of probation.

6. In or around Fall 2011, after a friendship of approximately two and a half years, O'Keefe began making romantic overtures toward me, overtures I rejected. These harassing romantic advances culminated in a frightening incident on October 2, 2011, in a barn in New Jersey, during which O'Keefe drugged me in an attempt to sexually assault me (the "Barn Incident"). A few weeks after this incident, O'Keefe offered to pay me in consideration for my promise not to disclose the barn incident. I rejected O'Keefe's offer. Instead, I sent a letter to O'Keefe and the board of directors of his company, requesting he cease harassing me. O'Keefe, in turn, threatened to sue me if I contacted law enforcement about the Barn Incident.

DECLARATION OF NADIA NAFFE

Page 1

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

7. In November 2011, O'Keefe posted a harassing, degrading, public video about me to youtube.com. In response I filed a criminal harassment complaint against O'Keefe in New Jersey, which was ultimately dismissed for lack of jurisdiction.

8. In February 2012, the late conservative media mogul Andrew Breitbart—a personal friend of both me and (on information and belief) O'Keefe—mischaracterized the Barn Incident while speaking with a reporter. In an effort to correct misconceptions about my pending complaint against O'Keefe and the underlying facts of the Barn Incident, I publicly challenged Mr. Breitbart's mischaracterizations in my personal blog and via my Twitter account.

9. I am informed and believe and based thereon allege that MR. FREY is a personal friend of O'Keefe, and that friendship began when O'Keefe worked as an intern in the County District Attorney's Office with MR. FREY while O'Keefe was a law school student.

10. I am informed and believe and based thereon allege that MR. FREY is aware of the fact that O'Keefe is currently on federal probation, and that any criminal charges against O'Keefe would potentially violate the terms of his probation.

11. Although MR. FREY and I had mutual friends and acquaintances, including O'Keefe, we had no direct contact with each other prior to the events forming the basis for this lawsuit.

12. I was involved in an incident in Los Angeles, California, during which O'Keefe wire tapped Congresswoman Maxine Waters' office and the office of OneUnited, the bank that employed Congresswoman Waters' husband. I was used by O'Keefe to further this wire tapping plan.

13. I am informed and believe and based thereon allege that MR. FREY was aware of my involvement with O'Keefe's wire tapping of Congresswoman Waters at some point after the incident occurred.

14. I am informed and believe and based thereon allege that MR. FREY publishes a "blog" on the Internet known as "Patterico's Pontifications" at the publically

DECLARATION OF NADIA NAFFE

Page 2

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

available website www.patterico.com and that MR. FREY has the power of moderation over all articles and comments on his blog, and may therefore edit and delete comments and comment timestamps.

15. I am informed and believe and based thereon allege that MR. FREY does in fact use his power of moderation to alter the content of his website, to delete posts or comments he later thinks better of, and to change or delete comments that demonstrate his use of the site during regular business hours.

16. I am informed and believe and based thereon allege that in February and March 2012, MR. FREY posted at least eight separate articles concerning me on his blog at www.patterico.com and actively participated in comment threads with respect to the articles, posting the comments under his nickname "Patterico."

17. I am informed and believe and based thereon allege that during the same time period—and at all times of day and night—MR. FREY posted several dozen threatening, harassing and defamatory statements concerning I using his twitter account, @patterico, which statements are commonly known as "tweets."  In his tweets, MR. FREY described me as a liar, illiterate, callous, self-absorbed, despicable, a smear artist, dishonest, and absurd (among other less direct harassment).  In particular, MR. FREY repeatedly asked the rhetorical question: "why did [I] not call a cab to escape the barn during the Barn Incident?" which was intended to discredit my account of the Barn Incident.  MR. FREY has admitted as much, describing his activity as "poking holes" in the theory I put forth in my criminal harassment complaint against O'Keefe.

18. I am informed and believe and based thereon allege that as of at least February 28, 2012, MR. FREY knew: (a) I had evidence of O'Keefe's wire tapping of Congresswoman Waters' office and the OneUnited Offices; (b) I was planning on coming forward with this evidence; (c) since the wiretapping occurred within the County's jurisdiction, MR. FREY's office would likely receive the evidence; and (d) O'Keefe risked a prison sentence for violating his federal probation if I made the evidence available.

DECLARATION OF NADIA NAFFE

Page 3

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

19. I am informed and believe and based thereon allege that, combined with MR. FREY's personal friendship with O'Keefe, the facts in paragraph 18 constitute a motive for MR. FREY to engage in behavior likely to stop me from coming forward with the evidence.

20. I am informed and believe and based thereon allege that on February 28, 2012, MR. FREY published to his blog portions of the transcript from the probable cause hearing in my criminal harassment lawsuit against O'Keefe in a manner that was intentionally out-of-context.

21. I am informed and believe and based thereon allege that in the same February 28, 2012, blog post, MR. FREY criticized journalist Tommy Christopher for failing to vet me before publishing an article about the Barn Incident and subsequent lawsuit, and made a list of 29 questions Mr. Christopher "should" have asked when interviewing me for an article regarding the Barn Incident. I am informed and believe and based thereon allege that these 29 questions were intended to provide O'Keefe with legal ammunition to fight my criminal harassment lawsuit, and so constituted the giving of legal advice.

22. On March 14, 2012, in an effort both to combat misconceptions regarding the barn incident, I began posting a series of articles on her personal Internet blog. In these blog posts, I wrote about the incident involving O'Keefe wire tapping Congresswoman Waters' office and the OneUnited offices. At that time she published the blog posts, I was planning on turning over an audio recording of the wire tapping of Congresswoman Waters to the County, through its Sherriff's Department or its District Attorney's office.

23. I am informed and believe and based thereon allege that on Friday, March 23, 2012, at a time when MR. FREY should have been in the employ of the County, MR. FREY published to his blog several documents related to a civil suit filed by O'Keefe against me, including an order granting an injunction against me (this suit is separate from the criminal harassment complaint arising from the Barn Incident).

DECLARATION OF NADIA NAFFE

Page 4

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

24. Also on March 23, 2012, I responded to a tweet from MR. FREY's account, informing him that I intended to notify the County District Attorney's office and the California State Bar that MR. FREY was misusing government time and resources by blogging and tweeting about my dispute(s) with O'Keefe.

25. I am informed and believe and based thereon allege that on March 24, 2012, MR. FREY retaliated against me by publishing to his blog over 200 pages of a 2005 deposition transcript from an unrelated civil matter between me and a former employer. The deposition transcript MR. FREY posted contained a great deal of private and personal information, including my social security number, date of birth, maiden name, mother's maiden name, family address, information about my medical condition and the medications I was taking at that time.

26. I am informed and believe and based thereon allege that on March 25, 2012, after word spread that my social security number was in the first few pages of the deposition transcript hosted on his blog, MR. FREY wrote in the comments section of the March 24 blog post: "I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons."

27. Also on March 23, 2012, MR. FREY contacted me on Twitter stating: "My first task is learning what criminal statutes, if any, you have admitted violating." I am informed and believe and based thereon allege that MR. FREY did so to intimidate me from bringing forth evidence to the County by making me believe he was acting under the color of the law, as a deputy district attorney, to criminally prosecute me for an alleged crime.

28. I am informed and believe and based thereon allege that in another comment time stamped one minute later, MR. FREY continued: "She may just be starting to realize that she that she has made a series of mistakes that could land her in trouble. Maybe she's reconsidering . . . ."

29. I am informed and believe and based thereon allege that at some time after his March 25, 2012, blog posts, MR. FREY removed the deposition transcript from his

DECLARATION OF NADIA NAFFE

Page 5

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

website; however, my personal information and social security number were nonetheless preserved for several weeks or months in an Internet web cache, available to anyone with an Internet connection wishing to view personal, private details for whatever reason.

30. On March 26, 2012, I began receiving email alerts from the credit reporting agency Experian, explaining that some people had made changes to her credit report. I continue to receive reports that individuals are fraudulently using my social security number.

31. I am informed and believe and based thereon allege that MR. FREY engaged in the defamatory and harassing activity described herein in order (a) to intimidate me into not handing over evidence to the County regarding O'Keefe's wiretapping of Congresswoman Waters, and (b) to protect the reputations of his personal friends, O'Keefe and Mr. Breitbart.

32. As a result of the actions of MR. FREY, I believed and continue to believe (a) that I would not be welcome in the County District Attorney's Office; (b) that MR. FREY and his colleagues have prejudged my character and credibility; (c) that the office would not accept any evidence I have regarding O'Keefe's Los Angeles wire tapping; and (d) that were I to come forward with that evidence, I would be subject to further harassment at the hands of MR. FREY.

33. In other words, as a result of the actions of MR. FREY, I was in fact intimidated into not giving evidence of O'Keefe's wire tapping to the County.

34. As a direct, proximate, and foreseeable result of MR FREY's conduct alleged herein, I have suffered highly acute emotional anguish.

35. In particular, my emotional distress has physically manifested in a bleeding ulcer, a medical condition I did not have prior to MR. FREY's harassment.

36. As a direct result of MR. FREY's harassment, and in order to prevent further harassment, I have been forced to make private both my Twitter account and my blog at nadianaffe.com. Though I desire to, MR. FREY has made it impossible to freely participate in online speech.

DECLARATION OF NADIA NAFFE

Page 6

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

37. I am informed and believe and based thereon allege that MR. FREY considers my absence from public online debates a victory for him.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 19 2012, at Cambridge, MA.

By: /s/ Nadia Naffe

NADIA NAFFE

DECLARATION OF NADIA NAFFE

Page 7

LEIDERMAN DEVINE LLP
5700 Ralston Street, Suite 211
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280