1  GOETZ FITZPATRICK LLP
   RONALD D. COLEMAN
2  rcoleman@goetzfitz.com
   One Penn Plaza, Suite 4401
3  New York, NY 10119
   Telephone: 212.695.8100
4  Facsimile: 212.629.4013

5  Counsel for Defendants
   JOHN PATRICK FREY AND
6  CHRISTI FREY

7

8  BROWN WHITE & NEWHOUSE LLP
   KENNETH P. WHITE (Bar No. 238052)
9  kwhite@brownwhitelaw.com
   333 South Hope Street, 40th Floor
10 Los Angeles, CA 90071-1406
   Telephone: 213.613.0500
11 Facsimile: 213.613.0550

12 Local Counsel for Defendants
   JOHN PATRICK FREY AND
13 CHRISTI FREY

14            UNITED STATES DISTRICT COURT

15          CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16  NADIA NAFFE, an individual, | Case No.: CV12-08443-GW (MRWx) |
| 17  Plaintiff, | Judge:    Hon. George H. Wu |
| 18  v. | |
| 19  JOHN PATRICK FREY, an individual, CHRISTI FREY, an individual, STEVE M. COOLEY, an individual, and the COUNTY OF LOS ANGELES, a municipal entity, | **DEFENDANT JOHN PATRICK FREY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE THE SECOND THROUGH SIXTH CAUSES OF ACTION OF THE COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP LAW, CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16; DECLARATION OF JOHN PATRICK FREY; EXHIBITS** |
| 20 | |
| 21 | |
| 22  Defendants. | |
| 23 | |
| 24 | |
| 25 | Hearing Date:  December 10, 2012 |
| 26 | Time:  ___    8:30 a.m. Courtroom:    10 |
| 27 | Complaint Filed:  October 2, 2012 |
| 28 | |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................1

II.   PLAINTIFF'S EXHIBITS SUPPORT DEFENDANTS'S STATEMENT OF
      FACTS, NOT HER OWN ....................................................................1

III.  PLAINTIFF FAILS TO REBUT MR. FREY'S SHOWING THAT HIS
      BLOGGING ACTIVITIES ARE PROTECTED EXPRESSION UNDER THE
      ANTI-SLAPP STATUTE.......................................................................3

IV.   PLAINTIFF FAILS TO DEMONSTRATE A REASONABLE
      PROBABILITY OF SUCCESS ON HER CLAIMS...............................5

      A.   Plaintiff Mischaracterizes the Standard She Must Meet to Demonstrate
           that She Has a Probability of Succeeding on the Merits ..............5

      B.   Plaintiff's Allegations Made on Information and Belief Do Not
           Constitute Competent and Admissible Evidence .........................6

      C.   Plaintiff's Few Admissible Averments in her Declaration are
           Immaterial, Trivial or Otherwise Fail to Demonstrate a Probability of
           Prevailing on Her Claims................................................................7

      D.   Plaintiff's Fails to Demonstrate a Probability of Prevailing on Her
           Claims as a Matter of Law..............................................................9

           1.   Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot
                Succeed ...................................................................................9

           2.   Plaintiff's False Light Defamation Claim Cannot Succeed .............13

           3.   Plaintiff's Defamation Claim Cannot Succeed................................14

           4.   Plaintiff's Claim for Severe Emotional Distress Cannot Succeed ...16

           5.   Plaintiff's Claim for Negligence Cannot Succeed...........................17

V.    PLAINTIFF HAS NOT DEMONSTRATED THAT DISCOVERY WILL
      BOLSTER HER FACIALLY MERITLESS CLAIMS .........................18

VI.   CONCLUSION..................................................................................20

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

1

## TABLE OF AUTHORITIES

2

Page

3 **Cases**

4 *1-800 Contacts, Inc. v. Steinberg*,
   107 Cal.App.4th 568 (2003) ................................................................. 6
5
*Cannon v. City of Petaluma*,
6   2011 WL 3267714, *3 (N.D. Cal. 2011) ............................................. 14

7 *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*,
   944 F.2d 1525 (9th Cir. 1991) ............................................................. 7
8
*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
9   54 Cal. App. 4th 121 (1997) ............................................................... 17

10 *Diaz v. Oakland Tribune, Inc.*,
    139 Cal.App.3d 118 (Cal. Ct. App. 1983) ......................................... 10
11
*Evans v. Unkow*,
12   38 Cal.App.4th 1490 (1995) ................................................................ 7

13 *Forsher v. Bugliosi*,
    26 Cal. 3d 792 (1980) ........................................................................ 10
14
*Gertz v. Robert Welch, Inc.*,
15   418 U.S. 323 (1974) ........................................................................... 12

16 *Gilbert v. Sykes*,
    147 Cal.App.4th 13 (2007) ................................................................... 6
17
*Granger v. Klein*,
18   197 F. Supp. 2d 851 (E.D. Mich. 2002) ............................................. 13

19 *Johnson v. Nw. Airlines, Inc.*,
    C 08-02272 VRW,
20   2009 WL 839044 (N.D. Cal. Mar. 30, 2009) ..................................... 18

21 *Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ................................................................. 4
22
*Mao's Kitchen, Inc. v. Mundy*,
23   209 Cal.App.4th 132 (2012) ................................................................. 9

24 *Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) .......................................................... 18, 19
25
*Moreno v. Hanford Sentinel, Inc.*,
26   172 Cal.App.4th 1125 (2009) ............................................................. 12

27 *Reader's Digest Assn. v. Superior Court*,
    37 Cal. 3d 244 (1984) ........................................................................ 12
28
*Rogers v. Home Shopping Network*,
    57 F.Supp. 973 (C.D. Cal. 1999) ................................................... 18, 19

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

# TABLE OF AUTHORITIES

Page

*Rosenfeld v. U.S. Dep't of Justice*,
No. C-07-3240 EMC,
2012 WL 710186 (N.D. Cal., Mar. 5, 2012)................................................................. 12

*Snyder v. Phelps*,
131 S.Ct. 1207 (2011) ................................................................................................ 16

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) ................................................................................ 15, 16

*Troy Group, Inc. v. Tilson*,
364 F. Supp. 2d 1149 (C.D. Cal. 2005) ........................................................................ 5

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port District*,
106 Cal.App.4th 1219 (2003) ...................................................................................... 7

*Vogel v. Felice*,
127 Cal.App.4th 1006 (2005) ...................................................................................... 6

*Wasser v. San Diego Union*,
191 Cal. App.3d 1455 (Ct. App. 1987) ....................................................................... 11

*Wilbanks v. Wolk*,
121 Cal.App.4th 883 (Cal. Ct. App. 2004) .................................................................. 5

*Yu v. Signet Bank/Virginia*,
103 Cal.App.4th 298 (2002) .................................................................................... 5, 6

**Statutes**

Cal Evid. Code § 912) .............................................................................................. 18

Civ.Proc., § 425.16, subd. (b) ................................................................................... 7

Code of Civ. Proc. § 425.16(c) ................................................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff's complaint is an attempt to silence speech about a matter of public interest. She seeks, by invoking tort law, to punish Defendant Patrick Frey for having the temerity to publicly question her credibility regarding a public controversy largely made public by her. There could be no more straightforward application of this State's anti-SLAPP statute than striking the Complaint and awarding fees.

Plaintiff claimed, both in filed court papers and other public statements, that a controversial conservative figure, James O'Keefe, had drugged her and attempted to assault her in a barn (the "Barn Incident"). As the Complaint and Plaintiff's own exhibits set out, Mr. Frey found numerous grounds on which to question Plaintiff's credibility regarding this public controversy, including her sworn testimony from a previous court proceeding. Mr. Frey also published publicly available documentation suggesting that that Plaintiff had knowingly taken a laptop computer that did not belong to her, including a deposition transcript uploaded onto PACER. That transcript also revealed that Plaintiff had used medication that could have explained her reaction to alcohol in the Barn Incident.

In his commentary, Mr. Frey questioned the credibility of Plaintiff, a public figure regarding a public controversy – precisely the type of commentary California's anti-SLAPP statute seeks to protect. In light of these facts, Plaintiff cannot, and has not, shown any possibility that she could prevail on her claims targeting Mr. Frey's speech. Therefore, the Court should strike the Second through Sixth Causes of Action and award Defendants their fees and costs under the anti-SLAPP statute.

### II.   PLAINTIFF'S EXHIBITS SUPPORT DEFENDANTS'S STATEMENT OF FACTS, NOT HER OWN

In her Opposition, Plaintiff asserts facts and theories that contradict not only her admissions in her Complaint, but the very evidence she offers in opposition to the Motion.

1    Plaintiff's Opposition asserts that "[t]he Barn Incident is a red herring. Although it

2 provides convenient camouflage for Mr. Frey, the basis for this suit is not his commentary on

3 the Barn Incident." (Opposition at 6.) Yet it is Plaintiff who made "the Barn Incident" central

4 to her claim and a constant companion in the Complaint. She describes it (Complaint at ¶ 15).

5 She explains her efforts to "correct misconceptions" about it through blogging (Complaint at

6 ¶¶ 17, 28). She complains repeatedly of Mr. Frey asking questions about it (Complaint at ¶

7 24). She asserts that Mr. Frey wronged her by making a list of questions journalists should

8 have posed about it (Complaint at ¶ 27). And she made Mr. Frey's questions about it central to

9 her causes of action (Complaint at ¶¶ 24, 60).

10    No doubt Plaintiff has realized upon reading the Motion that she has cast her Complaint

11 as an attack on a discussion of a matter of public interest – a matter *she herself* has treated as a

12 matter of public interest. But Plaintiff can't retract her admissions in the Complaint, and can't

13 change the focus of her Complaint – or the obvious but illegitimate purpose of this lawsuit –

14 with a belated hand-wave.

15    Attempting to change the subject from the one she originally raised, Plaintiff has placed

16 before the Court the blog post in question by Mr. Frey (Exhibit A to Naffe Decl.) and the

17 stream of Twitter comments in question (Exhibit B to Naffe Decl.) Despite her efforts to

18 distort them, however, these exhibits prove Mr. Frey's point, not Plaintiff's: namely that Mr.

19 Frey was commenting on a subject of public interest, i.e., the Barn Incident, an alleged

20 occurrence that Plaintiff chose to publicize and argue about on the Internet.

21    Attempting to evoke pity while misdirecting attention away from the relevant issues,

22 Plaintiff intones melodramatically that "Mr. Frey was not commenting on the Barn Incident

23 when he plastered Ms. Naffe's private medical information over the front page of his blog."

24 (Opposition at 6.) But her own evidence shows that Mr. Frey was, in fact, commenting on that

25 public controversy -- for the blog post shows the specific context of Mr. Frey's comment on

26 Plaintiff's medical condition derived from the deposition transcripts on PACER. Mr. Frey

27 comments on the medication Plaintiff was taking at the time of the deposition: "If she was still

28 taking the medications in late 2011, it could explain why she allegedly had such a strong

BROWN, WHITE & NEWHOUSE
ᴸᴸᴾ
A T T O R N E Y S

1    reaction to the alcohol." (Exhibit A to Naffe Decl. at 1.) This is a reference to Plaintiff's own

2    claim, referenced in her Complaint, that she was drugged during the Barn Incident.

3    (Complaint at ¶ 15.) And, naturally, it bears on an understanding of the facts she has alleged in

4    public, her recollection of the events, and her credibility.

5    　　　Moreover, when Mr. Frey was re-publishing that same already public information, he

6    was – the blog post submitted by Plaintiff shows – suggesting further questions that journalist

7    Tommy Christopher should have asked Plaintiff about the Barn Incident while interviewing

8    her. This is the very thing Plaintiff describes and complains of in her Complaint.  (Exhibit A to

9    Naffe Decl. at 1; Complaint at ¶ 27.) This is the very definition of privileged comment on an

10   issue of public interest, i.e., commentary about a news story written by a third party.

11   Additionally, the blog post shows that Mr. Frey was, as part and parcel of that same

12   commentary, also (1) commenting on Plaintiff's prior lawsuit against the Florida Republican

13   Party, (2) commenting on a court order stating that Plaintiff had deliberately failed to return a

14   laptop computer she'd been asked to return, and (3) commenting on Plaintiff's repeated threats

15   to report Mr. Frey to the California State Bar and to "Internal Affairs" at the DA's Office.

16   (Exhibit A to Naffe Decl. at 1-2.)

17   　　　In sum, the blog post placed before the Court by Plaintiff is, upon examination, shown

18   to be the epitome of public speech about a public issue. By the same token, Plaintiff's lawsuit

19   is shown to be a crass attempt to utilize the legal system to censor commentary and criticism

20   she finds uncomfortable, embarrassing or harmful to her cause. It is just such commentary the

21   anti-SLAPP litigation was enacted to protect.

22   **III.    PLAINTIFF FAILS TO REBUT MR. FREY'S SHOWING THAT HIS**

23   **BLOGGING ACTIVITIES ARE PROTECTED EXPRESSION UNDER**
     **THE ANTI-SLAPP STATUTE**

24

25   　　　Plaintiff leaps from her mischaracterizations of the record to a self-serving conclusion:

26   "Therefore, even assuming that the Barn Incident is an 'issue of public interest' sufficient to

27   satisfy the Anti-SLAPP statute's first prong, Defendant cannot show that this suit arises out of

28   activity 'in connection' with it. On this basis alone, the court should deny Defendant's Motion

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

1   to Strike." Plaintiff's argument is transparently meritless; a mere assertion of a counterfactual

2   conclusion. Analyzing the actual content of the expression at issue demonstrates that the

3   Complaint is attacking expression protected by the anti-SLAPP statute, as briefly reviewed

4   below.

5         Mr. Frey has demonstrated, and Plaintiff does not rebut, that

6             • Plaintiff has manifestly treated her claims against Mr. O'Keefe as a matter of

7                public interest (Complaint at ¶¶ 17, 27, 28);

8             • allegations concerning Mr. O'Keefe, who plaintiff describes as "a renowned

9                conservative 'activist' known for his video exposés on political matters" (¶

10               11) and "a popular member of the conservative community who has been

11               vilified by the mainstream press" (¶ 12), were a matter of public interest; and

12            • in making accusations of serial criminal conduct by Mr. O'Keefe, Plaintiff

13               made her own credibility and litigation history a matter of public interest as

14               well.

15  In light of these unrebutted facts, Mr. Frey has carried his initial burden under the anti-SLAPP

16  statute of showing that the Complaint is premised on protected expression. Plaintiff effectively

17  concedes this by citing the holding of *Kashian v. Harriman*, 98 Cal. App. 4th 892, 910 (2002)

18  that the anti-SLAPP statute applies to commentary concerning the subject's litigation activities

19  where, as here, they were "a matter of considerable dispute." Plaintiff's *argumentative*

20  *characterization* of these facts in her Opposition does not prove otherwise.

21        Nor do Plaintiff's conclusory descriptions of Mr. Frey's expression as "harassing" or

22  "intimidating" have any bearing on whether the expression satisfies the first prong of the anti-

23  SLAPP statute. While at no time demonstrating, factually or legally, that Mr. Frey harassed or

24  intimidated her, her use of these loaded descriptions can be of no relevance in weighing

25  whether Mr. Frey has met his burden here  "The lawfulness of the defendant's petitioning

26  activity is generally not at issue in the 'arising from' prong of the anti-SLAPP inquiry; that

27  question is ordinarily addressed in the second, 'minimal merit' prong of the inquiry relative to

28  the plaintiff's probability of success on the merits."  *Yu v. Signet Bank/Virginia*, 103

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE^{LLP}
A T T O R N E Y S

Cal.App.4th 298, 317 (2002) (quotations omitted).

Plaintiff has made no showing to rebut the compelling demonstration by Mr. Frey made in the Motion that the Complaint is based on expression satisfying the first prong of California's anti-SLAPP law.

## IV.   PLAINTIFF FAILS TO DEMONSTRATE A REASONABLE PROBABILITY OF SUCCESS ON HER CLAIMS

Plaintiff acknowledges that she carries a burden to prove a probability of prevailing on her claims. Plaintiff fails to meet that burden for two reasons.  First, *factually* her Opposition relies upon conclusory statements and inadmissible assertions premised on "information and belief." Second, *legally* her claims are each gravely deficient under well-established law.

### A.   Plaintiff Mischaracterizes the Standard She Must Meet to Demonstrate that She Has a Probability of Succeeding on the Merits

Recognizing the weakness of the facts she offers and the insurmountable barrier of the law opposing her, Plaintiff strives to the lower the legal bar as far as she can.  (Opposition at 7.) In doing so, Plaintiff misconstrues language from anti-SLAPP cases and rips it from its context in a vain attempt to convince this Court that her burden of proof is no burden at all. But those cases do not support Plaintiff's position.

For example, in *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149 (C.D. Cal. 2005), this Court cited *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 905 (Cal. Ct. App. 2004), quoted approvingly by Plaintiff for the standard by which a court is to consider a plaintiff's submissions to determine whether he has made a prima facie showing of likely success. In applying the *Wilbanks* standard, the *Troy* Court did not, as Plaintiff suggests it do here, shy away from evaluating the evidence. To the contrary, the Court readily determined, upon careful consideration of the substance and context of an email alleged to be defamatory, that "it is very unlikely that a trier of fact would find [the defendant] liable for defamation . . . rather, a jury would likely find the email to be opinion and rhetorical hyperbole."  364 F. Supp. 2d. at 1156. In other words, the Court did exactly what Plaintiff asks this Court not to do – make a finding based on undisputed facts before it.

1    Plaintiff also relies on the language in *Yu*, *supra*, to the effect that the "causes of action

2   need only be shown to have 'minimal merit.'" 103 Cal.App.4th at 318.  But the *Yu* court did

3   not purport to change the standard for proving a probability of prevailing on the merits, and

4   Plaintiff cites nothing in *Yu* (or in any other case) showing that it did. "Minimal merit" is

5   simply a colloquial way of articulating the standard established in other cases – that Plaintiff

6   must offer competent and admissible evidence sufficient to resist a motion for summary

7   judgment.  *Price v. Stossel*, 590 F.Supp.2d 1262, 1266 (C.D. Cal. 2008); *Gilbert v.*

8   *Sykes,* 147 Cal.App.4th 13, 53 (2007).

9    Moreover, Plaintiff ignores authority establishing that she cannot carry her burden

10   because she has not stated and cannot state facts sufficient to state a cause of action, let alone

11   evidence sufficient to prove her case.  *Vogel v. Felice*, 127 Cal.App.4th 1006, 1017 (2005)

12   (plaintiff cannot show a probability of success where claim is legally insufficient on its face);

13   *1-800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 584 (2003) ("In order to establish the

14   necessary probability of prevailing, [a] plaintiff [is] required . . . to plead claims that [are]

15   legally sufficient . . .").

16    Plaintiff cannot lower the bar enough to sustain her burden here: She fails to show, by

17   competent evidence, that she could prevail on *any* point, or that her lawsuit has *any* legal or

18   factual merit at all.

19   **B.**   **Plaintiff's Allegations Made on Information and Belief Do Not**
     **Constitute Competent and Admissible Evidence**
20

21    Plaintiff carries the burden of offering "competent and admissible evidence" showing

22   that she can prevail.  *Price*, 590 F.Supp.2d at 1266. Having none, Plaintiff ignores this rule and

23   offers inadmissible and incompetent evidence instead.

24    In fact, every controversial – i.e., material – factual assertion in Plaintiff's submission

25   was initially pleaded "on information and belief" and has subsequently been supported by

26   nothing but Plaintiff's own speculative musings. Out of 36 substantive numbered paragraphs

27   in her Declaration, fully *twenty* – more than half – begin with the words, "I am informed and

28   believe and based thereon allege" – meaning, of course, that the affiant doesn't have first-hand

knowledge the facts alleged in that paragraph and could not testify to them at trial.  Such evidence is inadmissible and insufficient, as a matter of law, to resist an anti-SLAPP motion. As explained in *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port District*, 106 Cal.App.4th 1219 (2003):

> An assessment of the probability of prevailing on the claim looks to *trial,* and the evidence that will be presented at that time. Such evidence must be *admissible.* [T]he plaintiff's burden of establishing facts to sustain a favorable decision if the evidence submitted ... is credited implies a requirement of admissibility, because otherwise there would be nothing for the trier of fact to credit.  At trial, the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter. An averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim.

*Id.* at 1236 (emphasis in original; citations and internal quotations omitted). In another case, where the complaint in question had overtones similar to this one, the court rejected the assertion in an opposing declaration that, "*on information and belief,* that the 'adversarial relationship' between [between two parties] was a matter of common knowledge 'throughout the community and in the public media that the defendants claim to rely on as a main source of information.'"  *Evans v. Unkow*, 38 Cal.App.4th 1490, 1495 (1995). "The problem with this averment," the court wrote, "is that information and belief, within the context of a special motion to strike a SLAPP suit, is inadequate to show 'a probability that the plaintiff will prevail on the claim.' (Code Civ.Proc., § 425.16, subd. (b).)"  *Id*. at 1497.

Federal courts apply the same rule in evaluating oppositions to motions for summary judgment, which, as is noted above, involve the same burden as the opposition to an anti-SLAPP motion.  *See Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) (declaration based not on personal knowledge, but on information and belief, "does not raise a triable issue of fact" sufficient to overcome summary judgment motion).

**C.** **Plaintiff's Few Admissible Averments in her Declaration are Immaterial, Trivial or Otherwise Fail to Demonstrate a Probability of Prevailing on Her Claims.**

Stripped of the 20 "information and belief" paragraphs – which were themselves merely

7

cut and pasted from the Complaint – Plaintiff's Declaration fails to establish a competent factual basis for a finding that she is reasonably likely to succeed on the merits of her claims. What competent evidence does she actually proffer?  In paragraphs 6-8 she testifies first-hand about events concerning her, Mr. O'Keefe and Mr. Breitbart that took place prior to any involvement of Mr. Frey in the circumstances at issue. In paragraph 11 she admits that she never knew of Mr. Frey prior to the controversial events. Paragraph 12 recounts her claim to have participated in an alleged crime, i.e., the wiretapping of various offices – but still offers no first-hand evidence concerning Patrick Frey. Ten "information and belief" paragraphs later, Plaintiff testifies that she began to write, on her own blog, about the Barn Incident, and claims to have been "planning" to inform law enforcement officials, but not Patrick Frey, about her wiretapping adventures (¶ 22). She finally encounters Mr. Frey for the first time, not counting hearsay and speculative averments, in paragraph 24, when she states that she told him, via Twitter, of her plans and her view about how Mr. Frey spent his time.

Finally, in paragraph 23, Plaintiff claims that Mr. Frey stated, via Twitter, "My first task is learning what criminal statutes, if any, you have admitted violating." Plaintiff then claims – but now, on information and belief – to know Mr. Frey's intent in making this comment. She concludes that she was ultimately "intimidated into not giving evidence of O'Keefe's wire tapping to the County" because she felt she "would not be welcome in the County District Attorney's Office" and, she speculates further, because Mr. Frey – whose involvement in any approach by her to that office is premised entirely on her vivid imagination – would "prejudge her character and credibility" and "further harass" her. (¶¶ 32-33). In short, virtually all her "first-hand" evidence would itself be inadmissible as speculation.

Indeed, Plaintiff's inadmissible characterization of Mr. Frey's intent is belied by the full context and content of Mr. Frey's Twitter messages, which Plaintiff attached to her opposition. Read in context, these tweets demonstrate that Mr. Frey is questioning whether Plaintiff violated the law in a jurisdiction, New Jersey, where he has no official role when she admittedly accessed O'Keefe's email account without his permission and downloaded seven years of his emails onto her own devices.  *See* Exhibit B to Naffe Decl. at 5-13.) Mr. Frey, like

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

anyone else, is entitled to question whether such conduct action violates the law, without having his commentary about actions taken a continent away mischaracterized as a declaration of intent to open a criminal investigation in Los Angeles County.  Indeed, Plaintiff has not alleged that Mr. Frey ever said or even implied that he was going to open such an investigation – which he had no authority to do in any event.

Unfortunately for Plaintiff, however, her Declaration does not – even if the Court credits her admissible, first-hand testimony completely – even remotely support her conclusions placing Patrick Frey at the fulcrum of her alleged woes. Not one of these allegations adds an iota of "probability" to the merits of Plaintiff's claim. Nor is there any other factual support, such as the testimony of any other person, disinterested or otherwise, or a properly authenticated document in the record, to support them. Plaintiff has utterly failed to meet burden of showing a reasonable probability of succeeding on the merits of her claims based on competent and admissible evidence," and her claim is therefore amenable to being struck under the anti-SLAPP statute.

### D. Plaintiff's Fails to Demonstrate a Probability of Prevailing on Her Claims as a Matter of Law.

As is noted above, Plaintiff offers no *admissible evidence* showing that she can prevail on her claims.  Moreover, she fails to rebut Mr. Frey's conclusive showing that she cannot prevail on any of her claims as a matter of law.

#### 1. Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot Succeed

In his Motion, Mr. Frey demonstrated that Plaintiff cannot prevail on her invasion of privacy claim because a PACER court record is, by definition, not private.  (Motion at 10-12.) Plaintiff responds with evasions and characterizations, but no pertinent facts or law.

Plaintiff does not dispute, because she cannot, that the deposition transcript on PACER was in the public record.  See *Mao's Kitchen, Inc. v. Mundy,* 209 Cal.App.4th 132, 149 (2012) ("Generally, courts have held that discovery materials filed with the court are publicly disclosed.")  Plaintiff admits that, "in general, the First Amendment protects from liability

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

1    disclosures of matters of public record," such as material posted on PACER. (Opposition at 8.)

2    But she argues that the PACER transcript of her deposition should be treated differently

3    because (she claims) the information was merely a "morbid and sensational prying into private

4    lives for its own sake," quoting *Diaz v. Oakland Tribune, Inc.*, 139 Cal.App.3d 118, 126 (Cal.

5    Ct. App. 1983).  "No public discourse regarding the Barn Incident was advanced by uncouth

6    discussions of Ms. Naffe's 2005 prescriptions or medical conditions," she urges.  (Opposition

7    at 9.)

8           Plaintiff is both mistaken and deliberately misleading. As is noted above, Plaintiff's

9    own evidence shows that Mr. Frey mentioned Plaintiff's medical conditions and the

10   medication she was taking *in the specific context of discussing whether the medication she was*

11   *taking could account for her believing she had been "drugged" by a small amount of alcohol*

12   *during the Barn Incident.*  (Exhibit A to Naffe Decl. at 1; Complaint at ¶ 15.)  Plaintiff's own

13   evidence shows that Mr. Frey did not otherwise emphasize Plaintiff's "private" information,

14   instead linking to the PACER-derived deposition transcripts. (Exhibit A to Naffe Decl. at 1-2.)

15          Plaintiff might be offended by the question. She might disagree. She might think that

16   whether she was on a drug that enhances the effects of alcohol has nothing to do with her

17   public claim that she was drugged.  But that doesn't make Mr. Frey's questions "morbid and

18   sensational prying into private lives for its own sake." In fact, Plaintiff's own evidence shows

19   that Mr. Frey referenced only a limited part of the deposition transcript supporting his specific

20   point – one part about a finding that Plaintiff had improperly retained a laptop given to her by

21   her employer (which went to her credibility), and one part about medication she had been

22   taking that might offer an alternative explanation for her professed perception that she had

23   been drugged.  (Exhibit A to Naffe Decl. at 1-2.)

24          Moreover, Plaintiff's citation of *Diaz* is unpersuasive given these facts and other

25   authority. California courts have held that if the "information reported has previously become

26   part of the 'public domain' or the intrusion into an individual's private life is only slight,

27   publication will be privileged even though the social utility of the publication may be

28   minimal."  *Forsher v. Bugliosi*, 26 Cal. 3d 792, 811 (1980). In *Wasser v. San Diego Union*,

191 Cal. App.3d 1455 (Ct. App. 1987), the court found newsworthiness as a matter of law by distinguishing the facts from those in *Diaz.* In *Diaz*, the *Wasser* court explained, "plaintiff had meticulously kept secret her former identity in order to preserve secrecy as to her sex-change operation. This information was made public in an article as a result of her student political activities in a community college, a matter totally unrelated to her transexual situation." In contrast, in *Wasser* the plaintiff – like the Plaintiff here – had not only made no such efforts; he kept the central events that had been a matter of public knowledge before the public. The court therefore rejected his arguments that the health information revealed was old and only tangentially related to the public issue at hand. Rejecting the suggestion of the plaintiff, like the plaintiff here, that public information becomes private merely by the passing of time, the court explained, referring to the gap between the filing of the lawsuit in 1985 and the events reported on eleven years earlier, that

> Wasser's history back through the events of 1974 are newsworthy as a matter of law. It is common knowledge criminal charges and their resolution, marriages and their dissolution, legal disputes between family members, and civil litigation almost without limitation, are customarily reported by radio, television and newspaper media. In Wasser's case, each step in the continued series of legal actions maintained—even whetted—the public interest in him and his family. . . . .

191 Cal. App. 3d at 1463. Similarly, here the facts in question were made public in connection with seven-year old civil litigation, in the context of criminal charges and their resolution, and have been continually re-injected into the public forum by Plaintiff herself. And here too, that certain specific facts related to that controversy were last "published" seven years ago hardly amounts to a statute of limitations on public consideration of their relevance to a controversy Plaintiff has labored to maintain as one of public interest.

Plaintiff also asserts that the PACER transcript should not be treated as public, thus allowing her to maintain an action for revelation of what was already public, because "Defendant does not, and could not, argue that Ms. Naffe is a public figure." In fact, Mr. Frey does argue it, and does so on the firmest of legal grounds.  An individual who, like Plaintiff, "voluntarily injects himself or is drawn into a particular public controversy . . . thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S.

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

1  323, 351 (1974).  Such a determination is appropriate here based on Plaintiff's "myriad

2  attempts to thrust [her] case . . . into the public eye," the standard applied in *Reader's Digest*

3  *Assn. v. Superior Court*, 37 Cal. 3d 244, 255 (1984). Plaintiff's status as a public figure was

4  addressed in the context of Mr. Frey's discussion of Plaintiff's diminished privacy

5  expectations, for which Mr. Frey quoted *Rosenfeld v. U.S. Dep't of Justice*, No. C-07-3240

6  EMC, 2012 WL 710186 (N.D. Cal., Mar. 5, 2012).

7          As to that last case, Plaintiff maintains that *Rosenfeld* is inapposite because it was

8  decided under the Freedom of Information Act ("FOIA").  While in FOIA cases there is a

9  strong presumption in favor of disclosure, Plaintiff insists, "This presumption is not applicable

10  to invasion of privacy torts."  (Opposition at 8.) Plaintiff cites no legal authority to support this

11  assertion. In fact, the language quoted from *Rosenfeld* is not premised on some policy specific

12  to FOIA. Rather, it expresses the same rule of law established by the U.S. Supreme Court in

13  *Gertz* (a tort case) and applied by the California Supreme Court in *Reader's Digest* (a tort

14  case) quoted above: "[P]ersons who have placed themselves in the public light, e.g., through

15  politics, or voluntarily participate in the public arena have a significantly diminished privacy

16  interest than others."  2012 WL 710186 at *5. That Plaintiff is such a person with respect to

17  the controversies in question cannot, on this record or otherwise, seriously be disputed. And

18  whether under FOIA or tort law, the law consistently defers to the public interest to know facts

19  relevant to a matter of public interest.

20          Indeed, it is necessary to consider whether the medical information at issue was

21  information which, by publication, gives rise to the tort in the first place.  It is not disputed that

22  among the elements of the tort of a public disclosure of private facts are that revelation of the

23  private fact "would be offensive and objectionable to the reasonable person."  *Moreno v.*

24  *Hanford Sentinel, Inc.* 172 Cal.App.4th 1125, 1129-30 (2009).  Notwithstanding the adjectives

25  sneeringly used to characterize the discussion on Mr. Frey's blog about Plaintiff's medical

26  history, at no point does she demonstrate how the *information* revealed by publication on the

27  blog was, in and of itself – that is, in contrast to *opinions* expressed about that history –

28  "offensive and objectionable."  The fact that Plaintiff did nothing about the information posted

1   on PACER for seven years, but objected only after being subjected to unpleasant and

2   uncomplimentary discussion about it on Mr. Frey's blog, suggests that it is this non-actionable

3   discussion and opprobrium she experienced, and not the revelation of medical data that had

4   been publicly available for years, that is the real gravamen of her complaint.  As a legal matter,

5   in fact, Plaintiff has waived her privacy claim by virtue of this acquiescence.  *See*, e.g.,

6   *Granger v. Klein*, 197 F. Supp. 2d 851, 866 (E.D. Mich. 2002) (plaintiff may have waived

7   private nature of the subject matter by allowing unauthorized photo to remain in the general

8   public for two years prior to publication in school yearbook).

9                  **2.     Plaintiff's False Light Defamation Claim Cannot Succeed**

10          In his Motion, Mr. Frey established that Plaintiff cannot prevail on her false light

11   invasion of privacy claim because it is derivative of her defamation claim and fails for the

12   same reasons.  (Motion at 15-16.) Plaintiff acknowledges Mr. Frey's point that false light

13   defamation claims are typically deemed duplicative of invasion of privacy defamation claims,

14   but insists that her Complaint is different:

15          Ms. Naffe's false light claim is [based on] Mr. Frey's relentless and harassing
           questioning about her failure to call a cab during the Barn Incident. (Naffe Decl. at ¶
16          17.)  These questions, though not statements of fact, were pregnant with accusation;
           they included an implied answer that Ms Naffe failed to call a cab because she was
17          lying about the Barn Incident. They implied she submitted a false report. Although not
           false statements of fact—and therefore not sufficient to support defamation—the
18          rhetorical questions Defendant posed ad nauseum undoubtedly painted Plaintiff in a
           highly offensive, false, accusatory light.
19

20          This evasion is breathtaking for two reasons. First, it comes only a few pages in the

21   Opposition after Plaintiff earnestly assured this Court that "[t]he Barn Incident is a red herring.

22   . . the basis for this suit is not his commentary on the Barn Incident." (Opposition at 6.)

23   Plaintiff cannot keep her theory straight, which supports the inference obvious even on its face

24   that the entire Complaint is meritless and intended to harass and oppress. Second, the

25   argument is stunning because it asserts – without any authority whatsoever – that Plaintiff is

26   entitled to sue people who ask rhetorical questions to probe the credibility of her accusations

27   against public figures. First Amendment be damned, says Nadia Naffe: When she accuses

28

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

someone of a crime, nobody has the right to question her story – or to question Nadia Naffe. Plaintiff cites no authority for this proposition because there is no such authority.

Moreover, Plaintiff's argument is disingenuous. Plaintiff admits that the gravamen of her *false light* claim is that Mr. Frey's questions implied that she was lying about the Barn Incident. And Plaintiff's *defamation* claim is also focused on statements suggesting Plaintiff was untruthful. These are not distinct accusations at all; they are precisely the sort of duplicative counts that fail under the authority Mr. Frey cited.  *Cannon v. City of Petaluma,* 2011 WL 3267714, *3 (N.D. Cal. 2011). The false light claim fails because it is duplicative of the defamation claim and because the defamation claim is meritless.

### 3.   Plaintiff's Defamation Claim Cannot Succeed

In his Motion, Mr. Frey established that Plaintiff cannot prevail on her defamation claim because the statements she complains of cannot be interpreted as provably true statements of fact as opposed to hyperbole and rhetoric in the course of a political dispute on the Internet.  (Motion at 13-15.)

Plaintiff responds weakly with mere characterizations, not facts or evidence.  She asserts that the relevant context is "Mr. Frey's concerted effort to suppress evidence of Mr. O'Keefe's wrongdoing"; that there was no ongoing dispute; and that "[t]his was harassment and intimidation in one direction only: from Mr. Frey toward [Plaintiff]."  (Opposition at 10.) But these attempts by Plaintiff to recharacterize her own allegations fail. She offers no authority to contradict the cases Mr. Frey cited, and points to no facts that change the analysis based entirely on her own admissions: That she was in a dispute with Mr. O'Keefe, a controversial public figure (¶ 12); that she resorted to blogging about her accusations to counter public coverage with which she disagreed (¶ 17); that Mr. Frey was commenting about her description of the Barn Incident (¶ 24); that Mr. Frey was commenting on articles that appeared in the media regarding Plaintiff and her claims (¶ 27); and that Plaintiff engaged Mr. Frey by making public threats to report him to the DA's Office and the State Bar (¶ 30). Plaintiff even admits that Mr. Frey's blog has the word "pontifications" *right in its title.* (¶ 23.) All of those establish exactly what Mr. Frey asserted in his Motion – a dispute over a

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

politically charged litigation, conducted on the Internet in terms characteristic of political disputes and Internet arguments.

Though Plaintiff attaches one of Mr. Frey's blog posts, and a sheaf of his tweets on Twitter (Exhibits A and B to Naffe Decl.), very tellingly she doesn't point the Court to anything therein that provides a basis on which the Court could conclude that she will probably prevail. That is because both exhibits show exactly what Mr. Frey argued, as summarized in the previous paragraph: that the relevant context is an Internet political argument conducted in typically vivid terms. That is why Mr. Frey's comments to Plaintiff are not susceptible to defamatory meaning.

Nor, for that matter, are Plaintiff's tweets, in which she articulates her transcendentally inane, and utterly speculative, theory that Mr. Frey has improperly given Mr. O'Keefe legal advice by writing blog posts about the case, a theory she tweets to someone with the handle "@ElectMarcoRubio":

> Thanks for letting me know Asst DA Patrick Fey [sic]/@Patterico is giving O'keefe [sic] legal advice.  I'm filing a CA bar complaint. @ElectMarcoRubio

> Patrick Fey [sic] aka @Patterico is an Asst DA at the Justice Dept & he's giving O'keefe legal advice for a defense on his blog?  @ElectMarcoRubio

(Exhibit B to Naffe Decl. at 9-10.) While it is not clear whether Plaintiff was simply being sloppy in referring to Mr. Frey as Patrick "Fey," or whether she was engaging in a childish homophobic slur, either would be characteristic of the medium of Twitter. And that is exactly why, as a matter of law, she cannot show that virtually any statements there, and certainly none that she has brought to the Court's attention, can be taken as provably false assertions of purported fact rather than as polemic or hyperbole.

In asserting her likelihood of success on the defamation claim, Plaintiff cites only one case, *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995). Mr. Frey cited *Yagman* for the proposition that accusations of dishonesty are not actionable if they are mere rhetoric rather than provably true. Plaintiff does not explain how *Yagman* supports her.

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

1    It does not. The context here – established by Plaintiff's own allegations and buttressed

2    by the submissions she has made in opposition to this motion – show much more clearly than

3    in *Yagman* that the expression in question is not reasonably susceptible to defamatory

4    meaning. Plaintiff's defamation claim fails.

5    ### 4.    Plaintiff's Claim for Severe Emotional Distress Cannot Succeed

6    In his Motion, Mr. Frey established that Plaintiff's claim for intentional infliction of

7    emotional distress fails because the rhetoric complained of amounted to mere insults, and such

8    insults concerning a matter of public interest are absolutely protected by the First Amendment.

9    Hitting this immovable legal wall with a thud, Plaintiff re-characterizes her allegations as

10   describing a "vicious harassment campaign," but cites no *facts* showing anything but a blogger

11   publicly disagreeing with and questioning Plaintiff's deliberately public allegations against a

12   public figure.

13   Plaintiff also repeats her transparently bogus assertion that Mr. Frey was not writing

14   about a subject of public interest, in a vain attempt to distinguish *Snyder v. Phelps*, 131 S.Ct.

15   1207 (2011). As discussed above, that attempt fails. Plaintiff cannot retract her admissions that

16   she deliberately embarked on a campaign of blogging about her accusations against a public

17   figure to correct what she saw as misconceptions in public coverage of it. She cannot cite

18   authority supporting her denial that this was a subject of public interest, and does not even try.

19   She cites no contrary authority at all, relying on her inadmissible information-and-belief

20   speculations about Mr. Frey's motives. Plaintiff also claims that the emotional distress she

21   allegedly suffered came about as a result of the disclosure of "private information" as opposed

22   to matters of public concern. The fallaciousness of this supposed distinction, and of the claim

23   that this information was in fact legally cognizable as private, has been addressed at length

24   herein and in Mr. Frey's moving brief.

25   In short, Plaintiff has merely repackaged all her other meritless claims and restated

26   them as intentional infliction of emotional distress – absent any competent proof of that

27   intention. She is manifestly not likely to prevail on this claim.

28

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

## 5. <u>Plaintiff's Claim for Negligence Cannot Succeed</u>

In his Motion, Mr. Frey established that Plaintiff's negligence claim fails because Cal. Civ. Code § 1798.85, cited by Plaintiff, does not create a private cause of action. Plaintiff responds that even if the statute doesn't create a cause of action, it creates a statutory duty to refrain from publishing a Social Security number – even, apparently, a Social Security number contained in a preexisting court record during a discussion of a political dispute. Plaintiff is wrong. She cites *no legal authority* to support the proposition that even as the California Legislature specifically and deliberately declined to create a private right of action, as Mr. Frey's Motion demonstrated, it still intended to create a statutory duty under § 1798.85 – a ridiculous result that would not only undermine the Legislature's intent but amount to upending it completely.

In fact, the proposition that the Legislature may reject creation of a private right of action in enacting a remedial statute, yet still establish through that enactment a negligence standard that amounts to the same thing, was explicitly considered, and rejected, in *Crusader Ins. Co. v. Scottsdale Ins. Co*., 54 Cal. App. 4th 121 (1997). In *Crusader* the court held that where, as here, "legislative history suggests that the Legislature purposefully refrained from creating" a private right of recovery when enacting remedial legislation, that legislation cannot nonetheless be deemed to have established a standard for such an action based on common law theories or arguments that the statute established a legislative "policy preference" enforceable at law. *Id.* at 136-7 (rejecting prior view that judges have discretion to create such causes of action if "needed").

Moreover, even if it could be argued that the statute did create a duty in contravention of the Legislature's clear intent, Plaintiff has not shown she could prevail under classic theories of negligence and causation. Plaintiff has not offered, and cannot offer, facts or law establishing that Mr. Frey could be negligent in re-publishing a *public court document* that had rendered public her Social Security number for years, which she had failed to address through a motion to seal or any other method. To the contrary, any court would be reluctant to impose liability in such circumstances even if the negligence standard Plaintiff has invented actually

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

760628.1

1    existed.  *See*, *Johnson v. Nw. Airlines, Inc.*, C 08-02272 VRW, 2009 WL 839044 (N.D. Cal.

2    Mar. 30, 2009) (in claim under medical records privacy law, where plaintiff discloses or

3    consents to the disclosure of "a significant part of the communication," privilege with respect

4    to such communication is waived; citing Cal Evid. Code § 912).

5    **V.    PLAINTIFF HAS NOT DEMONSTRATED THAT DISCOVERY WILL
             BOLSTER HER FACIALLY MERITLESS CLAIMS**

6

7            Plaintiff asks the Court to grant her discovery to seek evidence supporting her claims

8    rather than dismissing the Complaint under the anti-SLAPP statute. The Court should refuse to

9    accept Plaintiff's invitation to extend this meritless litigation by giving Plaintiff license to

10   engage in malicious political harassment under the rubric of "discovery" – an outcome whose

11   virtual certainty is demonstrated by Plaintiff's own promises of it, as set out below.

12           Plaintiff cites two cases for the proposition that she is entitled to discovery to resist an

13   anti-SLAPP motion in federal court.  But in both of those cases, the plaintiffs articulated

14   *specific* avenues of discovery that might have been used to prove they could succeed on the

15   merits. In *Rogers v. Home Shopping Network*, 57 F.Supp. 973 (C.D. Cal. 1999), the plaintiff

16   "identified specific discovery which she must obtain before being able to oppose the special

17   motion," including the identity of an alleged confidential source, and articulated how that

18   evidence was relevant – specifically, to establishing the defendant's knowledge that an

19   allegedly defamatory publication was false.  *Id.* at 985.  Similarly, in *Metabolife Int'l, Inc. v.*

20   *Wornick*, 264 F.3d 832 (9th Cir. 2001), the Ninth Circuit directed the district court to allow

21   discovery on remand into a limited issue specifically identified by the plaintiff – the identity of

22   the experts the defendant had relied on in making a pronouncement about the safety of

23   plaintiff's product.  *Id.* at 845-846.

24           By contrast, courts recognize that a plaintiff is not entitled to discovery – even in

25   federal court – when the plaintiff cannot articulate how the discovery would be relevant to

26   opposing an anti-SLAPP motion. Thus, in *Price v. Stossel*, 590 F.Supp.2d 1262 (C.D. Cal.

27   2008), this Court denied the plaintiff's motion for discovery to oppose an anti-SLAPP motion

28   in a defamation case where the motion was premised on the argument that the expression

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

18

1   complained of was not susceptible to defamatory meaning. The proposed discovery into the

2   defendant's intent was therefore irrelevant because the plaintiff "cannot show that the

3   discovery he seeks is essential to his opposition." *Id.* at 1270-71.

4          This case is like *Price*, not like *Rogers* or *Metabolife*. Faced with a litany of flaws in her

5   Complaint, Plaintiff completely fails to articulate what discovery she seeks to take, or how that

6   discovery would help her resist this motion.  Moreover, the issues presented in the anti-SLAPP

7   motion are issues of law, because the facts in play have dictated entirely by Plaintiff's own

8   admissions in her Complaint and her submissions made in opposition to this motion – not by

9   virtue of some cache of unspecified undiscovered facts.

10          Therefore the Court should refuse to grant Plaintiff's amorphous request for discovery

11   or require her to show what particular discovery she seeks to take and how, exactly, that

12   discovery would allow her to resist the Motion. Mr. Frey respectfully submits that, in doing so,

13   the Court consider Plaintiff's own public statements that she views discovery as an avenue to

14   further harass and retaliate against Plaintiff and even against other bloggers. Specifically,

15   Plaintiff has bragged that she will use the discovery process in this case to discover the identity

16   of an anonymous political blogger who writes under the name "Ace of Spades" even though he

17   is an utter stranger to this case, and has further crowed that she will use this case to inquire

18   into how Mr. and Mrs. Frey bought their home.  (Declaration of Patrick Frey at ¶¶ 3-4; Exhibit

19   A to Frey Decl. at 23-24; Exhibit B to Frey Decl. at 33-34.)

20          These cynical threats, uttered publicly in contemptuous disregard for legal and moral

21   norms and belying any claim of good faith, are not a little ironic for a Plaintiff claiming

22   "intimidation and harassment" by Mr. Frey. The difference between Plaintiff's harassment and

23   the harassment she alleges by Mr. Frey, however, is that it is Plaintiff, not Mr. Frey, who is

24   attempting to abuse the law and this Court to realize her illegitimate goals to silence,

25   intimidate and punish free speech.

26          This is exactly the conduct the anti-SLAPP law was enacted to prevent.

27   //

28

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

---

19

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

## VI.   <u>CONCLUSION</u>

As demonstrated in his original submission, the Complaint falls squarely within the ambit of the anti-SLAPP statute.  The complained-of expression is protected, and Plaintiff cannot prevail on her claims.  Therefore the Court should strike, without leave to amend, the Second through Sixth Causes of Action.  Upon the Court granting the Motion, Mr. Frey will timely file a motion for attorney fees in accordance with Code of Civil Procedure § 425.16(c).

DATED:  November 26, 2012              Respectfully submitted,

GOETZ FITZPATRICK LLP LLP

By   *s/Ronald D. Coleman*
RONALD D. COLEMAN
Attorneys for Defendants
JOHN PATRICK FREY AND
CHRISTI FREY

DATED:  November 21, 2012              Respectfully submitted,

BROWN WHITE & NEWHOUSE LLP

By   *s/Kenneth P. White*
KENNETH P. WHITE
Attorneys for Defendants
JOHN PATRICK FREY AND
CHRISTI FREY

20

760628.1