UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-8443-GW(MRWx) | Date | December 10, 2012 |
| Title | Nadia Naffe v. John Patrick Frey, et al. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Jason S. Leiderman             Kenneth P. White
                                               Paul B. Beach

PROCEEDINGS:     **DEFENDANTS JOHN PATRICK FREY AND CHRISTI FREY'S MOTION TO STRIKE THE SECOND THROUGH SIXTH CAUSES OF ACTION OF THE COMPLAINT (filed 11/12/12)**

**DEFENDANTS JOHN PATRICK FREY AND CHRISTI FREY'S MOTION TO DISMISS FIRST THROUGH SIXTH CAUSES OF ACTION OF THE COMPLAINT (filed 11/12/12)**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative and for reasons stated on the record, defendants' motions are **GRANTED WITH LEAVE TO AMEND.** Plaintiff will have until to December 21, 2012 to **manually** file a First Amended Complaint. Defendants will have until January 11, 2013 to respond.

Defendant Steve M. Cooley's Motion to Dismiss Complaint, filed on November 21, 2012, and set for December 20, 2012, is vacated and **taken off-calendar.**

                                                                                                                           :     10

Initials of Preparer    JG

*Naffe v. Frey, et al.*, Case No. CV-12-8443 GW (MRWx)
Tentative Rulings on: (1) Motion to Dismiss First Through Sixth Causes of Action in Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (2) Motion to Strike the Second Through Sixth Causes of Action of the Complaint Pursuant to California's Anti-SLAPP Law, California Code of Civil Procedure § 425.16

Nadia Naffe ("Plaintiff") sued John Patrick Frey, Christi Frey, Steve M. Cooley and the County of Los Angeles for violation of 42 U.S.C. § 1983, public disclosure/ invasion of privacy, false light/invasion of privacy, defamation, intentional infliction of emotional distress, negligence, and negligent supervision. The Freys are deputy district attorneys supervised by Defendant Cooley. *See* Complaint ¶¶ 4-6.

Plaintiff claims that she was a personal friend and professional colleague of James O'Keefe, "a conservative activist specializing in producing undercover videos that style themselves as 'exposés' of liberal political misdeeds," and the Freys are among O'Keefe's admirers. *See id.* ¶¶ 11-12, 18. In or around Fall 2011, Plaintiff rejected romantic overtures from O'Keefe. *See id.* ¶ 15. Plaintiff asked O'Keefe to cease harassing her following an October 2011 incident in which O'Keefe attempted to sexually assault her in a New Jersey barn.[1] *See id.* O'Keefe then threatened to sue Plaintiff if she contacted law enforcement about the barn incident. *See id.* Plaintiff had also been involved in an incident in which O'Keefe wire-tapped Congresswoman Maxine Waters's office in Los Angeles and the office of OneUnited, the bank that employed Waters's husband. *See id.* ¶ 21.

Mr. Frey publishes a blog called "Patterico's Pontifications," on which he posted eight articles concerning Plaintiff between February and March 2012, and actively participated in comment threads stemming therefrom. *See id.* ¶¶ 23-24. He also "tweeted" several dozen threatening, harassing and defamatory statements about Plaintiff during that time period. *See id.* ¶ 24. Among other things, he described Plaintiff as a liar, illiterate, callous, self-absorbed, despicable, a smear artist, dishonest, and absurd, along with raising questions about her participation in the barn incident. *See id.* ¶¶ 24, 27, 60.

---

[1] It is worth emphasizing here that, at this stage, the Court merely assumes the truth of Plaintiff's factual allegations.

1

Plaintiff alleges that Mr. Frey published other out-of-context material in an attempt to discredit any effort by Plaintiff to participate in any investigation of O'Keefe arising out of the Maxine Waters wiretapping incident. *See id.* ¶¶ 25-27.[2]

Then, Plaintiff began posting material on her own blog in March 2012, in an effort to combat misconceptions about the barn incident, and disclosing information relating to the Waters wire-tapping incident. *See id.* ¶ 28. Following Mr. Frey's later publication on his blog of several documents related to a civil suit between O'Keefe and Plaintiff, Plaintiff "tweeted" that she intended to report Frey to the District Attorney's office and the California State Bar for misusing government time and resources by blogging and tweeting about Plaintiff's disputes with O'Keefe. *See id.* ¶ 30; *see also* ¶¶ 38-40, 74.

Mr. Frey then published to his blog over 200 pages of a 2005 deposition transcript from an unrelated civil matter between Plaintiff and her former employer. *See id.* ¶ 31. The transcript contained a great deal of Plaintiff's private information, including her social security number, date of birth, maiden name, mother's maiden name, family address, and information about her medical condition and then-current medications. *See id.* ¶ 31. Though Mr. Frey soon thereafter removed the transcript from his webpage, the information was available in a web "cache" for several weeks or months. *See id.* ¶¶ 33-35. Individuals are now fraudulently using her social security number, according to reports Plaintiff has received from a credit reporting agency. *See id.* ¶ 34.

Plaintiff summarily accuses Mrs. Frey and Cooley of being involved as well. *See id.* ¶¶ 36-37, 73-78. Among other things, Plaintiff asserts Cooley had received complaints about Mr. Frey's behavior and allowed him to use his position with the District Attorney's office to gain influence in the conservative blogging community and to intimidate Plaintiff from coming forward as a witness. *See id.* ¶¶ 75-78.

Plaintiff alleges the state action necessary for her Section 1983 claim by way of an assertion that Mr. Frey acted under color of state law in his harassment of Plaintiff via his website, blog and Twitter account. *See id.* ¶ 44. She alleges First Amendment and due process violations. *See id.* ¶¶ 45-46.

---

[2] In addition to protecting O'Keefe, Plaintiff alleges Mr. Frey engaged in such conduct to protect the reputation of "the late conservative media mogul Andrew Breitbart," who had also pontificated about the barn incident, and whom Plaintiff "publicly challenged" in her blog and via Twitter. *See id.* ¶¶ 17, 36.

2

The Freys have moved to dismiss claims one through six pursuant to Fed. R. Civ. P. 12(b)(6) and to strike claims two through six pursuant to California's anti-SLAPP procedure, California Code of Civil Procedure § 425.16. On November 19, 2012, Plaintiff voluntarily dismissed this action, in its entirety (though without prejudice), as to Christi Frey, and dismissed Cooley (again, without prejudice) with respect to claims two through seven. Insofar as Plaintiff has dismissed Christi Frey, the following analysis will focus upon Plaintiff's claims against Mr. Frey. Before proceeding to the analysis of the motions, however, the Court addresses jurisdictional issues.

*Supplemental Jurisdiction and Diversity Jurisdiction*

This Court is under an independent burden to confirm its own subject matter jurisdiction over a matter before it. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838, *amended*, 387 F.3d 966 (9th Cir. 2004). Plaintiff asserts that the Court has both federal question and diversity jurisdiction over this action. However, at the moment, her diversity-based allegations are insufficiently pled. First, she alleges only that she *resides* in "either Massachusetts or Florida." Complaint ¶ 3. Putting aside the fact that it would seem Plaintiff should know whether she resides in one state or the other, a party's *residence* does not answer the necessary question for diversity purposes. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001) ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency . . . . The natural person's state citizenship is . . . determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state.") (omitting internal citations).

Beyond even that, however, although Plaintiff alleges that the amount in controversy exceeds $75,000, *see* Complaint ¶ 1, the Court has some question in that regard. *See McNutt v. General Motors Accept. Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("If [a plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging

3

jurisdiction justify his allegations by a preponderance of evidence."); *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1052 (5th Cir. 1982) ("While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury."); *see also Christensen v. Northwest Airlines, Inc.*, 633 F.2d 529, 530-31 (9th Cir. 1980) (affirming district court's finding that plaintiff's damages claim was not made in good faith but only for the purpose of obtaining federal court jurisdiction and that the injury was too small to establish requisite amount of damages); *PhotoThera, Inc. v. Oron*, No. 07CV490, 2007 U.S. Dist. LEXIS 89053, *19-23 & n.4 (S.D. Cal. Dec. 4, 2007) (dismissing claims where jurisdictional minimum allegations unsupported by any factual allegations); *Waldbewohner v. Taxation Dep't*, No. C 93-1729 SBA, 1993 U.S. Dist. LEXIS 8814, *4 n.1 (N.D. Cal. June 11, 1993) ("Courts will on occasion also dismiss diversity actions where convinced that the injury was so minor that no judgment exceeding the jurisdictional minimum could be sustained."); Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial (2011) §§ 2:1786-1795, at 2C-83 – 84. The parties may discuss with the Court whether these defects (residence/citizenship and amount in controversy) should be cured (assuming they are to be cured at all) by way of an amended complaint or by some other form of filing, but the end-result of the defects is that the Court will not address the state-law claims to the extent they are before the Court only by way of diversity jurisdiction.

  Of course, the Court also has jurisdiction over the state-law claims by way of supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). That being said, there is one, and possibly two, reasons for why the Court would not exercise supplemental jurisdiction over those claims. First, the state law claims predominate in this action, meaning that the Court can decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(2). *See also, e.g., Patel v. Penman*, 103 F.3d 868, 877 (9th Cir. 1996) (finding district court did not abuse discretion in severing section 1983 claim from inverse condemnation action), *overruled in part on other grounds as recognized in Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007); *Diven v. Amalgamated Transit Union*, 38 F.3d 598, 602 (D.C. Cir. 1994) ("[T]he apparent weakness of [a federal] claim…is…a factor to be weighed in

determining whether the state claim 'substantially predominates.'").[3] Second, if the Court dismisses the Section 1983 claim with prejudice (which, as set forth below, is a distinct possibility given the briefing of the instant Rule 12(b)(6) motion), the Court would decline to exercise jurisdiction under 28 U.S.C. § 1367(c)(3). *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*).

As a result of the above issues, the Court's current analysis of the two pending motions is limited to the Rule 12(b)(6) challenge to Plaintiff's Section 1983 claim (the Section 1983 claim is not addressed by the anti-SLAPP motion). It is to that subject that this analysis now turns.

*Applicable Legal Standard*

Under Rule 12(b)(6), concerning whether a complaint has properly stated a claim, a court is to (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990);

---

[3] Plaintiffs' numerous state law claims will require greater effort to adjudicate than Plaintiffs' single Section 1983 cause of action. While the state claims and the Section 1983 claim arise under the same set of facts, the state law causes of action will, in all likelihood, dominate the litigation in terms of the elements, evidence, time and complexity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966) ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."). Indeed, even putting aside the numerous elements that must be assessed and proven in connection with the state law claims that are entirely distinct from any Constitutional claim, the state law claims have *already* invited an anti-SLAPP motion.

*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 562-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

In its consideration of the motion, the court is limited to the allegations on the face of the complaint/counter-claim (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir.), *cert. denied*, 512 U.S. 1219 (1994), *overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

### *Plaintiff's Section 1983 Claim*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In other words, "[i]n order to recover under § 1983 for conduct by the defendant, a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

As noted above, Plaintiff locates the necessary state action for her Section 1983

claim in her allegation that Mr. Frey acted under color of state law in his harassment of Plaintiff via his website, blog and Twitter account. *See* Complaint ¶ 44; *see also id.* ¶¶ 9, 38-40. Given the *factual* allegations in her Complaint, the Court will not credit that conclusory assertion.[4] *See Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) ("Conclusionary allegations, unsupported by facts, will be rejected as insufficient to state a claim under the Civil Rights Act.") (omitting internal punctuation and quotation marks) (quoting *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)); *id.* ("[A] defendant is entitled to more than the bald legal conclusion that there was action under color of state law."); *see also Warren*, 328 F.3d at 1139.

Apart from her assertion that Mr. Frey used his blog and Twitter account as a vehicle for his thoughts and opinions during the time he was supposed to be working as a district attorney and using resources made available to him as a district attorney, *see* Complaint ¶¶ 24, 29-30, there is nothing *Mr. Frey did* which in any way suggested he was "pontificating" in his role as a district attorney.[5] His decisions in this regard conceivably might have violated some conduct-related rule(s) within the District Attorney's office, but that does not turn his personal actions into actions under color of state law. Moreover, that *others* might have identified him as a district attorney in their

---

[4] Although Steve Cooley and the County of Los Angeles are also defendants on Plaintiff's Section 1983 claim, if Mr. Frey was not acting under color of state law, there would seemingly be no basis for Section 1983 liability against Cooley (in his supervisory role) or the County because, apart from his alleged neglectful supervision of Mr. Frey, Cooley is not alleged to have done anything *vis a vis* Plaintiff. In *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996), the Ninth Circuit dealt with an argument to the contrary: "The Van Orts rely on *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988)...for the proposition that the County is liable for the constitutional violations caused by its policies regardless of whether the final actor was acting under color of state law." *Id.* at 836-37 (citing *Bateson*, 857 F.2d at 1304). Yet, the Court commented that "*Bateson* does not purport to establish a far-reaching constitutional right to freedom from constitutional violations committed by private actors. *Bateson* merely raises the question whether a municipality's policy can 'cause' injury when a government employee clearly acts outside his scope of employment or does not act under color of law." *Id.* In other words, *Bateson* is about liability for negligence, not a Section 1983 violation. Even if *Bateson* would stand for the proposition that the *Section 1983* claim could continue against Cooley and the County even if Mr. Frey was not acting under color of state law, the Court still would not address the state-law claims in this case *now* given the deficient jurisdictional allegations and the scope of its discretion under 28 U.S.C. § 1367(c). Cooley has a pending motion to dismiss that is set for hearing December 20, 2012. Whether that motion remains on calendar depends on what Plaintiff does, if anything, in response to the ruling on this motion.

[5] Indeed, Plaintiff's Complaint admits that Mr. Frey's blog "includes a disclaimer that [his] statements contained therein are 'personal opinions...not made in any official capacity,'" Complaint ¶ 38, but she simply posits (based, apparently, on nothing that *Mr. Frey* has done or said) that the disclaimer is "illusory and false."

7

comments on his blog or "tweets," see Complaint ¶ 39, is irrelevant for this purpose. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839 (9th Cir. 1996) ("Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law."). Plaintiff has cited no case even remotely suggesting that what she has alleged here amounts to "state action" by Mr. Frey.

Instead, as Mr. Frey plainly explains in his motion, the Ninth Circuit instructs that "[i]f a government officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen," *Van Ort*, 92 F.3d at 835, and that an "off-duty" public employee acts under color of state law when he or she "invoke[s]" his or her public status in the course of a private act, which, among other things, requires that the actor act, purport, or pretend to act in the performance of his or her official duties and that the conduct be related in some meaningful way either to the officer's governmental status or to the performance of his or her duties, *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006); *see Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1057-58 (9th Cir. 1998); *Van Ort*, 92 F.3d at 838; *see also Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150-51 (3d Cir. 1995). In cases where the public employee never invokes his or her public role, private action is not transformed into state action. *See Huffman*, 147 F.3d at 1056, 1058 (noting, repeatedly, that off-duty deputy did not indicate his deputy status, despite written department policy that he do so); *Van Ort*, 92 F.3d at 833, 838-39. In short, a public employee does not wear his or her "public employee hat" at all times, no matter what their activities, even if those activities have some tangential relation to their role(s) or duties.[6] *See Anderson*, 451 F.3d at 1068 ("[W]hether a[n]…officer is acting under color of state law turns on the nature and circumstances of the officer's conduct

---

[6] The relationship of speech activities to a public employee's duties unquestionably is relevant to any action a public employee's employer takes against the employee. *See generally Garcetti v. Ceballos*, 547 U.S. 410 (2006). We are not confronted with that situation here, however. Conceivably, Plaintiff might have attempted to make use of the statement in *Huffman v. County of Los Angeles* that "an officer who is pursuing his own goals and is not in any way subject to control by his public employer does not act under of color of law, unless he purports or pretends to do so," 147 F.3d 1054, 1058 (9th Cir. 1998) (emphasis added, internal punctuation and quotation marks omitted), to make a perhaps-interesting argument that *Garcetti* would have allowed the District Attorney's office to "subject [Mr. Frey] to control." But she has not made that argument, and the Court has found no case analyzing or sustaining it.

8

and the relationship of that conduct to the performance of his official duties.") (omitting internal quotation marks) (quoting *Martinez*, 54 F.3d at 986); *Martinez*, 54 F.3d at 986 ("Logically, then, not every action undertaken by a person who happens to be a police officer is attributable to the state.").[7]

Merely using the government employer's resources during the course of a private act does not transform private behavior into state action. *See Huffman*, 147 F.3d at 1056, 1058 (noting that gun off-duty deputy used to shoot and kill individual was "loaded with department-issued ammunition"); *Van Ort*, 92 F.3d at 839 (concluding that off-duty police officer engaging in a home robbery and carrying handcuffs and a gun was, as a matter of law, insufficient to show action under color of state law); *Martinez*, 54 F.3d at 987-88; *compare McDade v. West*, 223 F.3d 1135, 1140-41 (9th Cir. 2000) (finding action under color of state law where county employee accessed database that she was authorized and expected to access as part of her official duties and did so during normal working hours, using computer equipment and a password supplied by the county). Again, Mr. Frey's employer might have reason to question the propriety of his behavior here, but this does not mean that Plaintiff has a federal case.

Plaintiff has no response to this case law other than to direct the Court to material that is not in her Complaint. Obviously, the Court may not consider that material on this motion. *See, e.g., Lee*, 250 F.3d at 688-89.

Even if it were permitted to consider that material, either for purposes of deciding this motion or for purposes of deciding whether Plaintiff should be given leave to amend her Section 1983 claim, Plaintiff has not demonstrated that any amendment based on this

---

[7] Although it is by no means on-all-fours, this case shares some aspects in common with *Gritchen v. Collier*, 254 F.3d 807 (9th Cir. 2001), where the Ninth Circuit considered a situation involving a Long Beach police officer's threat to sue a citizen for defamation stemming from the citizen's complaint about the officer's conduct during a traffic stop. In that case, the Ninth Circuit commented as follows:

> No one suggests that threatening suit or bringing it is one of Collier's duties as a police officer. So far as the record discloses, the Long Beach Police Department had nothing to do with his doing so. Its approval was not required, nor would its disapproval matter. Collier's decision to threaten suit is not subject to the control of the Department. Pursuing private litigation does not abuse Collier's position or authority as a police officer, and Gritchen does not argue otherwise. Beyond this, a defamation suit is quintessentially personal; it is to redress reputational injury . . . . In these circumstances, Collier's action in this case is indistinguishable from the private squabbles that we, and other circuits, have consistently refused to attribute to the state.

Id. at 813.

9

material would not be futile. *See, e.g., Silva v. Di Vittorio*, 658 F.3d 1090, 1105-06 (9th Cir. 2011) (indicating that district court does not err when it denies leave to amend due to futility of amendment); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041-43 (9th Cir. 2011). Plaintiff directs the Court to paragraph 27 of her declaration filed in connection with her opposition to the pending anti-SLAPP motion. In that paragraph she alleges that Mr. Frey contacted her on Twitter on March 23, 2012, stating "My first task is learning what criminal statutes, if any, you have admitted violating." Docket No. 20-1, ¶ 27. This "tweet" comes closest to invoking Mr. Frey's public status, but the parties give the Court no context illuminating what was at issue at the time Mr. Frey issued this comment. From the Court's perusal of the exhibits to Plaintiff's declaration, it would appear that Mr. Frey was referring to Plaintiff's conduct in connection with her possession of a laptop belonging to her former employer, the Florida Republican Party. *See* Docket No. 20-1, Exh. A, at 1; *id.*, Exh. B, at 3-6. If that is the case, it is unclear how the Court could infer an "under color of state law" act by a Los Angeles County District Attorney, when there is no apparent connection between that issue and any jurisdiction over which Mr. Frey would have any authority. Indeed, subsequent to the comment quoted above, Mr. Frey "tweeted" a request for a citation to a *federal* statute.

Plaintiff also points the Court to a comment made by Ken White (Mr. Frey's local counsel in this litigation) that he thought Mr. Frey's comments on his blog was "the most thorough consideration of exculpatory evidence that [he] ha[d] ever seen from a Los Angeles County Deputy District Attorney."[8] *See* Docket No. 18, at 7:18-23 (referencing Ken White, Nadia Naffe Won't Shut Up, But She'll Threaten You To Make You Shut Up, Popehat (Mar. 26, 2012), http://www.popehat.com/2012/03/26/nadia-naffe-wont-shut-up-but-shell-threaten-you-to-make-you-shut-up/. Again, however, what *someone else* says about Mr. Frey does not turn Mr. Frey's behavior into action under the color of state law, or state action. *See Van Ort*, 92 F.3d at 839.

This material, which does not inform whether or not the Court should dismiss the instant allegations, does inform whether the Court would conclude that any attempt by Plaintiff to amend her allegations should be deemed futile. The Court would therefore

---

[8] If true, that could be considered a sad commentary on that office.

10

determine whether this is all Plaintiff has further to offer on the question of state action undertaken by Mr. Frey. If so, the Section 1983 claim would be dismissed *without* leave to amend,[9] and the Court would have to determine what, if anything, Plaintiff planned to do about her diversity allegations. If the answer is "nothing" and Plaintiff is unable to persuade that she still may maintain an action against Cooley and the County under Section 1983 then the Court would dismiss the remaining claims pursuant to 28 U.S.C. § 1367(c)(3). If the answer is "nothing" and Plaintiff does persuade that she still would have a viable Section 1983 claim against Cooley and/or the County then the Court would dismiss the remaining claims pursuant to 28 U.S.C. § 1367(c)(2).

---

[9] Because it does not appear at present that Plaintiff has properly pled the necessary state action for a Section 1983 claim, the Court has no need to address the other element – whether Plaintiff has pled a sufficient Constitutional violation. If the Court were to address that issue, Plaintiff's due process claim, at a minimum, appears on first glance to have little chance of surviving the pleadings (though it would not conclusively resolve that issue without analyzing it further).

11