JASON S. LEIDERMAN, SBN 203336
jay@leidermandevine.com
JAMES B. DEVINE, SBN 205270
james@leidermandevine.com
LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Attorneys for Plaintiff
NADIA NAFFE, an individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NADIA NAFFE, an individual, | Case No.: CV12-08443-GW (MRWx) |
| Plaintiff, | Complaint Filed: October 2, 2012<br>Judge: Hon. George H. Wu |
| vs. | **FIRST AMENDED COMPLAINT FOR:** |
| JOHN PATRICK FREY, an individual, and the COUNTY OF LOS ANGELES, a municipal entity, | **(1) VIOLATIONS OF 42 U.S.C. § 1983;**<br>**(2) PUBLIC DISCLOSURE INVASION OF PRIVACY;**<br>**(3) FALSE LIGHT INVASION OF PRIVACY;** |
| Defendants. | **(4) DEFAMATION;**<br>**(5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>**(6) NEGLIGENCE; and**<br>**(7) NEGLIGENT SUPERVISION** |
| | **JURY TRIAL DEMANDED** |

**COMES NOW PLAINTIFF** NADIA NAFFE, an individual ("PLAINTIFF"), who sets forth the following causes of action against Defendants JOHN PATRICK FREY, an individual ("FREY"), and the COUNTY OF LOS ANGELES ("COUNTY"), a municipal entity, and each of them, and who alleges as follows:

///

///

First Amended Complaint, Page - 1

**JURISDICTION**

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case involves at least one federal question, namely, it alleges that Defendants FREY and COUNTY are liable for damages under 42 USC § 1983.  It also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties in this case are completely diverse (see Paragraphs 3 and 4, *infra*) and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy–Five Thousand Dollars.  Further, the Court has pendent jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

**VENUE**

2.      The allegations sued upon herein arose in Long Beach and Los Angeles, California. Venue therefore lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

3.      PLAINTIFF Nadia Naffe is a sexual assault victim mercilessly re-victimized and savagely dragged through a public defaming by Defendant Deputy District Attorney John Patrick FREY aka "PATTERICO," a state actor with a bully pulpit, who committed his misdeeds in both his official and unofficial capacities.  She was at all relevant times prior to August 2011, residing and domiciled in the state of Florida, and at all relevant times after August 2011, was and is residing and domiciled in the state of Massachusetts.

4.      PLAINTIFF is informed and believes and based thereon alleges that Defendant FREY was and now is an individual residing and domiciled in Los Angeles County, California, and at all times is, and was at all times mentioned herein, a Deputy District Attorney in Los Angeles County, employed by Defendant COUNTY and supervised by former elected District Attorney STEVE M. COOLEY.  FREY was admitted to the State Bar of California on December 13, 1993, and is, and was at all times referred to herein, an attorney at law licensed to practice in California, subject to the laws of the State of California, the Rules and Regulations of the State Bar Act and the Rules of

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Professional Conduct.   Many of the complained of actions herein were done during District Attorney business hours and from COUNTY facilities with the knowledge and consent of the COUNTY.

5.      PLAINTIFF is informed and believes and based thereon alleges that STEVE M. COOLEY, an individual ("COOLEY"), was and now is an individual residing and domiciled in Los Angeles County, California, and at all times is, and was at all times mentioned herein, the then-elected District Attorney in Los Angeles County and employed by Defendant COUNTY.

6.      PLAINTIFF is informed and believes and based thereon alleges that Defendant COUNTY was and now is a municipal entity organized and existing under the laws of the State of California.

7.      FREY and the COUNTY are referred to herein collectively as the "DEFENDANTS."

8.      PLAINTIFF is informed and believes and based thereon alleges that, at all times mentioned, FREY, in doing the things herein mentioned, was acting within the scope of his authority as an agent and employee with the permission and consent of COOLEY and the COUNTY.

## FACTUAL ALLEGATIONS

### A.      FREY USES HIS TITLE OF DEPUTY DISTRICT ATTORNEY AS A BADGE ON THE INTERNET.

9.      PLAINTIFF is informed and believes and based thereon alleges that FREY publishes a "blog" on the Internet under the moniker "Patterico."  The blog is known as "Patterico's Pontifications" and is accessible at the public URL http://patterico.com.

10.      PLAINTIFF is informed and believes and based thereon alleges that FREY's online persona "Patterico" is inextricably intertwined with his official persona, "Deputy District Attorney Patrick Frey"; that he uses that status to harass and intimidate his political enemies; and that he has made numerous statements invoking his official position and title as Deputy District Attorney for the COUNTY, including the following:

First Amended Complaint, Page - 3

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

a.  On a page titled "About Patterico" and featured on a special, non-blog URL (http://patterico.com/about-patterico), FREY makes his official position a centerpiece: "**Patterico is a prosecutor in Los Angeles County.**  He grew up in Fort Worth, Texas, majored in music and English at Cornell University, and attended the University of Texas Law School in Austin, Texas. **Before accepting a job as a Deputy District Attorney**, he was law clerk to the Honorable William D. Keller, U.S. District Judge for the Central District of California, and an associate in the Los Angeles office of Shearman and Sterling.  [¶]  **In addition to prosecuting criminals**, **Patterico maintains a blog called Patterico's Pontifications.**  Topics include media bias, legal issues, and political discussion from a libertarian/conservative perspective.  A frequent target of criticism is the *Los Angeles Dog Trainer* (aka the *Los Angeles Times)*."

b.  On June 16, 2006, in a post titled "Nonsense About First-Time Drug Offenders from Pattt Morrison", FREY wrote:  "**In eight and one-half years in the District Attorney's Office,** I cannot recall a single occasion when I have seen a defendant with no criminal convictions sent to prison for a drug offense — whether it be simple possession, or even possession with intent to sell.  **I asked my wife, who has eleven years experience as a Deputy D.A., and she says the same thing.  In fact, neither she nor I have ever even *heard* of such a thing happening.**"

c.  On August 15, 2006, in a post titled "Patterico the Predictor", FREY, reflecting on an old incorrect prediction about the outcome of the O.J. Simpson trial, wrote:  "**P.S. I wasn't a Deputy D.A. yet.**"

*d.*  On November 16, 2006, in a post titled "Here's That Number, Sir . . .", discussing an anecdote during which a police officer gave FREY an incorrect number for the Internal Affairs office, FREY wrote:  "**But we Deputy DA's are suspicious by nature.**"

e.  On March 28, 2007, in a post titled "California Court Upholds Prosecution's Right to Seek High Term Prison Sentences", FREY discusses his own official work as a District Attorney for the COUNTY.

First Amended Complaint, Page - 4

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

f.  On March 29, 2007, in the comments section of the same post, responding to another commenter, FREY, acting in his capacity as a District Attorney wrote:  "In your world, every **prosecution is** of an innocent person, and prosecutors "start[] hanging a bunch of aggrivating [sic] circumstances" on defendants for no reason . . . willy-nilly, in virtually any given case.  B**ut your world** has nothing to do with **the world I know**, and you are clearly 100% ignorant of the nature of the process you are discussing."

g.  On April 1, 2007, in a post titled "Charlton Was Right to Demand Taped Confessions",   FREY **wrote:  "The** *New York Times* has an interesting article about fired U.S. Attorney Paul Charlton's battle to get the FBI to record interviews with criminal suspects.  [¶]  It's frankly shocking to me to learn that the FBI is resistant to this.  **As a Deputy D.A., I have generally found that the more competent, hardworking, and experienced my investigators are, the more likely they are to tape-record interviews with suspects — and, often, with witnesses as well.**  [¶]  I don't mean to suggest that interviews with witnesses or defendants are necessarily suspect if they haven't been recorded.  Each case is unique, and there are sometimes good reasons that a particular conversation has not been recorded.  It's often not possible to record an interview, or to do so without the interviewee knowing.  In cases like that, it's better to do a non-recorded interview than to do no interview at all."

h.  In the same post,   FREY also wrote:  "**Being a prosecutor is about presenting the truth.**  If a defendant's statement is critical to a case, then — if you have a choice — it's better for the jury to hear the statement as it came out."

i.  On July 18, 2007, in a post titled "Yagman: Patterico Made Me Do It!", FREY wrote:  "My guess: Yagman never heard of this blog until he read my quote in McDonald's first *L.A.* Weekly piece on the trial, which came out in May of this year. So he made up a little story about how this blog had threats against him.  **The fact that I am a Deputy D.A.** fit nicely with his theme of the Little Guy vs. the Establishment.  And he probably figured that his little comment would be objected to — meaning the

First Amended Complaint, Page - 5

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Government (and jury) would never learn that the blog in question could not possibly have influenced him to commit the actions that got him charged (and convicted)."

j.  On October 31, 2008, in a post titled "No on Proposition 5: It Doesn't Just Apply to Drug Crimes", FREY wrote:  "I heard **my office's Chief Deputy** saying on the radio that we file 75,000 felony cases per year in Los Angeles County, and 50,000 would be eligible for "treatment" programs under this initiative."

k.  On November, 3, 2008, in a post titled "Yes on Proposition 6: Gang Intimidation of Witnesses Is a Big Problem",   FREY wrote:  "Some oppose the measure because it mandates spending on public safety.  This doesn't bother me, because I believe the primary function of government is to protect its citizens.  (**Full disclosure: as a Deputy D.A., I benefit from spending on public safety.**  But while I am a fiscal conservative, I would be voting for the proposition even if I were not a Deputy D.A. — because, again, a government's number one job is public safety.)"

l.  In the same post, FREY also wrote: "**My experience as a Deputy D.A. does allow me to add some insight that might be valuable to voters**, beyond what you'll read in the various arguments available on the Internet.  Specifically, several weeks ago, a reader wrote me asking about the final provision included in the bullet-points above. He wanted to know: 'is there a serious problem right now with witnesses refusing to testify because they have been intimidated by criminal suspects?'"

m. On December 17, 2008, in a post titled "YOU Be the Judge!", FREY asked his readers to discuss a hypothetical sentencing scenario, and wrote:  "Fascinating stuff — **and it's fascinating to us prosecutors to see how non-lawyers answer these questions**."

n.  On September 9, 2009, in a post titled "Patterico Banned at the L.A. Times???", FREY wrote:  "**Are they banning all Deputy District Attorneys**?  Or just the ones that make them look like fools on a daily basis?  [¶]  P.S. I know, I know. There's probably some innocent explanation for this.  But do we know that for sure?"

///

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

o.  On June 25, 2009, in a post titled "More on the Arrested 'Reformed' Gang Member Alex Sancez", FREY used inside knowledge of talk from the DA's office:"The rumor I hear is that he very nearly got his wish. According to that rumor, Sanchez was on the verge of receiving $100,000 from the City of Los Angeles for gang prevention when he was arrested. (I can't confirm the rumor, and neither can my very reliable source. Take it for what it's worth, which isn't much unless it's confirmed.) He would hardly be the only such person; this blog has previously discussed how Hector Marroquin was illegally selling guns as he ran a city-funded gang intervention program called 'No Guns.' (As I wrote at the time, this story was pushed by the L.A. Weekly, which ate the L.A. Times's lunch on the story.)"

11.     PLAINTIFF is informed and believes and based thereon alleges that FREY intends that the statements he publishes on his blog to be deemed as statements or opinions coming from the Office of the District Attorney for the COUNTY, though there are some limited exceptions to that, and the exceptions are blatant and notable.

12.     For example, on September 7, 2009, in a post titled "Dumbass Federal Judges Push Release of Criminals Who Are Bunked ALMOST As Tight As Sailors in a Submarine", FREY wrote:

> "I have a message for this panel of federal judges — which the L.A. Times doesn't
> say and will never, ever say are all Democrat appointees:
> Honorable Lawrence Karlton: fuck you.
> Honorable Thelton Henderson: fuck you.
> And you, the right Honorable Stephen Reinhardt: fuck you."

13.     PLAINTIFF is informed and believes and based thereon alleges that FREY has used and does use his position as a COUNTY Assistant District Attorney to advance his personal political agenda, to increase his audience, and to amplify his harassment against political enemies.

14.     PLAINTIFF is informed and believes and based thereon alleges that the disclaimer contained on FREY'S blog that his statements are not made as a state actor is

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

patently unreasonable as the disclaimer is difficult to find on the webpage because it is buried on a side bar among various links that only the thorough blog-reader would be able to find, and that the disclaimer is untrue.

15.     PLAINTIFF is informed and believes and based thereon alleges that when FREY'S website or blog is mentioned by other news outlets or bloggers, FREY is commonly introduced as "Deputy District Attorney" or "Los Angeles County prosecutor," but FREY makes no effort to indicate that the statements contained therein are not made as a Deputy District Attorney (*See, e.g.*,

http://www.volokh.com/posts/1236116981.shtml;

http://littlegreenfootballs.com/article/37961_Quote_of_the_Day;

http://www.nationalreview.com/corner/188151/patterico-and-polanski/jack-dunphy#;

http://www.tnr.com/blog/the-plank/applebaum-polanski;

http://www.popehat.com/2012/03/26/nadia-naffe-wont-shut-up-but-shell-threaten-you-to-make-you-shut-up/; http://commonsensepoliticalthought.com/?p=4195.)

16.     PLAINTIFF is informed and believes and based thereon alleges that the COUNTY was aware of the blog and that FREY was making statements thereon in his capacity as a Deputy District Attorney, but took no action to stop, curb or reduce it due in part to the fact COOLEY intended to run for State Attorney General on a conservative, Republican platform that many of FREY'S blog readers in California would support, and that by allowing FREY to pontificate COOLEY'S own political agenda, COOLEY would be able to reach a larger audience and garner more votes.

17.     PLAINTIFF is informed and believes and based thereon alleges that FREY makes no effort to correct these associations because he wants readers to associate him and his website with his official title to add credibility to his published statements and commentary.

18.     PLAINTIFF is informed and believes and based thereon alleges that FREY has used his blog to provide legal advice as a Deputy District Attorney to his cronies and readers, including instructing them on how to prosecute claims against individuals

First Amended Complaint, Page - 8

without limitation David Shuster and PLAINTIFF.  David Shuster is a Television news personality, presently employed by Current TV.  He was harassed through the @Patterico Twitter account and through http://patterico.com due to the fact that he reported upon the Barn Incident in a manner that Defendant FREY viewed as favorable to PLAINTIFF.

19.     Defendant FREY importuned O'Keefe to sue Shuster and Current TV. O'Keefe obliged, only recently dismissing the meritless suit.

20.     PLAINTIFF is informed and believes and based thereon alleges that FREY has the power of moderation over all articles and comments on his blog, and may therefore edit and delete comments and comment timestamps.

## B.   FREY USES HIS POSITION AS A STATE ACTOR TO ASSIST HIS FRIEND, JAMES O'KEEFE.

21.     Prior to the events forming the basis for this Complaint, PLAINTIFF was a personal friend and professional colleague of James O'Keefe ("O'KEEFE"), a conservative activist specializing in producing undercover videos that style themselves as "exposés" of liberal political misdeeds.

22.     PLAINTIFF is informed and believes and based thereon alleges that FREY and his wife, Deputy District Attorney Christi Frey are close personal friends of O'KEEFE, and that O'KEEFE worked as an intern in the COUNTY District Attorney's Office with FREY and FREY's wife while O'KEEFE was a law school student at UCLA.

23.     Although PLAINTIFF, on the one hand, and FREY, on the other hand, had mutual friends and acquaintances, including O'KEEFE, they had no direct contact with each other prior to the events described below.

24.     PLAINTIFF is informed and believes and based thereon alleges that O'KEEFE is a popular member of the conservative community who has been vilified by the mainstream press for unfair and biased attacks on his targets, but is much admired by a section of conservatives.  PLAINTIFF is informed and believes and based thereon alleges that FREY is among O'KEEFE's admirers.  O'KEEFE rose to prominence when he unlawfully wiretapped a staff member at ACORN and told that staffer that he had tax

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

issues because he was a pimp and his associate a prostitute.  The United States Congress cut funding for ACORN as a result.

25.     PLAINTIFF is informed and believes and based thereon alleges that in January 2010, O'KEEFE was arrested in New Orleans, Louisiana, during an undercover project aimed at sitting U.S. Senator Mary Landrieu.

26.     PLAINTIFF is informed and believes and based thereon alleges that in May, 2010, O'KEEFE plead guilty to entering real property of the United States under false pretenses for which he is currently serving three years of probation.

27.     On several occasions, FREY has used his blog to provide O'KEEFE with positive press.  *See* "Exclusive: Court Document Reveals Government's Admission That It Lacked Evidence That O'Keefe Intended to Commit Felony — A Fact the Government Omitted from Its Press Release!", Patterico's Pontifications (May 28, 2010), http://patterico.com/2010/05/28/exclusive-court-document-reveals-governments-admission-that-it-lacked-evidence-that-okeefe-intended-to-commit-felony-a-fact-the-government-omitted-from-its-press-release/; "Brooklyn D.A. Confirms O'Keefe Posed As Pimp; Friedman Lies Yet Again?," Patterico's Pontifications (Mar. 4, 2010), http://patterico.com/2010/03/04/brooklyn-d-a-confirms-okeefe-posed-as-pimp-friedman-lies-yet-again/.)

28.     FREY has also used his blog to publicly encourage O'KEEFE to take certain legal action.  For example, on May 27, 2010, in a post titled "Brad Friedman: Press Release Confirming Well-Known Fact That O'Keefe Intended to Do Undercover Sting Vindicates Me, Somehow (Alternate Post Title: Brad Friedman Is a Huge Liar)", FREY wrote: "I hope O'Keefe demands a correction. I hope Friedman refuses. And **I hope O'Keefe sues him for it** . . . P.P.S. Here is Brad tweeting Steve Cooley to try to get me in trouble with my job for calling him a liar.  [¶]  'TheBradBlog @SteveCooley4AG U cool w ur Dep DAs tweeting this 2 constnts/media? RT @Patterico @TheBradBlog that's a fucking lie & u are a fucking liar.'  [¶]  Intimidation FAIL. Trying to intimidate me at my workplace didn't work when Jeff Goldstein did it to me from the right, and it won't

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

work when Brad Friedman does it to me from the left.  [¶]  My response:  [¶] '@TheBradBlog I'm pretty sure @SteveCooley4AG is cool with me calling liars like you what they are. But thanks for asking! #intimidationFAIL' [¶] I don't live my life cowering from turds like you, Friedman."

C.     **FREY USES HIS POSITION AS A STATE ACTOR TO INTIMIDATE PLAINTIFF FROM REPORTING A CRIME COMMITTED BY FREY'S FRIEND.**

29.     PLAINTIFF is informed and believes and based thereon alleges that FREY was and is aware of the fact that O'KEEFE is currently on federal probation, and that any criminal charges against O'KEEFE would potentially violate the terms of his probation, and hereby alleges that Frey set about violating the civil rights of PLAINTIFF under color of law, defaming, and destroying PLAINTIFF to save O'KEEFE. PLAINTIFF is informed and believed that as a District Attorney, a criminal law practitioner and someone who had interned for a Federal Judge who handled criminal matters, FREY understood that O'KEEFE would have his probation violated if PLAINTIFF'S allegations proved true.

30.     In January, 2010, PLAINTIFF and O'KEEFE engaged in a plot to wiretap the office of Congresswoman Maxine Waters.  Congresswoman Waters' offices are located in Los Angeles County, California.

31.     PLAINTIFF is informed and believes and based thereon alleges that FREY became aware of PLAINTIFF'S involvement with O'KEEFE'S wire tapping of Congresswoman Waters at some point after the incident occurred.

32.     While O'KEEFE and PLAINTIFF were engaged in illegally wiretapping Congresswoman Waters' office in Los Angeles County, O'KEEFE used PLAINTIFF's phone.  He logged in to check his emails.  He never logged out, leaving seven years of emails accessible and viewable from PLAINTIFF's phone.  They were neither private nor secure nor stored in any way that PLAINTIFF was prohibited view them.  Indeed, they were made available to PLAINTIFF and then handed to her.

First Amended Complaint, Page - 11

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

33.     O'KEEFE filed a lawsuit in New Jersey to recover these emails and to quiet the dispute about who may have access to them, but has recently dismissed that lawsuit.

34.     In or around the Fall of 2011, after a friendship of approximately two and a half years, O'KEEFE began making romantic overtures toward PLAINTIFF, overtures that PLAINTIFF rejected.  These harassing romantic advances culminated in a frightening incident on October 2, 2011, in a barn in New Jersey (the "Barn Incident"), during which O'KEEFE drugged PLAINTIFF in an attempt to sexually assault her.  A few weeks after this incident, O'KEEFE offered to pay PLAINTIFF in consideration for her promise not to disclose the barn incident.  PLAINTIFF rejected O'KEEFE's offer.  In response, PLAINTIFF sent a letter to O'KEEFE and the board of directors of his company, requesting he cease harassing her.  O'KEEFE, in turn, threatened to sue PLAINTIFF if she contacted law enforcement about the Barn Incident.

35.     In November 2011, O'KEEFE posted a harassing, degrading, public video about PLAINTIFF to youtube.com in response to which PLAINTIFF filed a criminal harassment complaint against O'KEEFE in New Jersey, which was ultimately dismissed for lack of jurisdiction, but not because the allegations were untrue.

36.     In February 2012, the late conservative media mogul Andrew Breitbart—a personal friend of PLAINTIFF, DEFENDANT (on information and belief) and O'KEEFE—mischaracterized the Barn Incident while speaking with a reporter.  In an effort to correct misconceptions about PLAINTIFF'S lawsuit against O'KEEFE and the underlying facts of the Barn Incident, PLAINTIFF publicly challenged Mr. Breitbart's mischaracterizations in her personal blog and via her Twitter account.  It was then that Defendant FREY set about seeking to discredit PLAINTIFF and ruin her life for having the temerity to tell the truth about his cronies.

37.     Beginning on or before February 26, 2012, FREY made public comments and statements to representatives of the news media about PLAINTIFF's criminal harassment complaint against O'KEEFE.  He commented in his capacity as a Deputy District Attorney.

First Amended Complaint, Page - 12

38.     FREY participated in interviews with various online news media beginning on February 26, 2012 on several different aspects of the case and investigation. He commented in his capacity as a Deputy District Attorney.  PLAINTIFF alleges on information and belief that it is common and accepted that members of the District Attorney's Office will speak to the press about their cases, as well as other cases of interest to the office and to the administration of criminal justice, and that Deputy District Attorneys are authorized to speak on behalf of the District Attorney's Office on such matters.

39.     FREY made statements to a representative of the news media through his Twitter account and used his status as a Deputy District Attorney to lend gravitas to the threats: "You owe [O'KEEFE] @jamesokeefeiii a retraction. A big one. You'd better issue it promptly. [A threat made as a Deputy District Attorney]."  Additionally, FREY told a representative of the news media that the reporter should ask PLAINTIFF "If you were given roofies, how do you remember so much?" and "If you turned your back, how do you know O'Keefe stopped by your beer?"

40.     In addition to the "Barn Incident," Defendant FREY, upon information and belief, had designs to recapture O'KEEFE's emails from PLAINTIFF, emails that could embarrass the conservative movement, O'KEEFE and other confederates of FREY.

41.     On information and belief, in late February or March 2012 that FREY became aware that PLAINTIFF intended to come to Los Angeles to meet with authorities and inform them of the activities that she engaged in with O'KEEFE.  FREY, a Deputy District Attorney who had interned for a Federal Judge who handled criminal cases, knew full well that O'KEEFE would get into a good deal of trouble if his actions were reported to the authorities.  He used his position as a Deputy District Attorney to viciously defame, expose private details and otherwise attack PLAINTIFF because of his loyalty and personal feelings towards O'KEEFE.

42.     PLAINTIFF is informed and believes and based thereon alleges that in February and March 2012,   FREY posted at least eight separate articles concerning

First Amended Complaint, Page - 13

PLAINTIFF on his blog at http://patterico.com and actively participated in comment threads with respect to the articles, posting the comments under the Internet code name "Patterico."  PLAINTIFF, a sexual assault victim who sought to make a criminal complaint with authorities in Los Angeles County, is informed and believes and based thereon alleges that during the same time period—and at all times of day and night—FREY posted several dozen threatening, harassing and defamatory statements concerning PLAINTIFF using his twitter account, @patterico, which statements are commonly known as "tweets."  In his tweets, FREY, a representative of the District Attorney's Office, stated that PLAINTIFF was a liar, illiterate, callous, self-absorbed, despicable, a smear artist, dishonest, and absurd (among other less direct harassment).  In particular, FREY repeatedly asked the rhetorical question: "why did PLAINTIFF not call a cab to escape the barn during the Barn Incident," which was intended to publicly discredit PLAINTIFF'S entire account of the Barn Incident, or as FREY stated to "poke holes" in the theory PLAINTIFF put forth in her criminal harassment complaint against O'KEEFE.  Indeed, FREY, as a Deputy District Attorney, alleged that PLAINTIFF filed a false Complaint.  That constitutes an accusation of a crime by a District Attorney.  Moreover, it intentionally and maliciously called her sexual behavior and purity into question.

43.   In his capacity as a Deputy District Attorney, FREY investigated PLAINTIFF in an effort to get her indicted by either his office or to use his influence as a Deputy District Attorney to get her indicted by the federal government, or to make her think that if she did not release O'KEEFE'S emails and remain quiet about the wiretapping of Maxine Waters' Office and the "Barn Incident" that she would suffer such consequences.

44.   PLAINTIFF is informed and believes and based thereon alleges that as of at least February 28, 2012, FREY knew:

   a.   PLAINTIFF had evidence of O'KEEFE's wire tapping of Congresswoman Waters' office and the OneUnited Offices;

   b.   PLAINTIFF was planning on coming forward with this evidence;

First Amended Complaint, Page - 14

  c. Since the wiretapping occurred within the COUNTY'S jurisdiction, FREY'S and COOLEY'S office would likely receive the evidence;

  d. O'KEEFE risked a prison sentence for violating his federal probation if PLAINTIFF made the evidence available; and

  e. PLAINTIFF had access to seven years worth of O'KEEFE's emails.

 45. PLAINTIFF is informed and believes and based thereon alleges that in the same February 28, 2012, blog post mentioned in the above paragraph, FREY, acting as a Deputy District Attorney, criticized journalist Tommy Christopher for failing to vet PLAINTIFF before publishing an article about the Barn Incident and subsequent lawsuit, and made a list of 29 questions Mr. Christopher "should" have asked when interviewing PLAINTIFF for his article regarding the Barn Incident that FREY would have only been able to generate due to his work as a Deputy District Attorney. PLAINTIFF is informed and believes and based thereon alleges that these 29 questions were intended to provide O'KEEFE with legal advice from the COUNTY to defend PLAINTIFF'S criminal harassment lawsuit. Indeed, they were received by FREY's own lawyer, Kenneth White as such:

> "See, when Naffe released her (to date) two-part series accusing O'Keefe publicly, Patterico offered some skeptical questions, the sort of questions that one might ask in written discovery or in a deposition or on cross-examination. The next day he offered still more. Some of the questions are about the circumstances of the incident Naffe describes; others are about her political biases. Many are questions that any good attorney would ask in evaluating her claims. The defense attorney in me is tempted to say that this is the most thorough consideration of exculpatory evidence that I have ever seen from a Los Angeles County Deputy District Attorney, but that would be uncouth, so I will not, and you should definitely forget that I brought it up." (http://www.popehat.com/2012/03/26/nadia-naffe-wont-shut-up-but-shell-threaten-you-to-make-you-shut-up/.)

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

46.      On March 14, 2012, in an effort both to combat misconceptions regarding the Barn Incident, PLAINTIFF began posting a series of articles on her personal Internet blog.  In these blog posts, PLAINTIFF wrote about the incident involving O'KEEFE wire tapping Congresswoman Waters' office and the OneUnited offices.  At that time she published the blog posts, PLAINTIFF was planning on turning over an audio recording of the wire tapping of Congresswoman Waters to the COUNTY, through its Sheriff's Department or its District Attorney's office.

47.      PLAINTIFF is informed and believes and based thereon alleges that on Friday, March 23, 2012, during regular business hours, i.e., at a time when FREY should have been acting in the course and scope of his employment as a Deputy District Attorney for the County, FREY published to his blog several documents related to a civil suit filed by O'KEEFE against PLAINTIFF including an order granting an injunction against PLAINTIFF (this suit is separate from the criminal harassment complaint arising from the Barn Incident).

48.      On March 23, 2012, PLAINTIFF responded to FREY'S March 23, 2012, statements on his blog and Twitter account, with a tweet informing him that she intended to notify the COUNTY District Attorney's office and the California State Bar that FREY was misusing government time and resources by blogging and tweeting about PLAINTIFF'S dispute(s) with O'KEEFE.  A timeline of FREY'S tweets[1] surrounding this threat make clear that he was referring to PLAINTIFF'S possession of the emails O'KEEFE had downloaded to PLAINTIFF'S phone:

        a.      "@NadiaNaffe That is false. But then, you're full of false allegations, aren't you?" (time stamped Friday March 23, 2012, at 20:22:08 pm.)

---

[1] PLAINTIFF acknowledges the problems inherent in trying to infer meaning from one side of a multi-party conversation. PLAINTIFF is informed and believes that discovery exists that is in the exclusive custody, control and possession of FREY that confirms her information and belief.

First Amended Complaint, Page - 16

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

b.    "O'Keefe injunction against @NadiaNaffe releasing his hacked emails now online. Come see why she is threatening my job. http://t.co/BuPzYNXB" (time stamped Saturday March 24, 2012, at 01:21:18 am.)

c.    "It is crystal clear any complaint filed by @NadiaNaffe will be frivolous attempt to silence my public voice. Part of a pattern." (time stamped Saturday March 24, 2012, at 01:22:58 am.)

d.    "All @NadiaNaffe is doing is strengthening evidence of ties between her and others who have used similar tactics." (time stamped Saturday March 24, 2012, at 01:24:47 am.)

e.    "@NadiaNaffe Utterly false but why let that bother you?" (time stamped Saturday March 24, 2012, at 01:38:11 am.)

f.    "@jdonels Can you send me the federal statute?" (time stamped Saturday March 24, 2012, at 01:39:27 am.)

g.    "@Popehat[2] Do you know the federal statute covering unauthorized access of email?"  (time stamped Saturday March 24, 2012, at 01:40:45 am.)

h.    "@NadiaNaffe This is quite a distraction from the points I raised in the post. I promise I will elaborate!" (time stamped Saturday March 24, 2012, at 01:45:07 am.)

i.    **"@NadiaNaffe My first task is learning what criminal statutes, if any, you have admitted violating."** (time stamped Saturday March 24, 2012, at 01:46:01 am.)

j.    "@Popehat If I check my email on ur phone, and when I return phone to you, you find you can access my email w/o my permission, can u legally?" (time stamped Saturday March 24, 2012, at 01:50:41 am.)

k.    "@Popehat Fair enough. I'll look it up. Thanks." (time stamped Saturday March 24, 2012, 01:57:54 am.)

---

[2] PLAINTIFF is informed and believes that the @Popehat Twitter account is run by FREY's attorney Kenneth White.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

49.     On information and belief, PLAINTIFF alleges that FREY engaged in harassment of PLAINTIFF, including posting her social security num,ber and medical information on the internet in order to dissuade her from filing complaints with the State Bar and with the COUNTY, in violation of California Business and Professions Code section 6090.5, which provides in relevant part that "[i]t is cause for suspension, disbarment, or other discipline for any member . . . to agree or seek agreement that: [¶] (1) The professional misconduct . . . shall not be reported to the disciplinary agency.". Specifically, FREY made the following statements:

a.   "@NadiaNaffe The state bar will laugh at your complaint. As I am laughing now. You seriously go to Harvard? @tommyxtopher" (time stamped Friday March 23, 2012, at 20:11:33 pm.)

b.   "It is crystal clear any complaint filed by @NadiaNaffe will be frivolous attempt to silence my public voice. Part of a pattern."  (time stamped Saturday March 24, 2012, at 01:22:58 am.)

c.   "I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons."  (Comment by Patterico on his March 24, 2012, blog post.)

50.     In an attempt to show PLAINTIFF that he will go to great lengths to ruin her life if she proceeded in making a criminal complaint against O'KEEFE or if she complained about FREY, FREY alleged that he used the federal court service PACER (Public Access To Court Electronic Records), to obtain and publish portions of a deposition transcript from a lawsuit in which PLAINTIFF sued a former employer.  Yet, the deposition transcript is not actually available to the public on PACER, meaning that FREY (a) lied about the source of the deposition transcript and (b) obtained through surreptitious means in violation of at least the policy and spirit of Federal Rule of Civil Procedure 5.2.  or (c) used his official capacity as a Deputy District Attorney to obtain a copy under color of law.  FREY then published the otherwise publicly unavailable transcript to his blog, which contained a great deal of PLAINTIFF'S private and personal

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

information, including her social security number, date of birth, maiden name, mother's maiden name, family address, information about PLAINTIFF'S medical condition and the medications PLAINTIFF was taking in 2005. This deposition transcript was initially uploaded to the PACER system not by PLAINTIFF or PLAINTIFF'S counsel in that matter; it was made available on PACER as an attachment to a motion by the opposing party's counsel.

51.     PLAINTIFF is informed and believes and based thereon alleges that on March 25, 2012, after word spread among FREY'S readers whom FREY knew included persons that had vitriolic hate towards PLAINTIFF, that PLAINTIFF'S social security number was in the first few pages of the deposition transcript, FREY wrote in the comments section of the March 24, 2012, blog post: "I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons." PLAINTIFF is informed and believes and based thereon alleges that it a violation of State Bar Rules to dissuade anyone from making a bar complaint against a member of the State Bar and a violation of Penal Code section 136.1 to dissuade a witness from making a report.

52.     PLAINTIFF is informed and believes and based thereon alleges that in another comment time stamped one minute later, FREY continued, using his status and capacity as a Deputy District Attorney: "She may just be starting to realize that she that she has made a series of mistakes that could land her in trouble. Maybe she's reconsidering . . . ." The implication was clear: FREY intended to make PLAINTIFF think that he would see that she was prosecuted by his office or another, using his position to guarantee her downfall. PLAINTIFF is informed and believes and based thereon alleges that FREY took this action because he knew that his statements about PLAINTIFF were made in his capacity as a Deputy District Attorney, and that he needed to engage in "damage control" so as to not lose his job with the COUNTY or expose his employer to further liability.

First Amended Complaint, Page - 19

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

53.     PLAINTIFF is informed and believes and based thereon alleges that at some time after his March 25, 2012, blog posts, FREY removed the deposition transcript from his website with full knowledge that the prior disclosure violated PLAINTIFF'S rights under federal and California laws, knowing however that PLAINTIFF'S personal information and social security number were nonetheless preserved for several weeks or months in an Internet web cache, available to anyone with an Internet connection wishing to view PLAINTIFF'S personal details for whatever reason.  Indeed, PLAINTIFF is informed and believes and thereon alleges that her personal information is still available in areas of the internet and that it was never fully removed, nor can it ever be fully removed from the internet.

54.     On March 26, 2012, the first business day after FREY published all of PLAINTIFF's personal information in a way that the entire world could access it, PLAINTIFF began receiving email alerts from the credit reporting agency Experian, explaining that people had made changes to her credit report.  PLAINTIFF continues to receive reports that individuals are fraudulently using her social security number.  As a proximate result of the fraudulent use of her social security number, PLAINTIFF has incurred substantial expenses in connection with the attempts to repair her credit, in addition to a substantial amount of time spent on the phone with various creditors and credit reporting agencies.

55.     On information and belief, PLAINTIFF alleges that FREY also enjoyed a rather substantial rise in the popularity of his blog at this time, and enjoyed a commensurate significant uptick in donations to his blog as a result of using his position as a Deputy District Attorney to intimidate PLAINTIFF into not reporting O'KEEFE to the authorities.  In other words, FREY made money and got more popular as he used his official title to destroy PLAINTIFF.

56.     A good percentage of FREY'S comments, tweets, and blog posts were made during normal County working hours.  On information and belief, FREY did this with the consent of the COUNTY and to lend credence to the idea that these were the official

First Amended Complaint, Page - 20

views of the District Attorney's Office and had the consent and official imprimatur of that office.

57.    As of the time of filing of this Complaint, at least two of FREY'S harassing and defamatory blog posts still appear on the first page of Google search results for "Nadia Naffe," including the post which originally published the link to PLAINTIFF'S social security number.

58.    Moreover, FREY published his blog to the delight of a bunch of sycophantic followers who he calls "The Jury." The Jury consists of hardcore conservatives who spend a good deal of their life reading far right conservative blogs, like "Patterico's Pontifications" and frequently comment about the topics that FREY blogs about.

59.    FREY'S blog posts on http://patterico.com received several hundred comments by people that had become vitriolic critics of PLAINTIFF based purely upon FREY'S lead.

60.    PLAINTIFF is informed and believes and based thereon alleges that FREY had a persistent problem with supporters of his blog "taking matters into their own hands" and going after the targets of Deputy District Attorney FREY'S ire.

61.    PLAINTIFF is informed and believes and based thereon alleges that in this case, FREY called PLAINTIFF, essentially, too stupid to attend Harvard University for any reason other than affirmative action (PLAINTIFF is African-American) and FREY told his sycophants where, exactly, on Harvard's campus PLAINTIFF could be found.

62.    PLAINTIFF is informed and believes and based thereon alleges that one FREY sycophant in particular, who went by the sobriquet "Socrates," was, around February and March of 2012, close to FREY.  Socrates was known as a dangerous and unstable harasser and he lived in the Boston area close to PLAINTIFF.  This caused PLAINTIFF a great deal of emotional distress.  She was forced to seek the protection of the campus police department and to make all of her Harvard information was made private.

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

63.     Based thereon, PLAINTIFF feared for her safety, as she was informed and believes and based thereon alleges that FREY was "ginning" up Socrates and other sycophantic followers to potentially attack her and harm her physically.

64.     PLAINTIFF is informed and believes and based thereon alleges that FREY engaged in the defamatory, privacy-invading and harassing activity described herein in order to:

a.  Intimidate her into not handing over evidence to the COUNTY regarding FREY's personal friend Mr. O'KEEFE's wiretapping of Congresswoman Waters;

b.  Protect the reputations of his personal friends, O'KEEFE and Mr. Breitbart; and

c.  Not exercise her rights to redress her grievances with the State Bar of California or with the District Attorney's Office or to report a crime in the appropriate jurisdiction.

65.     As a result of the actions of FREY and COUNTY (through COOLEY), as more fully described herein, PLAINTIFF was in fact intimidated into not reporting O'KEEFE's wire tapping to the COUNTY.  With the assistance of others, she eventually reported these matters to the United States Department of Justice in Washington, D.C.

66.     PLAINTIFF is informed and believes and based thereon alleges that COUNTY is vicariously liable for FREY'S conduct as alleged herein due to the fact that at all relevant times mentioned herein, FREY was acting as a Deputy District Attorney for the COUNTY and not as a private citizen.

67.     PLAINTIFF is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, DEFENDANTS acted with the intent to injure, vex, annoy and harass PLAINTIFF, subjected PLAINTIFF to cruel and unjust hardship in conscious disregard of PLAINTIFF'S rights, and (c) intentionally misrepresented and concealed material facts known to the DEFENDANTS with the intention on the part of the DEFENDANTS of thereby depriving PLAINTIFF of her legal rights and otherwise cause PLAINTIFF injury.

First Amended Complaint, Page - 22

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

68.     As a direct result of FREY's campaign of intimidation and harassment, and in order to avoid continued harassment by FREY and his sycophants, PLAINTIFF was forced to make private her previously public blog (nadianaffe.com) and Twitter account (@NadiaNaffe).

**E.     Exhaustion of Administrative Remedies.**

69.     On April 23, 2012, PLAINTIFF submitted a Government Code 910 Claim with the COUNTY (the "Claim").  Attached hereto as **Exhibit "A"** is a copy of the Claim.

70.     On May 24, 2012 the COUNTY rejected the Claim.  Attached hereto as **Exhibit "B"** is a copy of the COUNTY's May 25, 2012 rejection letter.

<div align="center">

**FIRST CAUSE OF ACTION**
**Violations of 42 U.S.C. § 1983**
**(As Against FREY and COUNTY)**

</div>

71.     PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70 of this Complaint, inclusive, and incorporates the same by reference, as though fully set forth herein.

72.     In abusing his position as a Deputy District Attorney as described above, FREY acted under color of state law in his continuous harassment of PLAINTIFF via his website, blog and Twitter account.

73.     FREY'S harassment of PLAINTIFF violated her First Amendment constitutional right to petition the government for redress of grievances by (a) intimidating PLAINTIFF into silence regarding O'KEEFE wiretapping of Congresswoman Waters and (b) chilling her speech by harassing her into making her blog and Twitter feeds private.

74.     FREY'S harassment of PLAINTIFF violated her due process rights by:

a.  Presenting a public face of the District Attorney's Office under which she would not receive fair treatment from FREY, COOLEY or anyone else at the COUNTY, and

First Amended Complaint, Page - 23

b.  Implying that any case in which PLAINTIFF was involved would be prejudged by the COUNTY, COOLEY, or FREY himself.

c.  Suggesting PLAINTIFF herself might be investigated or prosecuted for coming forward with evidence of misconduct.

d.  Creating an atmosphere under which PLAINTIFF feared retaliation from the Frey personally, or the District Attorney's Office as a governmental entity.

75.     As a direct and proximate result of the DEFENDANTS' conduct alleged herein, PLAINTIFF has suffered general and special damages including, without limitation, harm to PLAINTIFF'S reputation, emotional distress, expense related to medical treatment concerning health issues, including but not limited to bleeding ulcers suffered as a result of the stress and trauma caused by defendants, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

## SECOND CAUSE OF ACTION
### Public Disclosure Invasion of Privacy
#### (As Against FREY and COUNTY)

76.     PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70, and 72 through 75, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

77.      FREY'S publication of personal details, including information about PLAINTIFF'S medical history, from PLAINTIFF'S unredacted deposition transcript constituted a public disclosure of private facts and was highly offensive and objectionable, judged by a reasonable person standard.

78.     The facts disclosed by the publication of PLAINTIFF'S unredacted deposition transcript were not of legitimate public concern as they were personal, private, and totally irrelevant to any other matter of public concern (such as the allegations of O'KEEFE'S wiretapping or the Barn Incident).

79.     As a direct and proximate result of the DEFENDANTS' conduct alleged herein, PLAINTIFF has suffered general and special damages including, without

First Amended Complaint, Page - 24

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

limitation, harm to PLAINTIFF'S reputation, emotional distress, expense related to medical treatment concerning health issues, including but not limited to bleeding ulcers suffered as a result of the stress and trauma caused by defendants, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

### THIRD CAUSE OF ACTION
**False Light Invasion of Privacy**
**(As Against FREY and COUNTY)**

80.        PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70, 72 through 75, and 77 through 79, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

81.        By consistently and relentlessly painting PLAINTIFF as a liar, as dishonest, and as self-absorbed, and by relentlessly asking everyone who would listen why PLAINTIFF failed to call a cab during the barn incident, FREY placed PLAINTIFF in a highly offensive false light; instead of the victim of the Barn Incident, FREY intended to paint PLAINTIFF as the perpetrator of fraudulent allegations.

82.        PLAINTIFF is informed and believes and based thereon alleges that FREY knew of or acted in reckless disregard as to the falsity of his statements and as to the false light in which PLAINTIFF was placed.

83.        As a direct and proximate result of the DEFENDANTS' conduct alleged herein, PLAINTIFF has suffered general and special damages including, without limitation, harm to PLAINTIFF'S reputation, emotional distress, expense related to medical treatment concerning health issues, including but not limited to bleeding ulcers suffered as a result of the stress and trauma caused by defendants, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

### FOURTH CAUSE OF ACTION
**Defamation**
**(As Against FREY and COUNTY)**

First Amended Complaint, Page - 25

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

84.     PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70, 72 through 75, 77 through 79, 81 through 83, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

85.     FREY'S tweets and blog posts about PLAINTIFF, read by an audience numbering in the thousands, were publications.  Specifically, the following statements were false, defamatory, and had a natural tendency to injure the PLAINTIFF'S reputation:

a.  Referring to PLAINTIFF and the Barn Incident: "@Dust92 Or because the 'victim' is a liar whose lies will be exposed? That sometimes happens too!" was published via Twitter on March 22, 2012.

b.  Also referring to the barn incident: "@NadiaNaffe That is false. But then, you're full of false allegations, aren't you?" published via Twitter on March 23, 2012.

86.     PLAINTIFF is informed and believes and based thereon alleges that even though PLAINTIFF is not a "public official" or "public figure" (and thus a showing of "actual malice" is not required by the First Amendment), that FREY did make the aforementioned statements either knowing they were false or in reckless disregard of the truth and with actual malice, hatred and ill will.

87.     As a direct and proximate result of the DEFENDANTS' conduct alleged herein, PLAINTIFF has suffered general and special damages including, without limitation, harm to PLAINTIFF'S reputation, emotional distress, expense related to medical treatment concerning health issues, including but not limited to bleeding ulcers suffered as a result of the stress and trauma caused by defendants, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

**FIFTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(As Against FREY and COUNTY)**

First Amended Complaint, Page - 26

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

88.     PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70, 72 through 75, 77 through 79, 81 through 83, and 85 through 87, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

89.     FREY'S intentional and/or reckless campaign of defamatory harassment against PLAINTIFF and intentional and/or reckless disclosure of PLAINTIFF'S sensitive personal information on Twitter, his website and his blog was, as judged by a reasonable person standard, beyond the bounds of decency and is therefore extreme and outrageous conduct.

90.     As a direct and proximate result of the DEFENDANTS' conduct alleged herein, PLAINTIFF has suffered general and special damages including, without limitation, harm to PLAINTIFF'S reputation, emotional distress, expense incurred in

///

defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

## SIXTH CAUSE OF ACTION
### Negligence
### (As Against FREY and COUNTY)

91.     PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70, 72 through 75, 77 through 79, 81 through 83, 85 through 87, and 89 through 90, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

92.     As imposed by statute (California Civil Code § 1798.85) and Federal Rule of Civil Procedure 5.2, and under common law, FREY had an affirmative duty to redact or otherwise ensure that he did not publicly display PLAINTIFF'S social security number and other exploitable personal information.

93.     By nevertheless displaying PLAINTIFF'S unredacted deposition transcript on his website blog, FREY breached his duties to PLAINTIFF.

94.     As a direct and proximate cause of   FREY'S publication of PLAINTIFF's social security number, PLAINTIFF has suffered general and special damages including,

First Amended Complaint, Page - 27

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

without limitation, harm to PLAINTIFF'S reputation, expense related to medical treatment concerning health issues, including but not limited to bleeding ulcers suffered as a result of the stress and trauma caused by defendants, emotional distress, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

### SEVENTH CAUSE OF ACTION
#### Negligent Supervision
#### (As Against COUNTY)

95.     PLAINTIFF repeats and realleges each and every allegation in Paragraphs 1 through 70, 72 through 75, 77 through 79, 81 through 83, 85 through 87, 89 through 90, and 92 through 94, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

///

96.     PLAINTIFF is informed and believes and based thereon alleges that as COUNTY District Attorney, and supervisor of the COUNTY District Attorney's Office, COOLEY had, and did exercise, supervisory authority over all COUNTY Deputy District Attorneys, including without limitation, FREY, while engaged in the course and scope of their employment during business hours.

97.     PLAINTIFF is informed and believes and based thereon alleges that numerous comments from FREY under the Internet code name "Patterico" on his blog are time stamped during regular business hours, ostensibly while FREY is engaged in the course and scope of his employment and performing his official duties to the COUNTY as an Deputy District Attorney.

98.     PLAINTIFF is informed and believes and based thereon alleges that FREY, COOLEY and the COUNTY have received numerous complaints regarding FREY'S use of his website and blog to harass private individuals other than PLAINTIFF.

99.     PLAINTIFF is informed and believes and based thereon alleges that the COUNTY and COOLEY had actual and/or constructive knowledge that FREY was using the time and resources of the COUNTY District Attorney's Office to harass private

First Amended Complaint, Page - 28

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

citizens, and acting as a state actor when publishing statements to his blog and Twitter account.

100.    PLAINTIFF is informed and believes and based thereon alleges that COOLEY and the COUNTY, intentionally, recklessly, or negligently caused or allowed third parties to believe that FREY had permission and authority from COOLEY and the COUNTY to use his Deputy District Attorney position in order to improperly gain influence in the conservative blogging community and to intimidate PLAINTIFF from coming forward as a witness; that is, FREY had actual or ostensible authority to act on behalf of the COUNTY.

101.    Furthermore, by continuing to employ   FREY, failing to condemn his harassment crusades against personal and political enemies, and by allowing him to abuse his official title, COOLEY and the COUNTY therefore ratified FREY'S acts; thus the COUNTY is independently liable as a principal for the tortious acts of FREY as described herein.

102.    As a direct and proximate cause of   FREY'S publication of PLAINTIFF's social security number, PLAINTIFF has suffered general and special damages including, without limitation, harm to PLAINTIFF'S reputation, emotional distress, expense related to medical treatment concerning health issues, including but not limited to bleeding ulcers  suffered as a result of the stress and trauma caused by defendants, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss, all of which are in excess of $75,000.

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial for all causes of action and issues which may be determined by jury under federal and/or California law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, on each and every cause of action as follows:

1.    For general damages according to proof at trial;

First Amended Complaint, Page - 29

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

2.      For special damages according to proof at trial;

3.      For an award of exemplary damages;

4.      For an award of attorneys' fees permissible under 42 U.S.C. §1988;

5.      For an award of PLAINTIFF'S costs of suit incurred herein; and

6.      For such other and further relief as the Court deems just and proper.


Dated: December 21, 2012                    LEIDERMAN DEVINE LLP


                                            By:/s/ James B. Devine
                                               Jason S. Leiderman
                                               James B. Devine
                                               Attorneys for Plaintiff
                                               NADIA NAFFE, an individual

LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

# EXHIBIT "A"

# CLAIM FOR DAMAGES
# TO PERSON OR PROPERTY

COUNTY OF LOS ANGELES



INSTRUCTIONS:
1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please return this original signed claim and any attachments supporting your claim. This form must be signed.

DELIVER OR U.S MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383, KENNETH HAHN HALL OF
ADMINISTRATION, LOS ANGELES, CA 90012

TIME STAMP
OFFICE USE ONLY

| 1. ☐ Mr. ☐ Ms. ☐ Mrs. | LAST NAME Naffe | FIRST NAME Nadia | | (213) 974-1440 |
|---|---|---|---|---|

**10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?**
Please see attachment

**2. ADDRESS OF CLAIMANT/ATTORNEY**
Jay Leiderman and James B. Devine, Leiderman Devine LLP

| Street 5740 Ralston Street, Suite 300 | City, State Ventura, CA | Zip Code 93003 |
|---|---|---|

| HOME TELEPHONE: ( ) decline to state | BUSINESS TELEPHONE: (805) 654-0200 |
|---|---|

**3. CLAIMANT'S BIRTHDATE:**
10/10/1978

**4. CLAIMANT'S SOCIAL SECURITY NUMBER**
decline to state

**11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):**

| NAME John Patrick Frey | DEPT. District Attorney's Office |
|---|---|
| NAME Steve M. Cooley | DEPT. District Attorney's Office |

**5. DATE AND TIME OF INCIDENT**
March 26, 2012 - most recent incident (please see attachment for description of all incidents with details as to date)

**6. WHERE DID DAMAGE OR INJURY OCCUR?**
415 W. Ocean Blvd.

| Street Long Beach | City, State California | Zip Code 90802 |
|---|---|---|

**12. WITNESSES TO DAMAGE OR INJURY: LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION:**

| NAME Claimant | PHONE contact through counsel |
|---|---|
| ADDRESS address is listed above | |
| NAME John Patrick Frey | PHONE (213) 974-3511 |
| ADDRESS 210 West Temple Street, 18th Floor | |
| NAME Steve Cooley | PHONE (213) 974-3512 |

**7. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:**
Please see attachment.

**13. LIST DAMAGES INCURRED TO DATE (and attach copies of receipts or repair estimate):** Violation of privacy rights, violation of civil rights, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, negligent supervision of employees, violation of HIPAA, and violation of Penal Code section 136.1(b) and 422.6(a).

**8. WERE POLICE OR PARAMEDICS CALLED?**
YES ☐   NO ☒

**9. IF PHYSICIAN WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND PHYSICIAN'S NAME, ADDRESS AND PHONE NUMBER:**

| DATE OF FIRST VISIT | PHYSICIAN'S NAME |
|---|---|
| PHYSICIAN'S ADDRESS | PHONE ( ) |

| TOTAL DAMAGES TO DATE: $ 500,000 | TOTAL ESTIMATED PROSPECTIVE DAMAGES: $ 500,000 |
|---|---|

## THIS CLAIM MUST BE SIGNED
### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

## WARNING

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURENCE. (GOVERNMENT CODE SECTION 911.2)

- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

- SUBJECT TO CERTAIN EXCEPTIONS, YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

| 14. PRINT OR TYPE NAME Jay Leiderman | DATE April 20 2012 | 15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING RELATIONSHIP TO CLAIMANT: |
|---|---|---|

REVISED 4/06

Conservative activists James O'keefe, who is in the business of producing videos exposing what he believes to be newsworthy issues of public importance1 and the late Andrew Breitbart (conservative activist, author, TV commentator and, most notably, an internet media mogul), at one time, were personal friends of the claimant Nadia Naffe.

On several occasions, Mr. O'keefe and Ms. Naffe have traveled together to do undercover video projects. During one such project, in January 2010, Mr. O'keefe illegally recorded a member of Congress in Los Angeles County.

After approximately 2 1/2 years, the friendship between Mr. O'keefe and Ms. Naffe began to erode after he made several passive romantic overtures towards her, which led to a disturbing incident in a barn in Westwood, New Jersey on October 2, 2011.

A few weeks after the barn incident, Mr. O'keefe contacted Ms. Naffe to offer her money in exchange for agreeing not to disclose the incident in New Jersey, which Ms. Naffe rejected. Ms. Naffe contacted the board of directors of Mr. O'keefe's company (including Mr. O'keefe) and requested that Mr. O'keefe cease harassing her. After Mr. O'keefe and his board received Ms. Naffe's letter, Mr. O'keefe threatened to sue Ms. Naffe if she contacted law enforcement to report the incident.

In November 2011, O'keefe continued his harassment of Ms. Naffe, by posting a derogatory video which implied Ms. Naffe was a turncoat, on his website, ProjectVeritas.com and on YouTube.com. In response to the video posting, Ms. Naffe filed a criminal harassment complaint against Mr. O'keefe. The judge dismissed the criminal harassment complaint due to an inability to determine whether the alleged conduct occurred in the State of New Jersey.

In February 2012, the late Mr. Breitbart mischaracterized the New Jersey incident between Ms. Naffe and Mr. O'keefe when discussing the matter, with a reporter. Ms. Naffe publicly challenged Mr. Breitbart's assertions in her own blog posts and tweets.

In response to Ms. Naffe's challenge to Mr. Breitbart, John Patrick Frey, while acting both individually and in the capacity as an Assistant District Attorney in the Los Angeles County District Attorney's office, with whom Ms. Naffe had no prior contact, began ruthlessly and relentlessly attacking Ms. Naffe, both on his blog (http://patterico.com) and by tweeting threatening, harassing and defamatory remarks to Ms. Naffe on Twitter (@patterico), all hours of the day and night.

Mr. Frey has stated that his motivation for "poking holes" in Ms. Naffe's theories, with respect to her civil matter pending against Mr. O'keefe was predicated on the friendship between he, Breitbart and O'keefe. Mr. O'keefe has worked in the same offices as Mr. Frey, while completing an internship with the Los Angeles County District Attorney's Office. Mr. Frey has used his influence to defend Mr. O'keefe on prior occasions (see attached).

Between February 28, 2012, and March 29, 2012, Mr. Frey published eight articles on his blog concerning Ms. Naffe. During that same time period, Mr. Frey has authored several dozen "tweets" (via Twitter.com) concerning Ms. Naffe and/or referring to Ms. Naffe specifically by name. In his tweets, Mr. Frey states that Ms. Naffe is a liar, illiterate, callous, self-absorbed, despicable, a smear artist, dishonest and absurd.

Mr. Frey has repeatedly questioned how someone, with inferior intelligence and could not spell, such as Ms. Naffe, could be attending Harvard. Mr. Frey tweeted "The state bar will laugh at your complaint. As I am laughing now. You seriously go to Harvard?"

The first article Mr. Frey published concerning Ms. Naffe was on February 28, 2012, which included a court transcript from the probable cause hearing Ms. Naffe filed against Mr. O'keefe, stemming from a criminal harassment complaint. Mr. Frey posted screen shots of the transcript and took the statements out of context.

In his other articles, Mr. Frey criticizes a journalist for not "vetting" Ms. Naffe more extensively before writing a story concerning Ms. Naffe and Mr. O'keefe. Mr. Frey made a list of 29 questions the journalist "should have" asked Ms. Naffe regarding her encounters with Mr. O'keefe. Mr. Frey's questions sounded strikingly more similar to the types of questions a lawyer would raise in a legal defense.

On March 14, 2012, Ms. Naffe began a series on her blog to dispel misconceptions about what happened between herself and Mr. O'keefe in New Jersey, why her movement was impaired during the barn incident, and how Messrs. O'keefe and Breitbart coordinated illegal recordings and attempted to wiretap a member

of Congress in Los Angeles County.

On March 23, 2012, Mr. Frey posted on his website documents pertaining to a civil lawsuit that Mr. O'keefe filed against Ms. Naffe. Also on the same date, Mr. Frey tweeted that a judge had granted an injunction against Ms. Naffe and he included a link to the documents.

Ms. Naffe tweeted back, that she intended to report Mr. Frey to the internal affairs department of the District Attorney's office and the California State Bar for misusing government time and resources, so that he could post documents concerning Ms. Naffe on his blog, during business hours and for unethically inserting himself and his wife ChristiL. Frey, who is also an assistant district attorney, into a civil legal matter. That resulted in Mr. Frey stating on his blog the following comments: "You may have noticed that Naffe is now threatening to report me to the State Bar for this post, which is, she claims, 'legal advice.' Because I point out holes in her story, she says, that constitutes 'legal advice' to James O'Keefe in a civil matter. She also falsely accuses me of updating the post during work hours."

On March 24, 2012, Mr. Frey further retaliated by publishing and distributing Ms. Naffe's medical information online, including her social security number, by posting on patterico.com a deposition transcript from a civil matter taken in 2005, in which Ms. Naffe sued her former employer. The deposition transcript contained all Ms. Naffe's personal information including her social security number, date of birth, maiden name, her mother's maiden name, her family's address, information regarding Ms. Naffe's medical condition and medications she was taking, and other information regarding Ms. Naffe's private and personal affairs.

In addition to publishing and distributing Ms. Naffe's confidential information online, Mr. Frey went on to dissect several aspects of the deposition. In his blog post, Mr. Frey again noted that Ms. Naffe threatened to report him to the California State Bar. Mr. Frey posted over 200 pages of documents from the deposition transcript concerning Ms. Naffe, which Mr. Frey first claimed he obtained from PACER.

On March 25, 2012, after it became publicly known that Ms. Naffe's social security number was in the first few pages of the deposition, Mr. Frey posted a comment to his blog stating: "I think I may lay off Nadia and give her a chance to realize she has made a mistake in threatening to report me for totally bogus reasons. I don't really have much else to say about it right now anyway. Comment by Patterico — 3/25/2012 @ 3:42 pm."

Mr. Frey posted a comment to his blog, suggesting his continued harassment had intimidated Ms. Naffe into silence by posting: "She may just be starting to realize that she has made a series of mistakes that could land her in trouble. Maybe she's reconsidering and that's why the Twitter and Facebook are gone. Let's see. Comment by Patterico — 3/25/2012 @ 3:43 pm."

On March 26th, 2012, Ms. Naffe began receiving email alerts from Experian, notifying her that there had been changes to her credit report. Ms. Naffe continues to receive reports that individuals are using her social security number. Mr. Frey posted to his blog, every piece of personal information about Ms. Naffe that a criminal would need to steal her identity. This information has been indexed on Google in HTML and is still available online for the world to see. Mr. Frey was aware that publishing and distributing Ms. Naffe's social security number, medical information and financial information would cause Ms. Naffe and her family tremendous harm.

Furthermore, Mr. Frey's posting such sensitive documents was an attempt to intimidate Ms. Naffe from coming forward with evidence that implicates his friend, Mr. O'keefe in a crime, committed in Mr. Frey's jurisdiction in violation of Penal Code section 136.1, subdivision (b), and section 422.6, subdivision (a). Mr. Frey is well aware that Mr. O'keefe is currently on federal probation and any criminal charges would result in a violation of his probation.

Ms. Naffe is informed and believes and based thereon alleges that Mr. Frey has received complaints in the past regarding the use of his blog posts to harass, bully and intimidate private individuals. Additionally, many of the updated "comments" to the blog posts are time-stamped during traditional business hours, while Mr. Frey was simultaneously performing his official duties (or should have been) serving as an assistant district attorney.

Ms. Naffe is informed and believes and based thereon alleges that the District Attorney's Office has subjectively been aware of Mr. Frey's controversial blog for several months, based on the complaints the office has received about Mr. Frey. The District Attorney's Office has shown deliberate indifference to asserting the proper supervisory authority and control over Mr. Frey.

As a direct and proximate result of the conduct described above, Ms. Naffe has suffered emotional distress, financial loss, as well as the loss of her identity, which is permanent and irrecoverable damage. When someone searches for Ms. Naffe's name on Google, they can find no mention of her professional credentials, only Mr. Frey's defamatory blog posts, which have no journalistic accuracy or merit. Mr. Frey's statements and comments on his blog have slandered Ms. Naffe's honesty, integrity, virtue, reputation and professionalism.

Mr. Frey's behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency or professional conduct. Mr. Frey's publishing of Ms. Naffe's social security number, in violation of California Civil Code Section 1798.85 and PACER's terms of use, illustrates that he is motivated by hatred, ill will or spite or by a reckless disregard for Ms. Naffe's rights, with the intention of causing her personal, professional and financial harm.

# EXHIBIT "B"



# COUNTY OF LOS ANGELES
## OFFICE OF THE COUNTY COUNSEL
648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2713

TELEPHONE
(213) 974-1913

JOHN F. KRATTLI
Acting County Counsel

FACSIMILE
(213) 687-8822
TDD
(213) 633-0901

May 25, 2012

Jay Leiderman, Esq.&
James B. Devine, Esq.
LEIDERMAN DEVINE LLP
5740 Ralston Street, Suite 300
Ventura, California 93003

Re:   Claim(s) Filed:          April 23, 2012
      File Number(s)           12-1097978*001
      Your Client(s):          Nadia Naffe

Dear Counselor:

This letter is to inform you that the above-referenced claim, which you filed with the Los Angeles County Board of Supervisors, was rejected on **May 24, 2012.**

An investigation of this matter fails to indicate any liability on the part of the County of Los Angeles. Accordingly, your claim was rejected on that basis and no further action will be taken on this matter.

STATE LAW REQUIRES THAT YOU BE GIVEN THE FOLLOWING "WARNING:"

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. SEE GOVERNMENT CODE SECTION 945.6.

HOA.885871.1

Jay Leiderman, Esq.&
James B. Devine, Esq.
Page 2

This time limitation applies only to causes of action for which
Government Code Sections 900 - 915.4 required you to present a claim.  Other
causes of action, including those arising under federal law, may have different
time limitations.

<div style="margin-left: 40%;">

Very truly yours,

JOHN F. KRATTLI
Acting County Counsel

By   *Jessie lee*

JESSIE LEE
Associate County Counsel
General Litigation Division

</div>

JL:ce