1
2
3
4

GOETZ FITZPATRICK LLP
RONALD D. COLEMAN
rcoleman@goetzfitz.com
One Penn Plaza, Suite 4401
New York, NY  10119
Telephone:  212.695.8100
Facsimile:  212.629.4013

5
6

Counsel for Defendant
JOHN PATRICK FREY

7
8
9
10

BROWN WHITE & NEWHOUSE LLP
KENNETH P. WHITE (Bar No. 238052)
kwhite@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, CA  90071-1406
Telephone:  213. 613.0500
Facsimile:   213.613.0550

11
12

Local Counsel for Defendant
JOHN PATRICK FREY

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

NADIA NAFFE, an individual,

Case No.: CV12-08443-GW (MRWx)

16

              Plaintiff,

Judge:   Hon. George H. Wu

17

        v.

18
19
20

JOHN PATRICK FREY, an individual,
CHRISTI FREY, an individual, and the
COUNTY OF LOS ANGELES, a
municipal entity,

**DEFENDANTS JOHN PATRICK
FREY'S NOTICE OF MOTION
AND RENEWED MOTION TO
STRIKE THE SECOND THROUGH
SIXTH CAUSES OF ACTION OF
THE FIRST AMENDED
COMPLAINT PURSUANT TO
CALIFORNIA'S ANTI-SLAPP
LAW, CALIFORNIA CODE OF
CIVIL PROCEDURE § 425.16**

21

              Defendants.

22

23
24

Hearing Date:  February 14, 2013
Time:  ___      8:30 a.m.
Courtroom:      10

25

Complaint Filed:  October 2, 2012

26
27
28

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 14, 2013, at 8:30 a.m. in Courtroom 10 in the United States Courthouse located at 312 N. Spring Street, Los Angeles, California 90012, the Honorable George H. Wu presiding, Defendant John Patrick Frey ("Defendant") will make his renewed motion pursuant to California Code of Civil Procedure § 425.16 to strike the Second, Third, Fourth, Fifth and Sixth Causes of Action of Plaintiff Nadia Naffe's ("Plaintiff") First Amended Complaint on the following grounds:

1.  The conduct complained of in the Second through Sixth Causes of Action is protected expression as defined by Code Civ. Proc., § 425.16, subd. (b)(1)); and

2.  Plaintiff cannot show a likelihood of prevailing on any of those causes of action based on the facts she pleads and in light of the applicable law, including Defendants' rights under the First Amendment to the United States Constitution.

This Motion is based on this Notice of Motion and attached Memorandum of Points and Authorities, on all judicially noticeable documents, on all pleadings and papers on file in this action, and on other such matters and arguments as may be presented to this Court in connection with this Motion.

This Motion is made following the telephonic conference of counsel which took place on December 31, 2012.

DATED:  January 11, 2013          Respectfully submitted,

GOETZ FITZPATRICK LLP


By   _s/Ronald D. Coleman_____
          RONALD D. COLEMAN
          Counsel for Defendant
          JOHN PATRICK FREY

DEFENDANT'S SPECIAL MOTION TO STRIKE
773112.1

1

DATED:  January 11, 2013

Respectfully submitted,

2

BROWN WHITE & NEWHOUSE LLP

3

4

By   s/Kenneth P. White

KENNETH P. WHITE
Local Counsel for Defendant
JOHN PATRICK FREY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

773112.1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................1

II.   SUMMARY OF PLAINTFF'S ALLEGATIONS....................................2

    A.    MR. FREY PUBLISHES A BLOG IN HIS PERSONAL CAPACITY .......2

    B.    PLAINTIFF ENGAGED IN PUBLIC DEBATE ABOUT HER CLAIMS AGAINST A PUBLIC FIGURE ................................................3

    C.    MR. FREY WROTE ABOUT PLAINTIFF'S PUBLIC COMMENTS ON THE BLOG, AND PLAINTIFF RESPONDED PUBLICLY ...............4

    D.    PLAINTIFF FILES SUIT ........................................................6

III   ARGUMENT ........................................................................7

    A.    CALIFORNIA'S ANTI-SLAPP LAW PROTECTS DEFENDANTS FROM PLAINTIFF'S CENSORIOUS AND FRIVOLOUS COMPLAINT ........................................................................7

    B.    THE CONDUCT CITED IN THE COMPLAINT IS PROTECTED EXPRESSION, TRIGGERING THE ANTI-SLAPP STATUTE ................9

    C.    PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY THAT SHE WILL PREVAIL ON HER STATE LAW CAUSES OF ACTION ...11

        1.   Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot Succeed Because the Material Posted was Already Public ..............11

        2.   Plaintiff's Defamation Claim Fails Because it Targets Constitutionally Protected Hyperbole and Opinion ........................15

        3.   Plaintiff's Claim of False Light Invasion of Privacy Cannot Succeed Because it is Derivative of Her Defamation Claim...........17

        4.   Plaintiff Cannot Prevail On Her Claim For Intentional Infliction of Emotional Distress ......................................................18

        5.   Plaintiff Cannot Prevail on Her Negligence Claim ......................19

    D.    MR. FREY IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY FEES FOR MAKING A SUCCESSFUL SPECIAL MOTION TO STRIKE ..........................................................21

IV.   CONCLUSION.....................................................................21

DEFENDANT'S SPECIAL MOTION TO STRIKE

773112.1

## TABLE OF AUTHORITIES

Pages

**Cases**

*1-800 Contacts, Inc. v. Steinberg*,
    107 Cal.App.4th 568 (2003) ........................................................................ 8

*Accord, Long v. U.S. Dept. of Justice,*
    450 F.Supp.2d 42 (D.D.C.), *order amended on reconsideration,* 457 F.Supp.2d 30
    (D.D.C.)........................................................................................................ 13

*American Civil Liberties Union v. U.S. Dept. of Justice,*
    655 F.3d 1 (D.C. Cir. 2011) ...................................................................... 12

*American Humane Ass'n v. Los Angeles Times Communications,*
    (2001) 92 Cal.App.4th 1095 ..................................................................... 21

*Beilenson v. Superior Court*,
    44 Cal.App.4th 944 (1996) ........................................................................ 16

*Brill Media Co., LLC v. TCW Group, Inc.*,
    132 Cal.App.4th 324 (2005) ........................................................................ 8

*Cannon v. City of Petaluma,*
    2011 WL 3267714, *3 (N.D. Cal. 2011) ..................................................... 17

*Chaker v. Mateo*,
    209 Cal.App.4th 1138 (2012) ..................................................................... 16

*Cooney v. Chicago Public Schools,*
    (Ill. App. Ct.) 407 Ill.App.3d 358, *appeal denied,* (Ill. 2011) 949 N.E.2d 657 ................. 13

*Cross v. Cooper*,
    197 Cal.App.4th 357 (2011) ....................................................................... 10

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
    62 Cal. Rptr. 2d 620 (Cal. Ct. App. 1997) ................................................. 20

*Flores v. Von Kleist*,
    739 F.Supp.2d 1236 (2010) ....................................................................... 17

*Gilbert v. Sykes,*
    147 Cal.App.4th 13 (2007) .......................................................................... 8

*Governor Gray Davis Comm. v. Am. Taxpayers Alliance*,
    102 Cal.App.4th 449 (2002) ........................................................................ 8

*Hall v. Time Warner, Inc.*,
    153 Cal.App.4th 1337 (2007) ..................................................................... 10

*Harrell v. George,*
    (E.D. Cal., Aug. 22, 2012, CIV S-11-0253 MCE) 2012 WL 3647941 ......................... 15

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010)........................................................................ 8

*Hughes v. Pair,*
    46 Cal.4th 1035 (2009) .............................................................................. 18

ii

773112.1

# TABLE OF AUTHORITIES

Pages

*In re Killian,*
(Bankr. D.S.C., July 23, 2009, C/A 05-14629-HB) 2009 WL 2927950 ............................. 12

*Information Control v. Genesis One Computer Corp.,*
611 F.2d 781 (9th Cir.1980) ................................................................................... 16

*Kashian v. Harriman,*
98 Cal.App. 4th 892 (2002) ................................................................................... 10

*Lam v. Ngo,*
91 Cal.App.4th 832 (2001) ................................................................................... 19

*Level 3 Communications, LLC v. Limelight Networks, Inc.,*
611 F.Supp.2d 572 (E.D. Va. 2009) ..................................................................... 13

*Longview Fibre Co. v. Rasmussen,*
980 F.2d 1307 (9th Cir. 1992) .............................................................................. 20

*Mao's Kitchen, Inc. v. Mundy,*
209 Cal.App.4th 132 (2012) ................................................................................. 13

*Martinez v. Metabolife Intern., Inc.,*
113 Cal.App.4th 181 (2003) ................................................................................... 9

*Massey Coal Services, Inc. v. Victaulic Co. of America,*
249 F.R.D. 477 (S.D.W. Va. 2008) ....................................................................... 13

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990) ................................................................................................. 15

*Moreno v. Hanford Sentinel, Inc.,*
172 Cal.App.4th 1125 (2009) ............................................................................... 12

*Morningstar, Inc. v. Superior Court,*
23 Cal.App.4th 676 (1994) ................................................................................... 16

*New Net, Inc. v. Lavasoft,*
356 F.Supp.2d 1090 (C.D. Cal.2004) ..................................................................... 7

*Nicosia v. De Rooy,*
72 F.Supp.2d 1093 (N.D. Cal. 1999) ..................................................................... 16

*Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n,*
136 Cal.App.4th 464 (2006) ............................................................................. 8, 11

*Price v. Stossel,*
620 F.3d 992 (2010) ........................................................................................... 7, 8

*Rosenauer v. Scherer,*
88 Cal.App.4th 260 (2001) ................................................................................... 16

*Rosenfeld v. U.S. Dept. of Justice,*
(N.D. Cal., Mar. 5, 2012, C-07-3240 EMC) 2012 WL 710186............................ 11

*Russello v. United States,*
464 U.S. 16 (1983)............................................................................................... 20

iii

## TABLE OF AUTHORITIES

Pages

*Satey v. JPMorgan Chase & Co.*,
    521 F.3d 1087 (9th Cir. 2008) ........................................... 20

*Savaglio v. Wal-Mart Stores, Inc.*,
    149 Cal.App.4th 588 (2007) ............................................. 13

*Snyder v. Phelps*,
    131 S.Ct. 1207 (2011) ....................................................... 19

*Standing Commission on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ........................................... 16

*Stewart v. Rolling Stone LLC*,
    181 Cal. App. 4th 664 (2010) ............................................. 9

*United States v. BestFoods*,
    524 U.S. 51 (1998) ............................................................ 20

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
    82 Cal. Rptr. 2d 442 (Cal. Ct. App. 1999) ..................... 20

*Vogel v. Felice*,
    127 Cal.App.4th 1006 (2005) ............................................. 8

**Statutes**

42 U.S.C. § 1983 ....................................................................... 6

Cal. Civ. Code § 1798.85 ................................................. 19, 20

Cal. Civ. Code § 1798.93 ....................................................... 20

Code Civ. Proc., § 425.16, subd. (b)(1) .......................... 1, 7, 8

Code Civ. Proc., § 425.16, subd. (c) ..................................... 21

Code Civ. Proc., § 425.16, subd. (e) ...................................... 9

**Other Authorities**

Assembly Comm. Hearing,
    S.B. 168 (Cal. June 18, 2001) ......................................... 20

DEFENDANT'S SPECIAL MOTION TO STRIKE

773112.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In his initial Special Motion to Strike, Defendant John Patrick Frey ("Mr. Frey") demonstrated that Plaintiff Nadia Naffe's state causes of action against him should be stricken under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  The Court declined to reach that motion, dismissing Plaintiff's state causes of action on jurisdictional grounds but giving Mr. Frey leave to renew his motion as might be appropriate.  Plaintiff has now filed a First Amended Complaint ("FAC") that once again pleads, but does not strengthen, her state law claims.  Mr. Frey therefore renews his motion, amending it as necessary to address the changes in the FAC and in the context of Plaintiff's stubborn insistence on proceeding with these claims calculated solely to curb Mr. Frey's free expression.

And let there be no mistake about it:  The FAC is cynically calculated to punish Mr. Frey for speaking on a matter of public interest.  Plaintiff's own pleading acknowledges that she chose to enter into a public forum on a matter of public interest, deliberately publicizing and arguing her claims of misconduct against a controversial and popular conservative journalist. When Mr. Frey disagreed with her and criticized her in that online forum, she responded in kind.  Dissatisfied with her own ability to utilize the power of speech to persuade, however, Plaintiff again attempts to invoke this Court's power to suppress and retaliate against protected speech she doesn't like.

In their concurrently filed Motion to Dismiss, Defendants establish that Plaintiff's § 1983 cause of action is vexatious and utterly without merit, relying as it does on nothing but unsupported conclusory factual allegations as grounds on which to assert the ridiculous proposition that Mr. Frey, by writing a political blog in his private capacity, was acting under "color of state law" because he has a state job. In this Motion, Defendants establish that the Court should dismiss the remainder of Plaintiff's frivolous claims against them under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. Defendants are entitled to relief under the anti-SLAPP statute

1

BROWN, WHITE & NEWHOUSE LLP
ATTORNEYS

because, as demonstrated below, they can easily meet its familiar two-part test:  (1) the Second through Sixth Causes of action attack protected speech–namely, speech regarding a subject of public interest—and (2) Plaintiff cannot possibly prevail on those causes of action.

Therefore, the Court should strike the Second through Sixth Causes of Action and award Defendants their fees and costs under the anti-SLAPP statute.

## II.    SUMMARY OF PLAINTFF'S ALLEGATIONS[1]

### A.    MR. FREY PUBLISHES A BLOG IN HIS PERSONAL CAPACITY

Mr. Frey is employed as Deputy District Attorneys for Los Angeles County. (¶ 4.) Mr. Frey also publishes a popular blog called "Patterico's Pontifications" ("the Blog") and maintains a Twitter account under the user name @patterico. (¶¶ 9, 39.) While the fact is self evident, the Blog explicitly informs readers that the statements made by Mr. Frey therein are "personal opinions . . . not made in any official capacity."  (Original Complaint at ¶ 38; FAC at ¶ 14.)  Plaintiff herself has also submitted evidence showing that Mr. Frey's Twitter profile contains a disclaimer reading, "All statements are made in my private capacity and not on behalf of my employer." (Docket Item 20-3 at 1.)

Prior to the filing of the FAC, these and similarly compelling facts in the record negated any reasonable inference that Mr. Frey's blog was anything but a personal activity.  And now that the FAC has been filed, the record still negates any reasonable inference that Mr. Frey's blog was anything but a personal activity. While the FAC is replete with scores of allegations that Mr. Frey does blog in an official, public capacity, it still offers nothing but a self-serving conclusion on this score – conclusions that cannot be supported by the facts of record and which are refuted more explicitly in Mr. Frey's concurrently filed Motion to Dismiss.

For present purposes, however, it is worth noting that Plaintiff herself cites blog posts by Mr. Frey that refute her own claim:  *Even in posts Plaintiff explicitly complains about in the FAC,* Mr. Frey specifically stated that he was acting in his private capacity.

---

[1] All references to paragraph numbers herein are to the FAC unless otherwise noted.

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

773112.1

For example:

| Excerpted allegation in FAC | Relevant language from subject blog post (emphasis added) |
| --- | --- |
| "FREY has also used his blog to publicly encourage O'KEEFE to take certain legal action. For example, on May 27, 2010, in a post titled 'Brad Friedman: Press Release Confirming Well-Known Fact That O'Keefe Intended to Do Undercover Sting Vindicates Me, Somehow (Alternate Post Title: Brad Friedman Is a Huge Liar)', FREY wrote: . . ." ¶ 28 | "I think it is actually known as the Invasion of Privacy Act, but don't take my word for it; contrary to Friedman's suggestions, I am not a wiretap violations prosecutor but a gang murder prosecutor, *speaking in my private capacity* as I always do on this blog." Exhibit P to Frey Decl. at 88-89. |
| "PLAINTIFF is informed and believes and based thereon alleges that in the same February 28, 2012, blog post mentioned in the above paragraph, FREY, acting as a Deputy District Attorney, criticized journalist Tommy Christopher for failing to vet PLAINTIFF before publishing an article about the Barn Incident and subsequent lawsuit . . ." ¶ 45 | "By the way:  given Naffe's admission that she accessed O'Keefe's emails, evidently without his permission, has she committed a crime?  I offer no opinion on that, as *this post (like all my posts!) is written in my private capacity*, as an exercise of my rights as a private citizen under the First Amendment." Exhibit Q to Frey Decl. at 93. |

Seeking to compensate for the lack of substance to her "state color" claim by "making it up in volume," Plaintiff goes on to cite post after post in which Mr. Frey, who blogs about criminal justice issues, *mentions* that he is a Deputy District Attorney – a fact that has never been in question.  But not one of these posts can be read as supporting Plaintiff's claim that Mr. Frey was, or purported to, or could have been understood as, acting in his official capacity by writing on a blog about political and legal topics while also having a job with the State. (Exhibits A - L.)

**B.**     **PLAINTIFF ENGAGED IN PUBLIC DEBATE ABOUT HER CLAIMS AGAINST A PUBLIC FIGURE**

As the Court will recall, Plaintiff is a former friend and colleague of James O'Keefe, a "popular member of the conservative community who has been vilified by the mainstream press" but is popular among conservatives. (FAC at ¶ 24, 34.) Plaintiff explains her estrangement from Mr. O'Keefe by alleging that, in the Fall of 2011, he

773112.1

drugged her and attempted to sexually assault her after she rejected his romantic overtures. She describes these alleged events as the "Barn Incident." (¶ 34.) Plaintiff further asserts that Mr. O'Keefe posted a "harassing, degrading, public video" about her on YouTube, and that she responded by filing a criminal harassment complaint against Mr. O'Keefe, which she claims was ultimately dismissed for lack of jurisdiction.[2] (¶ 35.) In February 2012, the late conservative media figure Andrew Breitbart spoke with a reporter about the Barn Incident. While not explaining how this conversation came to her attention, Plaintiff took to her personal blog and Twitter to "publicly challenge[]" what she characterizes as Breitbart's "misconceptions" concerning the Barn Incident. (¶ 36.)

C. **MR. FREY WROTE ABOUT PLAINTIFF'S PUBLIC COMMENTS ON THE BLOG, AND PLAINTIFF RESPONDED PUBLICLY**

Mr. Frey used his "Patterico" persona to write about the controversy publicized by Plaintiff involving Mr. O'Keefe, Plaintiff, and the Barn Incident on the Blog beginning in February 2012. (¶ 24). Mr. Frey began by writing about what had already amounted to major media coverage of Plaintiff's allegations, contrasting the manner in which journalists Keith Olbermann and David Shuster of Current TV characterized Plaintiff's allegations with the allegations themselves. (Frey Decl. at ¶¶ 11-12; Exhibit Y to Frey Decl.) Later Mr. Frey obtained and posted the transcript of the probable cause hearing on Plaintiff's harassment complaint against Mr. O'Keefe, this time contrasting Plaintiff's sworn testimony with Mr. Shuster's characterizations of it. (Frey Decl. at ¶¶ 13-15; Exhibits Z, AA to Frey Decl.) When Mr. Shuster posted another article about Plaintiff's accusations against Mr. O'Keefe, Mr. Frey again contrasted those allegations with the sworn testimony she had given at the probable cause hearing, arguing that they were inconsistent. (Frey Decl. at ¶ 17; Exhibit BB to Frey Decl.) Mr. Frey also criticized Plaintiff for publicly mocking the death of Andrew Breitbart by posting a heart attack

---

[2] That claim is at best misleading; the court in question ruled in part based on a finding that "I don't find that there is a course of alarming conduct or repeatedly committed acts directed to you."  Exhibit D to Request for Judicial Notice at 63.

4

773112.1

BROWN, WHITE & NEWHOUSE LLP
ATTORNEYS

joke about him the day he apparently died of a heart attack. (Frey Decl. at ¶ 16.)

When journalist David Shuster posted yet another article about Plaintiff's claims against Mr. O'Keefe on the site Mediaite.com, Mr. Frey wrote another blog post critiquing the coverage.  He suggested questions that he believed a serious journalist should have asked Plaintiff to probe the truth or falsity of her allegations and to examine the apparent inconsistencies with her sworn testimony at the probable cause hearing. (Frey Decl. at ¶¶ 18-19; Exhibits Q, CC to Frey Decl.)

Mr. Frey sought additional factual support for his hypothesis that Plaintiff's public depiction of the facts concerning the Barn Incident, as well as that of the sympathetic media, were amenable to serious questions. For this reason, and in his role as an independent journalist, on February 24, 2012, Mr. Frey accessed PACER records of a lawsuit Plaintiff had previously filed against the Republican Party of Florida.

Mr. Frey discovered, among other things, a number of facts of record which appeared to bear on Plaintiff's credibility.  One was an order in which the Florida court ordered Plaintiff to return a laptop computer which it found she was obligated to return. Mr. Frey also reviewed motion papers, including deposition transcripts, showing that at the time she gave her deposition, Plaintiff testified that she was using medication that might impair her ability to testify.  Mr. Frey downloaded the order and the deposition transcripts and posted them in a blog post, asserting his opinion that they bore on Plaintiff's credibility in her claims against Mr. O'Keefe and leaving readers free to come to their own conclusions based on the record.  Later Mr. Frey amended the post to point out that one of the medications Plaintiff mentioned in her testimony mixed badly with alcohol, providing a possible explanation for her assertion that she had been drugged in the Barn Incident. (Frey Decl. at ¶¶ 22-27; Exhibits DD, EE, FF, GG to Frey Decl.) When someone pointed out that the transcript included Plaintiff's Social Security Number, Mr. Frey removed the link to the transcript almost immediately, replacing it with a redacted version a few hours later.  (Frey Decl. at ¶ 28.)

Plaintiff responded to Mr. Frey's publication of this material he had found on

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

PACER with a barrage of threats against him on Twitter.  (Frey Decl. at ¶ 39; Exhibit NN to Frey Decl.)  Despite claiming in this lawsuit that Mr. Frey's protected expression chilled her free speech and forced her to take down her blog, months after Mr. Frey posted these materials Plaintiff responded with a blog post asserting defiantly that Mr. Frey had not chilled her, and gleefully speculating about using this litigation to question Mr. Frey and his wife about how they purchased their home, about an unrelated incident in which Mr. Frey was the victim of a false police report, and about an anonymous political blogger with no connection whatsoever to the allegations in the FAC. (Frey Decl. at ¶ 36; Exhibits LL, MM to Frey Decl.)

### D.   **PLAINTIFF FILES SUIT**

In October of 2012, Plaintiff sued Mr. Frey, Mrs. Frey, the County, and former Los Angeles County District Attorney Steve Cooley in this action.  She subsequently dropped her claims against Mrs. Frey and Mr. Cooley.  Her first six causes of action are against all parties and all but the first are the subject of this Motion; in her First Cause of Action, Plaintiff asserts that Mr. Frey violated her civil rights in violation of 42 U.S.C. § 1983, the subject of Defendants' concurrently filed Motion to Dismiss and not at issue in this Motion.  Plaintiff's Seventh Cause of Action is not at issue in this Motion; it is against the County for negligent supervision.

The Second Cause of Action asserts a claim for "Public Disclosure Invasion of Privacy" based on Mr. Frey's republication of the deposition transcript originally published on PACER in Plaintiff's lawsuit with her former employer.  (¶ 77.)

The Third Cause of Action asserts a claim for "False Light Invasion of Privacy" for "painting PLAINTIFF as a liar, as dishonest, as self-absorbed, and by relentlessly asking everyone who would listen why PLAINTIFF failed to call a cab during the barn incident." (¶ 81.)

Plaintiff's Fourth Cause of Action asserts a claim for defamation based on the following specific statements:  that Plaintiff is a "liar whose lies will be exposed," and that Plaintiff "is full of false allegations."  (¶ 85.)

773112.1

The Fifth Cause of Action asserts a claim for intentional infliction of emotional distress based on Mr. Frey's expression on the Blog and Twitter.  (¶ 89.)

The Sixth Cause of Action asserts a claim for negligence based on Mr. Frey's republication of Plaintiff's already-published deposition transcript with her Social Security number. (¶ 93.)

## III.   ARGUMENT

This Court should strike Plaintiff's Second through Sixth Causes of Action of the FAC under California's anti-SLAPP statute because they complain of conduct arising from protected expression and because Plaintiff is unlikely to prevail on them. The changes Plaintiff has added to the FAC, amounting merely to ballast, repetition and conclusory statements, do not alter that conclusion.

### A.   CALIFORNIA'S ANTI-SLAPP LAW PROTECTS DEFENDANTS FROM PLAINTIFF'S CENSORIOUS AND FRIVOLOUS COMPLAINT

In *Price v. Stossel*, 620 F.3d 992 (2010), the Ninth Circuit explained the policy and legal principles underlying the anti-SLAPP law of this State, as well as its application in the federal courts with respect to state-law claims:

> California's anti-SLAPP statute permits courts at an early stage to dismiss meritless defamation cases aimed at chilling expression through costly, time-consuming litigation.  The statute was passed in 1993 in response to the legislature's concern that strategic defamation lawsuits were deterring citizens from exercising their political and legal rights.  We have repeatedly held that California's anti-SLAPP statute can be invoked by defendants who are in federal court on the basis of diversity jurisdiction.  The hallmark of a SLAPP suit is that it lacks merit, and [that it] is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned. The anti-SLAPP statute attempts to counteract the chilling effect of strategic suits by providing that such suits should be dismissed under a special "motion to strike." Cal.Civ.Proc.Code § 425.16(b)(1).

620 F.3d at 999 (internal quotations and citations omitted).  *See also New Net, Inc. v. Lavasoft,* 356 F.Supp.2d 1090, 1099 (C.D. Cal.2004) (in federal question case, anti-

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

7

1  SLAPP motion properly directed only to pendant state law claims).

2    Under California law and federal cases construing it, this Court undertakes a two-

3  step analysis when considering Mr. Frey's anti-SLAPP motion.  First, Mr. Frey has the

4  burden of making a prima facie showing that the state-law causes of action are premised

5  on protected expression as defined by the anti-SLAPP statute. Code Civ. Proc., § 425.16,

6  subd. (b)(1)); *see also*, *Governor Gray Davis Committee v. American Taxpayers*

7  *Alliance*, 102 Cal.App.4th 449, 458-59 (2002); *Hilton v. Hallmark Cards*, 599 F.3d 894,

8  903 (9th Cir. 2010) (applying the two-step analysis to anti-SLAPP motion brought in

9  federal court). The Court makes that determination upon consideration of the pleadings,

10  declarations and, if appropriate, matters that may be judicially noticed.  *Brill Media Co.,*

11  *LLC v. TCW Group*, *Inc.*, 132 Cal.App.4th 324, 329 (2005).

12    If Mr. Frey makes this showing—which, as set out below, he can do readily—the

13  burden shifts to Plaintiff to show that even though the expression is prima facie

14  protected expression, she nonetheless is more likely than not to prevail on her claims

15  based on both the applicable law and "a sufficient prima facie showing of facts."

16  *Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n,* 136 Cal.App.4th 464,

17  476 (2006); Code Civ. Proc., § 425.16, subd. (b)(1)).  Plaintiff must carry this burden

18  with "competent and admissible evidence."  *Price v. Stossel*, 590 F.Supp.2d 1262, 1266

19  (C.D. Cal. 2008). "The plaintiff's burden resembles the burden he would have in fending

20  off a motion for summary judgment or directed verdict." *Gilbert v. Sykes,* 147

21  Cal.App.4th 13, 53 (2007).  If a plaintiff can't even state a cause of action, she by

22  definition can't meet this standard.  *Vogel v. Felice*, 127 Cal.App.4th 1006, 1017 (2005)

23  (plaintiff cannot show a probability of success where claim is legally insufficient on its

24  face); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 584 (2003) ("In order to

25  establish the necessary probability of prevailing, [a] plaintiff [is] required . . . to plead

26  claims that [are] legally sufficient . . .").

27    In the highly likely event that Plaintiff's subsequent submissions fail to meet this

28  burden, the Court must strike the FAC and award Mr. Frey attorneys' fees and costs.

773112.1

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

**B.** **THE CONDUCT CITED IN THE COMPLAINT IS PROTECTED EXPRESSION, TRIGGERING THE ANTI-SLAPP STATUTE**

Defendants easily satisfy the first prong of the anti-SLAPP test based on the face of the Complaint. The California Code of Civil Procedure defines the conduct protected under the anti-SLAPP law as follows:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Code Civ. Proc., § 425.16, subd. (e). It does not matter what guise or cause of action Plaintiff uses to attack the protected expression: if the factual conduct described in the Complaint falls into one of these categories, it triggers the anti-SLAPP statute. *Martinez v. Metabolife Intern., Inc*. 113 Cal.App.4th 181, 187 (2003) ("a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a 'garden variety breach of contract [or] fraud claim' when in fact the liability claim is based on protected speech or conduct.")

In fact, the conduct described in the FAC is on its face protected as speech made "in connection with a public issue or an issue of public interest" which triggers the anti-SLAPP statute because the legal claims against Mr. Frey are explicitly based entirely on his commentary on a matter of public interest within the meaning of § 425.16, subdivisions (e)(3) and (e)(4). "A statement or other conduct is made 'in connection with a public issue or an issue of public interest' . . . 'if the statement or conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic.'" *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010), *as modified on denial of reh'g* (Feb. 24, 2010), *quoting, Hall v. Time Warner,*

9

773112.1

1   *Inc.* 153 Cal.App.4th 1337 (2007).  "[A]n issue of public interest' . . . is any issue in

2   which the public is interested."  *Cross v. Cooper*, 197 Cal.App.4th 357, 372-73 (2011)

3   (citations and internal quotations omitted).

4          In light of this broad standard, plaintiff cannot plausibly dispute that the subject

5   matter of the publications at issue is a matter of public interest or a public issue.  Indeed,

6   she herself has consistently *treated it as a matter of public interest*.    Plaintiff admits

7   that she "publicly challenged" late "media mogul" Andrew Breitbart through posts on

8   her blog and her Twitter account after what she saw as his "mischaracterizations" of the

9   Barn Incident.  (¶ 36.)  Similarly, Plaintiff admits in her allegations that she immediately

10   broadcast on Twitter her objections to and threats regarding Mr. Frey's posting on the

11   Blog of the publicly-available documents relating to the civil suit Mr. O'Keefe had filed

12   against her (¶ 48), drawing more public attention to them.

13          Moreover, Plaintiff's description of the events proves beyond cavil that they are

14   matters of public interest.  Plaintiff acknowledges that Mr. O'Keefe is a renowned

15   conservative "activist" known for his video exposés on political matters.  (¶ 24.)  She

16   also describes him as "a popular member of the conservative community who has been

17   vilified by the mainstream press." (*Id.*) And much of the Complaint centers on Mr.

18   Frey's responses to another journalist's article about Plaintiff and the Barn Incident. (¶

19   45.)  Here, therefore, we have (a) an accusation of attempted rape, (b) made in court

20   filings against (c) a controversial public figure, accusations which (d) have already been

21   the subject of media coverage.  Any one of these components *alone* qualifies this subject

22   matter as one of public interest—as do questions of veracity concerning the accuser,

23   which were the main topic of Mr. Frey's posting. *See*, e.g., *Kashian v. Harriman*, 98

24   Cal.App. 4th 892, 910 (2002) (anti-SLAPP statute applies to commentary concerning

25   legality of subject's litigation activities where they are "a matter of considerable

26   dispute").

27          Thus by her own allegations Plaintiff has made, in the Complaint, an irrefutable

28   case for the proposition that Mr. Frey's comments concern a "statement or other conduct

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

1  . . . made 'in connection with a public issue or an issue of public interest.'"

2  **C.**  **PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY THAT**

3  **SHE WILL PREVAIL ON HER STATE LAW CAUSES OF ACTION**

4  Because the state-law causes of action in the FAC (as well as the specious § 1983

5  claim) arise out of Mr. Frey's protected speech and trigger the anti-SLAPP statute,

6  under the second part of the two-part test Plaintiff must demonstrate a probability that

7  she will prevail on the merits of those claims.  *Premier Med. Mgmt. Systems, supra,* 136

8  Cal.App.4th at p. 476.  She cannot do so, for the reasons set out below.  Therefore, the

9  Court must strike the Complaint and award attorney fees to Mr. Frey.

10  **1.**  **Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot Succeed**

11  **Because the Material Posted was Already Public**

12  Plaintiff's Second Cause of Action claims invasion of privacy based on Mr. Frey's

13  publication of a deposition transcript in a civil suit between Plaintiff and her former

14  employer that had been filed on PACER.  (¶¶ 31, 69.)  As it appeared on PACER, and as

15  originally republished by Mr. Frey, that transcript included Plaintiff's Social Security

16  number, date of birth, maiden name, family address, and personal medical information.

17  (¶ 31.)

18  These allegations cannot support a claim for the tort of public disclosure invasion

19  of privacy for two fundamental reasons.  First, as is established above, the information

20  published by Mr. Frey concerns a matter of public interest, which itself diminishes the

21  privacy expectation of the plaintiff. "[P]ersons who have placed themselves in the public

22  light, e.g., through politics, or voluntarily participate in the public arena have a

23  significantly diminished privacy interest than others." *Rosenfeld v. U.S. Dept. of Justice*

24  (N.D. Cal., Mar. 5, 2012, C-07-3240 EMC) 2012 WL 710186.  Second, Plaintiff's own

25  allegations establish that the facts disclosed were not private at all when Mr. Frey

26  published them, because the documents themselves, including the Social Security

27  number and other information, had already been published on PACER.  Therefore they

28  were publicly available for years before they were published on the Blog, and Plaintiff

Brown, White & Newhouse<sup>LLP</sup>
A T T O R N E Y S

11
773112.1

1  did nothing about it.

2      The elements of the tort of a public disclosure of private facts are "(1) public

3  disclosure (2) of a private fact (3) which would be offensive and objectionable to the

4  reasonable person and (4) which is not of legitimate public concern. The absence of any

5  one of these elements is a complete bar to liability. . . [A] crucial ingredient of the

6  applicable invasion of privacy cause of action is a public disclosure of *private facts.* A

7  matter that is already public or that has previously become part of the public domain is

8  not private." *Moreno v. Hanford Sentinel, Inc.* 172 Cal.App.4th 1125, 1129-30 (2009)

9  (emphasis in original; internal citations and quotations omitted).

10     As set out below, courts have been skeptical of claims that privacy rights are

11 violated by the publication of material already available to the public on PACER, "'an

12 electronic public access service that allows users to obtain case and docket information

13 from [all] federal appellate, district and bankruptcy courts.'" *American Civil Liberties*

14 *Union v. U.S. Dept. of Justice,* 655 F.3d 1, 7 (D.C. Cir. 2011) ("*ACLU v. DOJ*"). The

15 federal courts' ECF/PACER system is not where someone interested in keeping

16 information private places that information, or allows it to remain. Anyone can register

17 for PACER access, and the technical resources for utilizing it are ubiquitous. *In re*

18 *Killian* (Bankr. D.S.C., July 23, 2009, C/A 05-14629-HB) 2009 WL 2927950. By virtue

19 of this ready public access, once information is published on PACER it cannot be

20 regarded as private. As the District of Columbia Circuit Court of Appeals explained in

21 *ACLU v. DOJ*, looking up case information on PACER is "readily accomplished,"

22 continuing as follows:

23     The fact that information about these proceedings is readily available to the public
24     reduces further still the incursion on privacy resulting from disclosure. . . .

25     [There is no] web of statutory or regulatory policies obscuring [such] information,
26     nor much expense nor logistical difficulty in gathering it. To the contrary,
       computerized government services like PACER make it possible to access court
27     filings concerning any federal [litigant] from the comfort of one's home or office,
       quite unlike the "diligent search of courthouse files, county archives, and local
28     police stations throughout the country" that a citizen would [formerly] have had to

12

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE LLP
A T T O R N E Y S

undertake to replicate the contents of [court records] . . .

655 F.3d at 7-9 (footnotes omitted). *Accord*, *Long v. U.S. Dept. of Justice* 450 F.Supp.2d 42, 68 (D.D.C.), *order amended on reconsideration,* 457 F.Supp.2d 30 (D.D.C.), *amended*, 479 F.Supp.2d 23 (D.D.C. 2007). Thus, for example, a trade secrets claim, which like invasion of privacy requires that the information published by the defendant was truly private when published, was found to have been vitiated where the documents in question had been on PACER for even three weeks prior to the date of the decision. *Massey Coal Services, Inc. v. Victaulic Co. of America*, 249 F.R.D. 477, 484 (S.D.W. Va. 2008) (interested party had not acted to seal the materials). *See also*, *Cooney v. Chicago Public Schools* (Ill. App. Ct.) 407 Ill.App.3d 358, 367, *appeal denied,* (Ill. 2011) 949 N.E.2d 657 ("personal" and "private" information not synonymous; denying privacy invasion claim based on disclosure of Social Security numbers).

Moreover, the courts take a dim view of any attempt to deem material that is part of court proceedings as confidential or private, however they were accessed. "The public has a First Amendment right of access to civil litigation documents filed in court and used at trial or submitted as a basis for adjudication.  Substantive courtroom proceedings in ordinary civil cases, and the transcripts and records pertaining to these proceedings, are presumptively open." *Savaglio v. Wal-Mart Stores, Inc.,* 149 Cal.App.4th 588, 596-97 (2007) (citations and internal quotations omitted). "It is a 'well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use.'" *Level 3 Communications, LLC v. Limelight Networks, Inc.,* 611 F.Supp.2d 572, 583 (E.D. Va. 2009). This applies with equal force to discovery materials filed by court. *Mao's Kitchen, Inc. v. Mundy,* 209 Cal.App.4th 132, 149 (2012) ("Generally, courts have held that discovery materials filed with the court are publicly disclosed"). For these reasons, Plaintiff cannot prevail on her claim for invasion of her privacy due to the publication of PACER documents by Mr. Frey on the Blog.

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

773112.1

In the FAC, Plaintiff attempts to evade this problem by "creating a fact issue," or at least trying to give the impression of doing so, by clouding the question of whether or not the deposition transcripts were previously publicly available on PACER, which she did not dispute in the first round of motions.  In the FAC, however, Plaintiff slyly alleges that the transcript "is" not available to the public on PACER. FAC at ¶ 50.  By so doing, she attempts, clumsily, to elide the far more relevant question of whether the transcripts *were* available on PACER when Mr. Frey downloaded them and through the time Mr. Frey published them.

They were.  Plaintiff can't, despite her best efforts, tell her own story without admitting that they were on PACER, because she wants to avail herself of the "backup" argument that it was someone else's (not Mr. Frey's) fault, not hers, that they were there. So a few sentences later, Plaintiff admits "[t]his deposition transcript was initially uploaded to the PACER system not by PLAINTIFF or PLAINTIFF's counsel in that matter; it was made available on PACER as an attachment to a motion by the opposing party's counsel."  (*Id.*)  That is to say, taking Plaintiff at her own word, the document was, at one time, publicly available on PACER.

Despite this being her second bite at the pleading apple, this Court need not depend on Plaintiff's own artful pleadings to conclude that the transcript was indeed on PACE.  Supporting his declaration explaining how he obtained the transcripts from PACER, Mr. Frey attaches the transcripts themselves bearing characteristic PACER stamps on each and every page, and an electronic receipt proving that he was able to, and did, download the transcripts from PACER.  (Frey Decl. at ¶¶ 22-25; Exhibits DD, EE, FF, and GG to Frey Decl.)  Plaintiff's misleading comment about the *current* status of the transcript – indeed, the document is no longer online; a result, no doubt, of her own subsequent actions – is therefore legally irrelevant and, significantly, a troubling tip-off concerning her candor and desperation with respect to this motion.

Moreover, though Plaintiff complains that the transcripts contain private information about her medical condition, she ignores the fact that the public motion to

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

which the transcripts were attached also refers to her medical condition, as does her public response to it.  Request for Judicial Notice Exhibits B at 22 ("Naffe even claimed that because of the medication she was taking, her doctor told her 'it is possible that I can't give accurate answers.'"); C at 43 ("Defendant Republican Party of Florida decided it did not like Plaintiff's statement that she spoke with her treating doctor who told her that her medication could affect her memory and testimony.")

In short, these transcripts were public and the information in them cannot be the basis of a claim for public disclosure invasion of privacy.

## 2. Plaintiff's Defamation Claim Fails Because it Targets Constitutionally Protected Hyperbole and Opinion

Plaintiff cannot prevail on her Fourth Cause of Action for Defamation because it targets expression that is classic political hyperbole and opinion that is absolutely privileged under the First Amendment and not subject to defamation analysis. [3]
In the course of arguing with plaintiff on Twitter about her public claims against Mr. O'Keefe, Mr. Frey is alleged to have written that she is a "liar whose lies will be exposed," and that Plaintiff "is full of false allegations." (¶ 85.)  These statements, in the context the Complaint describes, cannot be defamatory because the First Amendment provides absolute protection to statements that cannot "reasonably [be] interpreted as stating actual facts" but instead amount to "imaginative expression" or "rhetorical hyperbole." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20 (1990). Under this doctrine, courts have repeatedly rejected defamation claims leveled against accusations of dishonesty or other misbehavior whose context shows them to be part of a vivid debate and not intended as literal assertions of fact.

---

[3] Truth, of course, is a complete defense to a defamation claim "regardless of bad faith or malicious purpose" and "irrespective of slight inaccuracy in the details," *Harrell v. George* (E.D. Cal., Aug. 22, 2012, CIV S-11-0253 MCE) 2012 WL 3647941.  Evaluation of the two sides' claims and facts in the Complaint and in the documents referred to therein readily demonstrate that on the existing record Mr. Frey's comments regarding plaintiff's veracity should be, as a matter of law, be found literally truthful.  However, the Court need not reach that defense in evaluating this Motion, as the Complaint fails for other reasons as well.

15

773112.1

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

Thus, for example, in *Rosenauer v. Scherer,* 88 Cal.App.4th 260, 280 (2001), an anti-SLAPP order was upheld where the defendant called plaintiff a "thief" and "liar" in "the midst of a heated confrontation over a political issue," because, as the court explained, the language was "the type of loose, figurative, or hyperbolic language that is constitutionally protected." Similarly, in *Standing Commission on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995), the term "dishonest" was held protected opinion, because it was "used to convey the low esteem" in which the defendant lawyer held a judge, not as a literal allegation of dishonesty. *See also*, *Morningstar, Inc. v. Superior Court*, 23 Cal.App.4th 676, 691 (1994) (titling article "Lies, Damn Lies, and Fund Advertisements" not actionable as libel because it "cannot reasonably be read to imply a provably false factual assertion").

Such invective is especially unlikely to be taken as literally true statements of fact in three contexts all present here: Political disputes, legal disputes, and Internet debates. *See*, *Beilenson v. Superior Court*, 44 Cal.App.4th 944, 950 (1996) (campaign mailer charging politician with "ripp[ing] off" taxpayers "when taken in context with the other information contained in the mailer [is] rhetorical hyperbole common in political debate" and not defamatory); *Information Control v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.1980) (in context of legal dispute, "language which generally might be considered as statements of fact may well assume the character of statements of opinion."); *Chaker v. Mateo*, 209 Cal.App.4th 1138 (2012) (affirming anti-SLAPP order where online insults were properly understood as opinion; surveying California cases establishing that online expression more likely to be taken as opinion than fact); *Nicosia v. De Rooy*, 72 F.Supp.2d 1093 (N.D. Cal. 1999) (granting anti-SLAPP motion and motion to dismiss where "readers are less likely to view statements as assertions of fact" in context of web site's claims of misconduct).

Mr. Frey's alleged characterization of Plaintiff as a "liar whose lies will be exposed" and "full of false allegations" (¶ 85) came in the context of an ongoing online dispute between them over Plaintiff's contentious litigation against a high-profile and

controversial political figure, Mr. O'Keefe.  Moreover, the two statements were, according to the Complaint, published on Twitter, a medium limited to 140-character utterances which necessarily constrains precision.  Under these circumstances Mr. Frey's comments cannot possibly be interpreted as provably false statements of fact rather than figurative, hyperbolic language.  Therefore, Plaintiff cannot prevail on her defamation claim against Defendants.

### 3.  <u>Plaintiff's Claim of False Light Invasion of Privacy Cannot Succeed Because it is Derivative of Her Defamation Claim</u>

Plaintiff cannot prevail on her Third Cause of Action for False Light Invasion of Privacy because this claim is derivative of, and duplicative of, her meritless defamation claim.  To prove a claim for false light invasion of privacy, Plaintiff must show that "(1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, (2) the publicity was offensive to a reasonable person, and (3) the defendant acted with actual malice." *Flores v. Von Kleist*, 739 F.Supp.2d 1236, 1259 (2010). When, however a false-light invasion of privacy claim "is in substance equivalent to an accompanying defamation claim, the false-light claim should be dismissed as superfluous." *Cannon v. City of Petaluma,* 2011 WL 3267714, *3 (N.D. Cal. 2011). Moreover, if the underlying defamation claim fails, the accompanying false light invasion of privacy claim fails with it. *Flores*, 739 F.Supp.2d at 1259 (false light claim failed with defamation claim absent proof of a defamatory statement); *Cannon,* 2011 WL 3267714, *3 (false light claim failed with defamation claim when complained-of statement was true).

Here, Plaintiff's false light claim fails for multiple reasons. First, it is equivalent to the accompanying defamation claim, and therefore superfluous.  Second, just as Plaintiff cannot prove defamation because she cannot prove that Mr. Frey made provably false statements of fact, she cannot prove false light defamation because she cannot prove false or misleading publicity. As discussed above, Mr. Frey's statements about Plaintiff being a "liar" or "dishonest" were hyperbole and argument, not false statements.

1   Plaintiff also complains that Mr. Frey called her "self-absorbed"—rather ironic in the

2   context of this federal lawsuit— an obvious statement of opinion.[4]  Similarly, the

3   allegations that Mr. Frey "relentlessly ask[ed] everyone who would listen why

4   PLAINTIFF failed to call a cab during the barn incident" could not amount to a false

5   statement of fact absent an allegation, not present here, that Plaintiff *did* call a cab.

6       Therefore Plaintiff cannot demonstrate that she will prevail on her Third Cause of

7   Action for False Light Invasion of Privacy.

8       **4.  <u>Plaintiff Cannot Prevail On Her Claim For Intentional Infliction of</u>**

9   **<u>Emotional Distress</u>**

10       Nor can Plaintiff prevail on her Fifth Cause of Action for Intentional Infliction of

11   Emotional Distress.  To do so she would have to prove "(1) extreme and outrageous

12   conduct by the defendant with the intention of causing, or reckless disregard of the

13   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

14   emotional distress; and (3) actual and proximate causation of the emotional distress by

15   the defendant's outrageous conduct," and that the conduct was so "extreme as to exceed

16   all bounds of that usually tolerated in a civilized community." *Hughes v. Pair,* 46 Cal.4[th]

17   1035, 1050–51 (2009).  No facts exist, nor are they pleaded here, sufficient to satisfy

18   these elements.

19       First, Plaintiff cannot prevail because the conduct she complains of is not, as a

20   matter of law, extreme or outrageous as a matter of law. "Liability for intentional

21   infliction of emotional distress does not extend to mere insults, indignities, threats,

22   annoyances, petty oppressions, or other trivialities."  *Id.* at 1051.  Here, Plaintiff chose to

23   enter a politically charged arena online and publicly advocate her version of events that

24   were the subject of litigation she brought against a controversial public figure.  Under

25   such circumstances she cannot possibly establish that Mr. Frey's online expression

26   
27   ───────────────
[4] The record shows that Mr. Frey referred to Plaintiff as "self-absorbed" in the context of criticizing a post she made on Twitter in which she made a heart attack joke about Andrew Breitbart on the day he died of an apparent heart attack.  Frey Decl. at ¶ 16.  The notion that Plaintiff may mock people on the day of their death, but others may not criticize her for it, is repellant and – to coin a phrase – self-absorbed.

28

1   questioning her honesty and even insulting her constitutes outrageous conduct "so
2   extreme as to exceed all bounds of that usually tolerated in a civilized community."

3          Second, Plaintiff cannot prevail because the conduct she complains of is debate on
4   a subject of public interest protected by the First Amendment, as discussed above, and
5   hence exempt from attack as infliction of emotional distress. In *Snyder v. Phelps*, 131
6   S.Ct. 1207 (2011), the United States Supreme Court struck down an intentional infliction
7   of emotional distress judgment against defendants whose conduct was unimaginably
8   more outrageous than the comments by Mr. Frey about the Plaintiff: protestors who
9   waved vile and abusive signs outside the funeral of a soldier killed in action.  The Court
10  ruled that as obnoxious as this conduct was, a claim for intentional infliction of
11  emotional distress premised on "outrageous" speech cannot stand when that speech was
12  directed at a matter of public concern, which is entitled to "special protection" under the
13  First Amendment.  "In public debate [we] must tolerate insulting, and even outrageous,
14  speech in order to provide adequate breathing space to the freedoms protected by the
15  First Amendment."  *Id.* at 1219.  *See also Lam v. Ngo*, 91 Cal.App.4th 832, 849 (2001)
16  (affirming order granting anti-SLAPP order as to intentional infliction of emotional
17  distress claim, finding that political signs calling plaintiff a communist were protected
18  by First Amendment).

19         Therefore, Plaintiff cannot possibly prevail on her Fifth Cause of Action for
20  Intentional Infliction of Emotional Distress.

21         **5.  <u>Plaintiff Cannot Prevail on Her Negligence Claim</u>**

22         Plaintiff's negligence claim, a discombobulated hybrid of would-be contract,
23  privacy and tort law, is incoherent and ultimately must fail because it is premised on Mr.
24  Frey's non-existent "affirmative duty to redact" the information posted by him on the
25  Blog.  (FAC at ¶ 92.)

26         This claim purports to stand on two sources of duty:  Mr. Frey's "California Civil
27  Code § 1798.85, which provides, in relevant part, that "a person or entity may not . . .
28  (1) Publicly post or publicly display in any manner an individual's social security

19

773112.1

number"; and the common law. Neither of these claims has any basis in law – neither suffices to support the bizarre proposition that Mr. Frey had a personal duty to review and redact a *public document taken from PACER* before posting it to his blog.

Regarding Plaintiff's reliance on California Civil Code § 1798.85, there is no authority for the proposition that this statute provides for a duty or a right of private action for its violation. A statute creates a private right of action only if the statutory language or legislative history affirmatively indicates legislative intent to do so. *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 82 Cal. Rptr. 2d 442, 446-447 (Cal. Ct. App. 1999); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 62 Cal. Rptr. 2d 620, 626-627 (Cal. Ct. App. 1997). Absent such an indication, "a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader*, 62 Cal. Rptr. 2d at 627. This statute indicates no such intent, which is no mere error of omission: The California Legislature considered creating a private cause of action for violation of the statute but chose not to do so. *See* Assembly Comm. Hearing, S.B. 168, at 4-5 (Cal. June 18, 2001). In contrast to a situation where the legislative history is silent on a matter, where it indicates a decided legislative choice not to provide such a right, such a choice is powerful evidence that the law does not create one. *See United States v. BestFoods*, 524 U.S. 51, 64 (1998) (failure of a statute to speak to a fundamental subject suggests no such meaning was intended).

This interpretation is all the more compelling in light of the fact that § 1798.85 was enacted as part of an omnibus anti-identity theft initiative, and, in a companion provision enacted at the same time, the Legislature created an express private right of action in a companion provision, California Civil Code § 1798.93. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087 (9th Cir. 2008). No similar provision exists in Section 1798.85, leading to the conclusion that the Legislature had no intent in providing one. *See*, *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

1    generally presumed that Congress acts intentionally and purposely in the disparate

2    inclusion or exclusion.") (citation omitted).

3         For all these reasons, Plaintiff's Sixth Cause of Action should be dismissed.

4    **D.    MR. FREY IS ENTITLED TO AN AWARD OF REASONABLE**

5    **ATTORNEY FEES FOR MAKING A SUCCESSFUL SPECIAL**

6    **MOTION TO STRIKE**

7         A "prevailing defendant" on the motion to strike "shall be *entitled*" to recover

8    attorney fees and costs. (Code Civ. Proc. § 425.16, subd. (c), emphasis in original.)  The

9    fee award is mandatory: "(A)ny SLAPP defendant who brings a successful motion to

10   strike is entitled to mandatory attorney fees."  There are three alternative procedures by

11   which a successful party may obtain a fee award: (1) the party may request fees in the

12   motion; (2) the party may make a noticed motion for fees after the ruling on the anti-

13   SLAPP motion; or (3) the party may include the fee request in the cost bill after entry of

14   judgment.  (*American Humane Ass'n v. Los Angeles Times Communications,* (2001) 92

15   Cal.App.4th 1095, 1103.)  Mr. Frey will file a separate motion requesting attorneys' fees

16   if the Court grants his Motion.

17   **IV.   CONCLUSION**

18        Plaintiff's FAC falls squarely within the ambit of the anti-SLAPP statute.  The

19   complained-of expression is protected, and Plaintiff cannot prevail on her claims.

20   Therefore the Court should strike, without leave to amend, the Second through Sixth

21   Causes of Action.

22   DATED:  January 11, 2013            Respectfully submitted,

23                                        GOETZ FITZPATRICK LLP

24

25                                   By    s/Ronald D. Coleman
                                          RONALD D. COLEMAN
26                                         Counsel for Defendants
                                       JOHN PATRICK FREY AND
27                                           CHRISTI FREY

28

BROWN, WHITE & NEWHOUSE
ᴸᴸᴾ
A T T O R N E Y S

1    DATED:  January 11, 2013            Respectfully submitted,

2                                        BROWN WHITE & NEWHOUSE LLP

3

4                                        By   s/Kenneth P. White
                                              KENNETH P. WHITE
5                                             Local Counsel for Defendants
                                              JOHN PATRICK FREY AND
6                                             CHRISTI FREY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S RENEWED SPECIAL MOTION TO STRIKE

773112.1