1  GOETZ FITZPATRICK LLP
   RONALD D. COLEMAN
2  rcoleman@goetzfitz.com
   One Penn Plaza, Suite 4401
3  New York, NY  10119
   Telephone:  212.695.8100
4  Facsimile:  212.629.4013

5  Counsel for Defendant
   JOHN PATRICK FREY

6

7  BROWN WHITE & NEWHOUSE LLP
   KENNETH P. WHITE (Bar No. 238052)
8  kwhite@brownwhitelaw.com
   333 South Hope Street, 40th Floor
9  Los Angeles, CA  90071-1406
   Telephone:  213. 613.0500
10 Facsimile:   213.613.0550

11 Local Counsel for Defendant
   JOHN PATRICK FREY

12

13            UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15 NADIA NAFFE, an individual,              Case No.: CV12-08443-GW (MRWx)

16          Plaintiff,                      Judge:    Hon. George H. Wu

17     v.

18 JOHN PATRICK FREY, an individual,        **DEFENDANT JOHN PATRICK
   and the COUNTY OF LOS ANGELES,           FREY'S REQUEST FOR JUDICIAL
19 a municipal entity,                      NOTICE IN SUPPORT OF
                                            PENDING MOTIONS AND
20          Defendants.                     DECLARATION OF KENNETH P.
                                            WHITE**

21

22                                          Hearing Date: _February 14, 2012
                                            Time:   ___      8:30 a.m.
23                                          Courtroom:      10

24
                                            Complaint Filed:  October 2, 2012
25

26

27

28

TO THIS HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Evidence, Rule 201, Defendant John Patrick Frey respectfully requests that the Court take judicial notice of the following court documents and the following fact in connection with his (1) Motion to Dismiss First Through Sixth Causes of Action Pursuant to FRCP 12(b)(6); (2) Renewed Motion to Strike Pursuant to California Code of Civil Procedure 425.16; (3) Motion To Dismiss Second Through Seventh Causes of Action Pursuant to FRCP 12(b)(1); and (4) Motion for Undertaking Pursuant to California Code of Civil Procedure Section 1030:

1. The docket for the matter *Nadia Naffe v. Republican Party of Florida, et al.*, 04-CV-1916-JDW ("the Florida Case"), in the United States District Court for the Middle District of Florida, attached hereto as Exhibit A;

2. Item 75 from the docket of the Florida Case, titled "Motion of Defendant Republican Party of Florida to Exceed Seven Hour Time Limit To Complete Plaintiff's Deposition and Memorandum in Support," attached hereto as Exhibit B;

3. Item 76 from the docket of the Florida Case, titled "Plaintiff's Response to Republican Party of Florida's Motion to Exceed Seven-Hour Time Limit to Complete Plaintiff's Deposition," attached hereto as Exhibit C;

4. The transcript of the December 11, 2011 Probable Cause Hearing in *People v. James O'Keefe*, Summons No. SC2011-2180, in Westwood Borough Municipal Court, New Jersey, attached hereto as Exhibit D;

5. The Order to Show Cause With Temporary Restraints issued on March 23, 2012 in *James O'Keefe, III v. Nadia Naffe*, Civil Action C-93-12, Superior Court of New Jersey, Chancery Division, Bergen County, attached hereto as Exhibit E;

6. The fact that former defendant Steve Cooley was a candidate for Attorney General of the State of California in the November 2, 2010 General Election, as reflected in the excerpt of the California Secretary of State's Certified List of Candidates attached hereto as Exhibit F.

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

772885.1

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

These items are a proper subject for judicial notice for the following reasons:

- Under Federal Rule of Evidence 201(b)(1) and (2), they are "generally known within the trial court's jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

- Ninth Circuit precedent establishes that it is proper for this Court to take judicial notice of the proceedings of other state and federal courts. *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169 (10th Cir. 1979)) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). That doctrine specifically extends to transcripts of proceedings. *Reyn's Pasta Bella, LLC v. VISA USA, INC.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of transcripts of another proceeding; *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F.Supp.2d 983, 989-90 (E.D. Cal. 2012) (same).

- Ninth Circuit precedent also establishes that it is proper for the Court to take judicial notice of the results of elections. *Badillo v. City of Stockton*, 956 F.2d 884, 887 n1. (9th Cir. 1992) ("We have held that election results are an appropriate subject of judicial notice.").

This Request for Judicial Notice is made in further Support of Defendants' pending motions, and is based upon the attached declaration of Kenneth P. White and the attached exhibits.

DATED: January 11, 20132      Respectfully submitted,

GOETZ FITZPATRICK LLP LLP

By   _s/Ronald D. Coleman_

RONALD D. COLEMAN
Counsel for Defendants
JOHN PATRICK FREY AND
CHRISTI FREY

3

1

2   DATED:  January 11, 2013          Respectfully submitted,

3                                     BROWN WHITE & NEWHOUSE LLP

4

5                                     By   _s/Kenneth P. White_____
                                          KENNETH P. WHITE
6                                         Local Counsel for Defendants
                                          JOHN PATRICK FREY AND
7                                         CHRISTI FREY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

772885.1

1

## DECLARATION OF KENNETH P. WHITE

2       I, KENNETH P. WHITE, declare:

3       1.      I am an attorney licensed to practice law in California, and am a Partner at

4   Brown White & Newhouse LLP, attorneys for John Patrick Frey.  I make this Declaration in

5   support of Defendant's Request for Judicial Notice.  I have personal knowledge of the

6   following facts and if called upon to testify, would and could do so competently as follows.

7   However, because this declaration is for a limited purpose, it does not include all facts I know

8   about the matter.

9       2.      Attached as Exhibit A hereto is a true and correct copy of the docket for the

10  matter *Nadia Naffe v. Republican Party of Florida, et al.*, 04-CV-1916-JDW ("the Florida

11  Case"), in the United States District Court for the Middle District of Florida, which I

12  personally printed from PACER.

13      3.      Attached as Exhibit B hereto is a true and correct copy of Item 75 from the

14  docket of the Florida Case, titled "Motion of Defendant Republican Party of Florida to Exceed

15  Seven Hour Time Limit To Complete Plaintiff's Deposition and Memorandum in Support,"

16  without its exhibits, which I personally printed from PACER.

17      4.      Attached as Exhibit C hereto is a true and correct copy of Item 76 from the

18  docket of the Florida Case, titled "Plaintiff's Response to Republican Party of Florida's

19  Motion to Exceed Seven-Hour Time Limit to Complete Plaintiff's Deposition," which I

20  personally printed from PACER.

21      5.      Attached as Exhibit D hereto is a true and correct copy of the transcript of the

22  December 11, 2011 Probable Cause Hearing in *People v. James O'Keefe*, Summons No.

23  SC2011-2180, in Westwood Borough Municipal Court, New Jersey.

24      6.      Attached as Exhibit E hereto is a true and correct copy of the Order to Show

25  Cause With Temporary Restraints issued on March 23, 2012 in *James O'Keefe, III v. Nadia*

26  *Naffe*, Civil Action C-93-12, Superior Court of New Jersey, Chancery Division, Bergen

27  County.

28  //

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

772885.1

BROWN, WHITE & NEWHOUSE LLP
A T T O R N E Y S

1       7.     Attached as Exhibit F hereto are the first three pages of the Certified List of

2   Candidates – Short List of the November 2, 2010 General Election of the State of California,

3   printed from the web site of the California Secretary of State at

4   http://www.sos.ca.gov/elections/statewide-elections/2010-general/short-certified-list.pdf,

5   reflecting that Steve Cooley was a candidate for Attorney General in that election.

6       I declare under penalty of perjury under the laws of the State of California that the

7   foregoing is true and correct.  Executed on January 11, 2013 in Los Angeles, California.

8

9                *S/Kenneth P. White*

10                KENNETH P. WHITE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

772885.1

# EXHIBIT A

CLOSED

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:04-cv-01916-JDW-TGW

Naffe v. Republican Party of Florida et al       Date Filed: 08/25/2004
Assigned to: Judge James D. Whittemore       Date Terminated: 01/20/2006
Referred to: Magistrate Judge Thomas G. Wilson      Jury Demand: Plaintiff
Cause: 28:1331 Fed. Question: Employment Discrimination    Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Nadia K. Naffe**        represented by   **Charles Gilbert Burr , III**
Burr & Smith, LLP
Suite 300
442 W Kennedy Blvd
Tampa, FL 33606
813/253-2010
Fax: 813/253-0695
*TERMINATED: 12/03/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cyrus Mehri**
Mehri & Skalet, PLLC
1300 19th St. N.W., Suite 400
Washington, D.C. 20036
202/822-5100
Fax: 202/822-4997
*TERMINATED: 12/03/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole Austin-Hillary**
Mehru & Skalet, PLLC
Suite 400
1300 19th St NW
Washington, DC 20036
202/822-5100
Fax: 202/822-4997
*TERMINATED: 12/03/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sam Jones Smith**
Burr & Smith, LLP*
Suite 300
442 W Kennedy Blvd
Tampa, FL 33606
813/253-2010
Fax: 813/254-8391
Email: ssmith@burrandsmithlaw.com
*TERMINATED: 12/03/2004*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Moten Thompson**
Thompson Legal Center, LLC.
Suite 2030
5010 W Carmen St
Tampa, FL 33609
813-769-3900
Fax: 813-425-3900
Email: jmthompsonlegal@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Republican Party of Florida**                          represented by **Edmund J. McKenna**
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
Suite 3600
100 N Tampa Street
Tampa, FL 33602
813/289-1247
Fax: 813/289-6530
Email:
edmund.mckenna@ogletreedeakins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dawn Siler-Nixon**
Ford & Harrison, LLP
Suite 900
101 E Kennedy Blvd
Tampa, FL 33602
813/261-7800
Fax: 813/261-7899
Email: dsiler-nixon@fordharrison.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Republican National Committee**                    represented by   **Edward Lee Isler**
                                                                      Isler Dare Ray & Radcliffe, P.C.
                                                                      1919 Gallows Road
                                                                      Suite 320
                                                                      Vienna, VA 22182
                                                                      703/748-2690
                                                                      Fax: 703/748-2695
                                                                      Email: eisler@rayandisler.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Janet Goldberg McEnery**
                                                                      MacFarlane, Ferguson & McMullen, PA
                                                                      201 N Franklin St - Ste 2000
                                                                      PO Box 1531
                                                                      Tampa, FL 33601-1531
                                                                      813/273-4200
                                                                      Fax: 813/273-4396
                                                                      Email: jeg@macfar.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Michelle Bodley Radcliffe**
                                                                      Isler Dare Ray & Radcliffe, P.C.
                                                                      1919 Gallows Road
                                                                      Suite 320
                                                                      Vienna, VA 22182
                                                                      703/748-2690
                                                                      Fax: 703/748-2695
                                                                      Email: mradcliffe@rayandisler.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Noel Poncy McDonell**
                                                                      MacFarlane, Ferguson & McMullen, PA
                                                                      201 N Franklin St - Ste 2000
                                                                      PO Box 1531
                                                                      Tampa, FL 33601-1531
                                                                      813/273-4200
                                                                      Fax: 813/2734396
                                                                      Email: npm@macfar.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

**Bush-Cheney '04, Inc.**                    represented by **Edward Lee Isler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Janet Goldberg McEnery**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michelle Bodley Radcliffe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noel Poncy McDonell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Kincaid Brick Co.,**                    represented by **Richard Scott Agster**
*also known as*                           Law Office of Richard S. Agster
Kincaid Brick Yard                        3602 W Euclid Ave
*also known as*                           Tampa, FL 33629
Brickcrete, Inc.                          813/832-3939
                                          Fax: 813-832-3841
                                          Email: lawrsa@aol.com
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Movant**

**Marjorie Kincaid**                      represented by **Richard Scott Agster**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/23/2004 | 1 | COMPLAINT for injunctive relief and damages against Bush-Cheney '04, Inc., Republican National Committee, Republican Party of Florida ; jury demand ( Filing fee $ 150 receipt number T028845), filed by Nadia K. Naffe.(CH) (Entered: 08/25/2004) |
| 08/27/2004 | 2 | RELATED CASE ORDER AND NOTICE of designation under Local Rule 3.05 - track 2 (aho) (Entered: 08/27/2004) |

| 11/11/2004 | 3 | MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff* by Nadia K. Naffe. (Smith, Sam) (Entered: 11/11/2004) |
|---|---|---|
| 11/23/2004 | 4 | NOTICE of Hearing on Motion 3 MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff*: Motion Hearing set for 12/3/2004 11:00 AM in Courtroom 13 B before Judge James D. Whittemore. (aho) (Entered: 11/23/2004) |
| 11/30/2004 | 5 | ORDER RESCHEDULING HEARING (Time of hearing only) on 3 MOTION to withdraw as attorney for Plaintiff. Hearing scheduled for 12/3/04 at 9:30 A.M. Directing Plaintiff's counsel to immediately notify Plaintiff of time change and responsibility to be present at said hearing. Signed by Judge James D. Whittemore on 11/30/2004. (kle) (Entered: 11/30/2004) |
| 12/03/2004 | 6 | NOTICE by Nadia K. Naffe re 3 MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff o f Filing Proposed Order* (Attachments: # 1 Order on Motion for Leave to Withdraw)(Smith, Sam) (Entered: 12/03/2004) |
| 12/03/2004 | 7 | Minute Entry for proceedings held before Judge James D. Whittemore : Motion Hearing held on 12/3/2004 re 3 MOTION for Sam J. Smith, Charles G. Burr, Marguerite M. Longoria, Burr & Smith, LLP, Cyrus Mehri, Nicole Austin-Hillery, Mehri & Skalet, PLLC to withdraw as attorney *for Plaintiff* filed by Nadia K. Naffe. (Court Reporter Linda Starr.) (aho) (Entered: 12/06/2004) |
| 12/03/2004 | 8 | ORAL ORDER granting 3 Motion to withdraw as attorney. Attorney Cyrus Mehri; Sam Jones Smith; Nicole Austin-Hillary and Charles Gilbert Burr terminated. All future pleadings and correspondence shall be sent to the Plaintiff directly at her home address listed in the record, pending appearance of substitute counsel . Signed by Judge James D. Whittemore on 12/3/2004. (aho) (Entered: 12/06/2004) |
| 12/03/2004 | 9 | ORAL MOTION to extend time to serve process by Nadia K. Naffe. (aho) (Entered: 12/06/2004) |
| 12/03/2004 | 10 | ORAL ORDER granting 9 Motion to extend time. Court grants the plaintiff an additional 60 days to serve process, to 2/22/05 . Signed by Judge James D. Whittemore on 12/3/2004. (aho) (Entered: 12/06/2004) |
| 12/14/2004 | 11 | ORDER granting 3 MOTION for leave to withdraw as attorney for Plaintiff. CLERK shall add Plaintiff, pro se, to this case pending an appearance by substitute counsel. Plaintiff shall serve her complaint or an amended complaint on all Defendants on or before February 20, 2005. Signed by Judge James D. Whittemore on 12/13/2004. (kle) (Entered: 12/14/2004) |
| 01/31/2005 | 12 | TRANSCRIPT of Motion hearing held on 12/3/04 before Judge James D. Whittemore. Court Reporter: Linda Starr. (CH) (Entered: 01/31/2005) |

| 02/10/2005 | 13 | NOTICE of Appearance by James Moten Thompson on behalf of Nadia K. Naffe (Thompson, James) (Entered: 02/10/2005) |
| 02/10/2005 | 14 | AMENDED COMPLAINT against all defendants, filed by Nadia K. Naffe.(Thompson, James) (Entered: 02/10/2005) |
| 02/10/2005 | 15 | Summons issued as to Republican Party of Florida, Republican National Committee, Bush-Cheney '04, Inc. Consent(s) issued. (CH) (Entered: 02/11/2005) |
| 02/18/2005 | 16 | MOTION to extend time to Serve Summonses by Nadia K. Naffe. (Thompson, James) (Entered: 02/18/2005) |
| 02/22/2005 | 17 | ORDER granting 16 Plaintiff's Motion for Extension of Time for Serving Summons. Signed by Judge James D. Whittemore on 2/22/2005. (kle) (Entered: 02/22/2005) |
| 02/28/2005 | 18 | Unopposed MOTION for extension of time to file answer or otherwise plead *for All Defendants* by Republican Party of Florida. (McKenna, Edmund) (Entered: 02/28/2005) |
| 03/01/2005 | 19 | ORDER granting the 18 Unopposed Motion of Defendant, Republican Party of Florida, for extension of Time for all Defendants to Respond to Complaint. Defendants shall respond to the Complaint on or before 3/25/05. Signed by Judge James D. Whittemore on 3/1/2005. (kle) (Entered: 03/01/2005) |
| 03/14/2005 | 20 | NOTICE of Designation and Consent-to-Act by Janet Goldberg McEnery on behalf of Republican National Committee, Bush-Cheney '04, Inc. (CH) (Entered: 03/15/2005) |
| 03/14/2005 | 21 | MOTION to appear pro hac vice by Edward Lee Isler on behalf of Republican National Committee, Bush-Cheney '04, Inc. (CH) (Entered: 03/15/2005) |
| 03/14/2005 | 22 | MOTION to appear pro hac vice by Michelle Bodley Radcliffe on behalf of Republican National Committee, Bush-Cheney '04, Inc. (CH) (Entered: 03/15/2005) |
| 03/16/2005 | 23 | ORDER granting 21 and 22 motions to appear pro hac vice. Signed by Judge James D. Whittemore on 3/16/2005. (kle) (Entered: 03/16/2005) |
| 03/22/2005 | 24 | WAIVER OF SERVICE returned executed by Nadia K. Naffe as to Republican National Committee on March 3, 2005. (Attachments: # 1)(Thompson, James) (Entered: 03/22/2005) |
| 03/25/2005 | 25 | CERTIFICATE of interested persons and corporate disclosure statement by Republican National Committee. (Isler, Edward) (Entered: 03/25/2005) |
| 03/25/2005 | 26 | ANSWER and affirmative defenses to amended complaint by Republican National Committee.(Isler, Edward) Modified on 3/28/2005 (CH). (Entered: 03/25/2005) |
| 03/25/2005 | 27 | CERTIFICATE of interested persons and corporate disclosure statement by Bush-Cheney '04, Inc.. (Isler, Edward) (Entered: 03/25/2005) |
| 03/25/2005 | 28 | ANSWER and affirmative defenses to amended complaint by Bush-Cheney '04, Inc.(Isler, Edward) Modified on 3/28/2005 (CH). (Entered: 03/25/2005) |
| 03/25/2005 | 29 | ANSWER and affirmative defenses to amended complaint by Republican Party of Florida.(McKenna, Edmund) Modified on 3/28/2005 (CH). (Entered: 03/25/2005) |

| 03/28/2005 | 30 | CERTIFICATE of interested persons and corporate disclosure statement by Republican Party of Florida. (McKenna, Edmund) (Entered: 03/28/2005) |
| 05/12/2005 | 31 | CASE MANAGEMENT REPORT. (McKenna, Edmund) (Entered: 05/12/2005) |
| 05/16/2005 | 32 | CASE MANAGEMENT AND SCHEDULING ORDER: Discovery due by 10/30/2005. Dispositive motions due by 1/30/2006. Pretrial Conference set for 5/12/2006 11:00 AM in Courtroom 13 B before Judge James D. Whittemore. Jury Trial set for 6/5/2006 08:30 AM in Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 5/16/2005. (, kle) (Entered: 05/16/2005) |
| 05/23/2005 | 33 | NOTICE by Republican Party of Florida *of Service of Fed. R. Civ. P. 26 Initial Disclosures* (McKenna, Edmund) Modified on 5/24/2005 (CH). NOTE: DOCUMENT DELETED, IS DISCOVERY, ATTORNEY NOTIFIED (Entered: 05/23/2005) |
| 05/23/2005 | 34 | NOTICE by Republican National Committee *of Service of Rule 26(a) Initial Disclosures* (Radcliffe, Michelle) Modified on 5/24/2005 (CH). NOTE: DOCUMENT DELETED, IS DISCOVERY, ATTORNEY NOTIFIED (Entered: 05/23/2005) |
| 05/23/2005 | 35 | NOTICE by Bush-Cheney '04, Inc. *of Service of Rule 26(a) Initial Disclosures* (Radcliffe, Michelle) Modified on 5/24/2005 (CH). NOTE: DOCUMENT DELETED, IS DISCOVERY, ATTORNEY NOTIFIED (Entered: 05/23/2005) |
| 05/31/2005 | 36 | MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A - Case Management Report# 2 Exhibit B-Plaintiff's Notice of Compliance with Mandatory Disclosure Requirement)(McKenna, Edmund) (Entered: 05/31/2005) |
| 06/09/2005 | 37 | RESPONSE to motion re 36 MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* filed by Nadia K. Naffe. (Thompson, James) (Entered: 06/09/2005) |
| 06/13/2005 | 38 | MOTION for leave to file *a Reply Memorandum in Response to Plaintiff's Response to Defendant's Motion to Compel Initial Disclosures* by Republican Party of Florida. (Attachments: # 1 Reply Memorandum of the Republican Party of Florida in Support of its Motion to Compel Initial Disclosures from Plaintiff, Nadia Naffe)(McKenna, Edmund) (Entered: 06/13/2005) |
| 06/13/2005 | 39 | ORDER granting 38 Motion for leave to file reply . Signed by Judge Thomas G. Wilson on 6/13/2005. (Wilson, Thomas) (Entered: 06/13/2005) |
| 06/13/2005 | 40 | NOTICE of Hearing on MOTION to compel Initial Disclosures From Plaintiff Nadia Naffe (Doc. 36): hearing scheduled for 6/24/2005 at 2:30 PM in Courtroom 12A before Magistrate Judge Thomas G. Wilson. (mm) (Entered: 06/13/2005) |
| 06/14/2005 | 41 | REPLY to response to motion re 36 MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* filed by Republican Party of Florida. (Attachments: # 1 Exhibit A-Correspondence to Mr. Thompson# 2 Exhibit B - Plaintiff's Amended Initial Disclosures)(McKenna, Edmund) (Entered: 06/14/2005) |
| 06/21/2005 | 42 | NOTICE of Appearance by Dawn Siler-Nixon on behalf of Republican Party of Florida (Siler-Nixon, Dawn) (Entered: 06/21/2005) |

| 06/23/2005 | 43 | MOTION to compel *the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A - Correspondence from Mr. Thompson)(McKenna, Edmund) (Entered: 06/23/2005) |
| --- | --- | --- |
| 06/24/2005 | 44 | MINUTE ENTRY for proceedings held before Judge Thomas G. Wilson : Motion Hearing held on 6/24/2005 re 36 MOTION to compel *Initial Disclosures From Plaintiff Nadia Naffe and Memorandum in Support* filed by Republican Party of Florida-oral argument by parties; court will grant motion to certain extent; order to follow. (DIGITAL) (Williams, Carrie) (Entered: 06/24/2005) |
| 06/24/2005 | 45 | ORDER granting in part and denying in part 36 Motion to compel-granted to the extent that, no later than 10 days from the date of this order, the plaintiff to provide further itemization and documentation--please see order for further information . Signed by Judge Thomas G. Wilson on 6/24/2005. (Williams, Carrie) (Entered: 06/24/2005) |
| 07/01/2005 | 46 | RESPONSE to motion re 43 MOTION to compel *the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence and Memorandum in Support* filed by Nadia K. Naffe. (Attachments: # 1 Attachment A# 2 Attachment B# 3 Attachment C# 4 Attachment D)(Thompson, James) Modified on 7/1/2005 (CH). NOTE: DOCUMENTS DELETED, CORRUPTED AND NOT READABLE, ATTORNEY NOTIFIED TO REFILE (Entered: 07/01/2005) |
| 07/01/2005 | 47 | RESPONSE to motion re 43 MOTION to compel *the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence and Memorandum in Support* filed by Nadia K. Naffe. (Attachments: # 1 Attachment A# 2 Attachment B# 3 Attachment C# 4 Attachment D)(Thompson, James) (Entered: 07/01/2005) |
| 07/01/2005 | 48 | NOTICE of EVIDENTIARY Hearing on the defendant's MOTION to compel the Return of Property or for a Jury Instruction Providing for an Adverse Inference Based on Spoliation of Evidence (Doc. 43): The hearing is SCHEDULED for 7/20/2005 at 2:30 PM in Courtroom 12A before Magistrate Judge Thomas G. Wilson. The PLAINTIFF is REQUIRED to appear at this hearing. She will be required to testify under oath and be subject to cross examination regarding the loss of the laptop computer. (mm) (Entered: 07/01/2005) |
| 07/05/2005 | 49 | Emergency MOTION to continue *Evidentiary Hearing Date and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A-Docket of the United States Court of Appeals Eleventh Circuit indicating oral argument-7-21-05) (McKenna, Edmund) (Entered: 07/05/2005) |
| 07/13/2005 | 50 | ORDER granting 49 Motion to continue hearing until July 28, 2005, at 2:30 p.m . Signed by Judge Thomas G. Wilson on 7/13/2005. (Wilson, Thomas) (Entered: 07/13/2005) |
| 07/26/2005 | 51 | NOTICE by Nadia K. Naffe *of Filing* (Attachments: # 1 Affidavit)(Thompson, James) (Entered: 07/26/2005) |
| 07/27/2005 | 52 | AFFIDAVIT of Barbara Jones re: 47 Response to motion, by Nadia K. Naffe. (Thompson, James) (Entered: 07/27/2005) |

| 07/28/2005 | 53 | MINUTE ENTRY for proceedings held before Judge Thomas G. Wilson : Evidentiary Hearing (Motion to Compel, Doc. 43) held on 7/28/2005. Testimony of Nadia Naffe. Court to enter order making findings. (DIGITAL) Court Reporter: Kerry Brennan (Williams, Carrie) (Entered: 07/28/2005) |
|---|---|---|
| 07/28/2005 | 54 | ORDER denying 43 Motion to compel to the extent that it requests the return of the laptop computer since the present evidence is that the laptop computer has been discarded, and, in all events, is not available to the plaintiff. To the extent the motion requests a jury instruction for an adverse inference based on spoliation of evidence, that matter is appropriately DEFERRED for the consideration of the trial judge. Please see order for further details. Signed by Judge Thomas G. Wilson on 7/28/2005. (Williams, Carrie) (Entered: 07/29/2005) |
| 08/01/2005 | 55 | WITNESS LIST by Republican Party of Florida. (McKenna, Edmund) (Entered: 08/01/2005) |
| 08/01/2005 | 56 | WITNESS LIST by Republican National Committee. (Radcliffe, Michelle) (Entered: 08/01/2005) |
| 08/01/2005 | 57 | WITNESS LIST by Bush-Cheney '04, Inc.. (Radcliffe, Michelle) (Entered: 08/01/2005) |
| 08/24/2005 | 58 | MOTION for issuance of order to show cause *why Kincaid Brick Company aka Kincaid Brick Yard aka Brickrete Inc. Should Not be Held in Contempt for Failing to Respond to Defendant's Subpoena and Memorandum in Support* by Republican Party of Florida. (Attachments: # 1 Exhibit A-Subpoena - Kincaid Brick Company# 2 Exhibit B - Affidavit of Process Server# 3 Exhibit C - Plaintiff Nadia Naffe's Notice of Serving Answers to Defendant's First Set of Interrogatories)(McKenna, Edmund) (Entered: 08/24/2005) |
| 09/08/2005 | 59 | RESPONSE to motion re 58 MOTION for issuance of order to show cause *why Kincaid Brick Company aka Kincaid Brick Yard aka Brickrete Inc. Should Not be Held in Contempt for Failing to Respond to Defendant's Subpoena and Memorandum in Support* filed by Kincaid Brick Co., Marjorie Kincaid. (CH) (Entered: 09/12/2005) |
| 09/12/2005 | 60 | TRANSCRIPT of Motion hearing held on 7/28/05 before Judge Magistrate Thomas G. Wilson. Court Reporter: Kerry Brennan. (CH) (Entered: 09/13/2005) |
| 09/14/2005 | 61 | STIPULATION *Selecting Mediator* by Nadia K. Naffe. (Thompson, James) (Entered: 09/14/2005) |
| 09/15/2005 | 62 | ORDER ruling deferred 58 Motion for order to show cause - if defendant disagrees with Kincaid Brick's representation that it has complied with the subpoena, it is to file a reply to this motion within 10 days of the date of this Order. Otherwise, the motion will be denied as moot. Signed by Judge Thomas G. Wilson on 9/15/2005. (Williams, Carrie) (Entered: 09/16/2005) |
| 09/19/2005 | 63 | MOTION for Partial Judgment on the Pleadings *(Partial) and Memorandum in Support* by Republican Party of Florida. (McKenna, Edmund) Modified on 9/20/2005 (CH). (Entered: 09/19/2005) |
| 09/20/2005 | 64 | NOTICE of unavailability of counsel byRepublican Party of Florida from November 17, 2005 to through November 29, 2005. (McKenna, Edmund) (Entered: 09/20/2005) |

| 09/21/2005 | 65 | Unopposed MOTION for protective order by Republican Party of Florida. (Attachments: # 1 Text of Proposed Order Agreed Protective Order)(McKenna, Edmund) (Entered: 09/21/2005) |
| 09/28/2005 | 66 | ORDER denying as moot 58 Motion for order to show cause . Signed by Judge Thomas G. Wilson on 9/28/2005. (Wilson, Thomas) (Entered: 09/28/2005) |
| 10/03/2005 | 67 | MOTION for Extension of Time to File Response/Reply by Nadia K. Naffe. (Thompson, James) (Entered: 10/03/2005) |
| 10/04/2005 | 68 | RESPONSE to motion re 63 MOTION for Judgment on the Pleadings *(Partial) and Memorandum in Support* filed by Nadia K. Naffe. (Thompson, James) (Entered: 10/04/2005) |
| 10/05/2005 | 69 | ORDER granting 67 Plaintiff's Motion to Enlarge Time to Respond to Defendant's Motion for Partial Judgment on the Pleadings. Response due by 10/4/2005. Signed by Judge James D. Whittemore on 10/4/2005. (kle) (Entered: 10/05/2005) |
| 10/05/2005 | 70 | Supplemental MOTION for protective order *(Agreed Substitute Order)* by Republican Party of Florida. (Attachments: # 1 Text of Proposed Order Agreed Protective Order) (McKenna, Edmund) (Entered: 10/05/2005) |
| 10/11/2005 | 71 | MOTION for leave to file *Reply Memorandum in Support of Motion of Defendant Republican Party of Florida for Partial Judgment on the Pleadings* by Republican Party of Florida. (Attachments: # 1 Reply Memorandum in Support of Motion of Defendant Republican Party of Florida for Partial Judgment on the Pleadings) (McKenna, Edmund) (Entered: 10/11/2005) |
| 10/12/2005 | 72 | AGREED ORDER Governing the Exchange and Protection of Confidential Information Signed by Judge Thomas G. Wilson on 10/12/2005. (Williams, Carrie) (Entered: 10/12/2005) |
| 10/13/2005 | 73 | ORDER granting 71 Defendant's Motion to File a Reply Memorandum in Support of its Motion for Judgment on the Pleadings. Signed by Judge James D. Whittemore on 10/12/2005. (kle) (Entered: 10/13/2005) |
| 10/13/2005 | 74 | MEMORANDUM in support re 63 Motion for Judgment on the Pleadings *(Reply)* filed by Republican Party of Florida. (McKenna, Edmund) (Entered: 10/13/2005) |
| 10/14/2005 | 75 | MOTION for discovery *(To Extend Time for Plaintiff's Deposition)* by Republican Party of Florida. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C)(McKenna, Edmund) (Entered: 10/14/2005) |
| 10/31/2005 | 76 | RESPONSE to motion re 75 MOTION for discovery *(To Extend Time for Plaintiff's Deposition)* filed by Nadia K. Naffe. (Thompson, James) (Entered: 10/31/2005) |
| 10/31/2005 | 77 | NOTICE by Nadia K. Naffe re 76 Response to motion *of Filing Exhibit* (Thompson, James) (Entered: 10/31/2005) |
| 10/31/2005 | 78 | NOTICE of Hearing on MOTION to Extend Time for Plaintiff's Deposition (Doc. 75): Oral argument on the motion is scheduled for 11/10/2005 at 2:30 PM in Courtroom 12A before Magistrate Judge Thomas G. Wilson. (mm) (Entered: 10/31/2005) |

| | | |
|---|---|---|
| 11/03/2005 | 79 | MOTION to compel *Production of Documents and/or Privilege Log* by Republican Party of Florida. (McKenna, Edmund) (Entered: 11/03/2005) |
| 11/10/2005 | 80 | MINUTE ENTRY for proceedings held before Judge Thomas G. Wilson : Motion Hearing held on 11/10/2005 re 75 MOTION for discovery *(To Extend Time for Plaintiff's Deposition)* filed by Republican Party of Florida. Oral argument by parties. May be permitted an additional 3 hours to depose plaintiff. Plaintiff to read deposition testimony prior to session and be prepared to specify on the record any prior answers. (DIGITAL) (Williams, Carrie) (Entered: 11/14/2005) |
| 11/10/2005 | 81 | ORDER granting 75 Motion for discovery to extent that plaintiff may be deposed 3 additional hours and she shall read her deposition testimony prior to resumption of deposition, and, if an inquiry is made by defense counsel, be prepared to specify on the record any prior answers that she gave that were incorrect because of her medication.. Signed by Judge Thomas G. Wilson on 11/10/2005. (Williams, Carrie) (Entered: 11/14/2005) |
| 11/28/2005 | 82 | ORDER granting 79 Motion to compel, and, in light of the lack of opposition, the plaintiff within 21 days of the date of this Order shall produce all relevant documents that were bates stamped by her former counsel in this litigation. See Local Rule 3.01(b) . Signed by Judge Thomas G. Wilson on 11/28/2005. (Wilson, Thomas) (Entered: 11/28/2005) |
| 12/07/2005 | 83 | MOTION for clarification re 82 Order on motion to compel, *or, in the alternative Motion to Reconsider and Memorandum of Law* by Nadia K. Naffe. (Attachments: # 1 Exhibit)(Thompson, James) (Entered: 12/07/2005) |
| 12/20/2005 | 84 | MEMORANDUM in opposition re 83 Motion for clarification *and/or reconsideration* filed by Republican Party of Florida. (Attachments: # 1 Exhibit A - Correspondence from Plaintiff's Counsel dated 12-1-05)(McKenna, Edmund) (Entered: 12/20/2005) |
| 12/28/2005 | 85 | ORDER re 83 MOTION for clarification re 82 Order on motion to compel, *or, in the alternative Motion to Reconsider and Memorandum of Law* filed by Nadia K. Naffe - plaintiff to file a reply within 15 days which responds to all of the issues raised by the defendant in its opposition. Signed by Judge Thomas G. Wilson on 12/28/2005. (Williams, Carrie) (Entered: 12/28/2005) |
| 01/06/2006 | 86 | Joint MOTION to modify *The Scheduling Order to Extend the Deadlines for Meidation and the Filing of Dispositive Pre-trial Motions and Memoranda* by Republican Party of Florida. (McKenna, Edmund) (Entered: 01/06/2006) |
| 01/09/2006 | 87 | ORDER granting 86 Stipulated Motion to Modify Scheduling Order. New Mediation deadline: 2/15/06; New Dispositive Motion Deadline: 2/28/06. Signed by Judge James D. Whittemore on 1/9/2006. (kle) (Entered: 01/09/2006) |
| 01/12/2006 | 88 | RESPONSE re 84 Memorandum in opposition filed by Nadia K. Naffe. (Thompson, James) (Entered: 01/12/2006) |
| 01/17/2006 | 89 | ORDER directing Republican Party of Florida to file a reply within 15 days re 88 Response filed by Nadia K. Naffe, Signed by Judge Thomas G. Wilson on 1/17/2006. (Williams, Carrie) (Entered: 01/18/2006) |

| 01/20/2006 | 90 | ORDER dismissing case without prejudice pursuant to notification of settlement. All motions are denied as moot. The clerk is directed to close this case. Signed by Judge James D. Whittemore on 1/19/2006. (kle) (Entered: 01/20/2006) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/03/2013 13:51:38 | | |
| **PACER Login:** | bw1076 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:04-cv-01916-JDW-TGW |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NADIA K. NAFFE,                   :

         Plaintiff,         :

v.                             :         Case No. 8:04-CV-1916-T-27TGW

                                  :

REPUBLICAN PARTY OF FLORIDA,   :
REPUBLICAN NATIONAL COMMITTEE
AND BUSH-CHENEY '04, INC.,        :

                                  :

         Defendants.       :

---

## MOTION OF DEFENDANT REPULICAN PARTY OF FLORIDA TO EXCEED SEVEN HOUR TIME LIMIT TO COMPLETE PLAINTIFF'S DEPOSITION AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 30(d)(2), and as more fully set forth in the incorporated

Memorandum of Law, Defendant, Republican Party of Florida ("RPOF"), moves this Court for

an Order extending the seven hour/one day limit for taking Plaintiff Nadia Naffe's ("Naffe")

deposition based on Naffe's refusal to answer questions and obstructive conduct which prevented

a full and fair examination of Naffe and requests that the Court assign a special master at Naffe's

expense to control Naffe's conduct at the continuation of her deposition. The grounds for this

Motion are more fully set forth below.

### CERTIFICATE OF CONFERRAL PURSUANT TO M. D. FLA. L. R. 3.01(G)

Pursuant to M.D. Fla. L.R. 3.01(g), counsel for RPOF states that he has attempted to

confer in good faith to resolve the issues contained herein by several face-to-face conversations

and by sending a letter to Plaintiff's counsel on October 10, 2005.

## MEMORANDUM OF LAW

### I.  NAFFE'S MULTI-DAY DEPOSITION

On July 29, 2005, Naffe initially appeared for deposition.  (*See* Transcript of Volume I of Naffe's deposition Exhibit A, "Volume I").   Although **the deposition took the entire day**, beginning at 10:03 a.m. and ending at 4:15 p.m., **there was only three (3) hours and forty (40) minutes** of record testimony, because of Naffe's numerous disruptions throughout the deposition.  Naffe repeatedly refused to answer questions and insisted on taking numerous breaks, continually interrupting the flow of the deposition.  *Id.*  Consequently, RPOF's counsel was unable to complete his questioning of Naffe.

Because the deposition was not complete, the parties continued the deposition on September 14, 2005.  (*See* Transcript of Volume II of Naffe's deposition Exhibit B, "Volume II").  Yet again, Naffe continued with her disruptive behavior, by effect or design thwarting RPOF's counsel's efforts to take her deposition.  Although **the deposition lasted almost seven (7) hours**, from 9:54 a.m. until 4:35 p.m., there was **only three (3) hours and fifty-nine (59) minutes of record testimony** because of Naffe's continued refusal to answer questions and numerous breaks.  *Id.*

The deposition was again continued to September 26, 2005.  (*See* Transcript of Volume III of Naffe's deposition Exhibit C, "Volume III").  On September 26, 2005, RPOF was only able to **complete one (1) hour and fifty (50) minutes of record testimony**, although the deposition **began at 9:58 a.m. and ended at 2:48 p.m.**, because Naffe, again, engaged in conduct calculated (successfully) to impede RPOF's ability to conclude her deposition.  Naffe even claimed that because of the medication she was taking, her doctor told her "it is possible that I can't give accurate answers."  (Volume III, pp. 319:18-9).  After one (1) hour and fifty (50)

minutes of record testimony, Naffe's counsel refused to permit any further questions of his client.

Throughout the deposition, Naffe continuously refused to answer even the simplest questions. *See* Volumes I, II and III. For example, when counsel for RPOF asked Naffe to look at a copy of an envelope, Ex. 20, and state whether she listed "Bison Supply" as her return address, Naffe answered "yes and no." (Volume II. p. 249:17-20). On numerous occasions, Naffe insisted on taking breaks, instead of answering the pending questions. (Volume I. pp. 14, 40, 93,112-13, 150-51; Volume II, pp. 200-01, 223, 250, 256, 268, 288, 297, Volume III. pp. 332, 356). Naffe even took breaks within ten (10) minutes of her last break. (Volume II. pp. 250, 256). When Naffe did respond to a question, her responses were evasive and wholly inadequate. (*See, e.g.,* Volume I. pp. 18:4 –21:6, 25:1-30:14, 34:22-40:12, 52:7-56:8; Volume III. pp. 328:12-330:21). Additionally, Naffe repeatedly equivocated on simple questions, like whether she received anything of "value" for working for a particular individual (Volume II. pp. 250:10 – 251:18), failed to confirm details about relevant facts (Volume I. pp. 30:16-32:1, 57:8-22, 58:12-59, 1, 60:12-63, 20, 64:11-66:4, 77:8-79:25; Volume II. pp. 250:10 – 251:18; Volume III. pp. 343:1 – 346:24) and refused to acknowledge obvious material differences between her submissions to the EEOC and her responses to interrogatories in connection with the present case (Volume I. pp. 30:16-32:1, 87:11-91:6). In fact, at one point, RPOF's counsel had to get a dictionary to define the common term, "value," because of Naffe's insistence that she did not understand the meaning of the word. (Volume II. pp. 250:10 – 251:18). Naffe also asked for a definition of the term "spouse." (Volume II p. 184:8-11).

## II. MORE TIME IS NEEDED FOR A FULL AND FAIR EXAMINATION OF NAFFE

### A. NAFFE'S INAPPROPRIATE DEPOSITION CONDUCT

Federal Rule of Civil Procedure 30(d)(2) provides that "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." However, the Rule further provides:

> The court **must allow** additional time consistent with Rule 26(b)(2) if **needed for a fair examination of the deponent** or if **the deponent** or another person, or other circumstance, **impedes or delays the examination**.

*Id.* (emphasis added). Rule 30(d)(2)'s seven-hour limitation on a party's deposition was imposed to rectify the problem that "overlong depositions can result in undue costs and delays in some circumstances." Advisory Committee Note to 2000 Amendments to Rule 30(d). The Rule initially contemplates counsel making a good faith effort to reach a stipulation as to the amount of additional information to be covered. *Id.* If additional time is needed, the Rule contemplates that counsel stipulate to extend the deposition, without the need for court intervention. *Malec v. Trs. of Boston College*, 208 F.R.D. 23, 24 (D. Mass. 2002). Yet, where, as here, the plaintiff's counsel summarily declines to extend the deposition, in the face of his client's conduct, court intervention may be sought. *Id.* Consequently, the RPOF is left with no choice but to turn to the Court for assistance.

The Advisory Committee Notes suggest that a rigid application of the seven-hour rule should not be a barrier to the interests of justice, noting that "[i]t is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court," and "[p]reoccupation with timing is to be avoided."[1] Advisory Committee

---

[1] In fact, each court which has reviewed this issue since the 2000 Amendments, indicates that additional time should be granted liberally, here the interests of justice so require. *Moore v. CVS*

Note to the 2000 Amendments to Rule 30(d).  In fact, "no court has construed the 2000 Advisory

Committee notes as causing some profound change in the Rules requiring parties to use a

stopwatch and immediately and finally adjourn a deposition after the seven hours of testimony

taken." *Moore v. CVS Corp.*, 2005 WL 581357, *3 (W.D. Va. March 11, 2005).  Instead, courts

should routinely allow continuation past the seven hour/one day time limit if continuation is

needed, as here, for a fair examination of the deponent. *Id.*

The general rule is clear -- "'*[p]reoccupation with timing is to be avoided.*'" *Id.*

(emphasis in original) (citing, 2000 Advisory Committee notes to Rule 30(d)(2)).  "Extra time

'**must**' be given under the Rule where good cause is shown, 30(d)(2) (second sentence), and the

Court has discretion to determine how much time is reasonable under the circumstances."

*Independence Park Apartments v. United States*, 59 Fed. Cl. 765, 769 (Fed. Cl. 2004) (emphasis

added); *see also Raymond v. Ameritech Corp.*, 2004 WL 1381134, *2 (N.D. Ill. May 7, 2004)

(refusing to limit the additional time sought beyond the seven-hour limit, reasoning that "[a]s

long as the attorney is not asking repetitive questions or has become abusive, the deposition has

not become abusive in nature, I'm not going to give anybody a time limitation" when there was a

"wide range of issues" as to which plaintiff was not yet deposed).  "Further, the 2000 Advisory

Committee Notes to Rule 30(d) clearly state that only the time taken for the actual deposition,

not breaks, count toward the seven hours, and that for good cause shown, the court should

enlarge the time limit." *Condit v. Dunne*, 225 F.R.D. 100, 112 -13 (S.D. N.Y. 2004).

In *LaPlante v. Estano*, 226 F.R.D. 439, 440 (D. Conn. 2005), the court ordered the

continuation of plaintiff's deposition past the seven hour/one day limit where "the plaintiff, and

---

*Corp.*, 2005 WL 581357, *3 (W.D. Va. March 11, 2005); *Malec v. Trs. of Boston College,* 208
F.R.D. 23, 24 (D. Mass. 2002); *Independence Park Apartments v. United States,* 59 Fed. Cl. 765,
769 (Fed. Cl. 2004); *Grill v. Costco Wholesale Corp.*, 2004 WL 2314639, *1 (W.D. Wash.
October 7, 2004).

his attorney, were recalcitrant and uncooperative in their refusal to answer questions that [sought] information which [was] clearly relevant, not privileged, not overly broad, and not unduly burdensome." (citing, Fed. R. Civ. P. 26(b)(2)). The Court even warned plaintiff "that if he again fails to be forthcoming and cooperative with obviously relevant and not privileged information, the deposition will be continued thereafter, at his expense, until he complies with that which the Federal Rules of Civil Procedure demand of him." *Id.*

Similarly, in *Miller v. Waseca Med. Ctr.*, 205 F.R.D. 537, 541 (D. Minn. 2002), the court allowed depositions to proceed past the seven hour/one day limit where the court found that the "Plaintiff[s] tended to provide narrative responses to 'yes' or 'no' questions. This had the result that Defendants had to ask a number of additional questions in their reasonable quest to obtain an unambiguous answer to the questions." *Id.* The court explained: "Substantial additional time was required by the failure of Plaintiffs to answer 'yes' or 'no' to questions which fairly called for such a response, and additional time will be needed if they continue to do so." *Id.*

Here, Naffe did just that - - "provide[d] narrative responses to 'yes' or 'no' questions" which required counsel to ask a number of additional questions in his reasonable quest to "obtain unambiguous answers to the questions," among other inappropriate conduct. The transcripts of Naffe's deposition are littered with Naffe's failure to answer specific questions requiring a "yes" or "no" answer. Moreover, Naffe's intentional, combative conduct throughout the deposition prevented a fair examination of her within the seven hour/one day limit of Rule 30(d)(2). In fact, the examples of Naffe simply not answering questions or engaging in obstructive conduct with the obvious purpose of delaying or impending the deposition are far to numerous to reduce to this writing.

A mere cursory review of any portion of the deposition transcripts would reveal that

Naffe's intentional conduct in flatly refusing to give "yes" or "no" answers to "yes" or "no"

questions and instead giving long narratives, unrelated to the subject matter of the question

posed, exponentially increased the amount of time the deposition took:

Page 144
25      Q      Do you recognize Defendant's Exhibit 9?

Page 145
1       A      Yes, I recognize it; but it's not
2       complete.  It's part -- it looks like it's the
3       middle of an e-mail, and you haven't included the
4       whole thing.  You've just given me one part of a
5       communication.
------------------------------------------------------------------------
Page 146
16      Q      Did you propose that the Republican Party
17      of Florida take the lead on the counter
18      demonstration to the NAACP?
19      A      In the context of --
20      Q      In the context of your job in this
21      e-mail.  Did you make that proposal or not?
22      A      All I really was proposing was that --
23      was suggesting that if these folks were coming
24      anyway, that we be nice to them and give them coffee
25      and, you know, maybe the chairman spare a little bit

Page 147
1       of her time to give to these folks.
2       Q      And that --
3       A      If that was -- if that was their
4       intention to come up there.  I mean, I really didn't
5       care if they came up there or not.  But I was just
6       saying, you know, if these folks are going to be
7       rallying all day, I was just saying that it would be
8       nice, you know, since I -- I think the press was
9       already going to be there, you know, just to show
10      these folks some hospitality and give them coffee
11      and maybe the chairman could spare them a few
12      moments of her time.
13      Q      I'm going to ask it one last time.  Did
14      you propose, where it says here "I propose," that
15      the Republican Party of Florida, where it says here

7

16   "RPOF," should take the lead, where it says here
17   "should take the lead on this" – "this" being the
18   counter demonstration to the NAACP -- did you
19   propose that?
20        A       Well, that determines what you are saying
21   the meaning of "this" means.  When I'm talking about
22   "this," I'm just -- all I'm saying is be nice to the
23   people when they come up there and give them --
24   you're -- the statement is there.  You're
25   interpreting it one way.  You know, I meant it

Page 148
1   another way, and, you know, the RPOF knew what I
2   meant because we had talked about it on the phone.
3   The statement as you read it speaks for itself.

(Volume I).

Page 25
1        Q       What computer did you use to type up
2   Defendant's Exhibit 3?
3        A       Defendant's Exhibit 3.  I don't
4   remember.
5        Q       Do you still have a copy of this on your
6   computer?
7        A       Well, if I don't remember which computer
8   I typed it up on, I probably wouldn't be accurately
9   able to tell you if I had a copy of it either.
10        Q       Did you search your computer for relevant
11   documents in response to the request for production
12   of documents?
13        A       I don't have a computer to search for
14   relevant documents.
15        Q       You currently do not have a computer?
16        A       Yes, I have a computer, but I would have
17   no reason to search my personal computer for
18   relative documents pertaining to the RPOF.

(Volume I).

Page 57
8        Q       Have you not told people that you are
9   related?
10        A       He thinks that he's related to me, but I
11   don't think that -- it may be possible.  But I'm not
12   certain that it is.

13    Q    Are you -- do you consider yourself
14 friends?
15    A    He certainly has done a lot of nice
16 things for me.
17    Q    Do you consider yourself friends?
18    A    "Friend" is a pretty strong word. I have
19 a handful of friends. I could probably count them
20 on one hand. He's someone who's been very, very
21 kind who's done some very kind things for me in the
22 past.

(Volume I).

Page 87
11    Q    In Exhibit 3 that whole discussion is not
12 mentioned at all. Is that correct?
13    MR. THOMPSON:  I'm going to object to
14    form.
15    A    What was your question again, sir?
16    MR. McKENNA:  Read the question back,
17    please.
18        (The reporter read as requested.)
19    A    Relating Interrogatory No. 7 with January
20 9th, I'm at -- again, I'm answering a specific
21 question that the RNC asked. I was never required
22 to list every single incident. I was just giving a
23 summary in what you're calling Exhibit 3 of some of
24 the incidents. So every single thing is not going
25 to be here.

Page 88
1    Q    And it's not there. Correct?
2    MR. THOMPSON:  Object to form.
3    A    The specific words and language that
4 you're talking about is not there, sir.
5    Q    The incident is not there either. Right?
6    MR. THOMPSON:  Object to form.
7    A    Again --
8    Q    Ma'am, it's a simple question. It's yes
9 or no. Is it there or not?
10    A    It's not a yes-or-no question, and I've
11    --
12    Q    Is there a discussion on your January 9,
13 2004 entry regarding a budget in Defendant's Exhibit
14 3?
15        MR. THOMPSON:  Object to form.

16    A   My January 9, 2004 statement in Exhibit 3
17  is not related to any specific question on any
18  interrogatory.
19         MR. McKENNA:  Move to strike as
20  nonresponsive.
21  BY MR. McKENNA:
22    Q   In Defendant's Exhibit 3, the January 29,
23  2004 entry, does it refer to a budget at all?
24         MR. THOMPSON:  Object to form.
25    A   I just told you two questions ago when

Page 89

1  you asked me that question, Mr. McKenna, that the
2  specific words and the specific language that you're
3  looking for isn't there like that.
4    Q   And the incident is not discussed in
5  there.  Correct?
6         MR. THOMPSON:  Object to form.
7    A   You're comparing apples to oranges.
8  You're talking about two different things.  This --
9  these are interrogatories in a lawsuit, and this is
10  not.  And again --
11         MR. McKENNA:  I'm going to certify that
12  as failure to answer, and I'm going to seek --
13    A   I am happy to answer any of your
14  questions, but you don't want to hear my answers.
15    Q   Now -- so Interrogatory No. 7 asks you
16  for racially insensitive and stereotypical remarks.
17  Is that right?
18    A   Interrogatory No. 7 I believe said a lot
19  more than that.  I just -- I just for my own purpose
20  just pulled out -- each question had like eight
21  parts, and I just tried to identify the questions as
22  I could understand them.
23    Q   Okay.  And you did not mention that
24  racially insensitive and stereotypical remark to the
25  EEOC in Exhibit 3.  Right?

Page 90

1         MR. THOMPSON:  Object to form.
2    A   I had several conversations with the EEOC
3  and interviews about what happened during my
4  employment, and -- and I discussed it with them.  I
5  wasn't required to write everything down on Exhibit
6  3.

(Volume I).

Page 165
4      Q    Ms. Naffe, do you recall the discussion
5    we had at the beginning of your prior deposition
6    about the format of depositions?
7      A    I vaguely remember it.
8      Q    Do you recall that you have to do verbal
9    responses?
10     A    Well, why don't you repeat everything
11   again.
12     Q    Repeat everything again, sure.  This
13   deposition is being taken pursuant to notice under
14   the Federal Rules of Civil Procedure.  It will be
15   used for discovery, cross examination and other
16   purposes permitted by law.  Do you understand that,
17   ma'am?
18     A    Could you talk a little slower, please?
19     Q    Do you understand that, ma'am?
20     A    Well, I'd like you to repeat it just a
21   little bit slower.  You're going too fast.
22         MR. McKENNA:  Would you read back the
23   question, please?
24         (The reporter read as requested.)
25     A    Yes, I understand that.

(Volume II).

Page 168
24     Q    Are you on any medication that would
25   affect your ability to testify?

Page 169
1      A    Maybe.
2      Q    What medication is that?
3      A    The same medications as last time.
4      Q    Which are?
5      A    Prozac and Ambien.
6      Q    And why do you believe that Prozac would
7    affect your ability to testify?
8      A    I can't make that determination.  I'm not
9    a doctor.
10     Q    Do you have any reason to believe that
11   the Prozac would affect your ability to testify here
12   today?
13     A    I don't know.

14    Q    Do you have any reason to believe that
15    the Ambien would have any effect upon your ability
16    to testify here today?
17        A    I don't know.


Page 170

13    Q    Pursuant to the discussion that counsel
14    had off the record, I'm going to ask you again,
15    ma'am: Do you have any reason to believe that
16    Prozac will affect your ability to testify
17    completely, accurately and truthfully?
18        A    Is that the same question that you asked
19    me last time?  Well, I don't have the question in
20    front of me.
21            MR. THOMPSON:  Just go ahead and answer.
22    Q    That's the question, ma'am.  Are you
23    going to answer it?
24        A    Is that the question you asked me last
25    time?


Page 171

1     Q    Are you refusing to answer the question,
2     ma'am?
3         A    No, I am not refusing to answer the
4     question.
5             MR. THOMPSON:  Just --
6         A    Could you repeat the question?
7             MR. McKENNA:  Please read back the
8     question.
9             (The reporter read as requested.)
10        A    I don't think so, but I'm not a doctor.


(Volume II).


Page 342

10    Q    Were you in a habit of forwarding things
11    to the Republican Party of Florida without reading
12    them first?
13        A    That's not what I said, Mr. McKenna.
14    This is apparently the time line that Suzann had
15    been e-mailing about.  And, you know, it's their
16    event; and, you know, I guess, you know, they can
17    have it any way they want, but, you know, I can't
18    control -- I can't control what they put down as
19    their time line.  And I really -- you know, I can't
20    answer for people.

```
21    Q    I didn't ask about other people.  I asked
22   you if you were in the habit of forwarding things to
23   the Republican Party of Florida that you had not
24   read first.
25    A    Not usually.
```

(Volume III).

Page 343
```
 1    Q    Now, isn't it true, ma'am, that you
 2   wanted to do African-American outreach at the
 3   Republican Party of Florida?
 4    A    No, that's not true.
 5    Q    You did not present a proposal in which
 6   you requested to do minority outreach to the
 7   Republican Party of Florida?
 8    A    Which proposals are you talking about?
 9    Q    Isn't it true that you made a proposal to
10   the Republican Party of Florida in which you asked
11   to do African-American outreach on behalf of the
12   party?
13    A    I never asked to do African-American
14   outreach on behalf of the party.
15         (Exhibit 25 marked for identification.)
16    Q    I'm going to hand you what we've marked
17   for purposes of identification as Exhibit 25 and ask
18   you if you recognize that document.
19    A    Uh-huh.  I sure do.
20    Q    And is that not your proposal for the
21   creation of a minority outreach department in the
22   Republican Party of Florida?
23    A    This is a proposal that I worked on, but
24   there is not one word or sentence in here that says
25   that I, Nadia Naffe, wanted to do this.
```

Page 344
```
 1    Q    I see.  So you didn't want to do it.  Is
 2   that your testimony?
 3    A    I'm answering your question.
 4    Q    I'm asking you a question.  Is that your
 5   testimony, that you did not want to do minority
 6   outreach with the Republican Party of Florida?
 7    A    I didn't want to be pigeonholed to work
 8   exclusively with black Republicans.  I wanted to
 9   work with all the Republicans in Florida, and that's
10   why I didn't want to work for one specific
```

11    candidate. I wanted to work with all the
12    candidates, and that's why I wanted to work for
13    RPOF.
14        Q    So you wanted to do some minority
15    outreach with African-Americans but not
16    exclusively. Is that your testimony?
17        A    No, that's not – that's not what I
18    meant. I don't want you to misunderstand me to say
19    I dislike working with African-Americans, because
20    that's not what I'm trying to say at all.
21            What I'm trying to say is, is that I was
22    interested in the job that Jamie Miller presented in
23    his e-mail to me working within my territory, with
24    my counties as a field director, working on grass
25    roots projects, voter registration drives, campaign

Page 345

1    events, voter integrity programs. Those were the
2    types of things that attracted me to the position in
3    the first place, and those were the types of things
4    that I expected to be doing.
5            Florida is a diverse state, and I didn't
6    want to be stuck working with one group of people,
7    and -- I didn't want to be stuck working with one
8    group of people. I wanted to work with all the
9    Republicans in Florida.
10       Q    So you wanted to work with the African
11    Americans as well as the whites. Is that correct?
12       A    I didn't say that, Mr. McKenna. In fact,
13    on the very first page it says, "I fully believe
14    that Minority Outreach should include all
15    minorities."
16            "All minorities" are women, Hispanics,
17    and that's Mexicans, Latinos. That's Teenage
18    Republicans. That's College Republicans, and the
19    only people that aren't exclusive to technically
20    minorities are white males, such as yourself. But I
21    wanted to work with all the Republicans in Florida.
22       Q    Are you finished with your answer?
23       A    Yes, sir.
24       Q    Okay. The very first line of the second
25    paragraph states "that there are nearly 1 million

Page 346

1    black voters here in Florida." Do you see that,
2    ma'am?

```
3      A    Yes.
4      Q    Do you reference women anywhere in there?
5      A    Well --
6      Q    Do you reference women anywhere in there?
7      A    Explain what you mean by "women."
8      Q    Do you have the word "women" in the
9   second paragraph of Exhibit 25?
10     A    Women are included in the 1 million black
11  voters. Myself and your colleague, Ms. Siler-Nixon,
12  would be included in that 1 million, and it's not
13  exclusive. You know, African-American people come
14  in two types, male and female.
15     Q    Do you reference Hispanics anywhere in
16  there?
17     A    Hispanics are -- I don't reference the
18  different minority groups by name, but, as I said
19  again, I said in the last paragraph, "I fully
20  believe that Minority Outreach should include all
21  minorities." And the vice chairman is educated
22  enough to know what "all minorities" are, and he's
23  also intelligent enough to know that 1 million black
24  voters doesn't just mean men, it means black voters.
```

(Volume III).

Moreover, on numerous occasions, instead of answering a question posed to her, Naffe requested a break,[2] which prevented counsel for RPOF from asking questions in a more reasonable pace to ensure that her deposition would be completed within the seven-hour limit. On the first day alone, not counting lunch, Naffe requested five (5) breaks. Naffe even requested and took breaks while a question was being asked, which, of course, required that line of questioning be repeated when Naffe returned from her break. (Volume I, pp. 14, 40, 93, 112-13, 150-51 marked as Exhibit D). Naffe even asserted during the third day of her examination, that immediately following the second day of her deposition, her doctor told her that she might not be able to answer questions accurately because of the medication she was taking, which caused

---

[2] In fact, during her testimony Naffe requested and took fifteen (15) different breaks.

more time to chase the issue related to Naffe's ability to accurately respond to questions posed during the current and previous depositions. (Volume III, pp. 318:18 – 322:4).

Clearly, Naffe engaged in conduct that has required courts to continue a deposition in excess of the seven hour/one day limit pursuant to Rule 30(d)(2)'s mandate that the examination "must" be continued for a fair examination of the deponent. RPOF should be granted additional time to complete Naffe's deposition based on her obstinate deposition conduct.

## B.     NAFFE'S FAILURE TO FULLY RESPOND TO DISCOVERY

Further lengthening her deposition and necessitating additional time, Naffe testified that her previous responses to discovery were either inaccurate or incomplete. After a question was posed regarding Naffe's inconsistent testimony, Naffe claimed that her answers to RPOF's Interrogatories were not complete, requiring additional examination to determine the accuracy of each response. (Volume I. pp. 20:23 – 21: 6). Moreover, Naffe admitted that she had failed to produce documents responsive to RPOF's Request for Production of Documents.[3] (Volume I., pp. 23:1-24:25).

The Federal Rules of Civil Procedure contemplate "the examination reveals that documents have been requested but not produced, that may justify further examination once production has occurred." 2000 Advisory Committee Notes to Rule 30(d)(2). Courts have routinely allowed the continuation of a deposition past the seven hour/one day limit where plaintiffs failed to produce relevant documents. *See, e.g., Grill v. Costco Wholesale Corp.*, 2004 WL 2314639, *1 (W.D. Wash. October 7, 2004) (allowing continuation of plaintiff's deposition past the seven-hour/one day limit when plaintiff's several theories of discrimination and failure

---

[3] RPOF is filing a Motion to Compel Plaintiff to produce the documents which she noted in her deposition had not been produced.

to produce relevant documents made it impossible to finish the deposition within the time limit Rule 30(d)(2) imposes).

Rule 30(d)(2) clearly provides that the court "must" grant additional time for a deposition consistent with Rule 26(b)(2) "if needed for a fair examination of the deponent" or if the deponent "impedes or delays the examination." Clearly, Naffe's failure to produce documents requested and providing inaccurate responses to specific interrogatories, as well as Naffe's deposition conduct, is a textbook case for the foregoing provision. Here, additional time is warranted based on Naffe's incredulous conduct, which impeded and delayed the examination, preventing a fair examination within the time allotted. Consistent with Rule 26(b)(2), RPOF does not seek to ask questions that have already been fully answered. Rather, RPOF seeks answers to questions that have not been answered and to complete its examination without the interruptions, failure and flat refusals to respond and long narratives, unrelated to the question posed and unnecessary to properly respond, heretofore engaged in by Naffe.

## III.    APPOINTMENT OF A SPECIAL MASTER AT PLAINTIFF'S EXPENSE IS NECESSARY DUE TO PLAINTIFF'S CONDUCT

Fed. R. Civ. P. 53 provides for the appointment of a Special Master. Rule 53(b) and *LaBuy v. Howes Leather Co.*, 352 U.S. 249 (1957), require a showing of exceptional circumstances before a Special Master may be appointed. Here, however, exceptional circumstances are present. In *Fisher v. Harris, Upham & Co., Inc.* 61 F.R.D. 447 (S.D. N.Y. 1973), appeal dismissed, 576 F.2d 896 (2d Cir. 1975), the district court found exceptional circumstances were, as here, "[t]he conduct of the parties prior to the Special Master's appointment demonstrated that they were unable to proceed with discovery without impartial supervision." *Id.* at 449. In *Fisher*, "depositions predating the Master's supervision are filled

with irksome quibbling, needless interruptions. . . . Extensive colloquies and arguments . . . [and] substantial delays in the testimony." *Id.*

The *Fischer* Court also recognized that:

Numerous cases approve the appointment of a Special Master to supervise discovery proceedings where the issues are complicated or the parties recalcitrant. *First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas & Elec. Co.*, 245 F.2d 613 (8th Cir.), *cert. denied*, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957), cited in *Bourgeois v. El Paso Natural Gas Co.*, 257 F.2d 807 (2d Cir. 1958); *Shapiro v. Freeman*, 38 F.R.D. 308 (S.D. N.Y. 1965); *Hirsch v. Glidden Co.*, 79 F. Supp. 729 (S.D. N.Y. 1948); *United Artists v. Grinieff*, 17 Fed.Rules Serv. 30b, 42, Case 1 (S.D. N.Y. July 3, 1952); *cf. Olson Transp. Co. v. Socony-Vacuum Oil Co.*, 7 F.R.D. 134 (E.D. Wis. 1944); *Stentor Elec. Mfg. Co. v. Klaxon Co.*, 28 F.Supp. 665 (D. Del. 1939).

Id. at 449 (citations in original). *See also National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987) ("Discovery is an area where special masters are frequently appointed either because the problems are complicated or the parties are recalcitrant."). "[U]se of a special master to supervise discovery may still be appropriate and useful in unusual cases." Wright & Miller, *Federal Practice and Procedure*: Civil § 2605, at 790-791. Plaintiff's "egregiously sanctionable conduct during the course of discovery in this matter presents a clear case of the exceptional circumstances contemplated by Rule 53 as justifying the appointment of a special master." *National Ass'n of Radiation Survivors v. Turnage* 115 F.R.D. 543, 561 (N.D. Cal. 1987).

WHEREFORE, Defendant Republican Party of Florida respectfully requests that this Court grant it Motion to Exceed the Seven Hour Time Limit to Complete the Naffe's Deposition, allow the continuation of Naffe's deposition, order Naffe to answer the questions posed without interspersing long narrative responses, provide complete and accurate responses to previously posed discovery, produce all documents responsive to previously propounded discovery, and

assign a special master at Naffe's expense to control Naffe's conduct at the continuation of her

deposition.

Respectfully submitted,

FORD & HARRISON, LLP

By:   /s/ Edmund J. McKenna
Edmund J. McKenna
Florida Bar No. 0845922
Dawn Siler-Nixon
Florida Bar No. 993360

For the firm

FORD & HARRISON LLP
101 East Kennedy Boulevard, Suite 900
Tampa, Florida 33602-5133
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to the following:

James Moten Thompson
Nelson Bisconti & Thompson LLC
718 W Dr. Martin Luther King Jr. Blvd, Suite 200
Tampa Florida 33603-3104

Janet Goldberg McEnery
Noel McDonell
McFarlane, Ferguson & McMullen
201 N. Franklin Street, Suite 2000
Tampa, Florida 33602

Edward Lee Isler
Michelle Bodley Radcliffe
Ray & Isler, P.C.
1919 Gallows Road, Suite 320
Vienna, Virginia 22182

   /s/ Edmund J. McKenna
Attorney

TAMPA:204672.1

# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NADIA K. NAFFE,                                  :
                                                 :
                    Plaintiff,                   :
                                                 :
v.                                               :   Case No. 8:04-CV-1916-T-27TGW
                                                 :
REPUBLICAN PARTY OF FLORIDA,                     :
REPUBLICAN NATIONAL COMMITTEE                    :
AND BUSH-CHENEY '04, INC.,                        :
                                                 :
                    Defendants.                  :
                                                 :
_____:

## PLAINTIFF'S RESPONSE TO REPUBLICAN PARTY OF FLORIDA'S MOTION TO EXCEED SEVEN-HOUR TIME LIMIT TO COMPLETE PLAINTIFF'S DEPOSITION

Plaintiff responds to Defendant Republican Party of Florida's Motion to Exceed Seven-Hour Time Limit to Complete Plaintiff's Deposition as follows:

The Republican Party of Florida's ("RPOF's") argument that Plaintiff has engaged in some sort of "rigid application of the seven-hour rule" so as to warrant further extension of Plaintiff's deposition is far fetched at best. Contrary to Defendant Republican Party of Florida's contentions, the Plaintiff has made extraordinary concessions and has given Republican Party of Florida's Defendant reasonable accommodations, however the Republican Party of Florida's has spurned Plaintiff's attempts at resolution.

Plaintiff has, to date consented to three days of depositions with nine and a half hours (9 ½) of actual taped record testimony. Moreover, Plaintiff has agreed to allow

Defendant Republican National Committee and Defendant Bush Cheney "04, Inc. together an additional two hours of deposition time should Defendant Republican National Committee and Defendant Bush-Cheney '04, Inc. require such for their cases. Moreover, at the third full deposition day, Defendant Republican Party of Florida decided it did not like Plaintiff's statement that she spoke with her treating doctor who told her that her medication could affect her memory and testimony. Defense counsel got up from the table, refused to continue the deposition and kept Plaintiff and her counsel waiting at the law office of the Republican Party of Florida's counsel from 10:07 a.m. until 11:25 a.m. while Defense counsel decided if he wanted to ask any questions. After the one (1) hour and twenty (20) minute "break", the deposition finally resumed until around 3:00 p.m.

## PLAINTIFF'S ATTEMPTS TO RESOLVE ISSUE

Defendant materially misstates the facts surrounding the extended time allowed in the deposition stating that "Naffe's counsel refused to permit any further questions of his client." Both the Republican Party of Florida's "facts" surrounding that third deposition day and the "facts" surrounding the entire deposition are misleading. Plaintiff's counsel regularly informed Defendant that Plaintiff would consent to any reasonable concessions only to be regularly ignored or brushed off by Defendant.

Even prior to the start of Plaintiff's deposition, Plaintiff's counsel agreed to allow Defendants Republican National Committee and Bush-Cheney "04, Inc. an additional two hours if needed for their case should Defendant Republican Party of Florida use up

the entire seven (7) hour deposition time. During day one of Plaintiff's deposition, counsel for the RPOF spent the majority of his time inquiring about differences between a chronological narrative she gave to the EEOC and her answers to the various defendants' interrogatories. During the first of these questions, Ms. Naffe explained that the EEOC narrative was an overall summary while the interrogatories answered specific questions not asked by the EEOC. Rather than accept this obvious answer, RPOF counsel instead spent the next several hours, not inquiring into the case facts, but asking Ms. Naffe to explain and admit to each difference between what was said in the EEOC narrative which were not responding to specific questions and her interrogatory answers which were. Each time Ms. Naffe explained that the former was a summary and the latter was a response to a specific question. (Plaintiff's deposition Volume I ("Vol I") pp. 40-71, 77-79, 86-90, 91-93) At the end of the first day of Plaintiff's deposition, after three (3) hours and forty-one (41) minutes of record testimony Plaintiff's counsel agreed to allow another day of deposition as well as a "small amount" of additional time. (Vol I 137). The next deposition day, with three (3) hours and twenty (20) minutes remaining, Defendant's counsel proceeded to use the first three hours of record testimony (from 9:54 a.m. until 2:08 p.m.) questioning Plaintiff on matters not related to either the prosecution or defense of her claims of discrimination, harassment or retaliation. During this time, Defense counsel spent an hour of record testimony inquiring about the details of a single job held by Plaintiff following her employment at the Republican Party of Florida (Transcript II 225-251).

When Defendant's counsel finally did begin inquiring into issues related to the merits of the case, he did so in a manner that could only be intended to drag the

deposition out even further. For example, Defendant's counsel repeatedly demanded that

Plaintiff state that an event she testified to was not put into her Amended Complaint.

Defendant's counsel raised his voice to Plaintiff and demanded; "Just say yes or no."

(Trans II 261:16) Plaintiff responded that she could not answer such a question without

first reviewing the Amended Complaint. Defendant's Counsel then stated; **"Then read

it. We've got all the time in the world."**[1] (Trans II 261: 21-22) Plaintiff's counsel

offered to stipulate that the document could speak for itself, however Defendant's

counsel insisted that Plaintiff read the document (which does speak for itself) to testify as

to what it did not say.

As the seven-hour mark approached, the undersigned asked Defendant's counsel

how much extra time he wanted. (Trans II 270: 24- 271:3) Defendant's counsel refused

to even discuss the matter. The relevant portion of this conversation was as follows:

> MR. THOMPSON: If I'm going to give you – agree to extra time, how much
> extra time do you need?
> MR. MCKENNA: I'm not going to have a discussion with you on the record. I
> want to ask my questions.
> MR. THOMPSON: I actually think that if it's something you're going to try to
> address to the Court, I think the record is the best place to have the discussion.
> MR. MCKENNA: I'm not prepared to discuss it. I want to ask my questions.

(Trans II 271: 1-12)

Mr. McKenna then proceeded to ask more questions.

The second deposition day ended with seven (7) hours forty (40) minutes of

record testimony taken, including three (3) hours of the second day inquiring into matters

unrelated to the merits of Plaintiff's claims or Defendant's defenses. Despite the fact that

Defendant had gone 40 minutes over, Plaintiff's counsel still agreed to allow more

---

[1] Of course, at this point, Defendant had already approached his 7-hour time limit.

testimony and reconvene Plaintiff's deposition at a later date. Prior to the third day of deposition, Plaintiff's counsel wrote to Republican Party of Florida's counsel Ed McKenna asking him to give an estimate as to how much extra time he was requesting. (Exhibit "A") Defendant's counsel never even responded.

At the start of the third day of Plaintiff's deposition, the issue was again raised as follows:

> MR. THOMPSON: We are about – we've done about eight hours' worth of depositions. It's over the seven-hour allotment. In order, you know, to try to avoid any kind of potential discovery dispute, you know, I am consenting to a little bit more time for Mr. McKenna.
>
> I wrote him last week - - or the week before last asking how much more time he was going to be taking, and I did not get a response. What I want to avoid is consenting to more time in order to avoid a discovery dispute and then still have a discovery dispute later on. I'd like to know how much more time you think you need.
>
> MR. MCKENNA: Well, I can tell you what topics I still want to cover, and I intend to cover the complaints that she made and her allegations of harassment retaliation. [2] Now, how long that's going to take, given where we've been, I don't know. There still may be discovery disputes, though, Jim. There sill may be disputes about whether she's answered questions, about whether I've gotten all the documents that I'm entitled to, you know. And we've got correspondence going back and forth on the fact. So I'm not going to agree that there aren't going to be any discovery disputes.
>
> MR. THOMPSON: All right. I'm just going to let you know in advance. At some point I'm going to say, "Enough is enough." And if you want to go to the judge, you can certainly go to the judge and ask for more time, but I'm not going to let this thing just be a never-ending, on-going deposition - - it's already in its third day - - where it just continues in perpetuity...

(Trans III 315: 12 – 316:24)

Shortly into day three of Plaintiff's deposition, Plaintiff conveyed that her treating doctor told her that her condition and medication could affect her memory and her ability to testify. Defendant's counsel refused to continue the depositions and had Plaintiff and her counsel wait in his law office for an hour and twenty minutes while he decided

---

[2] Mr. McKenna went on to spend an hour inquiring into just the first of over six complaints made by Plaintiff. Defendant's counsel clearly showed he had no care for the time he was taking in his deposition.

whether or not he wanted to ask deposition questions at all. It is ironic that Defendant's counsel now states in his motion that "Republican Party of Florida was only able to complete one (1) hour and fifty (50) minutes of record testimony, although the deposition began at 9:58 a.m. and ended at 2:48 p.m.". Of course, Defendant's counsel did not mention that one (1) hour and twenty (20) minutes of the down time was caused by him or that the majority of the remainder was due to a normal lunch break.

The deposition finally ended when Plaintiff could not go on due to her medication wearing off. Republican Party of Florida has now spent nine and a half hours deposing Plaintiff. Republican Party of Florida is now asking the court to allow its deposition to go on in perpetuity with no end in sight.

### DEFENDANT'S FAILURE TO COMPLY WITH LOCAL RULE 3.01(g)

In spite of Defendant's Certificate of Compliance, Republican Party of Florida has made no effort to resolve the issue with Plaintiff. In fact, the opposite is true. The undersigned has made repeated efforts to discuss resolution of the issue with Defendant's counsel only to be repeatedly rebuffed.

### ARGUMENT

While the rules contemplate that the seven-hour limit is not rigid and that a stopwatch approach to depositions should be discouraged, such is clearly not the situation in the case at hand. Defendant Republican Party of Florida has already expended nine and a half (9 ½) hours of record deposition time and Plaintiff has already agreed to allow Defendant's Republican National Committee and Bush-Cheney '04, Inc. an additional two hours in order to address matters unique to their defenses. Moreover, Plaintiff has repeatedly asked Defendant Republican Party of Florida what extra time it was seeking

only to be repeatedly ignored and rebuffed. The closest Republican Party of Florida came to responding was saying that it needed to inquire into six or more complaints of discrimination, into harassment and into retaliation. It then took an hour inquiring into just one of those six plus complaints.

The simple fact is clear from a reading of the transcript. The Republican Party of Florida has taken so long in this deposition because of its own choices in conducting the deposition, not because of any evasiveness on the part of the Plaintiff. What the Republican Party of Florida views as evasive is any answer that, however valid, the Republican Party of Florida simply doesn't like. If the answer did not coincide with the Republican Party of Florida's own script of events, Republican Party of Florida's counsel simply repeated the question over and over then accused Plaintiff of evasiveness. Moreover, whenever Plaintiff asked for clarifications, as instructed to do by Republican Party of Florida's counsel at the start of the deposition, Republican Party of Florida's counsel would simply raise his voice and state the questions again. Republican Party of Florida itself gives an example when it asked Plaintiff if she received anything of value from someone. Plaintiff asked shat he meant by "of value" (it could mean monetary value or it could mean more such as the value of friendship or spiritual worth). Rather than explain the question, Republican Party of Florida's counsel stormed out of the deposition, grabbed a dictionary and gave one of the definitions for value contained therein. Plaintiff then answered the question. Counsel's behavior and delay was not called for and did nothing to speed up the deposition that had already approached the seven-hour mark. Additionally, Republican Party of Florida's actions in spending hours going over the different answers to distinctly different interrogatory questions and a

separate narrative did nothing to advance the depositions (the documents speak for themselves) and only caused more delays. Moreover, knowing that Republican Party of Florida had three (3) hours and twenty (20) minutes of deposition time remaining, Republican Party of Florida's counsel proceeded to inquire into matters unrelated to the merits of Plaintiff's claims or to the merits of Defendant's defenses for three (3) hours of those three (3) hours and twenty (20) minutes.

It should be crystal clear that the Republican Party of Florida's problems related to timing are of its own making and not caused by the Plaintiff. Even so, the undersigned consented to two and a half (2 ½) extra hours by Republican Party of Florida, has agreed to an additional two (2) hours if needed by the Republican National Committee and Bush-Cheney '04, Inc .and has made repeated attempts to resolve the timing issues with Republican Party of Florida's counsel only to be rebuffed and ignored.

Republican Party of Florida now acts and has acted throughout the depositions as if the Federal Rules of Civil Procedure do not apply to it. When faced with time running out, instead of speeding up, the Republican Party of Florida actually slowed down and began inquiring into matters not relevant to the prosecutions or defense of the merits of the case. While the undersigned acknowledges that the Republican Party of Florida can inquire into whatever it wants, it does so on its own choosing and at its own peril. While 11th Circuit case law is sparse into the area raised in Republican Party of Florida's motion, it does acknowledge that a party should at least attempt to comply with the limits set forth in the rules.(*Nanikivil v. Lockheed Martin Corp.*, 216 F.R.D. 689 (M.D. Fla 2003) Republican Party of Florida did not.

While Plaintiff concedes that case law outside of their circuit suggests that reasonable leeway should be given and that counsel should be reasonable in avoiding a strict stop watch approach to depositions, Plaintiff contends that she has made every reasonable effort to resolve the matter with Defendant only to be ignored and rebuffed. Defendant RPOF has failed to establish "good cause" so as to justify any further extension of time beyond the nine and a half (9 ½) hours already taken. (See Advisory Committee Notes to Rule 30, 200 Amendment, Subdivision (d).) Defendant's motion should therefore be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF Electronic Filing and U.S. Mail to Edward Lee. Isler, Esquire, Michelle Bodley Radcliffe, Esquire, Ray & Isler, P.C., 1919 Gallows Road, Suite 320, Vienna, Virginia 22182, Janet Goldberg McEnery, Esquire, Noel McDonell, Esquire, McFarlane, Ferguson & McMullen, One Tampa City Center, 201 N. Franklin Street, Suite 2000, Tampa, Florida 33602 and Edmund J. McKenna, Esquire, Dawn Siler-Nixon, Esquire, Ford & Harrison, LLP, 101 E. Kennedy Boulevard, Suite 900, Tampa, Florida 33602-5133, on this 31st day of October, 2005.

Respectfully Submitted,

_s/ James M. Thompson_____
JAMES M. THOMPSON, ESQUIRE
Nelson, Bisconti & Thompson, L.L.C.
718 W. MLK Boulevard, Suite 200
Tampa, Florida 33603-3104
(813) 221-0999 • (813) 314-9626 Fax
FBN: 861080
Attorney for the Plaintiff

# EXHIBIT D

1

WESTWOOD BOROUGH MUNICIPAL COURT
BERGEN COUNTY, NEW JERSEY
SUMMONS NO. SC2011-2180
APPEAL NO._____

STATE OF NEW JERSEY,        )
                            )
        VS.                 )        TRANSCRIPT
                            )           OF
JAMES O'KEEFE,              )        PROBABLE
                            )     CAUSE HEARING
            Defendant.      )

            Place:  Westwood Borough Municipal Court
                    101 Washington Avenue
                    Westwood, New Jersey 07675

            Date: December 21, 2011

BEFORE:

    HON.  R. ALAN KARCH, J.M.C.

TRANSCRIPT ORDERED BY:

    JAMES O'KEEFE, III
    P.O. Box 794
    Paramus, NJ 07653

APPEARANCES:

    JOHN WESCHEL, ESQ. (John Weschel, Esq.)
    Attorney for Complainant, Nadia Naffe

    L. SCOTT BERKOBEN, ESQ.
    (L. Scott Berkoben, P.A.)
    Attorney for Defendant

**Isabel E. Cole, Transcriber**
**COLE TRANSCRIPTION, L.L.C.**
**Certified Court Transcribers**
**P.O. BOX 1216**
**OCEAN GATE, NEW JERSEY 08740-1216**
**1-732-237-3200**

ORIGINAL  Audio Recorded
          Audio Operator, Not Listed

2

# I N D E X

Witness                          Direct

FOR THE COMPLAINANT

Nadia Naffe                        8

THE COURT

Decision          20

Colloquy                                    3

THE COURT:  This will be the matter of the
application for a probable cause hearing on the
complaint filed by Nadia -- is if Naffe?
            MR. WESCHEL:   Naffe.
            THE COURT:   Nadia Naffe against James
O'Keefe, III.
            Mr. O'Keefe.  Mr. O'Keefe, if you'll come up
and sit at this table here.
            Mr. Weschel, you can, your client can be
seated at counsel table.
            You understand this is a probable cause
hearing so this is no matter that will be be, there
will not be any cross-examination on this case.  This
matter simply exists to determine if there's probable
cause for the issuance of a complaint.
            MR. WESCHEL:  I understand that, Judge.
            MR. BERKOBEN:  Excuse me, Your Honor.
            THE COURT:  Mr. Berkoben.
            MR. BERKOBEN:  Thank you.  Some weeks ago I
received a call from a lady identifying herself as Ms.
Naffe, indicating she had a case in Westwood, and, but
before we started she said she wanted to know if I
spoke to a James O'Keefe.
            THE COURT:  Well, before we do this, what's
your interest in this particular case?

Colloquy                                    4

            MR. BERKOBEN:  Mr. O'Keefe would like me to
appear with him at this hearing and I just wanted to
make that disclosure so it wouldn't become an issue
later.
            THE COURT:  All right.  Is this is an issue
to determine whether there's a conflict, is that it?
            MR. BERKOBEN:  I just wanted to make a
disclosure.  I don't believe there's a conflict.
            THE COURT:  All right.  Have you ever
represented Ms. Naffe?
            MR. BERKOBEN:  I have not.  I have not
represented Mr. James O'Keefe in the past either.
            THE COURT:  All right.  So do we have any
issues?
            MS. NAFFE:  You told me that you had
conferred with him is what you said on the phone.
            MR. BERKOBEN:  Well actually, I didn't.
            MR. WESCHEL:  Judge, I --
            MR. BERKOBEN:  Some weeks later Mr. O'Keefe
came in.
            THE COURT:  Let me, let me get past this just
a little bit here because, at this point, at this
point, there's no determination of whether there is a
case.
            MR. BERKOBEN:  Right.

Colloquy                                                    5

          THE COURT:  Any issues that would come up as
to questions of Counsel's ability to represent the
party may be an issue that would be addressed at a
later time.  At this point, it is not a case where
either Mr. Berkoben on behalf of Mr. O'Keefe, or Mr.
O'Keefe himself, would be involved in any questioning
of any witnesses.  In fact, it's anticipated that the
only person who would be testifying today would be
Ms. --
          MS. NAFFE:  Naffe.  Naffe.
          THE COURT:  Thank you, Ms. Naffe.  I'll try
to remember that.
          MS. NAFFE:  Okay.  Thank you.
          THE COURT:  I'm going to write it down
phonetically here.
          All right.  Mr. Weschel, do you have any
objection to Mr. Berkoben sitting at counsel table?
          MR. WESCHEL:  I have no objection to Mr.
Berkoben sitting at counsel table.  However, if Mr.
Berkoben is going to be representing, if probable cause
is found and Mr. Berkoben is planning to represent Mr.
O'Keefe, given the fact that my client consulted with
Mr. Berkoben and I believe discussed the incident with
him, I would have an objection with him going forward.
          THE COURT:  All right.  Well, you will not be


Colloquy                                                    6

waiving any objection by proceeding today with that
understanding, and I don't know what -- at some further
time, if there is some further time, that matter would
be best brought to the Court's attention perhaps with
certifications and briefs at that point.
          Mr. Berkoben, if you wish, you can be seated.
          MR. BERKOBEN:  Sure.
          THE COURT:  All right.  A probable cause
hearing occurs when a complaint is filed, a civilian
complaint is filed and there's a request made to
determine whether or not that complaint should issue.
At this point, no complaint has issued on this matter.
          Ms. Naffe, you filed a complaint on November
21st of 2011 alleging an incident of harassment took
place in the Borough of Westwood allegedly by James
O'Keefe, III; is that correct?
          MS. NAFFE:  Yes, sir, that's correct.
          THE COURT:  All right.  I have read your
certification that you have filed in support of the
probable cause complaint.  I don't know if you have a
copy of it with you.
          MR. WESCHEL:  We do.
          THE COURT:  Ofr. McCan (sic), if you'd just
do me a favor.  Would you, this is a one, two, three,
four five, six-page certification.  If you'd just hand

Colloquy                                                    7

that to Ms. Naffe.
        MR. WESCHEL:  She has a copy here, Judge.
        THE COURT:  Oh, you have a copy of that?
        MR. WESCHEL:  Yes.
        THE COURT:  Mr. Weschel, just take a look at
that and make sure that the copy you have matches the
copy that the Court has.
        MR. WESCHEL:  It appears identical, Your
Honor.
        THE COURT:  All right.  Mr. Can, if you'll
hand me back the one with the clip on it.  That's
right.  That would be the Court's copy.
        Ms.  Naffe, if you'd just take a look at that
complaint, is that, the material set forth in there, is
that your certification?
        MS. NAFFE:  Yes, sir, it is.
        THE COURT:  All right.  I'm going to ask you
to raise your right hand.
**N A D I A    N A F F E, COMPLAINANT, SWORN**
        THE COURT:  All right.  Anthony, could you
close the door and just ask everybody to be quiet
please.  We have volume issues here.
        Ms. Naffe, I'm going to ask you to keep your
voice up.  You appear to be soft spoken but I want to
make sure everything's properly recorded.

---

N. Naffe - Court                                      8

        MS. NAFFE:  All right.  Thank you.
**EXAMINATION BY THE COURT:**
        Q     Is there anything in that certification that
needs to be amended or changed?
        A     I don't think so, sir, no.
        Q     All right.  A complaint for harassment, the
statute for harassment says,
                "A person commits a petty disorderly
                person's offense if with purpose to harass
                another he:
                "Makes, or causes to be made a
                communication or communications anonymously,
                or at extremely inconvenient hours, or in
                offensively coarse language, or any other
                manner likely to cause annoyance or alarm.
                "Subjects another to striking, kicking,
                shoving or other offensive touching or
                threatens to do so or;
                "Engages in any other course of alarming
                conduct or repeatedly committed acts with
                purpose to alarm or seriously annoy such
                other person."
        In reviewing your certification, it's clear
that there was nothing that set forth there regarding
any striking, shoving, touching or any other threat to

N. Naffe - Court

9

do so; is that correct?

A    That's correct.

Q    All right.  In the statement itself, and albeit a lengthy statement, it appears that the, we're then dealing either with an offensive communication or a course of alarming conduct.  I didn't discern any course of alarming conduct in this statement.  So I need you to tell me what happened so that I can determine whether there was probable cause, which is to mean that it was reasonable to issue a complaint.

A    Okay, sir.  Sure.  I'll just start at the beginning then.

Q    You don't need to go into the full depth. This is not a trial.  I'm not trying to make a finding of fact beyond a reasonable doubt.  I'm just trying to determine -- it appeared to me from your statement that you voluntarily met with Mr. O'Keefe and voluntarily came to Westwood.  At some point it appears that there was a dispute between you and Mr. O'Keefe, and Mr. O'Keefe left the area where you had been, and then you were calling him and texting him to come back and take you to some form of public transportation.

A    That's correct, sir.

Q    That in and of itself doesn't show me that there was any harassment.  So I need to know if there

N. Naffe - Court

10

was anything -- see, your statement doesn't, doesn't make out a case for harassment.

You indicate that he left, you contacted him to get him to take you to a train station or something like that' is that correct?

A    That is correct, sir.

Q    And he refused to do that?

A    That's correct, sir.

Q    But what element of this rises to, to the level of harassment, the course of alarming conduct or something of that nature?

A    I'm sorry.  In regards to what, sir?

Q    Well, the pattern that's set forth in your probable cause hearing indicates that you may have, there may have been a personal dispute with Mr. O'Keefe, and Mr. O'Keefe may have had a dispute with you, but it does not show me that there was anything that occurred before this time, there was anything that was a pattern of continued action or that there was anything that was done with --

A    A pattern before which time are you referring to?

Q    The day in question in Westwood.

A    The harassment started because of an event that happened on October 2nd in Westwood.  At which point, I was working with James on an undercover video project

N. Naffe - Court                                      11

in September and October of this year in New York City.
On October 2nd James picked me up from the New York New
Jersey train station.  He then picked up dinner at a
Chipotle Grille.  He then went to a liquor store and
purchased beer.  At which point, he brought me back to
the barn, the place he described to me as a barn.  He
asked me to stay at the barn because hotels --
      Q      Now, when you say the barn, was that in, in
Westwood?
A      Yes, sir.
      Q      Okay.
A      James had said that hotels in New York City where
we were going to be filming was too expensive and that
he used this barn as an office and he'd asked me to
stay at this office.  He told me that it was a
furnished place, it had a bed and a bathroom and a
kitchen, and that's where I was going to be staying
when we were filming.  At which point, we got the barn.
We had a discussion about the project we were working
on to catch a journalist.  We had an argument.  At
which point, I ignored James.  I turned my back to him
and I started talking on the phone with someone else.
That is when he got upset and left and stormed out of
the barn.
      He then called me on the phone belligerent,

N. Naffe - Court                                      12

yelling, being verbally abusive.  It was at that point
that I told James that I didn't want to work with him
any longer on the video project.  I told James that I
was sick and that I wanted to go home.  I thought the
alcohol had made me sick.  I felt nauseated,
disoriented and extremely sleepy.  But he refused to
come back to the barn.  He said that all he cared about
was his project.  He insisted that I spend the night
there and that we take the matter up in the morning.
He wanted to go shoot videos the next day.
      I wanted to leave the barn by myself, but I
couldn't balance myself enough to walk down the stairs
and I felt, I found it hard to move and control my
muscles and I felt like I was essentially stranded
there.  He would not come back and get me.  I felt like
I had no reasonable means of escape.
      It was at that pont that I contacted James'
assistant, Ryan Gurdurski (phonetic), and told him that
I was sick and I wanted to leave.  I wanted to, I
wanted to leave the barn.  I wanted to find a way to
get back to the train station so I could get back to
Boston.
      Ryan told me he didn't have a car.  He couldn't
come pick me up, that this was a remote area in
Westwood.  He, he mentioned something about a bus, but

N. Naffe - Court                                    13

I, I had no means to get downstairs or get out to get
to a bus.  He told me James was my only way out of this
barn.

So as you said, as the evening went on, there were
phone calls and texts and things like that.  At which
point, I finally threatened James that I was going to
call the police and even destroy his Macs, his
computers, if he did not come back to the barn and get
me back to the train station.  It was at that point
that he agreed to come back to the barn.

However, when he returned to the barn he didn't
return alone.  He brought another man with him.  I
didn't know that he was, the man was there.  He was
hiding downstairs in the dark behind the staircase.
When I was, when James was walking me down the stairs I
heard his, I heard the man's footsteps and he surprised
me and I started screaming, and the both of them just
kept trying to persuade me to spend the night at the
barn, but I didn't want to spend the night.  At which
point, there was a vehicle that I didn't, I didn't know
the man, I had never met him before.  He was unknown to
me, and there was also a vehicle.  James put me in the
back of the car.  He continued to tell me that he
wanted me to spend the night there.  He, he had other
excuses that he didn't have his credit card and he, he

N. Naffe - Court                                    14

had a lot of different excuses about why he couldn't
get me to the train station.

Finally, he had a conversation with the, with the
man about driving him somewhere to get some cash and
then they could drive me to the train station.  It
appeared to me that there was no coordination between
them before that point to actually take me to the train
station.  It was their intent to persuade me to spend
the night at that barn.

I remember the man driving us to another residence
where James got out of the car and, and went into the
house and came back with money and I passed out in the
backseat after that.  When I awoke I was at Penn
Station.

I, I went back home.  I, I returned home to
Boston.  At which point I realized that there were
items missing from my luggage; my wireless mouse, my,
my USB connector and my scarf and my panties.  I didn't
have any of those items.  I text James and told him I
wanted these items back.

A short time later I got an E-mail from his
assistant, Ryan, advising me that he was going to mail
me back my mouse.  I responded to that E-mail by
stating that I wanted all my items.

Q    Let me stop you just a minute.

N. Naffe - Court                                    15

A    I'm getting to the harassment.  I'm getting to the
harassment if you just give me one more second.
     Q    Okay.
A    I'm getting there.
     He, he sent me a message, a message back that he
was going to send me my things.  On October 20th I
learned that the situation involving my missing items
had been relayed to a reporter regarding a completely
separate matter with some other activists that were
talking to a reporter at Politico about a story
regarding an MPR video they'd done with James.
     On October 23rd James contacted me and offered to
pay me money, I'm not exactly sure what for, but he
offered to pay me some money.  I declined the money and
it was at that point I noticed that the harassments
started.  I was contacted by a girlfriend of mine,
Hannah Giles, who advised me that James had contacted
her husband, who was a person who was co-indicted with
James and is on federal probation along with James for
another matter in Louisiana.  She told me that James
had contacted her husband accusing him of leaking
things to a reporter at Politico, and in that
conversation he stated that, "Nadia tried to, to set me
up like on the Love Boat."  He was referring to a
situation where he --


N. Naffe - Court                                    16

     Q    All right.  Wait.
A    I'm getting, I'm getting, I'm getting, truly, I'm
getting there.
     Q    I'm trying to get to the point though.
Now --
A    He, now in that conversation --
     Q    Hold on just a second.
A    -- he, he made me out to be --
     Q    Ms. Naffe, Ms. Naffe --
A    -- out to be a tramp.
     Q    Ms. Naffe, just hold on a second.
A    Okay.
     Q    Is it your allegation that the incident of
harassment happened after you left Westwood and went
back to Boston?
A    Yes, sir.
     Q    All right.  So the incident in Westwood does
not play any role in the harassment per se?
A    Right.  When, when I wrote my complaint, the
supervising officer who was here at the time didn't
have the address that James had held me at so we were
unable to file a complaint for criminal restraint.
     Q    No, I understand that, but --
A    So --
     Q    -- the issue that, that we're looking at and

N. Naffe - Court                                    17

harassment was, the bulk of your statement that you
gave to the police, the certification in support of the
probable cause, was the incidents that led to the time
you arrived in Westwood to the time you were taken back
to the train station in New York.
A     Exactly, and I had wanted to --
      Q     But those incidents, those incidents are not
what you're alleging is the harassment.  The harassment
happened after you left Westwood?
A     That is correct, sir.  And I start --
      Q     Do you know, do you --
A     -- talking --
      Q     -- know where Mr. O'Keefe was after you left
Westwood?
A     At which point do you mean?
      Q     At any time, do you know if Mr. O'Keefe made
any of these communications from the Borough of
Westwood?
A     I believed he did because he resides in Westwood
and he's not allowed to leave the area without court
approval because he's on federal parole.  So he would
have had to have made those communications from
Westwood.
      Q     But you're, you're presuming that based on
the fact of knowledge of some other case.  Is it your

N. Naffe - Court                                    18

knowledge that he's limited to the Borough of Westwood?
A     That is my knowledge, yes.
      Q     All right.
A     He's on federal parole.  He's not allowed to
leave.
      Q     Now, these communications were they made to
you or to others?
A     Some of them were made to, some of them were, one
of them was, one of them was made to me and the rest of
them were made to other people.  He used other people
to, to torment and annoy me.  He, he contacted my
friend Hannah's husband and made accusations about my
character.  He accused me of doing something to him
that he had done to someone else.  He then had another
conversation with another colleague of ours where he,
he called me filthy and dirty.
      At which point, I wrote James a letter and I told
him I wanted the harassment to stop.  I told him if he
didn't stop the harassment I was going to contact the
police and contact his probation officer.  At which
point, his response was to threaten, when I told him I
was going to go to the police his response was to, to
have his lawyer threaten to sue me if I did not re,
recant any statement of what he had done.
      And then on November the 17th he posted a video

## N. Naffe - Court

19

me on his website and on YouTube where he
identified me as a young Harvard student, a former
colleague, a turncoat, and he put pictures of me in
this video, and he, he made all sorts of other
disparaging comments about me intended to harass and
torment me.  He, he, he later, he later took the video
down.

At which point, I decided that I couldn't deal
with his, his ongoing behavior and I, I sought the help
of the police.

Q      All right.  Ms.  Naffe, is it, and this is
important for one of the elements here is the question
of, of jurisdiction.  Mr. O'Keefe met you, you said in
your statement, at a train station in Newark, New
Jersey.

A      That's where he picked me up at, that's correct.

Q      And is that where they drove you back to, the
train station in Newark?

A      No, he drove me back to a train station in New
York City.  He drove me to Penn Station.

Q      All right.

A      Or the, he was in the passenger side of the
vehicle and this other man who he brought with him he
was driving the vehicle.

Q      Now your, your belief that Mr. O'Keefe is,

## Decision

20

travel is limited to the Borough of Westwood is based
on your understanding of what happened in another
court?

A      That's what his probation officer told me on the
phone.

Q      So that's what somebody told you?

A      I'm familiar with the court case.  I've read the
judge's order in the court case, and James himself had
told me that he's not allowed to leave the area,
although he often does.

Q      All right.  Is there anything else you want
to bring forward on this?

A      No, sir, not at this moment.  We, we may step
downstairs and, and certify those other charges at some
point today.

THE COURT:  Well, as to the charges that are
before this Court on Summons SC2180 alleging violation
of New Jersey Statute 2C:33-4 for harassment, I've read
the elements of the harassment statute to you when we
started.  Quite frankly, when I was focusing on this it
was on the incidents that you indicate occurred in the
Borough of Westwood on or about October 2nd.  You
indicated, however, that those were not the basis for
your harassment charge, that that was a predicate to
setting up the incidents that occurred after that time

## Decision

21

other communications.

MS. NAFFE:  That, that's, that's correct,

THE COURT:  Okay.

MS. NAFFE:  I think --

THE COURT:  The, the, there's a problem that, that, that is apparent on this.  One is that under the specific statute, the reason I focus on where the communications were made is that for an action to be recognized in the municipal court in Westwood it has to be shown that the communication was made either at the place where it originated or at the place where it was received.  And your indication was that you were in Weston at the time these incidents were brought to your attention.  So it would have been received outside of the jurisdiction of this court.

I'm not satisfied that there's an adequate showing that Mr. O'Keefe's freedom is limited to the Borough of Westwood so I can't make that leap that those contacts were made in the Borough of Westwood.  That removes element a. from the harassment charge, which is to say that a person,

"Makes, or causes to be made, a
communication or communications anonymously
or at extremely inconvenient hours, or in

## Decision

22

offensively coarse language, or in any other
manner likely to cause annoyance or alarm."
b. we discussed and you indicated there's no basis for that because there was no striking, kicking, shoving or other offensive touching.  So we're now raising the question of whether c. rises, which is,

"Engages in any other course of alarming
conduct or of repeatedly committed acts with
purpose to alarm or seriously annoy such
other person."

You've testified to a posting on a website and in YouTube that, or of a questionable value and questionable taste and questionable propriety.  You testified to other communications that were made by James O'Keefe to other third parties; but, I don't find that there is a course of alarming conduct or repeatedly committed acts directed to you.  You have made a case that may sound like it requires some civil relief.  You made a case that sounded perhaps that would have tones of slander, but those are civil matters and not quasi criminal matters and not cognizable in this court.

In reviewing the statements and reviewing the testimony today, I am not able to find that there is probable cause for the harassment complaint for the

Decision                                    23

incidents that occurred between October 2nd of 2011 and
November 21, 2011.  November 21st being the date of the
issuance of the complaint.  So I am making a ruling
that I am not finding probable cause for the issuance
of the harassment complaint.

This does not -- this means that there was no
probable cause found by me today.  It is not
necessarily a bar for any other actions or relief that
you might have.  You have a very experienced attorney
sitting next to you.  I'm sure he can advise you of
your rights as to these procedures.  The probable cause
determination is based solely for the matters arising
and addressed to complaint SC2180.  So I'm finding that
there was no probable cause for the issuance of this
complaint.

I thank you for coming in and the parties are
free to go.

                MR. WESCHEL:  Thank you, Your Honor.
                MS. NAFFE:  Thank you, Judge.
                THE COURT:  Thank you.
                        *  *  *  *  *

                                            24

# C E R T I F I C A T I O N

I, ISABEL E. COLE, the assigned transcriber, do
hereby certify the foregoing transcript of proceedings
on December 21, 2011, digital index number from 12:50-
3:19, is prepared in full compliance with the current
Transcript Format for Judicial Proceedings and is a
true and accurate compressed transcript of the
proceedings as recorded.

*Isabel E. Cole*

Isabel E. Cole          AOC#101
COLE TRANSCRIPTION, L.L.C.
Dated:  January 13, 2012

# EXHIBIT E

**FILED**

MAR 2 3 2012

**Harry G. Carroll**
**J.S.C.**

**AROMANDO & LIGHT, LLC**
195 Fairfield Avenue – Suite 4D
West Caldwell, New Jersey 07006
(973) 403-9100
Attorneys for Plaintiff

---

|  |  |
|---|---|
| **JAMES O'KEEFE, III,**<br><br>                    **Plaintiff,**<br><br>**vs.**<br><br>**NADIA NAFFE,**<br><br>                    **Defendant.** | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIV.: BERGEN COUNTY<br>DOCKET NO.:  C - 93 - 12<br><br>CIVIL ACTION<br><br>**ORDER TO SHOW CAUSE WITH**<br>**TEMPORARY RESTRAINTS** |

This matter having been opened to the Court by Aromando & Light, LLC, attorneys for Plaintiff James O'Keefe, III, upon Plaintiff's Verified Complaint and accompanying papers in support of Plaintiff's application for immediate temporary restraints and for accelerated discovery;

**AND IT APPEARING** from the Verified Complaint that Defendant Nadia Naffe is in possession of Plaintiff's private, proprietary and confidential information that has been stored on his personal computer ("Information");

**AND IT FURTHER APPEARING** that Defendant came into possession of the Information without permission from Plaintiff;

**AND IT FURTHER APPEARING** that the Defendant has released some of the Information and is presently threatening to release more Information to the public;

**AND IT FURTHER APPEARING** that Plaintiff will suffer irreparable harm unless the Court orders the relief set forth herein;

**AND** this Court having considered the likelihood of ultimate success of Plaintiff's claims, the balance of the hardships to the parties, the public interest, and whether Plaintiff will suffer immediate and irreparable harm if restraints are not entered against Defendant;

**AND** good cause otherwise having been shown for the entry of this Order;

**IT IS ON THIS** __23__ day of March, 2012;

**ORDERED** that Defendant Nadia Naffe and any person(s) acting in concert or participation with her who receives actual notice of this Order by personal service or otherwise, be and hereby are temporarily restrained and enjoined from disclosing, discussing, publishing or otherwise communicating the Information to or with any third party;

**AND IT IS FURTHER ORDERED** that Defendant show cause on __MAY 14__, 2012, at __9__ o'clock _a_.m. as to why a preliminary injunction should not be entered against her continuing the above restraints through the final adjudication of this matter; and

**AND IT IS FURTHER ORDERED** that Defendant shall have and bring with her to the hearing on __MAY 14__, 2012 at __9__ o'clock _a_.m. all originals and copies of the Information whether the Information is stored electronically or is contained in any other media whatsoever, including print; and

**IT IS FURTHER ORDERED** that Defendant shall submit any briefs in opposition to this application and any related papers on or before __April 30 2012__ and Plaintiffs shall submit a reply brief and any related papers on or before __May 8 2012__; and

CASE NAME: *James O'Neill, III   v.   Nasra Rafie*
DOCKET NUMBER: *C-93-13*

## SUPPLEMENTAL PROVISIONS TO ORDER TO SHOW CAUSE

# Returnable:

### SERVICE OF PLEADINGS
A copy of this order to show cause, verified complaint, legal memorandum and any supporting affidavits or certifications submitted in support of this application be served upon the defendant personally within 3 days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

### PROOF OF SERVICE
The plaintiff must file with the court his/her/its proof of service of the pleadings on the defendant no later than three (3) days before the return day.

### DEFENDANT'S OSC/INJUNCTIVE RELIEF RESPONSE REQUIREMENTS
Defendant shall file and serve a written response to this order to show cause and the request for entry of injunctive relief and proof of service by __4/30/13__. The original documents must be filed with the clerk of the Superior Court, Room 340. You must send a copy of your opposition papers directly to Judge Harry G. Carroll, whose address is Room 424, Courthouse, Hackensack, New Jersey. You must also send a copy of your opposition papers to the plaintiff's attorney whose name and address appears at the top of these papers, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file your opposition and pay the required fee and serve your opposition on your adversary, if you want the court to hear your opposition to the injunctive relief the plaintiff is seeking. NOTE: These papers are not the Answer to plaintiff's complaint, which must be filed within 35 days (see below).

### PLAINTIFF'S REPLY RESPONSIBILITY
The plaintiff must file and serve any written reply to the defendant's order to show cause opposition __5/8/13__. The reply papers must be filed with the Clerk of the Superior Court and a copy of the reply papers must be sent directly to the chambers of Judge Carroll.

### OSC MAY PROCEED EX-PARTE
If the defendant does not file and serve opposition to this order to show cause, the application will be decided on the papers on the return day and relief may be granted by default, provided that the plaintiff files a proof of service and a proposed form of order at least three days prior to the return day.

### PREHEARING SUBMISSION FORM OF ORDER/JUDGMENT
If the defendant has not already done so, a proposed form of order addressing the relief sought on the return day (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than 3 days before the return day.

### NOTICE TO DEFENDANT – LAWSUIT ANSWER RESPONSIBILITY
Defendant, take notice that the plaintiff has filed a lawsuit against you in the Superior Court of New Jersey. The verified complaint attached to this order to show cause states the basis of the lawsuit. If you dispute this complaint, you, or your attorney, must file a written answer to the complaint and proof of service within 35 days from the day of service of this order to show cause; not counting the day you received it. These documents must be filed with the Clerk of the Superior Court. Include the filing fee, payable to the "Clerk of the Superior Court." You must also send a copy of your Answer to the plaintiff's attorney whose name and address appear on these papers, or to the plaintiff, if no attorney is named. A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default. Please note: Opposition to the order to show cause is not an Answer and you must file both. Please note further: If you do not file and serve an Answer within 35 days of this Order, the Court may enter a default against you for the relief plaintiff demands.

### LEGAL SERVICES NOTICE
If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.

### RETURN DAY TESTIMONY
The Court will entertain argument, but not testimony, on the return day of the order to show cause, unless the court and parties are advised to the contrary no later than 3 days before the return day.

Hon. Harry G. Carroll, J.S.C.

# EXHIBIT F

## Certified List of Candidates - Short List
### 2010 Gubernatorial General November 02, 2010
Qualified As Of 08/26/2010 5:41:37PM

## GOVERNOR

**Jerry Brown**                                                                                    Democratic
Attorney General of California

**Meg Whitman**                                                                                    Republican
Businesswoman

**Chelene Nightingale**                                                                    American Independent
Business Owner

**Laura Wells**                                                                                          Green
Financial Systems Consultant

**Dale F. Ogden**                                                                                      Libertarian
Business Consultant/Actuary

**Carlos Alvarez**                                                                              Peace and Freedom
Retail Worker

## LIEUTENANT GOVERNOR

**Gavin Newsom**                                                                                    Democratic
Mayor, City and County of San Francisco

**Abel Maldonado**                                                                                    Republican
Senator/Businessman/Farmer

**Jim King**                                                                                    American Independent
Real Estate Broker

**James "Jimi" Castillo**                                                                                Green
Cultural Spiritual Advisor

**Pamela J. Brown**                                                                                    Libertarian
Economics Professor

**C.T. Weber**                                                                                  Peace and Freedom
Retired Government Analyst

## SECRETARY OF STATE

**Debra Bowen***                                                                                    Democratic
Secretary of State

**Damon Dunn**                                                                                        Republican
Small Business Owner

**Merton D. Short**                                                                            American Independent
Aviator

**Ann Menasche**                                                                                        Green
Civil Rights Attorney

**Christina Tobin**                                                                                    Libertarian
Voting Rights Advocate

---

* Incumbent                                          70                                          Page 1 of 34

## Certified List of Candidates - Short List
### 2010 Gubernatorial General November 02, 2010
#### Qualified As Of 08/26/2010 5:41:37PM

### SECRETARY OF STATE

**Marylou Cabral**                                          Peace and Freedom
Community Volunteer

### CONTROLLER

**John Chiang***                                                  Democratic
Controller

**Tony Strickland**                                               Republican
State Senator/Businessman

**Lawrence G. Beliz**                                   American Independent
Independent Businessman

**Ross D. Frankel**                                                    Green
Accountant

**Andrew "Andy" Favor**                                           Libertarian
Certified Public Accountant

**Karen Martinez**                                          Peace and Freedom
Retired

### TREASURER

**Bill Lockyer***                                                 Democratic
California State Treasurer

**Mimi Walters**                                                  Republican
Businesswoman

**Robert Lauten**                                       American Independent
No Ballot Designation

**Charles "Kit" Crittenden**                                           Green
Retired Professor

**Edward M. Teyssier**                                            Libertarian
Business Owner/Attorney

**Debra L. Reiger**                                         Peace and Freedom
Retired Technology Manager

### ATTORNEY GENERAL

**Kamala D. Harris**                                               Democratic
District Attorney, City and County of San Francisco

**Steve Cooley**                                                  Republican
District Attorney, County of Los Angeles

**Diane Beall Templin**                                 American Independent
Attorney/RE Broker

**Peter Allen**                                                        Green
Environmental Energy Attorney

* Incumbent

Page 2 of 34

## Certified List of Candidates - Short List
### 2010 Gubernatorial General November 02, 2010
Qualified As Of 08/26/2010  5:41:37PM

## ATTORNEY GENERAL

**Timothy J. Hannan**                                                   Libertarian
  Attorney/Arbitrator/Mediator

**Robert J. Evans**                                                   Peace and Freedom
  Criminal Defense Lawyer

## INSURANCE COMMISSIONER

**Dave Jones**                                                   Democratic
  Member, California State Assembly

**Mike Villines**                                                   Republican
  Businessman/State Assemblyman

**Clay Pedersen**                                                   American Independent
  Retail Manager

**William Balderston**                                                   Green
  Teacher/Union Organizer

**Richard S. Bronstein**                                                   Libertarian
  Licensed Insurance Broker

**Dina Josephine Padilla**                                                   Peace and Freedom
  Injured Worker Consultant

## BOARD OF EQUALIZATION MEMBER DISTRICT 1

**Betty T. Yee***                                                   Democratic
  Equalization Board Member

**Kevin R. Scott**                                                   Republican
  Small Business Owner

**Kennita Watson**                                                   Libertarian
  Retired Quality Engineer

**Sherill Borg**                                                   Peace and Freedom
  Community Development Officer

## BOARD OF EQUALIZATION MEMBER DISTRICT 2

**Chris Parker**                                                   Democratic
  Tax Professional/Educator

**George Runner**                                                   Republican
  Taxpayer Advocate/Senator

**Willard D. Michlin**                                                   Libertarian
  CPA/Businessman

**Toby Mitchell-Sawyer**                                                   Peace and Freedom
  Security Officer

* Incumbent