EUGENE G. IREDALE, SBN: 75292
IREDALE and YOO, APC
105 West F Street, 4th Floor
San Diego, California  92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

Attorneys for Plaintiff, NADIA NAFFE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| NADIA NAFFE, an individual )<br><br>        Plaintiff, )<br> )<br>v. )<br> )<br>JOHN PATRICK FREY, an )<br>individual, and the COUNTY OF )<br>LOS ANGELES, a municipal entity, )<br>        Defendants. )<br> )<br> )<br> )<br> ) | Case No:   CV12-08443-GW<br>(MRWx)<br><br>**PLAINTIFF NADIA NAFFE'S OPPOSITION TO DEFENDANT JOHN PATRICK FREY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**<br><br>Date:  March 18, 2013<br>Time: 8:30 a.m.<br>Crtm.: 10 |

# TABLE OF CONTENTS

Factual Summary ............................................................................................... 1

Argument...........................................................................................................5

    Because Defendant John Patrick Frey Invoked His Role as a State Actor to Menace and Threaten Plaintiff Nadia Naffe to Chill Her Exercise of Her First Amendment Right to Free Speech, Plaintiff Sufficiently States a Claim under 42 U.S.C. § 1983 ...................................................................6

        1. Defendant Frey Acted Under Color of State Law Because He Pervasively Flaunted His Authority as a Prosecutor......................6
        2. Frey Acted to Chill Ms. Naffe's Speech and Retaliated Against Her for the Exercise of Her Free Speech Right ...........................10

    Ms. Naffe Has Sufficiently Alleged Facts to Support Her Tort Causes of Action........................................................................................... 14

Conclusion. ....................................................................................14

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) .......................... 8

4

*Atkins*, 487 U.S. at 50.................................................................................... 8

5

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ................................ 7

6

*Hartman v. Moore*, 547 U.S. 250, 256 (2006) ........................................ 9,11

7

*Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012).................. 11

8

*Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)................................... 8

9

*Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir.1999) ...................... 12

10

*NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986)...................... 7

11

*West v. Atkins*, 487 U.S. 42, 48 (1988). .................................................. 7, 8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## FACTUAL SUMMARY

Defendant John Patrick Frey ("Frey") is a Deputy District Attorney in Los Angeles County.  First Amended Complaint ("FAC") ¶ 4.  Despite his claims of a heavy caseload prosecuting murders and other serious gang crimes (Decl. John Patrick Frey, ECF no. 40, ¶ 3), Frey finds time to write extensively on his blog entitled "Patterico's Pontifications" that is accessible at http://patterico.com.  FAC ¶ 9.  And while garnering such accolades as "DA of the Month" in December 2012 (Decl. John Patrick Frey, doc. 40, ¶ 3), doubtlessly a time-consuming endeavour, Frey still manages to devote many hours to the micro blogging website Twitter with the moniker @patterico (https://twitter.com/Patterico)[1].  FAC ¶42.  In posts on his blog, Frey has repeatedly invoked and referenced his official position and title as Deputy District Attorney for Los Angeles County.  *Id*. ¶¶ 10-15.  Frey has used his position to lend authority and credence to his opinions, including claiming that "[W]e Deputy DA's are suspicious by nature" (FAC ¶10(d)); disparaging a commenter's critique on his blog post by stating "[i]n your world, every prosecution is of an innocent person . . . your world has nothing to do with the world I know, and you are clearly 100% ignorant of the nature of the process you are discussing" (*Id*. ¶ 10(f)); asserting that "[b]eing a prosecutor is about presenting

---

[1] Last accessed on February 20, 2013 at 8:27 p.m.  On this date, Frey had 8697 tweets and 8380 followers.

the truth" (*Id*. ¶ 10(h)); and discussing inside information from the DA's Office (*Id*. ¶ 10(o)).

Plaintiff Nadia Naffe first came into contact with Frey in February 2012. *Id*. at ¶ 37. Beginning in or before February 26, 2012, Defendant Frey made public comments and statements regarding Ms. Naffe's criminal harassment complaint against James O'Keefe, a conservative activist. *Id*. ¶¶ 21, 35, 37. Defendant Frey repeatedly attacked Ms. Naffe for her account of events related to the "Barn Incident," an incident during which James O'Keefe drugged Ms. Naffe in an attempt to sexually assault her. *Id*. ¶¶ 34, 39, 42. Mr. Frey used both his Twitter account (@patterico) and his blog at http://patterico.com to repeatedly threaten and harass Ms. Naffe, including criticizing Ms. Naffe for failing to call a cab to "escape the barn during the Barn Incident." *Id*. ¶ 42.

On March 14, 2012, to combat misconceptions regarding the Barn Incident, Ms. Naffe began posting articles on her personal blog. *Id*. ¶ 46. In one of these blog posts, Ms. Naffe discussed an incident where James O'Keefe illegally recorded conversations in the office of Congresswoman Maxine Waters and the offices of OneUnited where Congresswoman Waters's husband worked. FAC ¶ 46. Ms. Naffe was involved in the wire-tapping of Congresswoman Waters's office in Los Angeles County. *Id*. ¶¶ 30, 32. Defendant Frey, who was aware of Ms. Naffe's involvement with James O'Keefe in the wire-tapping incident, realized that additional criminal charges against O'Keefe for this wire-tapping

incident would violate the terms of O'Keefe's probation.[2]  *Id*. ¶ 29.  At the time she published her blog post regarding the wire-tapping incident, Ms. Naffe intended to turn over an audio recording of the wire tapping of Congresswoman Waters's office to either the Los Angeles County Sheriff's Department or the Los Angeles County District Attorney's Office.  *Id*. ¶46.

Shortly thereafter, on March 23, 2012, Defendant Frey published several documents on his blog related to a civil suit James O'Keefe had filed against Ms. Naffe.  *Id*. ¶ 47.  That same day, Ms. Naffe informed Defendant Frey via Twitter that she intended to notify both the Los Angeles County District Attorney's Office and the California State Bar that he was misusing government time and resources by blogging and tweeting about the dispute between O'Keefe and Ms. Naffe. *Id*. ¶ 48.

Immediately after Ms. Naffe notified Frey that she intended to report him to the State Bar, on the evening of March 23, 2012, and continuing to March 24, 2012, Defendant Frey unleashed a barrage of angry and threatening "tweets" directed at Ms. Naffe.  FAC ¶¶ 48(a)-(f).  Most alarming, given Frey's status as a prosecutor, were tweets evidencing Frey's intent to actively investigate what crimes, if any, Ms. Naffe had violated:

---

[2] In May 2010, O'Keefe had been sentenced to three years probation for an incident which targeted the telephones in the office of U.S. Senator Mary Landrieu.  FAC ¶ 26.  O'Keefe plead guilty to entering federal property under false pretenses.  *See* case no. 10-cr-00081-SRD-DEK for the U.S. District Court, Eastern District of Louisiana.

"O'Keefe injunction against @NadiaNaffe releasing his hacked emails now online. Come see why she is threatening my job. http://t.co/BuPzYNXB" (time stamped Saturday March 24, 2012, at 01:21:18 am.)

"It is crystal clear any complaint filed by @NadiaNaffe will be frivolous attempt to silence my public voice. Part of a pattern." (time stamped Saturday March 24, 2012, at 01:22:58 am.)

"All @NadiaNaffe is doing is strengthening evidence of ties between her and others who have used similar tactics." (time stamped Saturday March 24, 2012, at 01:24:47 am.)

"@NadiaNaffe Utterly false but why let that bother you?" (time stamped Saturday March 24, 2012, at 01:38:11 am.)

**"@jdonels Can you send me the federal statute?" (time stamped Saturday March 24, 2012, at 01:39:27 am.)**

**"@Popehat Do you know the federal statute covering unauthorized access of email?" (time stamped Saturday March 24, 2012, at 01:40:45 am.)**

**"@NadiaNaffe This is quite a distraction from the points I raised in the post. I promise I will elaborate!" (time stamped Saturday March 24, 2012, at 01:45:07 am.)**

**"@NadiaNaffe My first task is learning what criminal statutes, if any, you have admitted violating."** (time stamped Saturday March 24, 2012, at 01:46:01 am.)

**"@Popehat If I check my email on ur phone, and when I return phone to you, you find you can access my email w/o my permission, can u legally?" (time stamped Saturday March 24, 2012, at 01:50:41 am.)**

"@Popehat Fair enough. I'll look it up. Thanks." (time stamped Saturday March 24, 2012, 01:57:54 am.)

*Id*. (Emphasis added.)  Frey's tweets regarding checking e-mails on a phone and statutes regarding illegal or unauthorized access to e-mails were clearly in

reference to numerous James O'Keefe e-mails that Plaintiff came to possess when O'Keefe accessed his e-mail using Plaintiff's phone.  FAC ¶ 32.

Soon after publishing threats via Twitter to investigate Ms. Naffe for alleged criminal violations, Frey published on his blog a transcript containing Ms. Naffe's medical information, date of birth, maiden name, mother's maiden name, family address and Social Security number.  *Id.* ¶¶ 50, 53.  On March 26, 2012, Ms. Naffe began receiving numerous alerts from the credit reporting agency Experian that fraudulent changes had been made to her credit report.  *Id.* ¶ 54.  Ms. Naffe continues to suffer from the effects of fraudulent uses of her Social Security number.  *Id.*

## II.
## ARGUMENT

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only when the complaint does not give a defendant fair notice of a legally cognizable claim and the basis on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 555).  In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

**A. Because Defendant John Patrick Frey Invoked His Role as a State Actor to Menace and Threaten Plaintiff Nadia Naffe to Chill Her Exercise of Her First Amendment Right to Free Speech, Plaintiff Sufficiently States a Claim under 42 U.S.C. § 1983.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two things: first, that she suffered a deprivation of a right provided by the Constitution or other statute; and second, that an individual acting under color of state law committed that deprivation. *West v. Atkins*, 487 U.S. 42, 48 (1988).

1. <u>Defendant Frey Acted Under Color of State Law Because He Pervasively Flaunted His Authority as a Prosecutor</u>

Given the repeated references to his position as a prosecutor on both his blog and on Twitter, and the invocation of that position to add weight and authority to his opinions, Defendant Frey's online persona is inextricably intertwined with his real life position as a prosecutor. *See* FAC ¶¶ 10-15. Defendant Frey claims that he cannot be acting in his official capacity as a Deputy District Attorney because both his blog and his Twitter account contain express disclaimers. Def. John Patrick Frey Mot. Dismiss Memo. P. & A., ECF no. 34, at 11 (hereinafter "Defendant's Motion"). But Defendant Frey's self-serving disclaimers are not conclusive evidence that he acted as a private individual when he repeatedly threatened and attacked Ms. Naffe.

The inquiry into whether an official is acting under color of state law "'turns on the nature and circumstance of the officer's conduct and the relationship of that conduct to the performance of his official duties.'" *Anderson v. Warner*, 451 F.3d

1063, 1068 (9th Cir. 2006), *quoting Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.

1995).  An official acts under color of state law when "he abuses the position given

to him by the State."  *Atkins*, 487 U.S. at 50.  In *Anderson v. Warner*, the Ninth

Circuit set forth a three part test to determine whether a § 1983 defendant is acting

under color of state law:

> First, the defendant's action must have been performed while the
> officer is acting, purporting, or pretending to act in the
> performance of his or her official duties.  Second, the officer's
> pretense of acting in the performance of his duties must have had
> the purpose and effect of influencing the behavior of others.
> Third, the challenged conduct must be related in some
> meaningful way either to the officer's governmental status or to
> the performance of his duties.

451 F.3d at 1068-69 (internal citations omitted).

     As in *Anderson*, the first and second inquiries, whether (1) Frey pretended to

act in performance of his official duties with (2) the purpose and effect of

influencing the behavior of others, must occur jointly to understand the context in

which Defendant Frey's conduct occurred.  Through his own blog posts, Defendant

Frey made clear that "Patterico's Pontifications" ("Patterico") was the product of a

Deputy District Attorney.  FAC ¶ 10.  In fact, Frey explicitly acknowledged that

"Patterico's Pontifications" was linked to his position as a Deputy District

Attorney.  *Id*. ¶10(n).  In a September 9, 2009 blog post entitled "**Patterico**

**Banned at the L.A. Times???**," Frey wrote **"[a]re they banning all Deputy**

**District Attorneys?**  Or just the ones that make them look like fools on a daily

basis?"  *Id*. (emphasis added).  Frey's own words indicate that Patterico  is an

expressive outlet for Frey's official work as a Deputy District Attorney and shows that Frey perceived any purported ban on Patterico to also be an attack on Frey's position as Deputy District Attorney.  And based on Frey's repeated reference to his position as a prosecutor, this is precisely how other media outlets viewed "Patterico's Pontifications."  *Id*. ¶15.  Additionally, Frey repeatedly invoked his position as a prosecutor to lend substance and weight to his opinions.  *Id*. ¶¶ 10(l)-(m); 10(o); 12.

Frey's threats against Ms. Naffe must be viewed within this context.  Patterico has a long running history and visible web presence as the work product of a Deputy District Attorney.  Frey simultaneously disclaims his position as a Deputy District Attorney to avoid liability and invokes it to seek credibility and issue threats of criminal investigation.  Against this backdrop,  Defendant Frey issued statements to Ms. Naffe, which a reasonable person could infer were threats to investigate and prosecute or to influence others prosecutors (including federal prosecutors) to do so.  Frey only uttered such threats to Ms. Naffe after she informed Frey that she would report him to the District Attorney's Office and the State Bar.  *Id*. ¶ 48.

Thus, Plaintiff's first amended complaint satisfies the first and second prongs of the *Anderson* test set forth by the Ninth Circuit.  Defendant Frey, through his online persona, which was an extension of his real life role as a prosecutor, issued the threat to investigate Ms. Naffe for any and all possible

criminal violations.  *Id*.  He specifically referenced an inquiry as to whether Ms. Naffe violated any laws by allegedly accessing James O'Keefe's emails without authorization.  *Id.* ¶¶ 48(g)-(j).  And he made his threats in an effort to chill Ms. Naffe's speech because such threats were issued only after Ms. Naffe indicated she would exercise her First Amendment right to speak freely to both Frey's employer and the California State Bar to complain about him.  *Id*. ¶ 48.

As to the third prong of *Anderson*,  that the challenged conduct must be related to Frey's governmental status or the performance of his duties, 451 F.3d at 1069, Ms. Naffe has properly alleged that the Frey's wrongful conduct was related to his status as a Deputy District Attorney.  FAC ¶¶ 52, 64.  Frey's threats to investigate Ms. Naffe for criminal misconduct had weight and substance precisely because of his position as a Deputy District Attorney and his inherent authority as a prosecutor to target Ms. Naffe for a criminal investigation.

Because Frey's online persona, found through "Patterico's Pontifications" and on Twitter with @patterico, was a digital extension of his real life role as Deputy District Attorney, Frey acted under color of state law when he threatened to investigate Ms. Naffe for criminal misconduct and then retaliated against when he published her Social Security number and other private data on his blog.  *Id*. ¶¶ 50, 51, 53.

///

///

2. <u>Frey Acted to Chill Ms. Naffe's Speech and Retaliated Against Her for the Exercise of Her Free Speech Right.</u>

Plaintiff's First Amended Complaint alleges facts showing that Defendant Frey acted with the purpose of chilling Ms. Naffe's speech and punishing her for the exercise of her First Amendment right.  *Id*. ¶¶ 48-54.  "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.  *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (internal citations omitted; alteration in the original).  To show a First Amendment violation, Ms. Naffe must plead facts that demonstrate that Frey's actions "deterred or chilled" her speech and that such deterrence "was a substantial or motivating factor" in Defendant Frey's conduct. *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012).  Ms. Naffe need not show that her speech was "'actually inhibited or suppressed.'"  *Id*., *citing Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir.1999). The relevant inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Lacey*, 693 F.3d at 916-17 (internal quotation omitted). Ms. Naffe must allege facts ultimately enabling her to "'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.' *Id.* at 917., *citing Hartman,* 547 U.S. at 260.  As the Supreme Court stated in *Hartman*: "[i]t may be

dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."  547 U.S. at 260.

Plaintiff's First Amended Complaint makes clear that the series of threats issued by Frey were made directly, and almost immediately, in response to Ms. Naffe's comment on March 23, 2012 that she intended to report Frey to the District Attorney's Office and State Bar.  FAC ¶ 48.  Ms. Naffe has also alleged facts that show that the threats were made to deter Ms. Naffe from contacting those agencies. *Id*.  The chronology of the tweets show that Frey began by accusing Ms. Naffe of being "full of false allegations."  *Id*. ¶ 48(a).  Then Frey asserted that Ms. Naffe was attempting to silence his voice.  *Id*. ¶ 48(b).  A mere fifteen minutes after Frey accused Ms. Naffe of attempting to silence his voice, Frey escalated his attacks on Ms. Naffe by actively and publicly inquiring about laws regarding unauthorized access of e-mails.  *Id*. 48(g); 48(j).  About six to seven minutes later, Frey issued a direct threat against Ms. Naffe with Frey stating that he intended to investigate Ms. Naffe for possible criminal misconduct.  *Id*. ¶48(i).

Additionally, Frey retaliated against Ms. Naffe and sought to punish her for expressing her intent to report Frey to his employer and the State Bar.  On March 24, 2012, Frey uploaded deposition transcripts from a 2005 lawsuit involving Ms. Naffe and her former employer to his blog.  FAC ¶ 50-51.  The transcripts contained private data concerning Plaintiff, including her Social Security number,

date of birth, mother's maiden name, family address and Plaintiff's medical information. *Id.* ¶ 50. Defendant Frey now claims that he had no idea that the deposition transcripts that he uploaded to his blog contained Plaintiff's private data, including her Social Security number. Decl. John Patrick Frey, ECF no. 40, ¶28. Frey's claim that he failed to review the transcripts that he purposefully uploaded to his blog is ridiculous given that Frey specifically sought to find documents on Pacer that "might shed light on her (Naffe's) credibility or on her allegations against Mr. O'Keefe."[3] *Id.* ¶ 22.

The timing and sequencing of Frey's actions indicate that he issued threats of criminal investigation of Ms. Naffe directly in response to her statement that she intended to report him to the District Attorney's Office and the State Bar. Ms. Naffe has alleged facts that show that Frey's conduct was for the sole purpose of silencing Ms. Naffe and dissuading her from reporting him. And Frey's threats of criminal investigation made under the badge of his authority as a Deputy District Attorney. Frey then took the additional step of publishing private information regarding Ms. Naffe, including her social security number, for the purpose of punishing her for her exercise of her free speech rights. The fact that Frey did not actually silence Ms. Naffe is immaterial. *Lacey*, 693 F.3d at 916-17.

---

[3] Frey's claim that Ms. Naffe's 2005 case against a former employer could somehow shed light on events in 2011 and 2012 involving James O'Keefe are also dubious and indicate that Frey actually sought to publicly humiliate and harass Ms. Naffe.

1  Frey poses as a defender of the First Amendment and uses his electronic

2  pulpit to bully and insult.  To the extent that he blusters and thunders, his

3  utterances, no matter how ridiculous, are entitled to the same First Amendment

4  protection accorded pornographers (*Miller v. California*, 413 U.S. 15 (1973));

5  aficionados of "crush" videos (*United States v. Stevens*, 559 U.S. 460 (2010); and

6  the deranged who use outrageous hyperbole (*Watts v. United States*, 394 U.S. 705

7  (1969)).  But when Frey invokes his status as a state prosecutor (while

8  hypocritically disclaiming reliance on such status) and makes statements

9  reasonably perceived as threats and retaliation for another's exercise of the

10  constitutional right to seek redress of grievances by complaining to competent

11  authorities about Frey's misuse of state resources and abuse of his official position,

12  he crosses the line.  Frey's First Amendment rights do not protect him for the use

13  of his role as a Deputy District Attorney to threaten investigation or prosecution in

14  retaliation.  They do not permit him to put a victim's Social Security number on

15  the Internet in a context that invites similarly motivated bullies to take illegal

16  action to steal Ms. Naffe's identity, to harass her, and to subject her to possible

17  physical harm.

18  Because Frey pervasively displayed the badge of his authority as a

19  prosecutor through his online persona "Patterico", Frey acted under of color of

20  state law when he threatened to investigate Ms. Naffe for criminal misconduct and

21  then retaliated against her for her exercise of free speech by publishing her Social

Security number and other private information on his public, freely accessible blog. Ms. Naffe has alleged sufficient facts to state a § 1983 claim against Defendant James Patrick Frey. For these reasons, Frey's motion to dismiss Ms. Naffe's §1983 cause of action must be denied.

**B. Ms. Naffe Has Sufficiently Alleged Facts to Support Her Tort Causes of Action.**

Frey also seeks to dismiss Ms. Naffe's tort causes of actions, the second through sixth causes of action, pursuant to Fed. R. Civ. P. Rule 12(b)(6) and to his Motion to Strike Pursuant to California's Anti-Slapp Law, codified at Code of Civil Procedure § 425.16 (ECF no. 37). Ms. Naffe has filed a separate opposition to ECF no. 37, Defendant's Motion to Strike. Plaintiff hereby incorporates her opposition to Frey's Motion to Strike pursuant to California's Anti-Slapp Law in support of her instant opposition to Frey's motion to dismiss her first through sixth causes of action under Fed. R. Civ. P. Rule 12(b)(6).

## III.
## CONCLUSION

For the foregoing reasons, Ms. Naffe respectfully requests that the Court deny Defendant Frey's motion to dismiss her first through sixth causes of action.

DATED February 20, 2013                 Respectfully submitted,

                                        /s/ Eugene Iredale

                                        EUGENE G. IREDALE
                                        Attorney for Plaintiff
                                        NADIA NAFFE