1  GOETZ FITZPATRICK LLP
   RONALD D. COLEMAN
2  rcoleman@goetzfitz.com
   One Penn Plaza, Suite 4401
3  New York, NY 10119
   Telephone: 212.695.8100
4  Facsimile: 212.629.4013

5  Counsel for Defendant
   JOHN PATRICK FREY
6

7  BROWN WHITE & NEWHOUSE LLP
   KENNETH P. WHITE (Bar No. 238052)
8  kwhite@brownwhitelaw.com
   333 South Hope Street, 40th Floor
9  Los Angeles, CA 90071-1406
   Telephone: 213. 613.0500
10 Facsimile: 213.613.0550

11 Local Counsel for Defendant
   JOHN PATRICK FREY
12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15 NADIA NAFFE, an individual,              Case No.: CV12-08443-GW (MRWx)

16              Plaintiff,                  Judge:   Hon. George H. Wu

17       v.
                                            DEFENDANT JOHN PATRICK
18 JOHN PATRICK FREY, an individual,        FREY'S REPLY MEMORANDUM
   CHRISTI FREY, an individual, STEVE       OF LAW IN SUPPORT OF HIS
19 M. COOLEY, an individual, and the        MOTION TO STRIKE THE
   COUNTY OF LOS ANGELES, a                 SECOND FIRST THROUGH SIXTH
20 municipal entity,                        CAUSES OF ACTION OF THE
                                            COMPLAINT PURSUANT TO
21              Defendants.                 CALIFORNIA'S ANTI-SLAPP
                                            LAW, CALIFORNIA CODE OF
22                                          CIVIL PROCEDURE § 425.16

23                                          Hearing Date:   April 18, 2013
                                            Time: ___       8:30 a.m.
24                                          Courtroom:      10

25                                          Complaint Filed: October 2, 2012

26

27

28

---

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

### TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   PLAINTIFF DOES NOT ANSWER MR. FREY'S EVIDENCE ................................ 1

III.  PLAINTIFF FAILS TO REBUT MR. FREY'S SHOWING THAT HIS
      BLOGGING ACTIVITIES ARE PROTECTED EXPRESSION UNDER THE
      ANTI-SLAPP STATUTE ...................................................................................... 3

IV.   PLAINTIFF FAILS TO DEMONSTRATE A REASONABLE
      PROBABILITY OF SUCCESS ON HER CLAIMS ...................................................... 5

      A.   Plaintiff Mischaracterizes the Standard She Must Meet to Demonstrate
           that She Has a Probability of Succeeding on the Merits ................................... 5

      B.   Plaintiff Offers No Admissible Evidence That Could Support Her
           Claims ............................................................................................................ 6

      C.   Plaintiff's Fails to Demonstrate a Probability of Prevailing on Her
           Claims as a Matter of Law. ............................................................................. 7

           1.   Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot
                Succeed ............................................................................................ 7

           2.   Plaintiff's False Light Defamation Claim Cannot Succeed .................. 10

           3.   Plaintiff's Defamation Claim Cannot Succeed..................................... 11

           4.   Plaintiff's Claim for Severe Emotional Distress Cannot Succeed ........ 12

           5.   Plaintiff's Claim for Negligence Cannot Succeed................................. 13

V.    PLAINTIFF HAS NOT DEMONSTRATED THAT DISCOVERY WILL
      BOLSTER HER FACIALLY MERITLESS CLAIMS .............................................. 15

VI.   CONCLUSION................................................................................................ 17

842328.1

## TABLE OF AUTHORITIES

Page

**Cases**

1-800 Contacts, Inc. v. Steinberg,
    107 Cal.App.4th 568 (2003) ............................................................. 6

American Civil Liberties Union v. U.S. Dept. of Justice,
    655 F.3d 1 (D.C. Cir. 2011) ............................................................. 8

Cibenko v. Worth Publishers, Inc.,
    510 F.Supp. 761 (D.N.J.1981) ....................................................... 10

Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.,
    944 F.2d 1525 (9th Cir. 1991).......................................................... 7

Crusader Ins. Co. v. Scottsdale Ins. Co.,
    54 Cal. App. 4th 121 (1997) .......................................................... 14

Diaz v. Oakland Tribune, Inc.,
    139 Cal.App.3d 118 (Cal. Ct. App. 1983) ....................................... 9

Evans v. Unkow,
    38 Cal.App.4th 1490 (1995) ........................................................... 7

Fellows v. National Enquirer, Inc.,
    42 Cal.3d 234 (1986) ..................................................................... 10

Gilbert v. Sykes,
    147 Cal.App.4th 13 (2007) ............................................................. 6

Johnson v. Nw. Airlines, Inc.,
    C 08-02272 VRW, 2009 WL 839044 (N.D. Cal. Mar. 30, 2009) ..................................... 14

Mao's Kitchen, Inc. v. Mundy,
    209 Cal.App.4th 132 (2012) ........................................................... 8

Melvin v. Reid,
    112 Cal.App.285 (1931)................................................................. 10

Metabolife Int'l, Inc. v. Wornick,
    264 F.3d 832 (9th Cir. 2001)......................................................... 15

Moreno v. Hanford Sentinel. Inc.
    172 Cal.App.4th 1125 (2009) ........................................................ 8

Price v. Stossel,
    590 F.Supp.2d 1262 (C.D. Cal. 2008) ................................. 6, 15, 16

Rogers v. Home Shopping Network,
    57 F.Supp. 973 (C.D. Cal. 1999) ....................................... 15, 16

Rosenauer v. Scherer,
    88 Cal.App.4th 260 (2001) ........................................................... 11

Snyder v. Phelps,
    131 S.Ct. 1207 (2011)................................................................... 13

ii

842328.1

## TABLE OF AUTHORITIES

Page

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ........................................................................ 12

*Troy Group, Inc. v. Tilson*,
   364 F. Supp. 2d 1149 (C.D. Cal. 2005) ......................................................... 5

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port District*,
   106 Cal.App.4th 1219 (2003) ......................................................................... 7

*Vogel v. Felice*,
   127 Cal.App.4th 1006 (2005) ......................................................................... 6

*Wasser v. San Diego Union*,
   191 Cal. App.3d 1455 (Ct. App. 1987) .......................................................... 9

*Wilbanks v. Wolk*,
   121 Cal.App.4th 883 (Cal. Ct. App. 2004) ..................................................... 5

*Yu v. Signet Bank/Virginia*,
   103 Cal.App.4th 298 (2002) ....................................................................... 4, 5

**Statutes**

Cal. Code Civ. Proc. § 425.16(c) ...................................................................... 17

Cal. Code Civ. Proc. § 425.16(e)(3) ................................................................... 3

Cal Evid. Code § 912) ....................................................................................... 14

Cal. Civ. Code § 1798.85 .................................................................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In his Renewed Motion to Strike ("the Motion"), Mr. Frey established that the First Amended Complaint ("FAC") is a classic SLAPP – a lawsuit calculated to retaliate against expression that makes the plaintiff angry. Mr. Frey established that the FAC is directed at expression protected by California Code of Civil Procedure § 425.16(e), thus satisfying the first prong of the anti-SLAPP test, and further demonstrated that Plaintiff would not be able to show she can prevail on the merits.

Plaintiff's Opposition ("the Opposition") shows that Mr. Frey is correct, and illustrates how frivolous and malicious this lawsuit is.  The Opposition does not support Plaintiff's case. It undermines it:

- Plaintiff repeats her familiar arguments supporting her causes of action, but offers neither pertinent authority nor evidence supporting them.
- Despite her burden to show that she can prevail on the merits, Plaintiff offers no admissible evidence that could conceivably support her claims.
- In an effort to establish that the anti-SLAPP statute does not apply, Plaintiff recasts her entire lawsuit as being only about threats, not only failing to cite any supporting evidence, but also ignoring her own allegations. Needless to say she fails to even acknowledge, much less rebut, Mr. Frey's demonstration that the FAC is aimed squarely at protected expression.

The anti-SLAPP statute was enacted to prevent abuse exactly like this.  The Court should grant the Motion in full.

## II.

## PLAINTIFF DOES NOT ANSWER MR. FREY'S EVIDENCE

The Opposition does not offer a statement of relevant facts. Opposition at 2. Rather, it incorporates the meager statement in Plaintiff's separate opposition to Mr. Frey's Motion to Dismiss under Section 12(b)(6).

1

By eschewing a statement of facts, Plaintiff avoids confronting many of the key points Mr. Frey made in his factual statement and supported with evidence.  For instance, Plaintiff has no answer for any of the following:

- Plaintiff misrepresented to the Court that Mr. Frey blogged in his official capacity, concealing that the very posts she referenced contained explicit statements that he was blogging as a private citizen. Motion at 3.

- Plaintiff continues to portray herself as a private figure singled out for no reason. She has no answer for Mr. Frey pointing out her *own admissions* that she "publicly challenged" a "media mogul" in discussing Mr. O'Keefe, a "popular" "activist," and that Mr. Frey's posts she complains of were responding to media coverage of her allegations. (FAC at ¶¶ 24, 36, 45, 48.) Further, she has no answer for Mr. Frey's evidence that he wrote regarding – and in response to – extensive media coverage of Plaintiff's own allegations. Frey Decl. at ¶¶ 11-12, 13-15, 17-19, Exhibits Q, Z, AA, BB, CC to Frey Decl.

- Plaintiff has no answer to the fact that – as Mr. Frey said in his blog posts – her sworn testimony at Mr. O'Keefe's probable cause hearing was almost entirely inconsistent with the "Barn Incident" story of assault she later told the media and now tells this Court. Frey Decl. at ¶¶ 13-15, 17; Exhibits Z, AA, BB to Frey Decl.

- Plaintiff – who deceptively suggested in the FAC that her deposition transcripts were restricted, not public, on PACER – has no response to Mr. Frey's overwhelming evidence establishing the contrary. Motion at 14; Supplemental Declaration of Kenneth P. White at ¶¶ 2-3.

Plaintiff has no answer for these points – and avoids mentioning them in her Opposition – because they are unanswerable. They illustrate the frivolous and vexatious nature of this lawsuit.

//

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

**III.**

**PLAINTIFF FAILS TO REBUT MR. FREY'S SHOWING THAT HIS BLOGGING ACTIVITIES ARE PROTECTED EXPRESSION UNDER THE ANTI-SLAPP STATUTE**

In his Motion, Mr. Frey established conclusively that Plaintiff's FAC arises from his protected speech, thus satisfying the first prong of the anti-SLAPP statute. Motion at 9-10. In response, Plaintiff dramatically but unsuccessfully attempts to recast her entire FAC. She asserts that the only speech "at issue" is a "series of threats" Mr. Frey made to investigate her. Opposition at 3. This, of course, is directly at odds with the language of the FAC, which specifically and repeatedly complains of a much broader range of Mr. Frey's writing. In the FAC Plaintiff specifically complains of Mr. Frey's posts about her past litigation, his "painting PLAINTIFF as a liar, as dishonest, as self-absorbed," his "relentlessly asking everyone who would listen why PLAINTIFF failed to call a cab during the barn incident," and his description of her as a "liar whose lies will be exposed" and "full of false allegations." (¶¶ 77, 81, 85, 89.) Plaintiff can't explain why those allegations don't trigger the anti-SLAPP statute, and doesn't even try.

Moreover, Plaintiff ignores the context of Mr. Frey's words, as illustrated by both Plaintiff's allegations and Mr. Frey's evidence. Plaintiff admits that she "publicly challenged" a "media mogul" in discussing Mr. O'Keefe, a "popular" "activist," and cites as harassment Mr. Frey's posts responding to media coverage of her allegations, which she responded to publicly. (FAC at ¶¶ 24, 36, 45, 48.) Further, Mr. Frey offered evidence that he wrote regarding – and in response to – extensive media coverage of Plaintiff's allegations. (Frey Decl. at ¶¶ 11-12, 13-15, 17-19, Exhibits Q, Z, AA, BB, CC to Frey Decl.) Once again, this establishes beyond possible dispute that Plaintiff's claims are targeted at speech concerning "an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3).

//

Brown, White & Newhouse<sup>LLP</sup>
ATTORNEYS

1    Further, Plaintiff's argument that her FAC is actually about Mr. Frey's alleged

2   threats to "investigate her for criminal misconduct" relies on her misrepresentation of

3   the evidence. In fact, in one of the very posts she refers to, Mr. Frey says *the exact*

4   *opposite:* "By the way:  given Naffe's admission that she accessed O'Keefe's emails,

5   evidently without his permission, has she committed a crime? I offer no opinion on that,

6   as *this post (like all my posts!) is written in my private capacity*, as an exercise of my

7   rights as a private citizen under the First Amendment." (Exhibit Q to Frey Decl. at 93

8   [emphasis added].)

9    Similarly, Plaintiff's own allegations show that Mr. Frey, a state prosecutor,

10   inquired about what *federal* statutes might address Plaintiff's misappropriation of Mr.

11   O'Keefe's email. (¶ 48(f), (g).) Plaintiff cites no *facts* explaining (1) what the District

12   Attorney's Office could have prosecuted her for, (2) how Mr. Frey suggested that the

13   District Attorney's Office would prosecute her, or (3) how Mr. Frey had, or used, any

14   official "influence" over federal prosecutors. Her assertion that Mr. Frey made threats

15   to investigate or prosecute her are rank speculation; mere conclusions supported by no

16   evidence.

17    In light of Plaintiff's own allegations and his evidence, Mr. Frey has carried his

18   initial burden under the anti-SLAPP statute of showing that the Complaint is premised

19   on protected expression. Plaintiff's *argumentative characterization* of these facts in her

20   Opposition does not prove otherwise. Nor do Plaintiff's conclusory descriptions of Mr.

21   Frey's expression as "harassing" or "intimidating" or have any bearing on whether the

22   expression satisfies the first prong of the anti-SLAPP statute. "The lawfulness of the

23   defendant's petitioning activity is generally not at issue in the 'arising from' prong of

24   the anti-SLAPP inquiry; that question is ordinarily addressed in the second, 'minimal

25   merit' prong of the inquiry relative to the plaintiff's probability of success on the

26   merits." *Yu v. Signet Bank/Virginia*, 103 Cal.App.4th 298, 317 (2002) (quotations

27   omitted).

28   //

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
ATTORNEYS

# IV.

## PLAINTIFF FAILS TO DEMONSTRATE A REASONABLE PROBABILITY OF SUCCESS ON HER CLAIMS

Plaintiff acknowledges that she carries a burden to prove a probability of prevailing on her claims. Plaintiff fails, however, to meet that burden for two reasons. First, *factually* she fails to offer admissible evidence.  Second, *legally* her claims are each gravely deficient under well-established law.

### A.   Plaintiff Mischaracterizes the Standard She Must Meet to Demonstrate that She Has a Probability of Succeeding on the Merits

Recognizing the weakness of the facts she offers and the insurmountable barrier of the law opposing her, Plaintiff strives to the lower the legal bar as far as she can. (Opposition at 4-5.)  In doing so, Plaintiff misconstrues language from anti-SLAPP cases and rips it from its context in a vain attempt to convince this Court that her burden of proof is no burden at all. But those cases do not support Plaintiff's position.

For example, *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149 (C.D. Cal. 2005), which cites *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 905 (Cal. Ct. App. 2004), is quoted approvingly by Plaintiff for the standard by which a court is to consider a plaintiff's submissions to determine whether he has made a prima facie showing of likely success. In applying the *Wilbanks* standard, the *Troy* Court did not, as Plaintiff suggests it do here, shy away from evaluating the evidence. To the contrary, the Court readily determined, upon careful consideration of the substance and context of an email alleged to be defamatory, that "it is very unlikely that a trier of fact would find [the defendant] liable for defamation . . . rather, a jury would likely find the email to be opinion and rhetorical hyperbole." 364 F. Supp. 2d. at 1156. In other words, the Court did exactly what Plaintiff asks this Court not to do – make a finding based on undisputed facts before it.

Plaintiff also relies on the language in *Yu*, *supra*, to the effect that the "causes of action need only be shown to have 'minimal merit.'" 103 Cal.App.4th at 318.  But the

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

*Yu* court did not purport to change the standard for proving a probability of prevailing on the merits, and Plaintiff cites nothing in *Yu* (or in any other case) showing that it did. "Minimal merit" is simply a colloquial way of articulating the standard established in other cases – that Plaintiff must offer competent and admissible evidence sufficient to resist a motion for summary judgment. *Price v. Stossel*, 590 F.Supp.2d 1262, 1266 (C.D. Cal. 2008); *Gilbert v. Sykes,* 147 Cal.App.4th 13, 53 (2007).

Moreover, Plaintiff ignores authority establishing that she cannot carry her burden because she has not stated and cannot state facts sufficient to state a cause of action, let alone evidence sufficient to prove her case. *See*, *Vogel v. Felice*, 127 Cal.App.4th 1006, 1017 (2005) (plaintiff cannot show a probability of success where claim is legally insufficient on its face); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal.App.4th 568, 584 (2003) ("In order to establish the necessary probability of prevailing, [a] plaintiff [is] required . . .to plead claims that [are] legally sufficient . . .").

Plaintiff cannot lower the bar enough to sustain her burden here: She fails to show, by competent evidence, that she could prevail on *any* point, or that her lawsuit has *any* legal or factual merit at all.

## B.    Plaintiff Offers No Admissible Evidence That Could Support Her Claims

Plaintiff carries the burden of offering "competent and admissible evidence" showing that she can prevail. *Price*, 590 F.Supp.2d at 1266. She offers no such evidence.

Plaintiff's two-page declaration submitted in opposition to the pending motions does not contain any facts sufficient to carry her burden – it addresses only the damages she claims to have suffered. Naffe Decl. at ¶¶ 1-7. Even if a single, self-serving affidavit could meet this burden, the one submitted by Plaintiff offers no competent factual basis that shows how she would prevail on the merits.

Plaintiff does not even purport to incorporate the relatively more detailed declaration she previously filed in opposition to Mr. Frey's original Motion to Strike. (Docket Item No. 20.) If she does intend to incorporate it, however, that declaration

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

does not help her. Almost every meaningful claim in the declaration is preceded with the statement "I am informed and believe and based thereon allege" – meaning, of course, that the affiant doesn't have first-hand knowledge of the facts alleged in that paragraph and could not testify to them at trial. Such evidence is inadmissible and insufficient, as a matter of law, to resist an anti-SLAPP motion. *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port District*, 106 Cal.App.4th 1219, 1236 (2003) ("An averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim")*; Evans v. Unkow*, 38 Cal.App.4th 1490, 1497 (1995) ("information and belief, within the context of a special motion to strike a SLAPP suit, is inadequate to show 'a probability that the plaintiff will prevail on the claim.'"). Federal courts apply the same rule in evaluating oppositions to motions for summary judgment. *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) (declaration based not on personal knowledge, but on information and belief, "does not raise a triable issue of fact" sufficient to overcome summary judgment motion).

   For these reasons, even considering the entire record, much less Plaintiff's meager submissions in opposition to this motion, Plaintiff has therefore failed to present competent and admissible evidence, as is her burden.

**C.** **<u>Plaintiff's Fails to Demonstrate a Probability of Prevailing on Her Claims as a Matter of Law.</u>**

   As is noted above, Plaintiff offers no *admissible evidence* showing that she can prevail on her claims.  Moreover, she fails to rebut Mr. Frey's conclusive showing that she cannot prevail on any of her claims as a matter of law.

   **1.** **<u>Plaintiff's Public Disclosure Invasion of Privacy Claim Cannot Succeed</u>**

   In his Motion, Mr. Frey demonstrated that Plaintiff cannot prevail on her public disclosure of private facts claim because a PACER court record is, by definition, not private, and information in the public domain cannot form the basis for the tort. Motion

7

1    at 12-15, citing *Moreno v. Hanford Sentinel. Inc*. 172 Cal.App.4th 1125, 1129-30

2    (2009). Plaintiff fails to rebut that showing.

3         As a preliminary matter, Plaintiff has apparently abandoned her attempt to

4    suggest that the deposition transcripts at issue were not publicly available on PACER.

5    Mr. Frey established conclusively that they were publicly available at the time he

6    republished them, and that they are once again. Motion at 14; Supplemental Declaration

7    of Kenneth P. White at ¶¶ 2-3. Plaintiff apparently now concedes that the transcripts

8    Mr. Frey republished were available to the public on PACER. Opposition at 5-6.

9         Instead, Plaintiff attempts to argue that transcripts available to the public on

10   PACER can still be "private" for purposes of the tort of public disclosure of private

11   facts. Opposition at 5-6. This argument is unavailing. California courts recognize that

12   court documents are public.  *Mao's Kitchen, Inc. v. Mundy,* 209 Cal.App.4th 132, 149

13   (2012) ("Generally, courts have held that discovery materials filed with the court are

14   publicly disclosed.") PACER defines itself as "an electronic *public access service* that

15   allows users to obtain case and docket information from federal appellate, district and

16   bankruptcy courts, and the PACER Case Locator via the Internet. PACER is provided

17   by the federal Judiciary in keeping with its commitment to *providing public access to*

18   *court information* via a centralized service." www.PACER.gov (emphasis added).  That

19   makes documents on it a classic public record.

20        Plaintiff argues that documents on PACER are "practically obscured" because

21   one must have a PACER account and a few dollars to download them, but cites no

22   authority for the strange proposition that this makes a difference for purposes of

23   determining whether or not a document is public. Moreover, as the District of Columbia

24   Circuit pointed out, PACER makes court records *more freely accessible*, not less,

25   because a citizen may use it without the need to travel to distant courthouses in order to

26   search through archives. *American Civil Liberties Union v. U.S. Dept. of Justice,* 655

27   F.3d 1, 7-9 (D.C. Cir. 2011). Plaintiff demurs that *American Civil Liberties Union*

28   involved the Freedom of Information Act, but does not explain how that distinction

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

BROWN, WHITE & NEWHOUSE<sup>LLP</sup>
A T T O R N E Y S

makes a difference for purposes of determining whether records on PACER are public. They clearly are.

Plaintiff cites *Diaz v. Oakland Tribune, Inc*., 139 Cal.App.3d 118, 126 (Cal. Ct. App. 1983), for the proposition that a matter of public record may still be treated as private if discussion of it is "morbid and sensational." Opposition at 6. In so arguing, Plaintiff ignores most of Mr. Frey's Motion. Mr. Frey established that his references to Plaintiff's mental state and use of medication were *directly relevant* to her accusations against Mr. O'Keefe because (1) the documents showed that she had been on medication that, by her own admission, might impact her ability to remember or testify, and (2) the documents showed that, by her own admission, she was taking medication that Mr. Frey knew mixed badly with alcohol, providing a possible explanation for her assertion that she had been drugged in the Barn Incident. (Frey Decl. at ¶¶ 22-27; Exhibits DD, EE, FF, GG to Frey Decl.) Plaintiff's conclusory assertion that "no public discourse was advanced" by this discussion is ridiculous. No minimally competent investigative reporter, law enforcement officer, defense attorney, or prosecutor would fail to inquire into such factors in evaluating the credibility of Plaintiff's accusation.

Moreover, *Diaz* is distinguishable on other grounds. In *Wasser v. San Diego Union*, 191 Cal. App.3d 1455 (Ct. App. 1987), the court found newsworthiness as a matter of law by distinguishing the facts from those in *Diaz*. In *Diaz*, the *Wasser* court explained, "plaintiff had meticulously kept secret her former identity in order to preserve secrecy as to her sex-change operation. This information was made public in an article as a result of her student political activities in a community college, a matter totally unrelated to her transsexual situation." By contrast, in *Wasser* the plaintiff – like the Plaintiff here – had not only made no such efforts; he kept the central events that had been a matter of public knowledge before the public. The court therefore rejected his arguments that the health information revealed was old and only tangentially related to the public issue at hand. 191 Cal. App. 3d at 1463. Similarly, here Plaintiff deliberately and repeatedly re-injected herself into the public eye by publicly arguing

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

about her allegations against Mr. O'Keefe.

Plaintiff also cites *Melvin v. Reid*, 112 Cal.App.285 (1931), which does not help her. In that case, the plaintiff – a former prostitute and murder defendant – was living under a new name.  The court specifically found that publication of items in the public record could not be a violation of her privacy: "These incidents appeared in the records of her trial for murder which is a public record open to the perusal of all. The very fact that they were contained in a public record is sufficient to negative the idea that their publication was a violation of a right of privacy." *Id.* at 290. Rather, the court found that connecting the records to the plaintiff's new, different name under which she was living in seclusion could be actionable. *Id.* at 291.  Even if that 1931 decision is still good law, it doesn't help Plaintiff.

In short, Plaintiff has failed to carry her burden of showing that she can prevail on her public disclosure invasion of privacy claim.

### 2.   Plaintiff's False Light Defamation Claim Cannot Succeed

In his Motion, Mr. Frey established that Plaintiff cannot prevail on her false light invasion of privacy claim because it is derivative of her defamation claim and fails for the same reasons. (Motion at 17-18.)

In her Opposition, Plaintiff argues that her false light claim stands separate from her defamation claim because "it is based on statements and questions that cannot be interpreted as statements of fact, and therefore cannot support a defamation claim." Opposition at 7. Mr. Frey agrees that the language targeted in Plaintiff's false light claim cannot be taken as statements of fact. ***But that just means that Plaintiff cannot prevail.*** A defendant in a false light claim may rely on the same defenses as a defendant in a defamation claim; that includes the defense that the challenged language states opinion, not fact. *Fellows v. National Enquirer, Inc.* 42 Cal.3d 234, 245 (1986) (noting that overwhelming majority of jurisdictions apply defamation defenses to false light claims), citing *Cibenko v. Worth Publishers, Inc.* 510 F.Supp. 761, 766 (D.N.J.1981) (opinion which could not support a defamation claim could not support a false light

claim). Therefore Plaintiff's false light claim must fail because expressions of opinion that Plaintiff is untruthful are protected expression. *Rosenauer v. Scherer,* 88 Cal.App.4th 260, 280 (2001) ("thief" and "liar" were protected expressions of opinion).

Plaintiff further argues that she may maintain an action against Mr. Frey for repeatedly asking why, if she felt threatened during the Barn Incident, she did not call a cab. She says posing this "rhetorical question" repeatedly put her in a "highly offensive, false, accusatory light." Unsurprisingly, Plaintiff cites no authority for the frankly appalling proposition that testing a claim with a rhetorical question can be actionable at law. Plaintiff made scurrilous allegations against a public figure, and chose to publicize those allegations to promote her narrative about them. (FAC at ¶¶ 24, 36, 45, 48.) Plaintiff now wants this Court to rule that American citizens are prohibited, the First Amendment be damned, from asking if her accusations are logically consistent and suggesting that they are not. Plaintiff's legal theory, if accepted, would mean that nobody could critically examine one side's allegations in a hotly disputed litigation, because to do so would be tortious questioning of veracity. Unsurprisingly, Plaintiff offers not a scintilla of legal support for that breathtaking suggestion.

### 3. <u>Plaintiff's Defamation Claim Cannot Succeed</u>

In his Motion, Mr. Frey established that Plaintiff cannot prevail on her defamation claim because the statements she complains of cannot be interpreted as provably true statements of fact as opposed to hyperbole and rhetoric in the course of a political dispute on the Internet. Motion at 15-17.

In response, Plaintiff asserts that the context was not a political dispute on the Internet, but "Mr. Frey's concerted effort to retaliate against Ms. Naffe and chill her speech." Opposition at 8. Once again, Plaintiff offers only a conclusory statement and no supporting evidence, and ignores her own extensive allegations placing this dispute in a specific political context. FAC at ¶¶ 18-19, 21-40, 45-46. By contrast, Mr. Frey provided the specific context for the allegations that he called her a "liar whose lies will be exposed" and "full of false allegations." FAC at ¶ 85, Frey Decl. at ¶ 30.

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

Specifically, he explained that he was offering his opinion of her dishonesty based on (1) her misleading statements that Andrew Breitbart had "ignored" O'Keefe's alleged "rape plot," when in fact Breitbart was on the other side of the country at the time, (2) her incredible claim that O'Keefe had downloaded seven years of emails into her cell phone, a technologically absurd proposition, (3) her suggestion that Mr. Frey supported a racist that Mr. Frey had, as Plaintiff knew, denounced, and (4) the inconsistencies between her sworn testimony and her later claim that O'Keefe assaulted her in the Barn Incident. Frey Decl. at ¶¶ 13-14, 30. That makes his statement quintessentially the sort of opinion protected by the First Amendment, as recognized by cases concerning political disputes, legal disputes, and Internet disputes. Plaintiff does not distinguish any of the cases Mr. Frey cited on this point.

In asserting her likelihood of success on the defamation claim, Plaintiff relies on only one case, *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995). Mr. Frey cited *Yagman* for the proposition that accusations of dishonesty are not actionable if they are mere rhetoric rather than provably true. Plaintiff does not explain how *Yagman* supports her – Mr. Frey's well-grounded statement of *opinion* that Plaintiff is dishonest is nothing like Yagman's false statement of *fact* that a judge was drunk on the bench.

Plaintiff also asserts, without evidence, that Mr. Frey's tweets should be read as accusing her of submitting a false complaint against Mr. O'Keefe. Opposition at 8. Tellingly, Plaintiff offers neither evidence nor elaboration. In fact, as Mr. Frey laboriously showed in his declaration and attached exhibits, he cited her under-oath testimony in support of her complaint and argued that her *subsequent statements to the media were inconsistent with it.* Frey Decl. at ¶¶ 13-15, Exhibits Z, AA.

Plaintiff has utterly failed to establish that she can prevail on her defamation claim.

### 4.   **Plaintiff's Claim for Severe Emotional Distress Cannot Succeed**

In his Motion, Mr. Frey established that Plaintiff's claim for intentional infliction

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
842328.1

of emotional distress cannot succeed because speech on an issue of public interest cannot be the basis for the tort. Motion at 19, citing *Snyder v. Phelps*, 131 S.Ct. 1207 (2011).

Plaintiff does not dispute – not could she – Mr. Frey's interpretation of *Snyder*. Instead, she argues that *Snyder* does not apply because Mr. Frey's online comments were "intimidation and harassment," not discussion of a matter of public interest. Opposition at 9. Plaintiff asserts this in conclusory fashion, without citation to any evidence or law. In doing so, she simply ignores her own allegations and Mr. Frey's evidence. Plaintiff admits that she "publicly challenged" a "media mogul" in discussing Mr. O'Keefe, a "popular" "activist," and cites as harassment Mr. Frey's posts responding to media coverage of her allegations, which she responded to publicly. (FAC at ¶¶ 24, 36, 45, 48.) Mr. Frey offered evidence that he wrote regarding – and in response to – extensive media coverage of Plaintiff's allegations. (Frey Decl. at ¶¶ 11-12, 13-15, 17-19, Exhibits Q, Z, AA, BB, CC to Frey Decl.) Plaintiff does not address these points at all. She cannot. They establish beyond cavil that Mr. Frey was writing about a subject of public interest, and that therefore under *Snyder* her claim for intentional infliction of emotional distress cannot succeed.

## 5.   Plaintiff's Claim for Negligence Cannot Succeed

In his Motion, Mr. Frey established that Plaintiff's negligence claim fails because Cal. Civ. Code § 1798.85, cited by Plaintiff, does not create a private cause of action. Motion at 19-20. Plaintiff responds that even if the statute doesn't create a cause of action, it creates a statutory duty to refrain from publishing a Social Security number – even, apparently, a Social Security number contained in a preexisting court record during a discussion of a political dispute.

Plaintiff is wrong. She cites *no legal authority* to support the proposition that even as the California Legislature specifically and deliberately declined to create a private right of action, as Mr. Frey's Motion demonstrated, it still intended to create a statutory duty under § 1798.85 – a ridiculous result that would not only undermine the

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

BROWN, WHITE & NEWHOUSE^{LLP}
A T T O R N E Y S

1   Legislature's intent but amount to upending it completely.

2          In fact, the proposition that the Legislature may reject creation of a private right

3   of action in enacting a remedial statute, yet still establish through that enactment a

4   negligence standard that amounts to the same thing, was explicitly considered, and

5   rejected, in *Crusader Ins. Co. v. Scottsdale Ins. Co*., 54 Cal. App. 4th 121 (1997). In

6   *Crusader* the court held that where, as here, "legislative history suggests that the

7   Legislature purposefully refrained from creating" a private right of recovery when

8   enacting remedial legislation, that legislation cannot nonetheless be deemed to have

9   established a standard for such an action based on common law theories or arguments

10  that the statute established a legislative "policy preference" enforceable at law. *Id*. at

11  136-7 (rejecting prior view that judges have discretion to create such causes of action if

12  "needed").

13  Moreover, even if it could be argued that the statute did create a duty in contravention

14  of the Legislature's clear intent, Plaintiff has not shown she could prevail under classic

15  theories of negligence and causation. Plaintiff has not offered, and cannot offer, facts or

16  law establishing that Mr. Frey could be negligent in re-publishing a *public court*

17  *document* that had rendered public her Social Security number for years, which she had

18  failed to address through a motion to seal or any other method. To the contrary, any

19  court would be reluctant to impose liability in such circumstances even if the negligence

20  standard Plaintiff has invented actually existed. *See Johnson v. Nw. Airlines, Inc.*, C

21  08-02272 VRW, 2009 WL 839044 (N.D. Cal. Mar. 30, 2009) (in claim under medical

22  records privacy law, where plaintiff discloses or consents to the disclosure of "a

23  significant part of the communication," privilege with respect to such communication is

24  waived; citing Cal Evid. Code § 912).

25         Plaintiff has not carried her burden of showing she will prevail on her negligence

26  claim.

27  //

28

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

# V.

## PLAINTIFF HAS NOT DEMONSTRATED THAT DISCOVERY WILL BOLSTER HER FACIALLY MERITLESS CLAIMS

Plaintiff asks the Court to grant her discovery to seek evidence supporting her claims rather than dismissing the Complaint under the anti-SLAPP statute. Opposition at 10-11. The Court should refuse to accept Plaintiff's invitation to extend this meritless litigation by giving Plaintiff license to engage in malicious political harassment under the rubric of "discovery," as she has explicitly threatened.

Plaintiff cites two cases for the proposition that she is entitled to discovery to resist an anti-SLAPP motion in federal court.  But in both of those cases, the plaintiffs articulated *specific avenues of discovery that might have been used to prove they could succeed on the merits*. In *Rogers v. Home Shopping Network*, 57 F.Supp. 973 (C.D. Cal. 1999), the plaintiff "identified specific discovery which she must obtain before being able to oppose the special motion," including the identity of an alleged confidential source, and articulated how that evidence was relevant – specifically, to establishing the defendant's knowledge that an allegedly defamatory publication was false. *Id.* at 985. Similarly, in *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001), the Ninth Circuit directed the district court to allow discovery on remand into a limited issue specifically identified by the plaintiff – the identity of the experts the defendant had relied on in making a pronouncement about the safety of plaintiff's product. *Id.* at 845-846.

By contrast, courts recognize that a plaintiff is not entitled to discovery – even in federal court – when the plaintiff cannot articulate how the discovery would be relevant to opposing an anti-SLAPP motion. Thus, in *Price v. Stossel*, 590 F.Supp.2d 1262 (C.D. Cal. 2008), this Court denied the plaintiff's motion for discovery to oppose an anti-SLAPP motion in a defamation case where the motion was premised on the argument that the expression complained of was not susceptible to defamatory meaning. The proposed discovery into the defendant's intent was therefore irrelevant because the

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

1    plaintiff "cannot show that the discovery he seeks is essential to his opposition." *Id.* at

2    1270-71.

3         This case is like *Price*, not like *Rogers* or *Metabolife*. Faced with a litany of flaws

4    in her Complaint, Plaintiff completely fails to articulate what discovery she seeks to

5    take, or how that discovery would help her resist this motion.  She fails to do so ***even***

6    ***though she made this same request in her opposition to Mr. Frey's first anti-SLAPP***

7    ***motion, and Mr. Frey made this same argument in reply.*** Docket Item No. 22 at 18-

8    19. In other words, she couldn't – or couldn't be bothered to – cite relevant discovery

9    even though she knew Mr. Frey would be making this argument, because no

10   conceivable avenue of disclosure would make her legal claims sustainable.

11         Indeed, the issues presented in the anti-SLAPP motion are issues of law, because

12   the facts in play have dictated entirely by Plaintiff's own admissions in her Complaint

13   and her submissions made in opposition to this motion – not by virtue of some cache of

14   unspecified undiscovered facts.

15         Therefore the Court should refuse to grant Plaintiff's amorphous request for

16   discovery, or require her to show what particular discovery she seeks to take and how,

17   exactly, that discovery would allow her to resist the Motion. Such limitation is

18   especially important here, because Plaintiff has boasted that she will use the discovery

19   process in this case to harass Mr. Frey on unrelated issues including (1) how Mr. Frey

20   and his wife afforded their house; (2) an unrelated incident in which Mr. Frey was the

21   victim of a false police report; and (3) the identity of an unrelated anonymous blogger.

22   Frey Decl. at ¶¶ 37 - 38; Exhibits LL, MM to Frey Decl.  This is exactly the conduct the

23   anti-SLAPP law was enacted to prevent.

24   //

25   //

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1

**VI.**

**CONCLUSION**

The Court should strike, without leave to amend, the Second through Sixth Causes of Action. Upon the Court granting the Motion, Mr. Frey will timely file a motion for attorney fees in accordance with Code of Civil Procedure § 425.16(c).

DATED:  March 4, 2013                Respectfully submitted,

GOETZ FITZPATRICK LLP LLP

By    _s/Ronald D. Coleman_
                    RONALD D. COLEMAN
                    Attorneys for Defendant
                    JOHN PATRICK FREY

DATED:  March 4, 2013                Respectfully submitted,

BROWN WHITE & NEWHOUSE LLP

By    _s/Kenneth P. White_
                    KENNETH P. WHITE
                    Attorneys for Defendant
                    JOHN PATRICK FREY

DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE

842328.1