1  GOETZ FITZPATRICK LLP
   RONALD D. COLEMAN
2  rcoleman@goetzfitz.com
   One Penn Plaza, Suite 4401
3  New York, NY  10119
   Telephone:  212.695.8100
4  Facsimile:  212.629.4013

5  Counsel for Defendant
   JOHN PATRICK FREY

6

7  BROWN WHITE & NEWHOUSE LLP
   KENNETH P. WHITE (Bar No. 238052)
8  kwhite@brownwhitelaw.com
   333 South Hope Street, 40th Floor
9  Los Angeles, CA  90071-1406
   Telephone:  213. 613.0500
10 Facsimile:  213.613.0550

11 Local Counsel for Defendant
   JOHN PATRICK FREY

12

13                 UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15 NADIA NAFFE, an individual,            Case No.: CV12-08443-GW (MRWx)

16              Plaintiff,               Judge:   Hon. George H. Wu

17       v.
                                         **DEFENDANT JOHN PATRICK**
18 JOHN PATRICK FREY, an individual,     **FREY'S REPLY MEMORANDUM**
   and the COUNTY OF LOS ANGELES,        **OF LAW IN SUPPORT OF HIS**
19 a municipal entity,                   **MOTION TO DISMISS FIRST**
                                         **THROUGH SIXTH CAUSES OF**
20              Defendants.              **ACTION IN THE FIRST**
                                         **AMENDED COMPLAINT**
21                                       **PURSUANT TO RULE 12(b)(6) OF**
                                         **THE FEDERAL RULES OF CIVIL**
22                                       **PROCEDURE**

23
                                         Hearing Date:  April 18, 2013
24                                       Time:  ___     8:30 a.m.
                                         Courtroom:    10
25
                                         Complaint Filed:  October 2, 2012
26

27

28

_____
               DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
858924.1

Brown, White & Newhouse LLP
ATTORNEYS

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3      In his Renewed Motion to Dismiss ("the Motion"), Mr. Frey established that the

4    First Amended Complaint ("FAC") fails utterly, as did its predecessor, to meet the

5    standards required to sustain a lawsuit under Fed. R. Civ. P. 12(b)(6). Mr. Frey

6    demonstrated that the FAC does not allege facts, plausible or otherwise consistent

7    with the record Plaintiff has placed before the Court, to sustain that burden, and that

8    the purpose of Plaintiff's lawsuit – as set out in Mr. Frey's previous submissions – is

9    to settle political scores and abuse the litigation process, not to state a claim for which

10   relief can be granted.

11      Plaintiff's Opposition ("the Opposition") does nothing to bridge the chasm

12   between what Mr. Frey described in his moving papers – a patchwork of

13   inconsistencies, vague generalities and arbitrary bursts of anger – and a legal claim

14   justifying continuing litigation in this court. To the contrary, the opposition, which

15   focuses on Mr. Frey's motion under Rule 12(b)(6) seeking dismissal of Plaintiff's

16   claims under Section 1983, demonstrates the FAC's complete lack of merit:

17

18        •    Plaintiff presents neither new factual allegations nor legal authority to

19              support her position that Mr. Frey's private actions as a blogger who is

20              known to be a Deputy District Attorney amount to actions taken "under

                color of state law";

21

22        •    Plaintiff fails to enunciate any plausible deprivation of her constitutional

                rights as a result of some action taken by Mr. Frey; and

23        •    To overcome the obvious objection to her claim of "chilled speech" – the

24              fact that the record indicates that she was not intimidated from expressing

25              herself at all – Plaintiff relies on utterly inapposite case law arising out of

26              serious, actual abuses of state power bearing no relation at all to the

27              "indignities" of which she complains.

28

1

858924.1

BROWN, WHITE & NEWHOUSE^LLP
A T T O R N E Y S

1    For these reasons, set out below in detail, the Court should grant the Motion in

2    full.

3    **II.    PLAINTIFF FAILS TO EXPLAIN HER MISREPRESENTATIONS TO**

4    **THE COURT**

5    In his Motion, Mr. Frey demonstrated that this Court may take notice of online

6    posts Plaintiff incorporates in her FAC (Motion at 6-7), and that when the Court does

7    so, it will see that Plaintiff has deliberately misrepresented the content of those posts

8    to the Court. Plaintiff has no answer whatsoever for this point – no response to the fact

9    that, in claiming that Mr. Frey was blogging in his official capacity, she referred to

10   posts in which he explicitly said he was blogging in his private capacity. For instance:

11   • Plaintiff falsely asserts that "FREY, acting as a Deputy District

12   Attorney, criticized journalist Tommy Christopher for failing to vet

13   PLAINTIFF before publishing an article about the Barn Incident and

14   subsequent lawsuit . . ." (¶ 45). When she made that claim to the

15   Court, she knew that the actual post said the opposite:  "By the way:

16   given Naffe's admission that she accessed O'Keefe's emails,

17   evidently without his permission, has she committed a crime?  I offer

18   no opinion on that, as *this post (like all my posts!) is written in my*

19   *private capacity*, as an exercise of my rights as a private citizen under

20   the First Amendment." (Exhibit R to Frey Decl. at 93 [emphasis

21   added].)

22   • Plaintiff listed a May 27, 2010 post as establishing that Mr. Frey was

23   blogging in his official capacity. (¶ 28.) When she made that claim,

24   she knew that the post itself said the opposite: "I think it is actually

25   known as the Invasion of Privacy Act, but don't take my word for it;

26   contrary to Friedman's suggestions, I am not a wiretap violations

27   prosecutor but a gang murder prosecutor, *speaking in my private*

28

858924.1

*capacity* as I always do on this blog." (Exhibit P to Frey Decl. at 88-89 [emphasis added].)

- Plaintiff has no explanation for why she edited a tweet and misrepresented it to the Court to make it appear that Mr. Frey was tweeting in his official capacity. She quotes Mr. Frey's tweet as "You owe [O'KEEFE] @gamesokeefeiii a retraction.  A big one.  You'd better issue it promptly.  [A threat made as a Deputy District Attorney.]" (¶ 39.) The placement of the quotation marks suggests dishonestly that the tweet included the "A threat made as a Deputy District Attorney" language. In fact, the tweet – which Plaintiff incorporated into the FAC – did *not* include that language.  (Exhibit KK to Frey Decl. at 249.)

- Plaintiff offers no explanation for why she misrepresented a post by Mr. Frey's attorney, Mr. White, suggesting that it said the exact opposite of what it truly said. (Motion at 10.)

Plaintiff didn't respond to these points because she cannot. There is no excuse for her misrepresentations to the Court. Those misrepresentations, like her conclusory legal assertions, undermine all of her arguments.

## III.   LEGAL ARGUMENT

The Opposition neither demonstrates that the FAC sets forth facts that could plausibly amount to an allegation that Mr. Frey acted under state law, or that his conduct amounted to a deprivation of any cognizable right that causes Plaintiff harm. For this reason, as set out in more detail, the FAC should be dismissed pursuant to Rule 12(b)(6).

### A.   Plaintiff Fails to Demonstrate That She Has Alleged Action Taken by Mr. Frey Under Color of State Law.

As set out in Mr. Frey's moving papers on this Motion, the Court, in its Tentative Ruling, explained the application of the "state action" test under Section

3

858924.1

1983 to the facts alleged in the original Complaint as follows:

> Apart from her assertion that Mr. Frey used his blog and Twitter account
> as a vehicle for his thoughts and opinions during the time he
> was supposed to be working as a district attorney and using resources made
> available to him as a district attorney, there is nothing *Mr. Frey did*
> which in any way suggested he was "pontificating" in his role as a
> district attorney.

(Tentative Ruling at 6-7; emphasis added.) Plaintiff's response has been to ignore the Court's statement of fundamental law and to repeatedly refer to the irrelevant fact that Mr. Frey accurately, and within the scope of his First Amendment right to free expression, acknowledged the fact that he was employed as a Deputy District Attorney while involved in his private activities as a commentator on an issue of public interest.  In fact, not a single argument in Plaintiff's brief advances her argument beyond that already rejected by this Court in its Tentative Ruling.

Indeed, the Tentative Ruling is, to Plaintiff, of no significance whatsoever. In that ruling, the Court, for example, wrote, "what *someone else* says about Mr. Frey does not turn Mr. Frey's behavior into action under the color of state law, or state action" (Tentative Ruling at 10). The guidance Plaintiff has taken from that holding is to argue that "based on Frey's repeated reference to his position as a prosecutor, this is precisely how other media outlets viewed 'Patterico's Pontifications.'" (Opposition at 8.) And where the Court wrote, as quoted above, "there is nothing *Mr. Frey did* which in any way suggested he was 'pontificating, in his role as a district attorney," Plaintiff responds that his supposed "threats to investigate Ms. Naffe for criminal misconduct had weight and substance precisely because of his position as a Deputy District Attorney." In other words, Plaintiff argues, not that Mr. Frey *did* anything at all, but that because of his job, he didn't have to. By this argument, Plaintiff apparently creates a new legal test, the authority for which is not cited by Plaintiff, called the "weight and substance" standard.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

858924.1

1    The "weight and substance" test is not the only novel rule of law offered up by

2    the Plaintiff on this issue. She also asserts that Mr. Frey – a county prosecutor in

3    California who suggested that Plaintiff should be investigated for violation of the

4    federal wiretapping statute in one or more states a continent away – should be deemed

5    as acting under color of state law when he did so, based on "his inherent authority as a

6    prosecutor to target Ms. Naffe for a criminal investigation." This concept of "inherent

7    authority," i.e., the suggestion that a prosecutor in one jurisdiction should be deemed

8    as wielding official power in any (and every) other jurisdiction, is certainly

9    melodramatic, but it is legally and factually baseless.

10    Similarly, Plaintiff's argument that Mr. Frey's "online persona, found through

11    'Patterico's Pontifications' and on Twitter with @patterico, was a digital extension of

12    his real life role as Deputy District Attorney'" merely shunts aside every point made

13    by the Court negating just that suggestion in the Tentative Opinion and the well-

14    established law to the contrary.

15    Plaintiff's "digital extension of his real life role as Deputy District Attorney'

16    argument is also an insult to common sense. It would be one thing to argue that Mr.

17    Frey's online activities were an extension of some analogous, or comparable, or even

18    remotely similar activities in which he were alleged to engage in as part of his role as

19    a criminal prosecutor. But no such activities are alleged and, of course, they could not

20    be:  District Attorneys such as Mr. Frey are not alleged to, and do not, perform their

21    "real life roles" – in any sense whatsoever – by writing blog posts or tweeting

22    opinions.  Plaintiff offers neither facts nor law supporting her conclusory statements

23    that Mr. Frey's responsibilities somehow involve blogging and tweeting about

24    politics.

25    Thus it would be one thing to argue, however implausibly, that Mr. Frey's

26    social media utterances could be placed on a continuum between those he publishes as

27    a prosecutor and those he claims to be solely private matters, and that where they fall

28    on that continuum perhaps constituted a factual question. But Deputy District

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

858924.1

BROWN, WHITE & NEWHOUSE^LLP
ATTORNEYS

1    Attorneys do not perform their jobs on the Internet. Plaintiff's so-called "digital

2    extension" is more accurately described as a digital invention – implausible legally

3    and logically.

4        **B.**    **Plaintiff Fails to Demonstrate that her Allegations Make out a**

5                **Deprivation of Constitutional Rights.**

6        Plaintiff argues that her constitutional rights were deprived by Mr. Frey because

7    he expressed his opinion about her credibility and about the legality of her actions and

8    – she states falsely – because he stated that he "intended to investigate Ms. Naffe for

9    possible criminal conduct" (Opposition at 11). This last is a completely fallacious

10   claim already resolved by the Court, and quoted in Mr. Frey's Motion, as something

11   far less onerous and quite lawful:

12       Plaintiff directs the Court to paragraph 27 of her declaration filed in connection
         with her opposition to the pending anti-SLAPP motion. In that paragraph she
13       alleges that Mr. Frey contacted her on Twitter on March 23, 2012, stating "My
         first task is learning what criminal statutes, if any, you have admitted
14       violating."  Docket No. 20-1, ¶ 27. This "tweet" comes closest to invoking Mr.
         Frey's public status, but the parties give the Court no context illuminating what
15       was at issue at the time Mr. Frey issued this comment. From the Court's
         perusal of the exhibits to Plaintiffs declaration, it would appear that Mr. Frey
16       was referring to Plaintiffs conduct in connection with her possession of a
         laptop belonging to her former employer, the Florida Republican Party. See
17       Docket No. 20-1, Exh. A, at 1; id., Exh, B, at 3-6. **If that is the case, it is**
         **unclear how the Court could infer an "under color of state law" act by a**
18       **Los Angeles County District Attorney, when there is no apparent**
         **connection between that issue and any jurisdiction over which Mr. Frey**
19       **would have any authority.** Indeed, subsequent to the comment quoted above,
         Mr. Frey "tweeted" a request for a citation to a federal statute.
20
21
22   Tentative Ruling at 10 (emphasis added). Plaintiff's insistence on repeating the canard

23   that the tweet referred to constituted an action taken under color of state has nothing to

24   do with any new allegation in the FAC. It is merely contumacious disregard of this

25   Court's explicit ruling, as is her pointless recapitulation of the same supposed

26   "threats" that the Court found unavailing the first time around. This includes her

27   preposterous claim that she "intended" to ask the Los Angeles County District

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

858924.1

Attorney to investigate the alleged wiretapping of Rep. Maxine Waters's office – wiretapping which she acknowledges she herself was "involved in" and regarding which she bragged on her own blog. (Opposition at 2-3.)

Plaintiff places much stock in language from *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) suggesting that Ms. Naffe "need not show that her speech was 'actually inhibited or suppressed.'" She also acknowledges, however, that while the test is not "actual chilling," courts nevertheless "consider "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." This point does not mean what Plaintiff thinks it means, for despite a throwaway reference to "statements reasonably perceived as threats and retaliation" (Opposition at 13), her argument has never been based on how "a person of ordinary firmness" would react when offended by the comments of a blogger who happens to work in the prosecutor's office in a distant state. Rather, it has always been premised on her self-anointed special status as one who, unlike those she slanders, defames and attacks, should be held immune from criticism, contradiction or hurt feelings – the entire premise of this lawsuit.

The "person of ordinary firmness" standard was first adopted by this Circuit in *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999), in which the plaintiffs sued police officers and FBI agents alleging unlawful arrest, knowingly or recklessly included false information in search warrant affidavits, entering into a conspiracy to violate the plaintiffs' constitutional rights, and – by these coercive, official uses of state-sanctioned force – hindering plaintiffs' First Amendment activities. Courts applying this formulation test have used it to hold, for example, that "a person of ordinary firmness would be chilled from future exercise of his First Amendment rights if he were booked and taken to jail in retaliation for his speech." *Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013). Similarly, in *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006), the Ninth Circuit noted that "searching someone's office and seizing materials can satisfy this first requirement."

Indeed, in *Lacey*, the claim was that the defendant violated the plaintiff's First Amendment rights "by investigating and arresting him in retaliation for articles published by the New Times [publication] and with the purpose of suppressing the exercise of those rights." 693 F.3d at 916. As the court explained:

> [Defendant's] motions for arrest warrants, contempt findings, and fines show that he meant the New Times to fear them as valid. He did not wait for the warrants or other official approval before authorizing Arpaio's "Selective Enforcement Unit" to arrest Lacey and Larkin at their homes. In the circumstances of this case, to state that "[a]rresting someone in retaliation for their exercise of free speech rights" is sufficient to chill speech is an understatement.

*Id.* at 917.

Nothing in the FAC comes close to such allegations. Obviously no one is complaining here of having been searched, detained, arrested – or even "investigated." Indeed Plaintiff makes no effort to prove that "threatening to investigate" someone – separate and apart from the plausibility of that perceived threat under the circumstances – would be an inappropriate exercise of state action. Admittedly, she would have a hard time doing so here. Not only has she filed to allege facts from which the Court could conclude that such the "investigation" alleged would be improper on any ground recognized by the law. Beyond this, Plaintiff has, as set out in Mr. Frey's previous submissions in this matter, consistently refused to even **attempt** rebuttal of the factual submissions of record and admissions by Plaintiff on which Mr. Frey's "investigation" comments were based: Plaintiff's unforced public admission concerning her involvement in unlawful conduct.

Ultimately, Plaintiff's comparison of the events that led her to file this lawsuit to the serious deprivations of constitutional rights suffered in such cases underlines the absurdity of her legal claims. It also demonstrates the extent to which the FAC, and the papers submitted to support it, go beyond trivializing the very concept of civil rights violation – which would be bad enough – to turning them on their head, seeking

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

858924.1

1  to utilize this Court in a meritless attempt to deprive Patrick Frey of his right to

2  comment on a matter of obvious public concern.

3  **IV.    CONCLUSION**

4        Based on the foregoing, this Court should dismiss the First Cause of Action

5  without leave to amend.  If the Court does not grant Defendant's concurrently filed

6  Anti-SLAPP Motion, the Court should also dismiss the Second through Sixth Causes

7  of Action without leave to amend for the reasons set forth in Mr. Frey's Motion and in

8  his Anti-SLAPP Motion.

9

10  DATED:  April 3, 2013               Respectfully submitted,

11                                      GOETZ FITZPATRICK LLP

12

13                                      By   _s/Ronald D. Coleman_
                                                 RONALD D. COLEMAN
14                                               Attorneys for Defendant
                                                 JOHN PATRICK FREY
15

16  DATED:  April 3, 2013               Respectfully submitted,

17                                      BROWN WHITE & NEWHOUSE LLP

18

19                                      By   _s/Kenneth P. White_
                                                 KENNETH P. WHITE
20                                               Attorneys for Defendant
                                                 JOHN PATRICK FREY
21

22

23

24

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

858924.1