UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-8443-GW(MRWx) | Date | April 18, 2013 |
| Title | Nadia Naffe v. John Patrick Frey, et al. | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Deborah Gackle | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Eugene G. Iredale

Kenneth P. White
Alexandra Zuiderweg

PROCEEDINGS: DEFENDANT JOHN PATRICK FREY'S MOTION TO DISMISS FIRST THROUGH SIXTH CAUSES OF ACTION IN THE FIRST AMENDED COMPLAINT (filed 01/11/13)

DEFENDANT JOHN PATRICK FREY'S MOTION TO DISMISS SECOND THROUGH SEVENTH CAUSES OF ACTION IN THE FIRST AMENDED COMPLAINT (filed 01/11/13)

DEFENDANT JOHN PATRICK FREY'S MOTION FOR A SECURITY UNDERTAKING PURSUANT TO CA. CODE OF CIVIL PROCEDURE 1030 (filed 01/11/13)

DEFENDANT JOHN PATRICK FREY'S MOTION TO STRIKE THE SECOND THROUGH SIXTH CAUSES OF ACTION OF THE FIRST AMENDED COMPLAINT (filed 01/11/13)

DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (filed 01/11/13)

PLAINTIFFS' MOTION FOR ORDER RELIEVING LEIDERMAN DEVINE LLP AS COUNSEL OF RECORD FOR PLAINTIFF (filed 01/31/13)

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiffs' Motion for Order Relieving Leiderman Devine LLP as Counsel of Record for Plaintiff, is GRANTED. Attorney Eugene Gerald Iredale is substituted as counsel of record for Plaintiff in place and stead of Leiderman Devine, LLP. Defendants' motions to dismiss are TAKEN UNDER SUBMISSION. Court to issue ruling.

: 15

Initials of Preparer  JG

<u>Naffe v. Frey, et al.</u>, Case No. CV-12-8443- GW (MRWx)
Tentative Rulings on: **(1)** Defendant County of Los Angeles's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), **(2)** Defendant John Patrick Frey's Motion to Dismiss First Through Sixth Causes of Action in the First Amended Complaint to Rule 12(b)(6) of the Federal Rules of Civil Procedure, **(3)** Defendant John Patrick Frey's Motion to Dismiss Second Through Seventh Causes of Action of the First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1), **(4)** Defendant John Patrick Frey's Renewed Motion to Strike the Second Through Sixth Causes of Action of the First Amended Complaint Pursuant to California's Anti-SLAPP Law, California Code of Civil Procedure § 425.16, **(5)** Defendant John Patrick Frey's Motion for a Security Undertaking Pursuant to California Code of Civil Procedure 1030, and **(6)** Plaintiff Nadia Naffe's Motion for Order Relieving Leiderman Devine LLP as Counsel of Record for Plaintiff

A series of motions are now before the Court, all but two consisting of attempts to either dismiss or strike portions or the entire First Amended Complaint ("FAC") plaintiff Nadia Naffe ("Plaintiff") filed on December 27, 2012.[1] The Court will first consider the motions of defendants County of Los Angeles ("the County") and John Patrick Frey to the extent they challenge plaintiff's first claim for relief, brought pursuant to 42 U.S.C. § 1983. The Court will then consider Frey's motion to dismiss the second through seventh causes of action, a challenge to Plaintiff's assertion that diversity jurisdiction exists here based upon an argument that the $75,000 jurisdictional minimum is not satisfied. Depending on the resolution of those disputes, the Court will either dismiss what remains of the action or return to the other motions and arguments the defendants pose.[2]

The Court set forth the general background of this case in its ruling on motions challenging the original Complaint, issued December 10, 2012. *See* Docket No. 29.[3] The Court will not repeat that context here and will address new allegations to the extent they are germane to its analysis.

---

[1] As with the original Complaint, Plaintiff asserts seven claims for relief in the FAC: violation of 42 U.S.C. § 1983, public disclosure/invasion of privacy, false light/invasion of privacy, defamation, intentional infliction of emotional distress, negligence, and negligent supervision.

[2] Plaintiff has filed a motion that is not at all dependent on resolution of the challenge to the existence of diversity jurisdiction. She has moved to relieve her prior counsel. There being no opposition to that motion, and considering that Plaintiff has already associated in her replacement counsel, the Court grants the motion.

[3] The standards the Court applies when assessing a Rule 12(b)(6) challenge were also set forth in its December 10, 2012, ruling. *See* Docket No. 29, at 5-6. The Court incorporates that discussion herein.

1

Plaintiff's Section 1983 Claim

To begin, Plaintiff has agreed to drop her Section 1983 claim against the County. *See* Docket No. 55, at 1:1-5. That leaves her Section 1983 claim against Frey as the only claim in this case raising a federal question. As the Court has previously noted, that claim requires, among other things, that the action in question be taken "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

When it assessed Plaintiff's original Complaint on this point, the Court indicated that, given the *facts* she had alleged, it would not credit Plaintiff's conclusory assertion that Frey acted under color of state law in his alleged harassment of Plaintiff via his website, blog and Twitter account.[4] *See Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) ("Conclusionary allegations, unsupported by facts, will be rejected as insufficient to state a claim under the Civil Rights Act.") (omitting internal punctuation and quotation marks) (quoting *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)); *id.* ("[A] defendant is entitled to more than the bald legal conclusion that there was action under color of state law."). Plaintiff's new allegations do not advance her case for stating a claim based on the existence of state action and, as with the motion to dismiss her original Complaint, she has not cited any case which comes close to suggesting that what Frey allegedly did here would amount to such state action. *Cf. Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012); *Pitts v. Cnty. of Kern*, 17 Cal.4th 340, 362 (1998) (indicating that a district attorney represents the state when preparing to prosecute and when prosecuting criminal violations of state law, and when training and developing policy in these areas).

Plaintiff's state action allegations are, again, largely conclusory, *see* FAC ¶¶ 13, 16, 19, 29, 37-39, 41-43, 45, 50, 52, 55, 64, 66, 72, 74, 99, and, where they are not conclusory, they are speculative (or demonstrably false[5]). Importantly, Frey's practice of simply (relatively

---

[4] To the extent Plaintiff simply repeats in the FAC the type of allegations the Court has already rejected as a basis for finding state action, the Court simply incorporates its discussion of the reasons for rejecting those allegations in its earlier ruling. *See* Docket No. 29, at 7-10; *see also* FAC ¶¶ 4, 8, 10(a)-(o), 11, 15, 17, 56.

[5] In paragraph 39 of the FAC Plaintiff quotes Frey as saying the following: "You owe [O'Keefe] @jamesokeefeiii a retraction. A big one. You'd better issue it promptly. [A threat made as a Deputy District Attorney]." FAC ¶ 39. The Court may consider the text of Frey's actual statement in connection with a Rule 12(b)(6) challenge. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Notwithstanding Plaintiff's use of quotation marks, the language "[A threat made as a Deputy District Attorney]" does not appear in Frey's actual comment. *See* Frey Decl. (Docket No. 40), Exh. KK, at 266. The Court would consider issuing sanctions against Plaintiff and/or her attorneys for the contents of paragraph 39.

frequently) mentioning the fact that he is a deputy district attorney or prosecutor, *see id.* ¶¶ 10(a)-(o), does not transform everything he says on his blog or on Twitter into state action.[6] Quite simply, nothing Plaintiff has alleged plausibly suggests that Frey acted, or purported or pretended to act, in the performance of his official duties. *See Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (identifying "three critical requirements" – that the actions were "performed while the [individual] is acting, purporting, or pretending to act in the performance of his or her official duties"; that the "pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others"; and that "the challenged conduct must be related in some meaningful way either to the [individual's] governmental status or to the performance of his duties") (omitting internal quotation marks); *Huffman v. Cnty. of Los Angeles*, 147 F.3d 1054, 1056-58 (9th Cir. 1998).

Plaintiff has now included in her allegations Frey's comment on Twitter (which was not in her original Complaint, but which the Court discussed in the course of determining whether Plaintiff should be allowed to amend, *see* Docket No. 29, at 10), stating "My first task is learning what criminal statutes, if any, you have admitted violating." FAC ¶ 48(i).[7] The Court noted when it first considered this statement that it was difficult to discern what Frey was talking about at the time, and that the suggestion was that the conduct in question had occurred outside California[8] (and that Frey was concerned with Plaintiff's potential violation of *federal* law). *See* Docket No. 29, at 10. The context of the conversation is equally difficult to discern now, as Plaintiff freely admits in the FAC. *See* FAC at 16 n.1.

Plaintiff takes this to mean that she should simply be afforded the opportunity to conduct discovery to find out more about what was happening during the Twitter-based discussion that

---

[6] Plaintiff acknowledges, and then attempts to summarily dismiss as "difficult to find" and "untrue," the fact that Frey places a disclaimer on his blog indicating that his statements thereon are made in his personal capacity. The full text of several of the statements Plaintiff relies on explicitly make the point that Frey is speaking in his personal capacity. *See* Frey Decl. (Docket No. 40), Exh. Q, at 93; *id.*, Exh. P, at 88-89; *see also Marder*, 450 F.3d at 448; *Lee*, 250 F.3d at 688-69. Of course, this does not mean that this is true, as a legal matter, but Plaintiff still must come forward with factual allegations supporting the contrary conclusion.

[7] In her Opposition brief, Plaintiff characterizes this as "Frey issu[ing] a direct threat against Ms. Naffe with Frey *stating* that he intended to investigate Ms. Naffe for possible criminal misconduct." Docket No. 53, at 11:18-21 (emphasis added). Again, sanctions may very well be in play for Plaintiff's (and/or her counsel's) willingness to play fast-and-loose with the language that is actually at issue here. *See also* Footnote 5, *supra*.

[8] To the extent that Plaintiff now speculates that Frey was talking about Plaintiff's possession of O'Keefe's emails, *see* FAC ¶ 48, she has not come close to suggesting what a Los Angeles County prosecutor could possibly charge her with for such conduct.

led to this statement. But that is not how pleading works, post-*Twombly*. Plaintiff must plead *facts* plausibly suggesting that she has a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Hartmann v. Cal. Dep't of Corrections & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Facts that are merely consistent with a claim are insufficient to get to the discovery stage of proceedings. Plaintiff has not plausibly pled facts that Frey was acting as a deputy district attorney when he made that statement.

Specifically, Plaintiff has failed to allege facts demonstrating that this comment has anything to do with anything over which a Los Angeles County Deputy District Attorney such as Frey could possibly have jurisdiction. To the extent Plaintiff argues that Frey nevertheless is a state actor because it is conceivable he could contact other prosecutors in other jurisdictions, federal or state, to influence prosecutorial decisions in relation to this issue, the same can be said for any member of the general public. Frey is not transformed into a state actor for taking such steps (or implying that he would take such steps) simply because he is, in his professional role, a prosecutor in *this* jurisdiction. Plaintiff has presented no facts indicating or suggesting that Frey, or the Los Angeles County District Attorney's Office in general, is part of some super-jurisdictional task force charged with investigating Plaintiff or the crimes she may or may not have committed. *Cf. Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977).

Plaintiff's other attempts to have the Court conclude that she has sufficiently pled that Frey was acting in his professional capacity when he engaged in his blog- and/or Twitter-based discussions are equally fact-poor. She claims that District Attorney Steve Cooley wanted Frey to blog because it would assist Cooley in his run for Governor, but has no facts to support that speculation (to the extent it would even matter under the *Anderson* analysis). *See* FAC ¶ 16. She also concludes that Frey was a "state actor" because it is common for district attorneys to speak to the press "about their cases, as well as other cases of interest to the office and to the administration of criminal justice, and that Deputy District Attorneys are authorized to speak on behalf of the District Attorney's Office on such matters." *Id.* ¶ 38. The conduct leading to his comments obviously was not one of Frey's cases and Plaintiff's argument would mean that anytime a deputy district attorney, in his or her private capacity, speaks to the press about any case (or potential case) in any jurisdiction, he or she is automatically doing so in his or her professional capacity. This Court will not accept that theory based on the facts pled here.

4

Plaintiff also asserts that she was preparing to turn over audio from the wiretapping of Congresswoman Waters's office to authorities in Los Angeles County. *See id.* ¶¶ 42, 44(c), 46. But she does not specify whether those authorities would have been state or federal and she ultimately turned them over, not to California-based *state* authorities, but to *federal* authorities in Washington D.C. (as one might expect with respect to wiretapping of the office of a member of Congress). *See id.* ¶ 65. In any event, Frey's conduct allegedly in association with those plans might have subjected him to discipline from his employer, but it does not turn those actions into actions under color of law.

Finally, Plaintiff's suggestion that Frey was acting in his professional capacity when he attempted to give advice to James O'Keefe[9] for purposes of helping him *defend* against criminal prosecution is facially implausible. *See id.* ¶ 45. District Attorneys' offices are not in the business of assisting criminal defendants or potential criminal defendants with their potential defenses to charges.

The Court was on the verge of dismissing Plaintiff's Section 1983 claim against Frey without leave to amend in connection with the original Complaint. Nevertheless, it gave Plaintiff a chance to bolster her state action allegations. As set forth above, she failed to do so sufficiently. The Court would now dismiss that claim with prejudice.[10] Coupled with her decision to abandon her Section 1983 claim against the County, only state law claims would then remain in this case. The Court must therefore determine whether the jurisdictional minimum of $75,000 is present because, if not, the Court will dismiss the state law claims under 28 U.S.C. § 1367(c)(3), without prejudice, to the extent they are properly before the Court only by way of supplemental jurisdiction.

Diversity Jurisdiction

In the FAC, Plaintiff alleges that her state law claims are before the Court not just by way of supplemental jurisdiction (due to the presence of her federal question Section 1983 claim), but also because there is complete diversity over the parties. *See* FAC ¶¶ 1, 3-4. Complete diversity,

---

[9] It is Plaintiff's interactions with O'Keefe, a "conservative activist," which she asserts led to Frey's "interest" in her. *See id.* ¶¶ 21-37.

[10] The question of state action can be decided at the Rule 12(b)(6) stage where the allegations do not raise a reasonable inference that the defendant is a state actor. *See, e.g., Mueller v. Auker*, 700 F.3d 1180, 1191-92 (9th Cir. 2012); *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 808 (9th Cir. 2010); *Johnson v. Knowles*, 113 F.3d 1114, 1116 (9th Cir. 1997).

of course, requires that the claims exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

In considering the motions challenging her original allegations, the Court *sua sponte* indicated that it needed more from Plaintiff in order to determine that $75,000 or more is – or was – at issue in this case. *See McNutt v. General Motors Accept. Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("If [a plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) ("[W]here the district court has doubts about whether diversity exists, the district court may 'insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify [its] allegations by a preponderance of evidence.'") (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 2012)); *Christensen v. Northwest Airlines, Inc.*, 633 F.2d 529, 530-31 (9th Cir. 1980) (affirming district court's finding that plaintiff's damages claim was not made in good faith but only for the purpose of obtaining federal court jurisdiction and that the injury was too small to establish requisite amount of damages).[11] *But see Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) ("The amount in controversy alleged by the proponent of federal jurisdiction – typically the plaintiff in the substantive dispute – controls so long as the claim is made in good faith. 'To justify dismissal, it must appeal to a legal certainty that the claim is really for less than the jurisdictional amount.'") (quoting *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1130 (9th Cir. 2000)).

In response, Plaintiff offered a declaration, stating the following:

---

[11] Other courts have offered that it must be clear to a legal certainty that the amount in controversy does not meet the jurisdictional minimum. *See, e.g., Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011); *see also Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007). In *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996), the Ninth Circuit said as much in *dicta*. *See id.* at 402 (rejecting assertion that legal certainty was applicable in that case and opining that it "is applicable in two types of cases," including "those brought in the federal court in which the plaintiff has filed a good faith complaint alleging damages in excess of the required jurisdictional minimum"). Other courts have suggested that the legal certainty test only comes into play if "the jurisdictional threshold is uncontested." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). There is no question that this Court has the *sua sponte* ability – indeed, an obligation – to confirm the existence of subject matter jurisdiction over this matter.

6

> 2. On March 26, 2012, immediately after Mr. Frey published my Social Security number on his blog, "Patterico's Pontifications," I began receiving alerts from Experian, a credit reporting agency, that changes were being made to my credit report.
>
> 3. In August 2012 the Internal Revenue Service (IRS) contacted me to inform me that multiple individuals had used my Social Security number to report earned income. As I am a full time student at Harvard University, working to earn my degree in English for teaching, I do not earn an income.
>
> 4. In May 2012 a car dealership contacted me to verify whether I intended to purchase a car. I did not attempt to purchase any vehicle.
>
> 5. Since Mr. Frey began attacking me on his blog and on Twitter in February 2012, I have suffered numerous health problems. His conduct has caused me great distress. I am suffering from a bleeding ulcer, depression, anxiety, severe migraines and difficulty concentrating, which has had negative effects on my studies.
>
> 6. Additionally, Mr. Frey's statements about me on his blog and on Twitter have provoked his unstable fans and followers to harass and threaten me. I have had to move twice now due to death threats I have received.
>
> 7. Mr. Frey has also ruined my reputation, making it exceedingly difficult for me to find any employment. A simple Google search of my name brings up Mr. Frey's blog and his statements about me are available for all prospective employers to read.

Naffe Decl. (Docket No. 56-2) ¶¶ 2-7.[12]; *see also* FAC ¶¶ 75, 79, 83, 87, 90, 94, 102. It is true that this is the only evidence before the Court with respect to the injuries Plaintiff claims to have suffered, and thus, purely as a *mathematical* matter, it obviously would satisfy a "preponderance" standard.[13]

However, Frey raises, and the Court itself might pose, several questions about this evidence. First, in terms of harm to her credit, Plaintiff cites no examples of any actual damages, *i.e.* any purchases or commercial activity not conducted by her that she has been forced to cover. As Frey argues, there is reason to question whether Plaintiff ever could be liable for any sizable

---

[12] The allegations in the FAC are even vaguer. *See* FAC ¶¶ 54, 62, 75, 79, 83, 87, 90, 94, 102.

[13] Plaintiff's Opposition brief on the existence of diversity jurisdiction is only two pages long. *See* Docket No. 56. She has not, therefore, given any further heft to the claims in her declaration. Nor has she attempted to argue with the Court's reliance on *McNutt*'s preponderance standard, as opposed to the legal certainty standard mentioned in *Geographic Expeditions* and *Sanchez*.

amount of money given the legal protections offered to those who have their identity stolen. Second, while Plaintiff unquestionably asserts that she has suffered various ailments since Frey began "attacking" her on the Internet, her assertions are, at this point in time, fairly vague and not supported by any corroborating evidence or reference to any medical treatment she has undergone or medical bills she has incurred because of her conditions. Third, Plaintiff's complaints about "death threats" forcing her to twice move that are attributable to Frey's "unstable fans and followers" are, again, relatively vague; moreover, the Court might question why Frey (and/or the County) should be chargeable for such conduct. Finally, although Plaintiff asserts it is difficult for her to find employment (because of Frey's "attacks" on her credibility and honesty), she also admits that she is a full time student. She does not identify any particular employment she claims to have lost. Nor does she appear to account for the fact that she has admitted to a role in the wiretapping of Maxine Waters's office, *see* FAC ¶¶ 30-32, another fact that is – unfortunately for her – "available for all prospective employers to read." *See, e.g.*, http://www.opednews.com/Quicklink/New-Allegations-James-O-K-in-General_News-120315-330.html (last visited April 16, 2013); http://www.dailykos.com/story/2012/03/16/1074992/-New-Allegations-James-O-Keefe-Breitbart-Targeted-Maxine-Waters-in-Wiretap-Plot (last visited April 16, 2013); *see also Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008) (discussing scope of district court's consideration in connection with Rule 12(b)(1) subject matter jurisdiction challenge). The Court can take judicial notice of the existence of – and ease of accessing – such reports on the Internet.

Plaintiff also has requested punitive damages here, a common pursuit in a case pressing intentional tort claims, along with attorney's fees pursuant to 42 U.S.C. § 1988,[14] *see* FAC Prayer ¶ 4. Given the extent of the evidence Plaintiff has presented thus far, however, the Court would effectively have to conclude that *any* case seeking punitive damages and/or attorney's fees *automatically* meets the $75,000 minimum, something the Court is unwilling to conclude. *Cf. Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514-15 (7th Cir. 2006); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (refusing to include intentional infliction of emotional distress claim that was "defective from the start" in jurisdictional minimum

---

[14] Once the Court proceeds to the analysis of diversity jurisdiction, the federal claim potentially giving rise to attorneys' fees would have been dismissed. It is unclear what effect, if any, this would have on the Court's assessment of the existence of the jurisdictional minimum. Amount in controversy analysis normally looks to the claims as they are presented at the outset of the case. *See* Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial (2011) § 2:1799, at 2C-85.

calculation because "[a] contrary conclusion would give plaintiffs an incentive to insert in complaints meritless intentional infliction of emotional distress claims – claims for which the amount in controversy often is difficult to determine – to create federal court subject matter jurisdiction over other state-law claims that, on their own, would fail to satisfy the amount-in-controversy").

To satisfy the *McNutt* burden, the Seventh Circuit has held that a party "must do more than 'point to the theoretical availability of certain categories of damages." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). At this point in time, this is essentially all that Plaintiff has done with respect to the credit-related damages and employment-related damages she asserts, both of which currently appear to be highly speculative. While it appears as if Plaintiff believes she has already suffered compensable harm in terms of the effects Frey's alleged conduct has had on her health and in costs associated with threats she has allegedly received from Frey's alleged followers, she has not given the Court any details or a sense of the specifics of her harm.

*McMillian* is perhaps instructive. There, the Court noted that the plaintiffs all had medical expenses in amounts significantly less than the jurisdictional minimum. It then analyzed the situation as follows:

> In their supplemental jurisdictional memorandum, the plaintiffs maintain that their claims for future medical expenses and pain and suffering account for the jurisdictional shortfall. However, none of the plaintiffs points to any "competent proof" that he or she could prove damages from these categories to recover a total amount of damages that would reach the jurisdictional threshold. They do not suggest that there is any documentary or testimonial evidence that would show the necessity for future medical treatment of their injuries. Nor do they submit factual examples of their post-accident experience or point us to cases in which the plaintiffs had suffered similar injuries, and the jury awarded pain and suffering damages in amounts that would satisfy the jurisdictional requirements here.

*Id.* at 845. The court ruled that the plaintiffs had not sustained their burden of demonstrating federal jurisdiction. *See id.*; *see also Rapoport v. Rapoport*, 416 F.2d 41, 44 (9th Cir. 1969).

As *McMillian* demonstrates, though it may be uncommon, federal courts do reject, under the *McNutt* rule, federal jurisdiction even when there are facially sufficient diversity allegations. *See also Rapoport*, 416 F.2d 41; *Travelers Prop. Cas. v. Good*, 689 F.3d 714 (7th Cir. 2012). At this point in time, there is a strong argument for the Court doing the same here.

9

The Court would invite the parties to address this issue further at oral argument. If the Court ultimately grants Frey's Rule 12(b)(1) motion, it would lack independent subject matter jurisdiction over Plaintiff's state law claims and would dismiss them, to the extent they are before the Court only by way of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3). Any dismissal of the state law claims would be without prejudice to Plaintiff advancing them in state court. All remaining motions (with the exception of the motion for an order relieving counsel, which is granted, *see* Footnote 2, *supra*) would then be vacated.